UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE        Index No.  06 CV 3212 (VM)
COMPANY,

                  Plaintiffs,

  -against-                                                                     **COMPLAINT**

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                  Defendants.
------------------------------------------------------------------x

**M A D A M/S I R S:**

      Plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY ("Wausau") and AXIS SPECIALTY INSURANCE COMPANY ("AXIS"), by their attorneys, JAFFE & ASHER LLP, as and for their complaint against defendants QBE INSURANCE CORPORATION ("QBE") and SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), allege as follows:

**JURISDICTION AND VENUE**

      1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) by reason of the diversity of citizenship of the parties and the fact that the amounts in controversy exceed the sum of $75,000 exclusive of costs.  This is an action for a declaration of rights under certain insurance policies and for monetary damages based reimbursement due from a co-insurer.

2. At all times hereinafter mentioned, Wausau was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 2000 Westwood Drive, Wausau, Wisconsin.

3. At all times hereinafter mentioned, Wausau was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4. At all times hereinafter mentioned, AXIS was, and still is, an insurance company organized under the laws of the State of Connecticut, with its principal place of business located at 628 Hebron Avenue, Glastonbury, Connecticut.

5. At all times hereinafter mentioned, AXIS was, and still is, an eligible surplus lines insurer duly authorized to issue the policy of insurance to A. J. McNulty & Company ("McNulty"), as alleged herein.

6. Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business located at 88 Pine Street, New York, New York.

7. Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company duly authorized to conduct business within the State of New York.

8. Upon information and belief, at all times hereinafter mentioned, Scottsdale was, and still is, an insurance company organized under the laws of the State of Ohio, with its principal place of business located in Scottsdale, Arizona.

9. Upon information and belief, at all times hereinafter mentioned, Scottsdale was, and still is, an insurance company duly authorized to conduct business within the State of New York.

10. Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## SUBSTANTIVE ALLEGATIONS

11. On or about December 17, 2004, John Moore ("Moore") commenced a lawsuit entitled <u>John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc.,</u> Index No. 13658/04, in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action").

12. In the Underlying Action, Moore seeks damages from each of the defendants for injuries he allegedly sustained, on or about September 16, 2004, as a result of having fallen through an uncovered shaft at the St. George Ferry Terminal jobsite in Richmond County, New York.

13. Upon information and belief, Moore seeks recovery of damages in excess of $6 million against each of the defendants, jointly and severally, in the Underlying Action.

14. Moore alleges that, on September 16, 2004, he was working on the St. George Ferry Terminal Project (the "Project") as an employee of McNulty.

15. Upon information and belief, Barney Skanska Construction Co. ("Skanska") was the Construction Manager for the Project.

16. Upon information and belief, Owen Steel Company, Inc. ("Owen Steel") was a steel subcontractor for the Project.

17. Upon information and belief, McNulty was a subcontractor of Owen Steel.

18. Upon information and belief, Kel-Tech Constructions, Inc. ("Kel-Tech") was a masonry sub-contractor working on the Project.

19. Upon information and belief, Arena Construction Company, Inc. ("Arena") was a masonry sub-contractor working on the Project.

20. Owen Steel entered into a contract, as a subcontractor, with the New York City Economic Development Corp. (the "NYC EDC"), on or about August 28, 2002, to provide steel and certain steel work for the Project.

21. Owen Steel entered into a Subcontract Agreement, on or about March 12, 2001, with McNulty to provide steel erection services for the Project.

22. Upon information and belief, the NYC EDC entered into a contract with Shroid Construction Inc. ("Shroid"), dated January 7, 2003, by which Shroid had agreed to provide masonry work for the Project.

23. Upon information and belief, Shroid filed a voluntary petition under Chapter 11 of the Bankruptcy Code, on December 30, 2003.

24. Upon information and belief, the original agreement between the NYC EDC and Shroid required Shroid to maintain a minimum of $3 million per occurrence, $6 million aggregate, Commercial General Liability insurance coverage, and $10 million Excess Umbrella Liability coverage, and which insurance coverage was to include Skanska and the NYC EDU as additional insureds.

25. Upon information and belief, upon filing its voluntary petition under Chapter 11, Shroid discontinued participation in the Project.

26. Upon information and belief, by Takeover Agreement, dated June 22, 2004, Kel-Tech agreed to complete the masonry work that was to have been completed by Shroid for the Project.

27. Upon information and belief, Kel-Tech further agreed, pursuant to the Takeover Agreement, to obtain the insurance required under the original contract between the NYC EDC and Shroid.

28. Upon information and belief, Kel-Tech agreed to include Skanska and the NYC EDC as additional insureds on Kel-Tech's liability insurance policy.

29. Upon information and belief, Kel-Tech complied with its insurance obligations for the Project by obtaining a liability insurance policy from QBE, which policy includes Skanska and the NYC EDC as additional insureds.

30. Upon information and belief, the policy number for the aforementioned policy issued by QBE to Kel-Tech is No. HBG 00208-3, which policy has a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy").

31. Upon information and belief, the QBE Policy has each occurrence limits of $1 million and general aggregate limits of $2 million.

32. Upon information and belief, the NYC EDC entered into a contract with Arena, pursuant to which Arena agreed to provide masonry work for the Project.

33. Upon information and belief, the contract between the NYC EDC and Arena required Arena to maintain minimum liability insurance coverage, which insurance coverage was to include Skanska and the NYC EDU as additional insureds.

34. Upon information and belief, Arena complied with its insurance obligations for the Project by obtaining a liability insurance policy from Scottsdale, which policy includes Skanska and the NYC EDC as additional insureds.

35. Upon information and belief, the policy number for the aforementioned policy issued by Scottsdale to Arena is No. BCS0008003 (the "Scottsdale Policy").

36. Wausau issued Commercial General Liability policy, No. TZJ-Y91-433317-044, to Owen Steel, as the first Named Insured, with a policy period from February 12, 2004, to February 12, 2005 (the "Wausau Policy").

37. Pursuant to the terms of the Wausau Policy, Skanska and the NYC EDC are additional insureds for the claims alleged in the Underlying Action.

38. AXIS issued Commercial General Liability policy, No. ACP704610, to McNulty as the Named Insured, with a policy period from October 30, 2003 to October 30, 2004 (the "AXIS Policy").

39. Pursuant to the terms of the AXIS Policy, Skanska and the NYC EDC are additional insureds for the claims alleged in the Underlying Action.

40. On or about December 13, 2004, on behalf of Skanska and the NYC EDC and as co-insurer, Wausau tendered the defense and indemnity of Skanska and the NYC EDC for the Underlying Action to QBE.

41. By letter dated December 28, 2004, QBE disclaimed coverage for Skanska and the NYC EDC for the claims alleged in the Underlying Action.

42. QBE disclaimed coverage to Skanska based upon alleged late notice, and additionally disclaimed coverage for both Skanska and the NYC EDC because the claim purportedly "did not arise out of Kel Tech's negligence or work."

43. Upon information and belief, QBE's disclaimer's is improper and unsustainable.

44. Upon information and belief, QBE owed and owes Skanska and the NYC EDC a primary duty to defend and indemnify for the claims alleged in the Underlying Action.

45. On or about January 14, 2005, on behalf of Skanska and the NYC EDC and as co-insurer, Wausau tendered the defense and indemnity of Skanska and the NYC EDC for the Underlying Action to Scottsdale.

46. By letter dated January 21, 2005, Scottsdale acknowledged receipt of the tender of Skanska's and the NYC EDC's defense and indemnity for the claims alleged in the Underlying Action and requested more information.

47. By letter dated January 28, 2005, Wausau responded to Scottsdale's request for more information and provided the information requested.

48. Scottsdale has not provided a further response to the tender of Skanska's and the NYC EDC's defense and indemnity for the claims alleged in the Underlying Action.

49. Upon information and belief, Scottsdale owed and owes Skanska and the NYC EDC a primary duty to defend and indemnify for the claims alleged in the Underlying Action.

### AS AND FOR A FIRST CLAIM FOR RELIEF
#### (Against QBE - For Declaratory Judgment)

50. Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "49" of this Complaint as if more fully set forth herein.

51. Although duly requested, QBE has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

52. Upon information and belief, the QBE Policy provides primary liability insurance coverage to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and the Wausau Policy and the AXIS Policy provides coverage excess of that provided by the QBE Policy.

53. Upon information and belief, QBE waived and/or is estopped from asserting application of some or all of the policy conditions and exclusions in the QBE Policy.

54. As a result of QBE's breach of its coverage obligations, AXIS has been forced to drop down and provide a defense to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and Wausau has agreed to provide coverage in excess of that afforded by the AXIS Policy.

55. Wausau and AXIS seek a determination of their rights with respect to the QBE Policy, and they seek a declaratory judgment that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by QBE under the QBE Policy, for the Underlying Action.

56. Wausau and AXIS have no adequate remedy at law.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**(Against Scottsdale - For Declaratory Judgment)**

57. Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "56" of this Complaint as if more fully set forth herein.

58. Although duly requested, Scottsdale has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

59. Upon information and belief, the Scottsdale Policy provides primary liability insurance coverage to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and the Wausau Policy and the AXIS Policy provides coverage excess of that provided by the Scottsdale Policy.

60. Upon information and belief, Scottsdale waived and/or is estopped from asserting application of some or all of the policy conditions and exclusions in the Scottsdale Policy.

61. As a result of Scottsdale's breach of its coverage obligations, AXIS has been forced to drop down and provide a defense to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and Wausau has agreed to provide coverage in excess of that afforded by the AXIS Policy.

62. Wausau and AXIS seek a determination of their rights with respect to the Scottsdale Policy, and they seek a declaratory judgment that Scottsdale is required to provide a defense and indemnity to Skanska and the NYC EDC and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by Scottsdale under the Scottsdale Policy, for the Underlying Action.

63. Wausau and AXIS have no adequate remedy at law.

### AS AND FOR A THIRD CLAIM FOR RELIEF
(Against QBE - For Recovery of Co-Insurance)

64. Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "63" of this Complaint as if more fully set forth herein.

65. As a result of QBE's failure and refusal to acknowledge its duty to defend Skanska and the NYC EDC for the Underlying Action, AXIS and Wausau have been required to provide a defense for Skanska and the NYC EDC for the Underlying Action.

66. As of April 1, 2006, AXIS has incurred and paid attorneys' fees and other costs in the sum of $12,876 in defending Skanska and the NYC EDC in the Underlying Action, and continues to incur costs to defend these insureds in the Underlying Action.

67. Prior to AXIS assuming the defense of Skanska and the NYC EDC for the Underlying Action, Wausau incurred and paid attorneys' fees and other costs in the sum of $6,521 in defending Skanska and the NYC EDC in the Underlying Action, which amounts have not been reimbursed.

68. As a result of the foregoing, AXIS is entitled to a money judgment against QBE in an amount equal to what it incurred to defend Skanska and the NYC EDC in the Underlying Action, which amount is to be determined by the Court, but in no instance should be less than $12,876, plus interest.

69. As a result of the foregoing, Wausau is entitled to a money judgment against QBE in the amount of $6,521, plus interest.

### AS AND FOR A FOURTH CLAIM FOR RELIEF
(Against Scottsdale - For Recovery of Co-Insurance)

70. Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "69" of this Complaint as if more fully set forth herein.

71. As a result of Scottsdale's failure and refusal to acknowledge its duty to defend Skanska and the NYC EDC for the Underlying Action, AXIS and Wausau have

been required to provide a defense for Skanska and the NYC EDC for the Underlying Action.

72. As of April 1, 2006, AXIS has incurred and paid attorneys' fees and other costs in the sum of $12,876 in defending Skanska and the NYC EDC in the Underlying Action, and continues to incur costs to defend these insureds in the Underlying Action.

73. Prior to AXIS assuming the defense of Skanska and the NYC EDC for the Underlying Action, Wausau incurred and paid attorneys' fees and other costs in the sum of $6,521 in defending Skanska and the NYC EDC in the Underlying Action, which amounts have not been reimbursed.

74. As a result of the foregoing, AXIS is entitled to a money judgment against Scottsdale in an amount equal to what it incurred to defend Skanska and the NYC EDC in the Underlying Action, which amount is to be determined by the Court, but in no instance should be less than $12,876, plus interest.

75. As a result of the foregoing, Wausau is entitled to a money judgment against Scottsdale in the amount of $6,521, plus interest.

**WHEREFORE**, plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY demand judgment as follows:

1. On the first claim for relief, a declaratory judgment that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC for the

Underlying Action and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by QBE under the QBE Policy;

      2.    On the second claim for relief, a declaratory judgment that Scottsdale is required to provide a defense and indemnity to Skanska and the NYC EDC for the Underlying Action and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by Scottsdale under the Scottsdale Policy;

      3.    On the third claim for relief, awarding a money judgment against defendant QBE INSURANCE CORPORATION and in favor of plaintiff AXIS SPECIALTY INSURANCE COMPANY in an amount to be determined by the Court, but in no instance should be less than $12,876, plus interest, and in favor of plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY in the sum of $6,521, plus interest;

      4.    On the fourth claim for relief, awarding a money judgment against defendant SCOTTSDALE INSURANCE COMPANY and in favor of plaintiff AXIS SPECIALTY INSURANCE COMPANY in an amount to be determined by the Court, but in no instance should be less than $12,876, plus interest, and in favor of plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY in the sum of $6,521, plus interest; and

5. Granting plaintiffs recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 27, 2006

Yours, etc.,

JAFFE & ASHER LLP

By:_____
Marshall T. Potashner (MTP-3552)
MPotashner@jaffeandasher.com
Attorneys for Plaintiffs
WAUSAU UNDERWRITERS
INSURANCE COMPANY and
AXIS SPECIALTY INSURANCE
COMPANY
600 Third Avenue, 9TH Floor
New York, New York 10016
(212) 687-3000