UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE      Index No.  06 CV 3212 (VM)
COMPANY,

                              Plaintiffs,

    -against-                             **NOTICE OF MOTION
                                          FOR PARTIAL
QBE INSURANCE CORPORATION and             SUMMARY JUDGMENT**
SCOTTSDALE INSURANCE COMPANY,

                              Defendants.
-----------------------------------------------------------------x

**M A D A M S/S I R S:**

      **PLEASE TAKE NOTICE** that, upon the affidavit of Michael Morrissiey,

sworn to on the 16th day of October, 2006, the affidavit of Marshall T. Potashner, sworn

to on the 18th day of October, 2006, the exhibits annexed thereto, Plaintiffs' Local Civil

Rule 56.1 Statement, the accompanying Memorandum of Law, and the prior proceedings

and pleadings herein, plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY

and AXIS SPECIALTY INSURANCE COMPANY will move this Court on a date and at a

time to be determined by the Court, before the Honorable Victor Marrero at the United

States Courthouse located at 500 Pearl Street, Courtroom 20B, New York, New York

10007, for an Order, pursuant to Fed. R. Civ. P. 56, granting partial summary judgment

on the first claim for relief in the Complaint, determining and declaring that defendant

QBE INSURANCE CORPORATION ("QBE") is required to provide a defense to Barney

Skanska Construction Co. and the New York City Economic Development Corp. for the

action entitled John Moore v. New York City Economic Development Corp., New York

City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index No. 13658/04, which is pending in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action"), determining and declaring that coverage under plaintiffs' policies is excess over the coverage afforded under the QBE policy, and granting plaintiffs the costs and disbursements of this action together with such other and further relief as which this Court deems just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order of the Honorable Victor Marrero, any opposing affidavits and memoranda must be filed and served by November 9, 2006.

Dated: New York, New York
October 18, 2006

Yours, etc.,

JAFFE & ASHER LLP

By: _____
       Marshall T. Potashner (MTP-3552)
MPotashner@jaffeandasher.com
Attorneys for Plaintiffs
WAUSAU UNDERWRITERS
INSURANCE COMPANY and
AXIS SPECIALTY INSURANCE
COMPANY
600 Third Avenue, 9TH Floor
New York, New York 10016
(212) 687-3000

TO:    WILSON, BAVE, CONBOY, COZZA & COUZENS, P.C.
Attorneys for Defendant
QBE INSURANCE COMPANY
Two William Street
White Plains, New York  10601
(914) 686-9010

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP
Attorneys for Defendant
SCOTTSDALE INSURANCE COMPANY
69 East Jericho Turnpike
Mineola, New York 11501
(516) 742-3470

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE          Index No. 06 CV 3212 (VM)
COMPANY,

                          Plaintiffs,

        -against-                                    **AFFIDAVIT IN SUPPORT**
                                                     **OF MOTION FOR PARTIAL**
QBE INSURANCE CORPORATION and                        **SUMMARY JUDGMENT**
SCOTTSDALE INSURANCE COMPANY,

                          Defendants.
-----------------------------------------------------------------------x
STATE OF NEW YORK        )
                         )ss.
COUNTY OF ONONGAGA  )

        **MICHAEL MORRISSIEY**, being duly sworn, deposes and says:

        1.      I am a Director of Complex Claims for plaintiff WAUSAU

UNDERWRITERS INSURANCE COMPANY ("Wausau"); as such, I am fully familiar with

the facts and circumstances set forth herein.

        2.      I submit this affidavit in support of plaintiffs' motion for partial

summary judgment on the first claim for relief in the Complaint, determining and declaring

that defendant QBE INSURANCE CORPORATION ("QBE") is required to provide a

defense and indemnity to Barney Skanska Construction Co. ("Skanska") and the New York

City Economic Development Corp. (the "NYC EDC") for the action entitled John Moore

v. New York City Economic Development Corp., New York City Department of

Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index

No. 13658/04, which is pending in the Supreme Court of the State of New York,

1

County of Richmond (the "Underlying Action"), and determining and declaring that coverage under plaintiffs' policies is excess over the coverage afforded under the QBE policy.

   3. On December 28, 2004, John Moore ("Moore") commenced the Underlying Action. In the Underlying Action, Moore alleges that, on September 16, 2004, he was working on the St. George Ferry Terminal Project (the "Project"). Moore seeks damages from each of the defendants for injuries he allegedly sustained, on or about September 16, 2004, as a result of having purportedly fallen through an uncovered shaft at the St. George Ferry Terminal jobsite in Richmond County, New York. A copy of the Summons and Verified Complaint in the Underlying Action is annexed hereto as Exhibit "1".

   4. Wausau has acknowledged coverage for Skanska and the NYC EDC, as additional insureds under a liability policy it issued to Owen Steel Company, Inc., as the first Named Insured. Plaintiff AXIS SPECIALTY INSURANCE ("AXIS") has acknowledged coverage for Skanska and the NYC EDC, as additional insureds under a liability policy it issued to A. J. McNulty & Company, and that coverage under the AXIS policy is primary to the coverage afforded Skanska and the NYC EDC under the Wausau policy. AXIS has been paying for the defense of Skanska and the NYC EDC in the Underlying Action.

   5. The AXIS policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

    This insurance is excess over: . . .

<div align="center">2</div>

> (2) Any other primary insurance available to you covering
> liability for damages arising out of the premises or operations
> for which you have been added as an additional insured by
> attachment of an endorsement.

Copies of the relevant pages from the AXIS policy are annexed hereto as Exhibit "2".

6.     Skanska and the NYC EDC are also entitled to liability coverage as
additional insureds under a liability policy issued by QBE to Kel-Tech Construction, Inc.
("Kel-Tech").

7.     Kel-Tech was a masonry contractor working on the Project.

8.     The NYC EDC entered into a contract with Shroid Construction Inc.
("Shroid"), dated January 7, 2003, by which Shroid had agreed to provide masonry work
for the Project.  This contract required Shroid to maintain a minimum of $3 million per
occurrence, $6 million aggregate, Commercial General Liability insurance coverage, and
$10 million Excess Umbrella Liability coverage, which insurance coverage was to include
Skanska and the NYC EDU as additional insureds.  A copy of the relevant portions of this
contract is annexed hereto as Exhibit "3".

9.     Shroid filed a voluntary petition under Chapter 11 of the Bankruptcy
Code on December 30, 2003, and Shroid discontinued participation in the Project.

10.    Pursuant to Takeover Agreement, dated June 22, 2004, Kel-Tech
agreed to complete the masonry work that was to have been completed by Shroid for the
Project.  Kel-Tech further agreed, pursuant to the Takeover Agreement, to obtain the
insurance required under the original contract between the NYC EDC and Shroid.  The
relevant portions of the Takeover Agreement are annexed hereto as Exhibit "4".

3

11.    The Takeover Agreement provides, in relevant part, as follow

3.    Insurance Coverage

The required insurance obligations under the Original Contract
may be satisfied by the Completion Contractor providing
evidence, reasonably satisfactory to the Owner, of the required
insurance coverage carried by the Completion Contractor, with
the Surety, the Owner, The City of New York, the
Architect/Engineer (as defined in the Original Contract), the
Construction Manager (as hereafter defined) and all other
parties identified in Article 10 of the Original Contract shall
be named as an additional insureds under the Completion
Contractor's policy or policies.

(See Exhibit "4".)

12.    Kel-Tech is the Completion Contractor as that term is defined and
used in the Takeover Agreement. Pursuant to the terms of the Takeover Agreement and
the original contract the NYC EDC entered into with Shroid, Kel-Tech caused a Certificate
of Liability Insurance to be issued to the NYC EDC as Certificate Holder, which Certificate
represented that both Skanska and the NYC EDC are additional insureds on a Commercial
General Liability policy, No. HBG 00208-3, issued to Kel-Tech, as Named Insured, by
QBE. A copy of the Certificate of Liability Insurance, dated June 14, 2004, is annexed
hereto as Exhibit "5"

13.    Kel-Tech actually complied with its insurance obligations for the
Project by obtaining a liability insurance policy from QBE. The policy number for the
aforementioned policy issued by QBE to Kel-Tech is No. HBG 00208-3, which policy has
a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy").
A copy of the relevant portions of the QBE Policy is annexed hereto as Exhibit "6".

4

14.    The QBE Policy contains an Additional Insured Endorsement that

makes Skanska and the NYC EDU an additional insured, which provides as follows:

> WHO IS AN INSURED (Section II) is amended to include as
> an Insured the person or organization shown in the Schedule,
> but only with respect to liability arising out of "your work" for
> that Insured by or for you.
>
> If required by your agreement with such Additional Insured,
> this insurance shall be primary insurance for that Additional
> Insured. If anyone, other than the Additional Insured,
> provides similar insurance for the Additional Insured, then this
> insurance will apply as outlined in SECTION VI-
> COMMERCIAL GENERAL LIABILITY CONDITIONS,
> paragraph 4, Other Insurance, subparagraph c., Method of
> Sharing.
>
> The inclusion of one or more Insured under the terms of this
> endorsement does not increase our limits of liability.
>
> All other terms and conditions remain unchanged.

(See Exhibit "6".)

15.    The Schedule for the Additional Insured Endorsement states as

follows:

> As required by written contract and/or evidenced by
> Certificate of Insurance on file with company.

(See Exhibit "6".)

16.    As discussed herein, Skanska and the NYC EDU are required to be

included as additional insureds on the QBE Policy by written contract, and that

requirement is evidenced by a Certificate of Liability Insurance.

17.    The QBE Policy contains an "Other Insurance" provision, which

provides, in pertinent part, as follows:

5

### 4.   Other insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of the Coverage Part, our obligations are limited as follows:

#### a.   Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b.   Excess Insurance

This insurance is excess over:

(1)      Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2)      Any other insurance, whether primary, excess, contingent or any other basis that is valid and collectible insurance available to you as an additional insured under a policy issued to:

(a) A contractor performing work for you;

(b) A tenant renting or leasing land or premises from you;

(c) A lessee of equipment owned by you; or

(d) The operator of an oil or gas lease in which have a non-operating  working interest.

(<u>See</u> Exhibit "6".)

6

18.    None of the items in subparagraph 4.b. apply.  Therefore, the primary "Other Insurance" provision in subparagraph 4.a. applies.

19.    The NYC EDC first tendered the claim arising from Moore's accident to Wausau's Named Insured, Owen Steel, on September 23, 2004.  A copy of the tender from the NYC EDC to Owen Steel, dated September 23, 2004, is annexed hereto as Exhibit "7".

20.    Owen Steel thereafter tendered the claim to Wausau on September 27, 2004.

21.    On November 9, 2004, the NYC EDC advised Wausau, for the first time, that Kel-Tech supplied and constructed the scaffolding involved in the September 16, 2004 accident, that Kel-Tech had a direct contract with the NYC EDC, and that the NYC EDC had previously tendered the claim to Kel-Tech.

22.    On November 12, 2004, Skanska's defense was first tendered to Wausau.

23.    We attempted to obtain Kel-Tech's contract from the NYC EDC, and they agreed to provide it to us on November 19, 2004.

24.    On December 13, 2004, Wausau first received a copy of the contract between the NYC EDC and Shroid, the Takeover Agreement, and a Certificate of Liability Insurance showing that the NYC EDC and Skanska are additional insureds on a policy issued by QBE.  Copies of the relevant pages from the contract between the NYC EDC and Shroid are annexed hereto as Exhibit "3".  Copies of the relevant pages from the Takeover Agreement are annexed hereto as Exhibit "4".  A copy of the Certificate of

7

Liability Insurance, which we first received on December 13, 2004, and which was our first notice that QBE might insure Skanska and the NYC EDU for this claim, is annexed here as Exhibit "5".

25.    On that same day, the day Wausau first learned that QBE may also provide coverage to Skanska and the NYC EDC, Wausau tendered the defense of Skanska and the NYC EDC to QBE. A copy of Wausau's tender letter, dated December 13, 2004, with return receipt showing that QBE received the tender on December 17, 2004, is annexed hereto as Exhibit "8".

26.    With my December 13, 2004 tender letter to QBE, I provided a copy of the aforementioned contract by which Kel-Tech agreed that the NYC EDC and Skanska should be included as an insured on Kel-Tech's policy and the aforementioned Certificate of Liability Insurance, which shows that Skanska and the NYC EDC are additional insureds on the QBE Policy.

27.    We tendered this claim to QBE even before the Underlying Action was commenced. Moore did not commence the Underlying Action until December 28, 2004, when he filed the Summons and Complaint with the Supreme Court, Richmond County. (See Exhibit "1".)

28.    By letter dated December 28, 2004, the Claims Service Bureau of New York Inc., on behalf of QBE, disclaimed coverage for the NYC EDC and Skanska. QBE disclaimed coverage for Skanska based upon late notice of an "occurrence" and because "Mr. Moore's accident did not arise out of Kel-Tech's negligence or work." QBE disclaimed coverage for the NYC EDC solely because "Mr. Moore's accident did not arise

8

out of Kel-Tech's negligence or work." QBE did not raise a late notice defense with respect to the NYC EDC. A copy of said disclaimer is annexed hereto as Exhibit "9".

29.    As discussed above, there was no late notice. We notified QBE of the "occurrence" as soon as we learned that it might provide coverage for Skanska. Moreover, QBE does not dispute that NYC EDC timely notified it of the "occurrence". QBE did not disclaim as to the NYC EDC upon late notice. In any event, the claim was tendered to QBE even before the suit was commenced.

30.    There is no doubt that the claim arises "with respect to liability arising out of [Kel-Tech's] work." Kel-Tech is a named defendant in the Underlying Action. As discussed in the accompanying memorandum of law, as a matter of law, the claim therefore is deemed to potentially arising out of Kel-Tech's work, triggering QBE's duty to defend.

**WHEREFORE**, this Court should grant plaintiffs' motion for partial summary judgment in all respects.

DEBORAH I. MOSSOTTI
NOTARY PUBLIC, State of New York
Qualified in Onondaga County
No. 01M05074387
My Commission Expires Mar 10, 20 Ọ 7

_____
**MICHAEL MORRISSEY**

Sworn to before me this
J᷶   day of October, 2006

_____
Notary Public

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE        Index No.  06 CV 3212 (VM)
COMPANY,

                            Plaintiffs,

         -against-                                **AFFIDAVIT IN SUPPORT**
                                                  **OF MOTION FOR PARTIAL**
QBE INSURANCE CORPORATION and                     **SUMMARY JUDGMENT**
SCOTTSDALE INSURANCE COMPANY,

                            Defendants.
-------------------------------------------------------------------x
STATE OF NEW YORK        )
                         )ss.
COUNTY OF NEW YORK       )

         **MARSHALL T. POTASHNER**, being duly sworn, deposes and says:

         1.      I am a member of the law firm of JAFFE & ASHER LLP, attorneys

for plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS

SPECIALTY INSURANCE COMPANY; as such, I am fully familiar with the facts and

circumstances set forth herein.

         2.      I submit this affidavit in support of plaintiffs' motion for an Order,

pursuant to Fed. R. Civ. P. 56, granting partial summary judgment on the first claim for

relief in the Complaint, determining and declaring that defendant QBE INSURANCE

CORPORATION ("QBE") is required to provide a defense to Barney Skanska

Construction Co. ("Skanska") and the New York City Economic Development Corp. (the

"NYC EDC") for the action entitled John Moore v. New York City Economic

Development Corp., New York City Department of Transportation, Barney Skanska

1

<u>Construction Company, Kel Tech Construction Inc.,</u> Index No. 13658/04, which is pending in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action"), and determining and declaring that coverage under plaintiffs' policies is excess over the coverage afforded under the QBE policy.

        3.     On or about April 26, 2006, plaintiffs commenced the above-captioned action by the filing of a Summons and Complaint with this Court. The Complaint alleges four claims for relief. The first claim for relief seeks a declaratory judgment concerning QBE's obligations owed to Skanska and the NYC EDC for the Underlying Action, and the third claim for relief seeks monetary damages for QBE's breach of its duty to defend. The second claim for relief seeks a declaratory judgment concerning defendant SCOTTSDALE INSURANCE COMPANY's ("Scottsdale") obligations owed to Skanska and the NYC EDC for the Underlying Action, and the fourth claim for relief seeks monetary damages for Scottsdale's breach of its duty to defend. A copy of the Complaint is annexed hereto as Exhibit "10".

        4.     This instant motion seeks summary judgment only on the first claim for relief.

        5.     On or about May 16, 2006, QBE served an answer to the Complaint. In said answer, QBE admitted the following allegations of the Complaint:

>         7.     Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company duly authorized to conduct business within the State of New York.

<div align="center">* * *</div>

30.    Upon information and belief, the policy number for the aforementioned policy issued by QBE to Kel-Tech is No. HBG 00208-3, which policy has a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy").

31.    Upon information and belief, the QBE Policy has each occurrence limits of $1 million and general aggregate limits of $2 million.

\* \* \*

41.    By letter dated December 28, 2004, QBE disclaimed coverage for Skanska and the NYC EDC for the claims alleged in the Underlying Action.

\* \* \*

51.    Although duly requested, QBE has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

A copy of said answer is annexed hereto as Exhibit "11".

6.    In its answer, QBE does not raise Skanska's alleged failure to provide notice of the "occurrence" as an affirmative defense. This is a difference between the failure to provide a "notice of the claim or suit", which QBE raised as an affirmative defense in its answer but did not raise in its disclaimer, and notice of "occurrence", which QBE raised in its disclaimer but did not raise in its answer. (See Exhibit "11".)

7.    By Civil Case Management Plan and Scheduling Order dated July 27, 2006, this Court directed that any "[i]nitial requests for production of documents to be served by August 25, 2006" and that "[i]nterrogatories to be served by all party [sic.] by September 25, 2006." A copy of said Order is annexed hereto as Exhibit "12".

8.      Except for discovery served with its answer, in violation of Fed. R. Civ. P. 26(d), and thus a nullity, QBE has not served any requests for discovery herein.

9.      There is no outstanding discovery due and owing to QBE, and the issues raised by this motion are issues of law ripe for adjudication.

**WHEREFORE**, this Court should grant plaintiffs' motion for partial summary judgment in all respects.

_____
**MARSHALL T. POTASHNER**

Sworn to before me this
/8  day of October, 2006

_____
Notary Public

GREGORY E. GALTERIO
Notary Public, State of New York
No. 02GA6081468
Qualified in New York County
Commission Expires _10 - 0 7 - 10_

4

# EXHIBIT 1

01/03/2005 12:38   212-312-3912                    NYC ECONOMIC                PAGE   02/08

SUPREME COURT OF THE STATE OF NEW YORK          *Personally served on*
COUNTY OF RICHMOND                              *NYCEDC 12/28/04 J. Braverman, Esq.*
--------------------------------------------x
                                                **SUMMONS**
JOHN MOORE,
                                                Index No.: *13658/04*
                              *Plaintiff,*
                                                **Plaintiff designates
                                                RICHMOND County as the
                                                place of trial**
        -against-

                                                *The basis of venue is Accident Situs*
NEW YORK CITY ECONOMIC DEVELOPMENT CORP.,
NEW YORK CITY DEPARTMENT OF TRANSPORTATION,
BARNEY SKANSKA CONSTRUCTION CO.,                *Plaintiff resides at:*
KEL TECH CONSTRUCTION INC.,                     421 Walnut Street
                                                Port Monmouth, New Jersey 07758
                              *Defendants.*
--------------------------------------------x

To the above named Defendants:

        You are hereby summoned to answer the complaint in this action and to serve a copy of your
answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the
Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or
within 30 days after the service is complete if this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated:      NEW YORK, NEW YORK
            December 17, 2004


                                    SACKS AND SACKS, LLP


                                    By:  KENNETH  SACKS, ESQ.
                                    *Attorney(s) for Plaintiff*
                                    *Office and Post Office Address*
                                    150 Broadway - 4th Floor
                                    New York, New York 10038
                                    (212) 964-5570



Defendant's Address:

**NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION**     **BARNEY SKANSKA CONSTRUCTION CO.**
110 William Street                                     136 Madison Avenue – 11th Floor
New York, New York 10038                               New York, New York 10016

**THE CITY OF NEW YORK**                               **KEL TECH CONSTRUCTION INC.**
100 Church Street                                      251 Monitor Street
New York, New York                                     Brooklyn, New York 11222


2004 DEC 28  P 3 46
N.Y.C. ECONOMIC
DEVELOPMENT CORP.
LEGAL DEPARTMENT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND
--------------------------------------------------------------x
JOHN MOORE,

       *Plaintiff,*

    -against-        **VERIFIED COMPLAINT**

NEW YORK CITY ECONOMIC DEVELOPMENT CORP., **INDEX NUMBER:** *13658/04*
NEW YORK CITY DEPARTMENT OF TRANSPORTATION,
BARNEY SKANSKA CONSTRUCTION COMPANY,
KEL TECH CONSTRUCTION INC.,

       *Defendants.*
--------------------------------------------------------------x

   Plaintiffs, complaining of the defendants, by their attorneys, **SACKS & SACKS, LLP,**
respectfully allege as follows:

   <u>FIRST</u>:   That at all times herein mentioned, defendant, **NEW YORK CITY
ECONOMIC DEVELOPMENT CORP. ("NYCEDC")** was and still is a municipal corporation duly
organized and existing under and by virtue of the laws of the State of New York.

   <u>SECOND</u>:   That on the 22nd day of September 2004 and within ninety days after the
cause of action herein accrued, plaintiff served upon the **NYCEDC** a Notice of Claim setting
forth the time when, the place where and the manner in which the claim arose so far as
practical. To date the Comptroller has not offered any adjustment of said claim. On December
9, 2004 a 50-H hearing was conducted and this action is being commenced within one year and
ninety days after the cause of action herein accrued.

   <u>THIRD</u>:   That at all times herein mentioned, defendant, **NEW YORK CITY
DEPARTMENT OF TRANSPORTATION ("NYCDOT")** was and still is a municipal corporation
duly organized and existing under and by virtue of the laws of the State of New York.

   <u>FOURTH</u>:   That at all times herein mentioned, and on the 22nd day of September
2004 plaintiff served upon **NYCDOT** a Notice of Claim setting forth the time when, the place
where and the manner in which the claim arose so far as practical.  A 50-H hearing was

conducted on December 9, 2004 and this action is being commenced within one year and ninety days after the cause of action herein accrued.

FIFTH:       That at all times herein mentioned, defendant, **BARNEY SKANSKA CONSTRUCTION COMPANY**. was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

SIXTH:       That at all times herein mentioned, defendant **KEL TECH CONSTRUCTION, INC**. was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

SEVENTH:       That at all times herein mentioned, defendant **NYCEDC** was and still is the owner of premises under construction known as the Staten Island, St. George Ferry Terminal, in the Borough of Richmond, City and State of New York.

EIGHTH:       That at all times herein mentioned, defendant **NYCDOT** was and still is the owner of the aforementioned premises.

NINTH:       That at all times herein mentioned, defendant **BARNEY SKANSKA CONSTRUCTION CO**. was in the business of providing general contracting and/or construction management services and was the general contractor and/or construction manager at the aforementioned premises.

TENTH:       That at all times herein mentioned, defendant **KEL TECH CONSTRUCTION, INC**. was in the business of providing general contracting and/or construction management services and was the general contractor and/or construction manager at the aforementioned premises.

ELEVENTH: That at all times herein mentioned, defendant **NYCEDC** entered into a contract with **BARNEY SKANSKA CONSTRUCTION CO**. for **BARNEY SKANSKA CONSTRUCTION CO**. to act as general contractor and/or construction manager at the aforementioned premises.

01/03/2005  12:38    212-312-3912           NYC ECONOMIC                        PAGE   05/08

**TWELFTH**:  That at all times herein mentioned, defendant, **NYCEDC** entered into a contract with **KEL TECH CONSTRUCTION CO.** for **KEL TECH CONSTRUCTION CO.** to act as general contractor and/or construction manager at the aforementioned premises.

**THIRTEENTH**: That at all times herein mentioned, defendant **NYCEDC** entered into a contract **A.J. McNULTY** for **A.J. McNULTY** to perform work, labor and services at the aforementioned premises.

**FOURTEENTH**:     That at all times herein mentioned, defendant **NYCDOT** entered into a contract with **BARNEY SKANSKA CONSTRUCTION COMPANY** for **BARNEY SKANSKA CONSTRUCTION COMPANY** to act as general contractor and/or construction manager at the aforementioned premises.

**FIFTEENTH**:  That at all times herein mentioned, defendant **NYCDOT** entered into a contract with **KEL TECH CONSTRUCTION CO.** for **KEL TECH CONSTRUCTION CO.** to act as general contractor and/or construction manager at the aforementioned premises.

**SIXTEENTH**: That at all times herein mentioned, defendant **NYCDOT** entered into a contract with **A.J. McNULTY** for **A.J. McNULTY** to perform work, labor and services to the aforementioned premises.

**SEVENTEENTH**:     That at all times herein mentioned, defendant **BARNEY SKANSKA CONSTRUCTION COMPANY** entered into a contract with **A.J. McNULTY** for **A.J. McNULTY** to perform work, labor and services at the aforementioned premises.

**EIGHTEENTH**:     That at all times herein mentioned, defendant **BARNEY SKANSKA CONSTRUCTION COMPANY** entered into a contract with **OWEN STEEL** who in turn entered into a sub-contract agreement with **A.J. McNULTY** for steel erection.

**NINETEENTH**:     That at all times herein mentioned, defendant **KEL TECH CONSTRUCTION CO.** entered into a contract with **A.J. McNULTY**.

**TWENTIETH**:         That at all times herein mentioned, defendant **KEL TECH CONSTRUCTION CO.** entered into a contract with **OWEN STEEL** who in turn entered into a sub-contract agreement with **A.J. McNULTY**.

**TWENTY-FIRST**:         That on the 16th day of September 2004 while plaintiff was lawfully upon the aforesaid premises as an employee of the aforesaid **A.J. McNULTY** he was caused to sustain serious and severe injuries.

**TWENTY-SECOND**: The occurrence arose on the 16th day of September 2004 at approximately 9:30 a.m. at the Staten Island Ferry Terminal, St. George.  At all times herein mentioned, defendants owned, operated, managed and controlled the aforesaid premises and further retained numerous contractors including **BARNEY SKANSKA CONSTRUCTION CORP.** and **A.J. McNULTY** to perform work, labor and services thereat;  at all times plaintiff was employed by A.J. McNULTY and was caused to sustain serious and severe injuries when he was caused to fall through a shaft that was uncovered, not barricaded, not planked over and/or otherwise secured to prevent people from falling through same;  further allowed concrete walls to remain in a dangerous, unconstructed and improper condition causing collapse and other falling hazards;  further failed to provide proper scaffolding that was constructed, placed, operated and maintained;  further failed to provide proper elevated work surfaces;  further failed to provide proper safety devices to prevent a fall from an elevated work site;  further failed to provide yoyos, and other devices to prevent falls from an elevated work site;  further violated Sections 200, 240 and 241(6) of the Labor Law of the State of New York Rule 23 of the Industrial Code of the State of New York specifically but not limited to  23-1.5, 23-1.7, 23-1.8, 23-1.15, 23-1.16, 23-1.17, 23-5, 23-6, and further violated, Article 1926 of O.S.H.A. and was otherwise generally negligent, careless and reckless causing plaintiff to sustain serious and severe injuries.

**TWENTY-THIRD**:         Plaintiff was free from contributory negligence.

**TWENTY-FOURTH**:  As a result of the aforesaid occurrence plaintiff was rendered sick, sore, lame and disabled, was confined to bed and home for a long period of time; was caused to expend large sums of money for medical aid and attention and has been prevented from attending his usual occupation and/or avocation for a long period of time.

**TWENTY-FIFTH**:    The monetary damages sustained by plaintiff exceed the jurisdictional limitations of all lower courts which would otherwise have had jurisdiction.

**WHEREFORE**, the plaintiff demands judgment against the defendants for conscious pain and suffering, loss of enjoyment of life, medical expenses, past and future, lost wages and union benefits, past and future, and all other recoverable items under New York State law.

**SACKS AND SACKS, LLP**
Attorneys for Plaintiff(s)
150 Broadway - 4th Floor
New York, New York 10038
(212) 964-5570

01/03/2005 12:08    321-312-3312    NYC ECONOMIC    PAGE 08/08

## ATTORNEY'S VERIFICATION BY AFFIRMATION

I, KENNETH SACKS, am an attorney duly admitted to practice in the courts of New York

State, and say that: I am the attorney of record, or of counsel with the attorney(s) of record, for

the plaintiff(s). I have read the annexed **SUMMONS AND VERIFIED COMPLAINT** know the

contents thereof and the same are true to my knowledge, except those matters therein which

are stated to be alleged on information and belief, and as to those matters I believe them to be

true. My belief, as to those matters therein not stated upon knowledge, is based upon the

following: facts, investigations and pertinent data contained in deponent's file.

The reason I make this affirmation instead of plaintiff is because plaintiff(s) reside in a

County other than where deponent maintains his office.

Dated:       New York, New York
             December 16, 2004


                                                    _____
                                                    KENNETH SACKS, ESQ.



**POLICY NUMBER: ACP704610**

<div align="right">

**COMMERCIAL GENERAL LIABILITY**
**CG DS 15 01 02**

</div>

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| **AXIS SPECIALTY INSURANCE COMPANY**<br>**628 HEBRON AVENUE, BUILDING 2**<br>**GLASTONBURY, CT 06033** | **STEWART SMITH EAST, INC.**<br>**WALL STREET PLAZA, 88 PINE STREET**<br>**NEW YORK , NY  10005** |
|---|---|

NAMED INSURED:   A. J. MCNULTY & COMPANY

MAILING ADDRESS:   53-20 44th STREET

      MASPETH, NY  11378

POLICY PERIOD:   FROM   10/30/2003   TO   10/30/2004   AT 12:01 A.M. TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| **LIMITS OF INSURANCE** | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000.00 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $50,000.00 | |
| MEDICAL EXPENSE LIMIT | EXCLUDED | |
| PERSONAL & ADVERTISING INJURY LIMIT | $2,000,000.00 | |
| GENERAL AGGREGATE LIMIT | | $1,000,000.00 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | | $1,000,000.00 |

| **DESCRIPTION OF BUSINESS** |
|---|
| FORM OF BUSINESS:<br>__ INDIVIDUAL   __ PARTNERSHIP   __ JOINT VENTURE   __ TRUST<br>__ LIMITED LIABILITY COMPANY   X_ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)<br>BUSINESS DESCRIPTION:   PERFORMS STEEL ERECTION AND PRECAST CONCRETE AND STONE PANEL WORK ON COMMERCIAL, INDUSTRIAL AND MUNICIPAL BUILDINGS AND STRUCTURES. |

## CLASSIFICATION AND PREMIUM

| ALL OPERATIONS RATED AS | CODE NO. | PREMIUM BASE | RATE | PREMIUM |
|---|---|---|---|---|
| COMPOSITE RATED | 91560 | $10,000,000.00 of Receipts | $21.00 per $1,000.00 of Receipts | $210,000.00 |
| | | | | |

INSURED HAS PURCHASED TRIA TERRORISM COVERAGE     ☐ YES     ☒ NO

TRIA TERRORISM PREMIUM:                                                      EXCLUDED

POLICY PREMIUM:

TOTAL PREMIUM SHOWN IS PAYABLE AT INCEPTION:

% STATE TAX _____

% STAMPING FEE _____

| AUDIT PERIOD (IF APPLICABLE) | X  ANNUALLY | __ SEMI-ANNUALLY | __ NOT AUDITABLE |
|---|---|---|---|

## ENDORSEMENTS

ENDORSEMENTS ATTACHED TO THIS POLICY:

COMMERCIAL GENERAL LIABILITY DECLARATIONS PAGE CG DS 15 01 02

COMMON POLICY CONDITIONS – SI 101 (07-02)

COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01 10 01

COVERAGE CHANGE ENDORSEMENT – SI 00 01 0702 OCCURRENCE

TOTAL POLLUTION EXCLUSION ENDORSEMENT CG 21 49 09 99

EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY CG 22 79 07 98

ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS CG 20 10 10 01

AMENDMENT – AGGREGATE LIMITS OF INSURANCE (PER PROJECT AND TOTAL POLICY AGGREGATE) – SI 106 (07-02)

EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM CG 21 54 01 96

WARRANTY OF SUBCONTRACTOR LIMITS – SI 120 (07-02)

DEDUCTIBLE LIABILITY ENDORSEMENT – SI 107 (07-02)

COMPOSITE RATE ENDORSEMENT – SI 128 (07-02)

SERVICE OF SUIT – SI 126 (07-02)

NOTICE TO POLICYHOLDER

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**
**PLEASE SEE ATTACHED FORMS AND ENDORSEMENTS SCHEDULE.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

CG DS 15 01 02

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 01

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

© ISO Properties, Inc., 2000

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000

**CG 00 01 10 01**    ☐

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

© ISO Properties, Inc., 2000

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in **a.** above;

      (2) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01     □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

# COVERAGE CHANGES

**This following modifies insurance provided under the COMMERCIAL GENERAL LIABILITY COVERAGE FORM – CG 00 01 10 01**

## INSURING AGREEMENT

## AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

Paragraph **1. Insuring Agreement** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

# EXCLUSIONS

## EXCLUSION - MEDICAL PAYMENTS

**SECTION 1 – COVERAGES, Coverage C - Medical Payments** does not apply and none of the references to it in the Coverage Part or Coverage Changes apply.

## EXCLUSION – EMPLOYMENT – RELATED PRACTICES EXCLUSION

A. The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person; or

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

# EXCLUSION –FUNGI OR BACTERIA EXCLUSION

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to **Section V: Definitions:**

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

# EXCLUSION – WAR OR TERRORISM EXCLUSION

**A.** Exclusion **i.** under Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism," regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **(a)** Physical injury that involves a substantial risk of death; or

   **(b)** Protracted and obvious physical disfigurement; or

   **(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

   **o. War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **(a)** Physical injury that involves a substantial risk of death; or

    **(b)** Protracted and obvious physical disfigurement; or

    **(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.

**D.** The following definition is added to **Section V: Definitions**:

"Terrorism" means activities against persons, organizations or property of any nature:

    **1.** That involves the following or preparation for the following:

        **a.** Use or threat of force or violence; or

        **b.** Commission or threat of a dangerous act; or

        **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **2.** When one or both of the following applies:

        **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**SI 00 01 0702**                    Page 5 of 12

## EXCLUSION – LEAD

The following exclusion is added to Paragraph 2., **Exclusions** of **Section 1, Coverage A – Bodily Injury and Property Damage Liability** and **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly, out of:

a. The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, or presence of lead or products or materials containing lead regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any injury or damage;

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediation or disposing of, or in any way responding to, or assessing the effects of lead by any insured or by any other person or entity;

c. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with  a. and b. above; or

d. Any obligation to share damages with or repay someone else who must pay damages because of lead or products or materials containing lead.

## EXCLUSION – ASBESTOS

The following exclusion is added to Paragraph 2., **Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability** and **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly, out of:

a. The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of asbestos, asbestos fibers, or any other form of asbestos regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to any injury or damage;

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediation or disposing of, or in any way responding to, or assessing the effects of asbestos, asbestos fibers, or any other form of asbestos, by any insured or  by any other person or entity;

c. Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with a. and b. above; or

d. Any obligation to share damages with or repay someone else who must pay damages because of asbestos or products or materials containing asbestos.

## EXCLUSION – EXTERIOR INSULATION FINISH SYSTEMS (EIFS)

The following exclusion is added to Paragraph 2., **Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability** and **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly, out of:

a.   The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement of an "exterior insulation and finish system" (EIFS) commonly referred to as synthetic stucco or any part thereof, of any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such system.

b.   Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used in any part of that structure.

c.   Any damages arising out of or related to "bodily injury" or "property damage" arising out of paragraph a. and/or b. above, whether such "bodily injury" or "property damage" is known or unknown,
1)   Which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or
2)   Which are, or alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier) even if the "occurrence" continues during this policy period.

d.   Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier).

For the purpose of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system used on any part of any structure, and consisting of any or all of the following:
a)   A rigid or semi-rigid insulation board made of expanded polystyrene or other materials,
b)   The adhesive and /or mechanical fasteners used to attach the insulation board to the substrate,
c)   A reinforced base coat,
d)   A finish coat providing surface texture and color.


## EXCLUSION – CROSS SUITS

The following exclusion is added to Paragraph 2., **Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability** and **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury"  brought by any Named Insured against any other Named Insured.


## EXCLUSION – LEASED AND TEMPORARY WORKERS

The following exclusion is added to Paragraph 2., **Exclusions** of **Section 1 – Coverage A – Bodily Injury and Property Damage Liability** and **Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of, resulting from, caused or contributed to by:

a.   Any "leased worker" or "temporary worker"; or

b. Any spouse, child, parent, brother or sister of that "leased worker" or "temporary worker" as a consequence of a. above.

This exclusion applies:

a. Whether the insured may be held liable as an employer or in any other capacity
b. To any obligation to share damages with or repay someone else who must pay damages because of the injury; and
c. To liability assumed by the insured under an "insured contract"

The definition of "employee" under **Section V – DEFINITIONS**, is deleted in its entirety and replaced by the following:

"Employee" includes a "leased worker" and "temporary worker".

## EXCLUSION - BREACH OF CONTRACT

Exclusion f. under paragraph **2., Exclusions** of Section 1 – Coverage B – **Personal and Advertising Injury Liability** is deleted in its entirety and replaced by the following:

**f. Breach of Contract**

This insurance does not apply to "personal and advertising injury" arising out of breach of contract.

## EXCLUSION - INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET, TRADE DRESS, OR SLOGAN

Exclusion f. under paragraph **2., Exclusions** of Section 1 – Coverage B – **Personal and Advertising Injury Liability** is deleted in its entirety and replaced by the following:

**i. Infringement of Copyright, Patent, Trademark, Trade Secret, Trade Dress or Slogan**

This insurance does not apply to "personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret, trade dress, slogan or other intellectual property rights.

## EXCLUSION – NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

The following exclusion is added to Paragraph 2., **Exclusions** of Section 1 – Coverage A – **Bodily Injury and Property Damage Liability** and Coverage B – **Personal And Advertising Injury Liability:**

The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

SI 00 01 0702

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed there from; or

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property located there. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

## CONDITIONS

### Item **6. Representations** of **Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and replaced by the following:

**6. Representations and Warranties**

By accepting this policy, you agree, represent and warrant that:

a. The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:

    1.   Accurate and complete and no facts have been omitted or misstated, and
    2.   Material to us, and we have issued this policy in reliance upon them;

b. The statements in the Declarations are:

    1.   Accurate and complete and no facts have been omitted or misstated, and
    2.   Material to us, and we have issued this policy in reliance upon them;

c. The statements in the Declarations are based upon representations you made to us in the application for insurance, including statements, information and documents accompanying or relating to the application.

d. Any failure to fully disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from inception; and

e. The application for this policy is incorporated and made a part of the policy by reference.

## PREMIUM AUDIT- ADVANCE MINIMUM AND DEPOSIT PREMIUM

### Item **5. Premium Audit** of **Section IV, CONDITIONS,** Paragraph **b.** is deleted in its entirety and replaced by the following:

b. Premium shown in this Coverage Part as "Advance premium" is a minimum and deposit premium only. At the close of each audit period we will compute the "Earned premium" for that period and send notice to the first Named Insured. Audit premiums are due and payable to us immediately upon notice to the first Named Insured.

If the sum of the "Advance premium" and audit premium paid for the policy are greater than the "Earned premium", we will return the excess to the first Named Insured, subject to the "Minimum premium", as defined below. If the "Advance premium" and the audit premium is less than the "Minimum premium", we will not return any premium.

In the event of mid-term cancellation, the applicable pro rata or short rate of the "Advance premium" will apply or the audited "Earned premium", whichever is greater. However, in no event, will we retain less than the "Minimum premium" shown in the Declarations.

## DEFINITIONS

### Section V – DEFINITIONS is amended to include the following:

"Advance premium" means:
Premium stated in the Declarations and payable in full at inception of this policy.

"Earned premium" means:
Premium that is developed after we, or our representatives audit your books and apply the rates(s) scheduled in the policy to the actual premium basis for the audit period.

"Minimum premium" means:
The lowest premium for which this insurance will be written for the Policy Period stated in the Declarations.

"Premium base": For the purpose of calculating premiums, the following definitions apply:

(1) "Admissions" means the total number of persons, other than employees of the named insured, admitted to the event(s) insured or to the event(s) conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes;

(2) "Area" means the total number of square feet of floor space at the insured premises;

(3) "Each". This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the premium classification footnotes, such as "each person";

(4) "Gross Sales" means the gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for: a) all goods or products, sold or distributed; b) operations performed during the policy period, including operations performed for the insured by independent contractors; c) rentals; and d) dues or fees. "Gross Sales" does not include sales or excise taxes that are collected and submitted to a governmental division;

(5) "Payroll" means the total payroll earned during the policy period by proprietors and by all employees, leased employees and "temporary workers" of the Named Insured and includes commissions, bonuses, extra pay for overtime work and pay for holidays, vacations or period of sickness;

(6) "Field Payroll" means the total payroll earned during the policy period by proprietors and by all employees, leased employees and "temporary workers" of the Named Insured and includes commissions, bonuses, extra pay for overtime work and pay for holidays, vacations or period of sickness. "Field Payroll" does not include payroll earned by sales and clerical employees;

(7) "Sub Cost" means the total cost of all work sublet to independent contractors including: a) the independent contractors' costs of all labor, materials and equipment used in the execution of the work and b) all fees, bonuses or commissions paid or due to independent contractors;

(8) "Total Cost" means the total cost of all work let or sublet including: a) the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and b) all fees, bonuses or commissions made, paid or due;

(9) "Units" means a single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

# "PERSONAL AND ADVERTISING INJURY" DEFINITION CHANGE

Item 14. "Personal and advertising injury" under **Section V – DEFINITIONS** is deleted in its entirety and replaced by the following:

14. "Personal and advertising injury" means injury, including consequential "Bodily injury" arising out of one or more of the following offenses:
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
   e. Oral or written publication of material that violates a person's right of privacy.

| NAMED INSURED<br>A.J. MCNULTY & COMPANY | | ENDORSEMENT NUMBER<br>3 |
|---|---|---|
| POLICY NUMBER<br>ACP704610 | POLICY PERIOD<br>10/30/2003 – 10/30/2004 | EFFECTIVE DATE:<br>10/30/2003 |
| ISSUED BY<br>AXIS SPECIALTY INSURANCE COMPANY | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM          or | PER OCCURRENCE |
| 1)  Bodily Injury Liability<br>OR | $ | $ |
| 2)  Property Damage Liability<br>OR | $ | $ |
| 3)  Personal and Advertising Injury Liability<br>OR | $ | $ |
| 4)  Bodily Injury Liability and/or<br>Property Damage Liability and/or<br>Personal and Advertising Injury Liability Combined | $5,000 | $ |

**APPLICATION OF ENDORSEMENT** (enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for all "Bodily Injury", "Property Damage" and "Personal and Advertising Injury" Liability, however caused):

1.      Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability, Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2.      The deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

   A.  PER CLAIM BASIS.  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   1)  Under Bodily Injury Liability coverage, to all damages sustained by any one person because of "Bodily Injury";
   2)  Under Property Damage Liability Coverage, to all damages sustained by any one person because of "Property Damage";

    3)  Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:
(a) "Bodily Injury";
(b) "Property damage"; or
(c) "Bodily injury" and "property damage" combined
    4)   Under Personal and Advertising Injury Liability coverage, to all damages sustained by any one person because of Personal and Advertising Injury Liability

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "personal and advertising injury"; person includes an organization.

B.  PER OCCURRENCE BASIS. If the deductible amount indicated in the Schedule above is on a per occurrence basis, that deductible applies as follows:

    1)   Under Bodily Injury Liability coverage, to all damages because of "bodily injury";
    2)   Under Property Damage Liability Coverage, to all damages because of "property damage";
    3)   Under Bodily Injury Liability and/or Property Damages Liability coverage Combined, to all damages because of:
a)  "bodily injury";
b)  "property damage";
c)   "bodily injury" and "property damages" combined
    4)   Under Personal and Advertising Injury Liability coverage, to all damages sustained by any one person because of Personal and Advertising Injury Liability.

3.     The terms of this insurance, including those with respect to:
a)  Our right and duty to defend any "suits" seeking those damages; and
b)  Your duties in the event of any "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

4.     We may pay any part or all of the deductible amount to effect settlement of any claims or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

5.     When used in this endorsement, damages includes any payments made under the Supplementary Payments provisions of this policy. The deductible amount will also include costs and expenses as described in Supplementary Payments, that we incur in the investigation, negotiation, settlement and defense of any claim or "suit" seeking damages to which this insurance applies. Costs and expenses do not include the expenses for our own employees.

6.     If you do not promptly reimburse us for any deductible amount owed, then any cost incurred by us in collection of the deductible amount will be added and applied in addition to the applicable deductible amount without limitation. These costs include, but are not limited to, collection agency fees, attorney's fees and interest.

| NAMED INSURED<br>A. J. MCNULTY & COMPANY | | ENDORSEMENT NUMBER<br>1 |
|---|---|---|
| POLICY NUMBER<br>ACP704610 | POLICY PERIOD<br>10/30/2003 – 10/30/2004 | EFFECTIVE DATE:<br>10/30/2003 |
| ISSUED BY<br>AXIS SPECIALTY INSURANCE COMPANY | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

It is hereby agreed and understood that the **LIMITS OF INSURANCE** schedule of the **Declarations page CG DS 15 01 02** is to be deleted in its entirety and replaced with the following.

| LIMITS OF INSURANCE | |
|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000.00 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $50,000.00 |
| MEDICAL EXPENSE LIMIT | EXCLUDED |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000.00 |
| GENERAL AGGREGATE LIMIT | $2,000,000.00 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $1,000,000.00 |

**All other terms and conditions remain unchanged.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – AGGREGATE LIMITS OF INSURANCE (PER PROJECT AND TOTAL POLICY AGGREGATE)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

The General Aggregate Limit shown in the schedule below, applies separately to each of your projects away from premises owned by or rented to you, subject to the Total Policy General Aggregate:

**GENERAL AGGREGATE LIMIT:    $2,000,000**

SECTION III – LIMITS OF INSURANCE, Item 2. is amended as follows:

Item 2

The General Aggregate Limit is the most we will pay for the sum of :

Medical Expenses under Coverage **C**;
Damages under Coverage **A**, except damages because of  "bodily injury"
or "property damage" included in the "products-completed operations hazard" and;
Damages under Coverage B;

SECTION III – LIMITS OF INSURANCE is amended to include the following:

Item 8

**TOTAL POLICY GENERAL  AGGREGATE: $5,000,000**

Subject to Item 2 above, the Total Policy General Aggregate Limit is the most we will pay for the sum of all damage because of all "bodily injury", "property damage", and "personal and advertising injury" to which this insurance applies.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# WARRANTY OF SUBCONTRACTOR LIMITS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

With respect to operations performed on your behalf, you will require all subcontractors and independent contractors to maintain an insurance program containing the following elements:

1. Commercial General Liability Insurance provided by an A.M. Best's B+ rated carrier or better; maintained in full force and effect for the duration of "your work";
2. Minimum limits of Commercial General Liability insurance including coverage for "bodily injury" and "property damage" as follows:
   $1,000,000      Each Occurrence
   $2,000,000      General Aggregate
   $1,000,000      Products-Completed Operations Aggregate
   $    50,000      Fire Damage Legal Liability
3. You must be added as an Additional Insured on the independent contractor or subcontractor policy;
4. You must be extended a Waiver of Subrogation status in your favor on the independent contractor or subcontractor policy;
5. Certificates of Insurance must be provided to you reflecting the requirements in 1, 2, 3 and 4 above.

Commercial General Liability insurance maintained by your independent contractors or subcontractors will be considered primary and our policy will be considered excess, notwithstanding any contrary language that may exist in any Other Insurance condition of the policy.

Failure by you or by your subcontractors to comply with the conditions stated above will not alter the coverage provided by this policy.  In the event of failure to comply with the conditions listed above, you will be charged a rate of $30 per $1,000 of contract cost for all work performed by subcontractors and independent contractors not complying with the above terms.  We can make this premium charge at any time during the policy period or after the expiration of the policy.

| NAMED INSURED<br>A.J. MCNULTY & COMPANY | | ENDORSEMENT NUMBER<br>2 |
|---|---|---|
| POLICY NUMBER<br>ACP704610 | POLICY PERIOD<br>10/30/2003 – 10/30/2004 | EFFECTIVE DATE:<br>10/30/2003 |
| ISSUED BY<br>AXIS SPECIALTY INSURANCE COMPANY | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

It is hereby understood and agreed to that the **TOTAL POLLUTION EXCLUSION ENDORSEMENT CG 21 49 09 99** is to be deleted in its entirety.

It is likewise understood and agreed that the **DEDUCTIBLE LIABILITY ENDORSEMENT –SI 107(07/02)** is to be deleted in its entirety and replaced by **ENDORSEMENT 3**.

**All other terms and conditions remain unchanged.**

POLICY NUMBER: ACP704610

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

POLICY NUMBER: ACP704610

<div align="right">COMMERCIAL GENERAL LIABILITY<br>CG 21 54 01 96</div>

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

<div align="center">SCHEDULE</div>

**Description and Location of Operation(s):**

ANY WRAP–UP OR CONSOLIDATED INSURANCE PROGRAM PROJECT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2., Exclusions** of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

Copyright, Insurance Services Office, Inc., 1994         ☐

POLICY NUMBER: ACP704610

**COMMERCIAL GENERAL LIABILITY**
**CG 22 79 07 98**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

**a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

**2.** Subject to Paragraph **3.** below, professional services include:

**a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

**3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

CG 22 79 07 98

Copyright, Insurance Services Office, Inc., 1997

Page 1 of 1     □

| NAMED INSURED<br>A. J. MCNULTY & COMPANY | | ENDORSEMENT NUMBER<br>4 |
|---|---|---|
| POLICY NUMBER<br>ACP704610 | POLICY PERIOD<br>10/30/2003 – 10/30/2004 | EFFECTIVE DATE:<br>10/30/2003 |
| ISSUED BY<br>AXIS SPECIALTY INSURANCE COMPANY | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE PART**

It is hereby agreed and understood that the **Leased and Temporary Workers Exclusion** contained within the **Coverage Changes – SI 00 01 07 02** is to be deleted in its entirety.

**All other terms and conditions remain unchanged.**

SI 116                        PAGE 1 OF 1                                    07/02

**POLICY NUMBER:  ACP704610**

COMMERCIAL GENERAL LIABILITY
CG 20 10 10 01

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name of Person or Organization: |
| --- |
| Any person or organization that the insured is required by written contract to name as an additional insured. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured**  is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMPOSITE RATE

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Premium Basis | Description of Premium Basis | Rate | Advance Premium |
|---|---|---|---|
| $10,000,000 | Per $1,000 of Receipts | $21 | $210,000 |

**The advance premium is determined by the premium basis and rate shown in the Schedule.  Earned premium will be determined at the close of each audit period in accordance with the Premium Audit Condition.**

# EXHIBIT 3

EDC CONTRACT NO. 11490018     *T - Moore*

*See Keltech Take-over Agreement*

between

**NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION**

and

SHROID CONSTRUCTION INC.

DATED AS OF

*January 7th   2003*

MASONRY
St. George Ferry Terminal , Staten Island, New York

# INDEX

Page No.

ARTICLE 1  GENERAL PROVISIONS .................................................................. 1
ARTICLE 2  THE WORK SITE AND THE CONTRACT WORK ............................... 2
ARTICLE 3  TIME OF PERFORMANCE; SCHEDULES; LIQUIDATED DAMAGES; EXTENSION OF
           TIME ............................................................................................. 4
ARTICLE 4  WORK HOURS ............................................................................. 7
ARTICLE 5  PAYMENT; METHOD OF PAYMENT; PAYMENT RECORDS ............... 8
ARTICLE 6  CHANGE ORDERS; PROTEST WORK ............................................ 11
ARTICLE 7  SUBCONTRACTS .......................................................................... 15
ARTICLE 8  INSPECTION AND COMPLETION OF THE CONTRACT WORK ........... 16
ARTICLE 9  SUSPENSION OF WORK; TERMINATION ....................................... 18
ARTICLE 10 PROTECTION OF PERSONS AND PROPERTY;
           INDEMNIFICATION AND INSURANCE .......................................... 21
ARTICLE 11 BONDS ....................................................................................... 28
ARTICLE 12 LABOR AND MATERIALS; GUARANTEES ....................................... 29
ARTICLE 13 TITLE TO THE WORK, MATERIALS AND EQUIPMENT ..................... 30
ARTICLE 14 REPRESENTATIONS AND WARRANTIES ....................................... 32
ARTICLE 15 APPLICABLE LAW ....................................................................... 33
ARTICLE 16 GOVERNING LAW AND VENUE .................................................... 36
ARTICLE 17 INVESTIGATION CLAUSE ............................................................. 37
ARTICLE 18 DISCHARGE OF LIENS AND CLAIMS ........................................... 41
ARTICLE 19 CONTRACT ADMINISTRATION ..................................................... 42
ARTICLE 20 INTENTIONALLY DELETED ........................................................... 45
ARTICLE 21 MISCELLANEOUS PROVISIONS .................................................... 45
ARTICLE 22 CONTRACT DOCUMENTS, CORRELATION AND INTENT ................ 48
ARTICLE 23 SAFETY AND PROTECTION OF PERSONS AND PROPERTY ............ 50
ARTICLE 24 CONTRACTOR'S RESPONSIBILITIES .......................................... 54
ARTICLE 25 PROJECT SCHEDULE AND COMPLETION OF THE WORK ............... 66
ARTICLE 26 INSPECTION, TESTING AND CORRECTION OF THE WORK ............. 72
ARTICLE 27 SHOP DRAWINGS PROJECT DATA, SAMPLES AND CERTIFICATES .. 76
ARTICLE 28 NOTICES AND SIGNS ................................................................. 80

ATTACHMENT A    -    CONTRACTOR'S REQUISITION FOR PROGRESS PAYMENT
                -    CONTRACTOR'S PARTIAL RELEASE AND RECEIPT
                -    CONTRACTOR'S REQUISITION FOR FINAL PAYMENT
                -    CONTRACTOR'S FINAL RELEASE
                -    SUBCONTRACTOR'S PARTIAL RELEASE
                -    SUBCONTRACTOR'S FINAL RELEASE
                -    CHANGE ORDER FORM
                -    CONTRACTOR'S AFFIDAVIT OF PAYMENT OF DEBTS AND CLAIMS
                -    CONTRACTOR'S AFFIDAVIT OF RELEASE OF LIENS

ATTACHMENT B    -    FORM OF INSURANCE CERTIFICATE

EXHIBIT A       -    E.O. 50 CONSTRUCTION RIDER

EXHIBIT B       -    MACBRIDE PRINCIPLES RIDER

EXHIBIT C       -    FEDERAL AID REQUIREMENTS SUPPLEMENT

DIVISION ONE SPECIFICATIONS

CONSTRUCTION CONTRACT ("this Contract" or the "Contract") dated as of *January 1st, 2002*, between **NEW YORK CITY ECONOMIC DEVELOPMENT CORPORATION**, having an office at 110 William Street, New York, New York 10038 (hereinafter referred to as "EDC"); and SHROID CONSTRUCTION INC. , having its principal place of business at 46-10 11th STREET, LONG ISLAND CITY, NY 11101 (hereinafter referred to as the "Contractor").

In consideration of the mutual covenants contained herein and other valuable consideration, the parties agree as follows:

## ARTICLE 1: GENERAL PROVISIONS

(a)    The Contract.  The Contract shall be composed of and shall include the following (the "Contract Documents"):

  (i)    Articles 1-28 of this Contract, together with the Attachments and Exhibits annexed thereto; the plans and specifications; the drawings (the "Contract Drawings"), reference and as-built drawings and reports, together with any other drawings that EDC may indicate as such;

  (ii)    Any change orders, extra work orders, amendments or addenda which may be issued in accordance with this Contract;

  (iii)    The Instructions for Proposers (the "Instructions") and proposal (as modified by any modification thereof), including, without limitation, all reports, certifications, forms and other documents submitted therewith, pertaining to this Contract;

  (iv)    Any and all provisions of laws, rules or regulations and Executive Orders of the United States Government, the State of New York, The City of New York, and any agency or subdivision thereof, which are required to be a part of or apply to this Contract, whether or not any specific reference is made to the same in this Contract; and

(v)    Any proposal (bid) bond and any payment and/or performance bonds in connection with the Contract Work (as hereinafter defined).

The Contractor acknowledges that it has carefully examined the entire Contract and thoroughly understands the same.

(b)    <u>The Funding</u>.  The parties acknowledge that all funds for the payment of the Contractor under this Contract have been provided by or through The City of New York (the "City"), pursuant to a contract between EDC and the City (the "City Contract").  The Contractor acknowledges that it has been afforded the opportunity to review the Contract between EDC and the City and shall take no action which constitutes a breach of the City Contract.

(c)    <u>Applicable Laws, Rules and Regulations</u>.  The work to be performed under this Contract shall be performed in accordance with all applicable laws, rules and regulations of Federal, State and City governments or any agency or subdivision thereof, including without limitation, those laws, rules, regulations and the safety requirements more particularly set forth in this Contract.

## ARTICLE 2: THE WORK SITE AND THE CONTRACT WORK

(a)    <u>The Work Site</u>.  The parties agree that the site of the Contract Work (the "Work Site" or "Site") shall be St. George Ferry Terminal, Staten Island , New York.  EDC makes no representations whatsoever as to any condition of the Work Site.  The Contractor assumes all responsibility and liability for all conditions at the Work Site that could have been discovered by reasonable examination or inquiry. If at any time during the prosecution of the Contract Work (as hereinafter defined) Contractor shall be denied access to the Work Site by any person(s) not associated with EDC or by court action, then the time for Contractor to complete the Contract Work within the time referred to in Article 3 hereof shall be extended for a period equal to any such period of access denial.  In no event shall any denial of access to the Contractor to the Work Site be a breach of this Contract and no damages or increased costs shall be recoverable against EDC, the City, their representatives, agents and assigns on account of such denial of access.

(b)     <u>The Contract Work.</u>  The Contractor shall promptly perform and furnish all of the labor, materials, plant, tools, supplies, schedules, scaffolds, appliances, equipment, utilities, photographs, permits, licenses and all other items necessary for the prosecution and completion of all aspects of the work required to be performed by the Contractor pursuant to the terms of the Contract (the "Work" or "Contract Work") in respect **Masonry** at the Work Site in connection with the Renovation of the St. George Ferry Terminal (the "Project").  The Contractor shall prosecute and complete the Contract Work in strict accordance with the plans and specifications, drawings, and scope of work which are appended hereto and form a part hereof (such plans and specifications, drawings, scope of work and attachments being hereinafter collectively referred to as the "Plans and Specifications"), and all other parts of this Contract.  The Contractor, as a part of the Contract Work, shall also pay all fees, charges and taxes due on or incidental to the Contract Work.  The Contractor shall make no change of any nature whatsoever in the Contract Work without first having obtained written approval for that change from EDC.

(c)     <u>Means and Methods of Construction</u>.  Unless otherwise expressly provided in the Plans and Specifications, the means and methods of construction shall be such as the Contractor may choose within trade and industry standards, subject, however, to the right of EDC to reject means and methods proposed by the Contractor which will, in the opinion of EDC:

(i)     constitute or create a hazard to the Contract Work, or to persons or property;

(ii)     not produce finished Contract Work in accordance with the terms of this Contract; or

(iii)     be detrimental to the overall progress of the Contract Work.

EDC's approval of the Contractor's means and methods of construction, or its failure to exercise its right to reject such means or methods, shall not relieve the Contractor of its obligation to complete performance in accordance with this Contract as defined in Article 8 herein, nor shall the exercise of such right to reject create a cause of action for damages.

(d)    <u>Coordination of Contract Work by Construction Manager</u>.  Except as otherwise expressly provided for herein, the Contractor shall be entirely responsible for the coordination of the Contract Work within its Contract.  EDC or its Construction Manager (as defined herein below) may from time to time employ other Contractors to work at, on or about the Work Site.  The Contractor agrees to coordinate its Contract Work and its scheduling with the work of all other persons employed at, on or about the Work Site.

EDC has retained Barney Skanska Construction Company, 136 Madison Avenue, New York, New York 10016 (such firm, or any other firm or person in substitution thereof that EDC notifies the Contractor has become construction manager or assumed any of the construction manager's responsibilities for the Contract Work being referred to hereinafter as the "Construction Manager") to coordinate the overall schedule of construction activities that take place at the Work Site, to assist EDC in administering the Contract Work, and to insure that the commencement and completion of construction activities at the site is on schedule.

Contractor shall comply with the instructions of the Construction Manager given pursuant to this Contract.

(e)    <u>Architect/Engineer</u>.  EDC has retained Hellmuth, Obata & Kassabaun, P.C., 620 Avenue of the Americas, New York, New York 10014 (who together with all other engineering and/or design professionals identified by EDC, are herein referred to as the "Architect/Engineer") as the principal architect/engineer for the Project.

<u>ARTICLE 3: TIME OF PERFORMANCE; SCHEDULES;
LIQUIDATED DAMAGES; EXTENSION OF TIME</u>

(a)    <u>Commencement and Coordination of Contract Work</u>.  The Contractor shall commence performance of the Contract Work on the Work Site no later than 48 hours after the Contractor receives a written notice to proceed ("Notice to Proceed") with the Contract Work from EDC.  If the Contractor is to perform Contract Work on more than one Work Site, then the Contractor shall commence the Contract

## ARTICLE 10: PROTECTION OF PERSONS AND PROPERTY;

## INDEMNIFICATION AND INSURANCE

(a)    <u>Protection of Persons and Property</u>.   The Contractor shall take every reasonable precaution to make the Work Site safe and to protect all persons and all property from damage, loss, injury, theft or vandalism resulting from the Contractor's acts or omissions or those of the Subcontractors.

(b)    <u>Indemnification</u>.   In this Article 10, EDC, its officers, directors, employees and agents shall be collectively referred to as "EDC". The Contractor shall defend, indemnify and hold harmless EDC and the City, the Construction Manager, the Architect/Engineer, and their respective parent companies, corporations and/or partnerships, and their owned controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and the respective agents, consultants, principals, partners, servants, officers, stockholders, directors and employees (collectively, the "Indemnified Parties") from any and all claims, damages, judgments, liabilities and causes of action whatsoever (including without limitation defaults under or breaches of the City Contract), to which they may be subject arising out of (i) the acts or omissions of the Contractor, its Subcontractors, agents, employees or material suppliers, and any and all persons on the Work Site or in connection with the Contract Work or (ii) any negligence, fault or default of the Contractor, its Subcontractors, agents, employees or material suppliers.

The obligation of the Contractor to indemnify and hold harmless the Indemnified Parties shall include but not be limited to the payment of any and all actual costs and actual legal fees as may be incurred by the Indemnified Parties. The termination of this Contract shall not release the Contractor from any liability to the Indemnified Parties arising out of any act or omission of the Contractor in connection with this Contract.

(c)    <u>Obligation of Officers, Directors, Employees and Agents of EDC and the City</u>.   The Contractor agrees and acknowledges that there shall be no personal liability on the part of any officer, director, official, member, employee or agent of the City or EDC or any of the other Indemnified Parties to the Contractor or to any other person on account of any act or omission in connection with this Contract

or any of the Contract Work. The Contractor agrees to look solely and exclusively to the funding under the City Contract for all monies which may become due to the Contractor.

(d)    <u>Contractor Not an Agent of EDC or the City</u>. Neither the Contractor nor any of its employees nor any of its Subcontractors is, shall be or shall represent that it is an agent, servant or employee of EDC or the City by virtue of this Contract or by virtue of any approval, permit, license, grant, right or authorization given by EDC or the City or any of the other Indemnified Parties any of their officers, directors, employees or agents. The Contractor is solely responsible for the work, direction, compensation and personal conduct of its officers, employees, agents and Subcontractors.

(e)    <u>Insurance</u>. During the performance of the Contract Work or for such other time periods as may be herein otherwise specifically set forth, whichever shall be longer, the Contractor shall purchase and maintain, with insurance companies acceptable to EDC, rated A or better by A. M. Best Company, licensed to do business and in good standing in the State of New York, the following types of insurance in form and substance satisfactory to EDC and in face policy amounts the minimum value of which are fixed herein, the premiums for which shall be paid currently by the Contractor, and wherein (except in the case of the Worker's Compensation policy and the Automobile Liability policy named below) EDC, the City, the Construction Manager and the Architect/Engineer and their respective parent companies, corporations and/or partnerships, and their owned, controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and their respective agents, consultants, principals, partners, servants, officers, stockholders, directors and employees (the "Additional Interested Parties"), shall be named as additional insureds with the right to receive all monies, all notices and benefits, and the Contractor shall require each of its Subcontractors to have and maintain, or be covered by, the same coverage required of the Contractor with the Subcontractor to pay all premiums currently and wherein (except in the case of the policies noted above) EDC, the City, the Construction Manager, the Architect/Engineer and the Additional Interested Parties shall be named as the additional insureds with the right to receive all monies, all notices and benefits as follows:

Commercial General
Liability (including Owner's
Protective Liability):              $3,000,000 combined single limit per occurrence, but if annual aggregate is applicable to the policy not less than $ 6,000,000 in the aggregate.

Excess Umbrella Liability:          $10,000,000 combined single limit per occurrence and in the aggregate.

Workers' Compensation:              In statutory amounts.

Employer's Liability:               $500,000

Automobile Liability:               $1,000,000

Builders Risk:                      In an amount not less than 115% of the Contract Price.

Railroad Protective Liability:      $2,000,000 combined single limit per occurrence, but if an annual aggregate is applicable to the policy not less than $4,000,000 in the aggregate.

If the Contractor utilizes floating equipment, barges or floats, or performs Marine-related construction, the Contractor shall purchase and maintain additional insurance of the following types and in the following amounts in connection with the performance of the Contract Work:

U.S. Harbor Workers'
Long Shoremens
Compensation Act:                   In statutory amounts

Marine Protection and
Indemnity:                          $3,000,000 combined single limit per occurrence, but if an annual aggregate is applicable to the policy not less than $6,000,000 in the aggregate per year.

The Contractor shall provide to EDC one certificate, substantially in the form attached hereto as Attachment B, of all policies of insurance required in compliance with this Contract before the commencement of the Contract Work and, not less than 20 days prior to the expiration of any policy, a confirmation of the renewal of such policy.

The types of insurance to be obtained and maintained by the Contractor and the provisions to be included in such insurance policies are as follows:

(i)     Types of Insurance   The types of insurance to be purchased and maintained by the Contractor are as follows:

(A)    <u>Workers' Compensation, Disability Benefits Insurance, and Employer's Liability</u> <u>Insurance</u>.  Workers' compensation and disability benefits insurance in statutory amounts, and employer's liability insurance, for all of its employees engaged at the Work Site or in connection with the Contract Work.  The Contractor shall require each of its Subcontractors to purchase and maintain workers' compensation and disability benefits insurance in statutory amounts, and to purchase and maintain employer's liability insurance, for all of their employees employed at the Work Site or in connection with the Contract Work.  The failure of the Contractor to comply with this Section (i)(A) shall make this Contract voidable at the option of EDC.  Neither the Contractor nor any of its employees nor any of its Subcontractors nor any of their employees shall be employees of EDC or the City.

(B)    <u>Commercial General Liability</u>.  The Contractor shall purchase and maintain commercial general liability insurance, including owner's protective liability insurance, to protect EDC, the City, the Construction Manager, the Architect/Engineer, the Additional Interested Parties, the Contractor and its Subcontractors against any and all claims for property damage, personal injury and death arising out of the Contract Work performed by the Contractor and its Subcontractors, and any work incidental thereto.  The certificate of insurance must indicate that the insurance afforded by this Article 10, Section (i)(B) is on an occurrence basis.

(C)    <u>Automobile Liability Insurance</u>.  The Contractor shall purchase and maintain automobile liability insurance covering all automobiles, machinery and vehicles used in connection with the Contract Work whether owned, non-owned and/or hired vehicles, automobiles and/or machinery.

(D)    <u>Excess Umbrella Liability Coverage</u>.    The Contractor shall purchase and maintain excess umbrella liability insurance, specifically listing comprehensive general liability, comprehensive automobile liability and worker's compensation (employer's liability) as primary coverages, to protect EDC, the City, the Construction Manager, the Architect/Engineer, the Additional Interested Parties, the Contractor and its Subcontractors from any and all claims in excess of the underlying policy limits for such primary coverages.    The certificate of insurance must indicate that the insurance afforded by this Article 10, Section (i)(D) is on a per occurrence basis.

(E)    <u>Builders' Risk</u>.    The Contractor shall purchase and maintain builders "all-risk" insurance (completed value non-reporting form or installation floater, as applicable), covering the Contract Work performed by the Contractor and its Subcontractors, and any work incidental thereto and naming EDC, the City, the Construction Manager, the Architect/Engineer, the Additional Interested Parties, the Contractor and its Subcontractors as additional insureds.

(F)    <u>Railroad Protective Liability</u>.    The Contractor shall purchase Railroad Protective Liability insurance covering the Contract Work performed by the Contractor and its Subcontractors, and any work incidental thereto and naming EDC, the City, the Construction Manager, the Architect/Engineer, the Additional Interested Parties, the Contractor and its Subcontractors as additional insureds.

(G)    <u>U.S. Harbor Workers' and Long Shoremens' Compensation Act</u>.    Contractor shall purchase and maintain U.S. Harbor Workers' and Long Shoremens' Compensation Act insurance and/or workers' compensation/employer's liability insurance as may be legally required and in statutory amounts.

(H)    Marine Protection and Indemnity. Contractor shall purchase and maintain Marine Protection and Indemnity Insurance incorporating U.K. Rules or the equivalent, for personal injury, death and property damage arising out of the Contract Work performed by the Contractor, and its Subcontractors, and any work incidental thereto.

(ii)    Insurance Provisions  The insurance policies described in paragraphs B, C, D, E, F and H of Section (i) above shall name EDC, the City, the Construction Manager, and the Architect/Engineer, as additional insureds, and shall contain the following provisions:

(A)    Notices from the insurer to EDC and the City, in connection with this policy, shall be addressed to the Contract Administrator, New York City Economic Development Corporation, at 110 William St., New York, New York 10038 and to the Commissioner, New York City Department of Business Services, at 110 William St., New York, New York 10038 or such other addresses as may be specified by EDC.

(B)    The insurer shall accept notice of accident from (i) EDC, (ii) the City,  (iii) Barney Skanska Construction Company (the "Construction Manager"), (iv) Hellmuth, Obata & Kassabaum, P.C. (the "Architect/Engineer"), and (v) their respective parent companies, corporations and/or partnerships, and their owned, controlled, affiliated, associated and subsidiary companies, corporations and/or partnerships and their respective agents, consultants, principals, partners, servants, officers, stockholders, directors and employees (the "Additional Interested Parties"), respectively, within 120 days after receipt by an official of such additional insured party of notice of such accident as valid and timely notice under this policy;

(C)  The insurer shall accept notice of claim from the City within 120 days after such claim has been filed with the Comptroller of the City and notice of claim from EDC, the Construction Manager and the Architect/Engineer, respectively, within 120 days after receipt by such party as valid and timely notice under this policy;

(D)  Notice of accident or claim to the insurer by the Contractor, the City, EDC, the Construction Manager, the Architect/Engineer or the Additional Interested Parties, shall be deemed notice by all under this policy;

(E)  This policy shall not be canceled, terminated or modified by the insurer or the Contractor unless 30 days prior written notice is sent by registered mail to EDC, the City, the Construction Manager, and The Architect/Engineers nor shall this policy be canceled, terminated or modified by the Contractor without prior written consent of EDC; and

(F)  The presence of engineers, inspectors or other employees or agents of EDC, the Construction Manager, the Architect/Engineer, the Additional Interested Parties and/or of the City at the site of any Contract Work performed by the Contractor shall not invalidate this policy of insurance."

(iii)  <u>Endorsement Indicating Compliance With Requirements</u>.  As a condition precedent to payment of any amounts owing to the Contractor by EDC, the Contractor shall, unless otherwise expressly agreed to in writing by EDC, provide to EDC a true copy of policies and endorsements to policies showing compliance with those insurance requirements set forth above in respect of each of the policies described above.

(iv)  <u>Miscellaneous Insurance Provisions</u>.  The Contractor's insurance policies required above shall constitute the primary coverage for claims arising out of this Contract, and shall

state that insurance, if any, carried by EDC, the City, the Construction Manager, the Architect/Engineer or the Additional Interested Parties will not be called upon to contribute to a loss that would otherwise be paid by the Contractor's insurer.  The Contractor shall comply with the provisions of all insurance policies required pursuant to this Contract, and shall give the insurer, EDC, the City, the Construction Manager, the Architect/Engineer and the Additional Interested Parties due and timely notice of any claim, accident and loss promptly upon its acquiring knowledge of the same.

(v)    The insurance provisions of this Article 10 shall be in addition to any rights that EDC, the City, the Construction Manager, the Architect/Engineer or the Additional Interested Parties may have under the hold harmless and indemnification provision of this Contract and any other right provided by this Contract or by law.  The Contractor shall not violate or permit to be violated any term or condition of said insurance policies.

## ARTICLE 11: BONDS

The Contractor shall secure, as a part of the Contract Work, and keep in full force at all times during the performance of the Contract Work, payment and performance bonds, each in the face amount of not less than the Contract Price.  The bonds shall be provided by a surety company(ies) licensed to do business and in good standing in the State of New York and registered with the New York State Department of Insurance, and otherwise approved by EDC.  The bonds shall each be executed in a form and amount approved by EDC and delivered to EDC at least 10 days before any Contract Work is performed under this Contract.  The cost of said bonds is included in the Contract Price.

Each executed bond must be accompanied by (a) appropriate acknowledgments of the respective parties; (b) an appropriate duly certified copy of Power of Attorney or other certificate of authority where the bond is executed by an agent, officer or other representative of the principal and/or the surety; (c) a duly certified extract from the by-laws or resolutions of the principal and/or the surety under which the Power of Attorney or other certificate of authority of its agent, officer or representative

# EXHIBIT 4



## TAKEOVER AGREEMENT/MASONRY

This Takeover Agreement (the "Agreement") is made and entered into this ___ day of June, 2004, by and between Safeco Insurance Company of America (the "Surety") and New York City Economic Development Corporation (the "Owner" or "NYCEDC").

### RECITALS:

WHEREAS, Shroid Construction Inc. (the "Former Contractor") and the Owner entered into a contract (the "Original Contract") for the Former Contractor to furnish all labor and material and perform all work for Contract #11490018, Masonry Work, St. George Ferry Terminal, Staten Island, New York (the "Project") in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract all as set forth in Exhibit 1;

WHEREAS, as required by law and under the terms of the Original Contract, Former Contractor and the Surety made, executed and delivered to the Owner a Performance Bond, Bond No. 5977181, and a Payment Bond, Bond No. 5977181 (collectively, the "Bonds"), each in the penal sum of $2,795,000;

WHEREAS, on or about December 30, 2003, the Former Contractor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of New York, Case No. 04-22048 (ASH):

WHEREAS, on April 7, 2004, said Bankruptcy Court ordered that the Original Contract be rejected pursuant to Section 365 of the Bankruptcy Code;

WHEREAS, the Owner has subsequently called upon the Surety to fulfill its obligations as Surety under the terms of the Performance Bond; and

WHEREAS, the Surety is willing to arrange for the completion of the Original Contract in accordance with the terms of the Performance Bond and this Agreement.

NOW, THEREFORE, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy therefore being hereby acknowledged, the Owner and the Surety agree as follows:

AGREEMENT:

1.    Surety Will Arrange For
      Completion of Original Contract

The Surety hereby undertakes to cause and to be responsible for the performance of each and every one of the terms, covenants and conditions of the Original Contract, including all modifications thereto, a copy of which is deemed to be attached hereto and incorporated by reference as Exhibit 1. The Owner acknowledges that the Surety, by its execution of this Agreement, is acting in its capacity as the Surety for the Former Contractor in making arrangements for the performance and completion of the Original Contract, and not as a completing contractor, and that the Surety is not assuming any obligations or liabilities beyond those set forth in the Bonds.

2.    Owner Approves Of Completion Contractor

The Owner acknowledges that the Surety will contract the performance of the work under the Original Contract to a completion contractor, namely Kel-Tech Construction, Inc. (the "Completion Contractor"). The Owner hereby approves the selection by the Surety of Kel-Tech Construction, Inc. as the Completion Contractor.

3.    Insurance Coverage

The required insurance obligations under the Original Contract may be satisfied by the Completion Contractor providing evidence, reasonably satisfactory to the Owner, of the required insurance coverage carried by the Completion Contractor, with the Surety, the Owner, The City of New York, the Architect/Engineer (as defined in the Original Contract), the Construction Manager (as hereafter defined) and all other parties identified in Article 10 of the Original Contract shall be named as an additional insureds under the Completion Contractor's policy or policies.

4.    Contract Balance

The Owner and the Surety agree that as of the date of this Agreement:

4.1.    The authorized amount of the Original Contract ($2,795,000), including all approved change orders ($236,595), is $3,031,595 (through Owner change order No. 347, which is the same as Former Contractor change order No. 017; a change order log is annexed as Exhibit 2).

4.2.    The Former Contractor has been paid $1,360,300.50 through pay application No.9, based on the Owner's evaluation of contract work performed. The Former Contractor invoiced the sum of $1,635,445. The

# EXHIBIT 5

WAUSAN FG; P.415-003413-01

Client#: 18177                                                                KELTECH

## ACORD™ CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
06/14/04

**PRODUCER**

The Treiber Group, LLC
377 Oak Street
CS 601
Garden City, NY  11530-0601

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER A: Q B E Insurance Co. | 39217 |
| INSURER B: United States Fire Insurance Co. | 21113 |
| INSURER C: American Guarantee and Liability Ins | 26247 |
| INSURER D: Elite Contractors Trust of NY | |
| INSURER E: Hartford Insurance Companies | 29427 |

**INSURED**

Kel Tech Construction Inc.
251 Monitor Street
Brooklyn, NY  11222

### COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY  [X] COMMERCIAL GENERAL LIABILITY  [ ] CLAIMS MADE [X] OCCUR | HBG002083 | 11/16/03 | 11/16/04 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER:  [ ] POLICY [ ] PRO-JECT [ ] LOC | | | | PRODUCTS - COMP/OP AGG | $1,000,000 |
| B | | AUTOMOBILE LIABILITY  [X] ANY AUTO  [ ] ALL OWNED AUTOS  [ ] SCHEDULED AUTOS  [X] HIRED AUTOS  [X] NON-OWNED AUTOS | 1336705866 | 01/14/04 | 01/14/05 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY  [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN EA ACC / AUTO ONLY: AGG | $ |
| C | | EXCESS/UMBRELLA LIABILITY  [X] OCCUR [ ] CLAIMS MADE  [ ] DEDUCTIBLE  [X] RETENTION    $ 10000 | AUC532745600 | 11/16/03 | 11/16/04 | EACH OCCURRENCE | $10,000,000 |
| | | | | | | AGGREGATE | $10,000,000 |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| D | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  If yes, describe under SPECIAL PROVISIONS below | EC1101281 | 04/01/04 | 04/01/05 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| E | | OTHER  Installation Floater | 12MSTG3642 | 05/25/04 | 05/25/05 | Masonry - $1,883,148 | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**

Referenced Project: Contract#1000000- RE:St.George Ferry Terminal
NYC Economic Development Corp., Barney Skanska,Inc., Beacon Consulting Group,Inc. & SAFECO are additional insureds

11490012

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| New York City Economic Development Corp. Attn: Contract Administrator 110 William Street, 6th Floor New York, NY  10038 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.  AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08) 1  of 2          #S132517/M132516                    AJU          © ACORD CORPORATION 1988

# EXHIBIT 6

# COMMON POLICY DECLARATION

Policy No.  HBG00208-3

| | |
|---|---|
| **QBE INSURANCE CORPORATION**<br>**88 PINE ST NEW YORK, NY 10005**<br>**HOME   1515 MARKET STREET**<br>**OFFICE: PHILADELPHIA PA 19103** | **The Treiber Group LLC**<br><br>**377 Oak Street**<br>**Garden City          NY      11530-0601** |

**NAMED INSURED:**   Kel Tech Construction, Inc

**MAILING ADDRESS:**  251 Monitor Street
Brooklyn                NY      11222

**POLICY PERIOD:**   From       11/16/2003   To       11/16/2004       at
12:01 A.M. standard time at your mailing address shown above.

**BUSINESS DESCRIPTION:** General Contractor

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| Commercial Property Coverage Part | $   NOT COVERED |
| Commercial General Liability Coverage Part | $     89,386.00 |
| Commercial Crime Coverage Part | $   NOT COVERED |
| Commercial Inland Marine Coverage Part | $   NOT COVERED |
| Boiler and Machinery Coverage Part | $   NOT COVERED |
| Commercial Auto Coverage Part | $   NOT COVERED |
| | $ |
| **TOTAL PREMIUM** | **$      89,386.00** |

**Premium shown is payable:** $        89,386.00        **at inception**

**Forms applicable to all Coverage Parts:**
IL 00 17 11 98          IL 00 23 04 98          IL 01 85 04 98          IL 02 68 07 00
QBIL-0121 01 03

**COUNTERSIGNED** _____ 11/19/03 _____   **BY** _____
                               **(Date)**                              **(Authorized Representative)**

00 19 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984

Company Copy

POLICY NUMBER:  HBG002083-3

COMMERCIAL GENERAL LIABILITY
CG DS 01 07 98

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

QBE Insurance Corporation                         The Treiber Group LLC

NAMED INSURED:     Kel Tech Construction, Inc

                                                  377 Oak Street
MAILING ADDRESS:     251 Monitor Street           Garden City   NY            11530
                     Brooklyn          NY      11222

POLICY PERIOD:     From      11/16/2003      to      11/16/2004
                   at 12:01 A.M. Standard Time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURENCE LIMIT | $         1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $         100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $         10,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $         1,000,000 | Any one person or |
| GENERAL AGGREGATE LIMIT | $         2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $         1,000,000 | |

## RETROACTIVE DATE (CG 00 02 ONLY)

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY" OR " PROPERTY DAMAGE" WHICH OCCURS BEFORE
THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.
RETROACTIVE DATE:  NONE
                   (Enter Date or "None" if no Retroactive Date applies)

## DESCRIPTION OF BUSINESS

Form Of Business: [ ] Individual   [ ] Joint Venture   [ ] Partnership   [ ] Limited Liability Company
[X] Organization, including a Corporation (but not including a
Partnership, Joint Venture or Limited Liability Company)   BUSINESS DESCRIPTION:  General Contractor

### All Premises You Own, Rent Or Occupy:

| | |
|---|---|
| 001 | NY |

## CLASSIFICATION AND PREMIUM

| CLASSIFICATION | CODE NO | PREMIUM BASIS | RATE PROD/COMP OPS | PREM/OPS | ADVANCE PREMIUM PROD/COMP OPS | PREM/OPS |
|---|---|---|---|---|---|---|
| Refer to composite rating endorsement, QBCG-0108 | | | | | | |

Add'l To Equal Minimum                         $
Total Advance Premium                          $89,386

## ENDORSEMENTS

Endorsements attached to this policy:
See Register

** Products-Completed Operations are subject to the General Aggregate Limit

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND
ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned:_____   BY: _____
              (Date)                            (Authorized Representative)

CG DS 01 07 98

Copyright, Insurance Services Office, Inc., 1997

| Named Insured | Policy Number |
|---|---|
| Kel Tech Construction, Inc | HBG00208-3 |

| Producer | Effective Date |
|---|---|
| The Treiber Group LLC | 11/16/2003 |

**Line of Business:** General Liability

| | | | |
|---|---|---|---|
| CG DS 01 07 98 | CG 00 01 07 98 | CG 01 04 12 01 | CG 01 63 09 99 |
| CG 20 28 11 85 | CG 21 34 01 87 | CG 21 47 07 98 | CG 21 73 12 02 |
| CG 24 04 10 93 | CG 24 17 10 01 | CG 25 03 03 97 | CG 26 24 08 92 |
| CG 26 36 12 93 | QBCG-0100 11 99 | QBCG-0102 11 99 | QBCG-0103 11 99 |
| QBCG-0104 11 99 | QBCG-0105 11 99 | QBCG-0107 11 99 | QBCG-0108 11 99 |
| QBCG-0109 11 99 | QBCG-0110 11 99 | QBCG-0113 11 99 | QBCG-0162 07 01 |

SY 02 01 95

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
      (1) The amount we will pay for damages is limited as described in Section **III** - limits Of Insurance; and
      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
      (2) The "bodily injury" or "property damage" occurs during the policy period.
   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**
   This insurance does not apply to:
   a. **Expected Or Intended Injury**
      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
   b. **Contractual Liability**
      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
      (1) That the insured would have in the absence of the contract or agreement; or
      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

Copyright, Insurance Services Office, Inc., 1997

    **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d.  Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.  Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

    **(a)** Employment by the insured; or

    **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of " pollutants":

    **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

        **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire;

    **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

(d) At or form any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) 'Bodily injury" or Property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured, Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:
(a) Less than 26 feet long; and
(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

   **(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   **(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

   **(1)** Property you own, rent, or occupy;

   **(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

   **(3)** Property loaned to you;

   **(4)** Personal property in the care, custody or control of the insured;

   **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

   **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard"

This exclusion does not apply if the damaged work or the work out of which the damaged arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

   **(1)** "Your product";

   **(2)** "Your work"; or

   **(3)** "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

     Copyright, Insurance Services Office, Inc., 1997     CG 00 01 07 98

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurances does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance: and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3)** Arising out of oral or written publication of Material whose first publication took place before the beginning of the policy period;

**(4)** Arising out of a criminal act committed by or at the direction of any insured;

**(5)** For which the insured had assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

**(6)** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**(7)** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**(8)** Arising out of the wrong description of the price of goods, products or services states in your "advertisement"

**(9)** Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section; or

**(10)** Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    Copyright, Insurance Services Office, Inc., 1997

**b.** We will make these payments regardless of Fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic Devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2.** **Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while taking part in athletics.

**f.** Included within the "products-completed operations hazard".

**g.** Excluded under Coverage **A**.

**h.** Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgement we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgement that accrues after entry of the judgement and before we have paid, offered to pay, or deposited in court the part of the judgement that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee of all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract'";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:
  (a) Obtain records and other information related to the "suit"; and
  (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, Such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgements or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

  **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

  **(1)** "Bodily injury" or "personal and advertising injury":
    **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that "employee" is either in the course of his or her employment or performing duties related to the conduct of your business;
    **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;
    **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or
    **(d)** Arising out of his or her providing or failing to provide professional health care services.

  **(2)** "Property damage" to property:
    **(a)** Owned, occupied or used by,
    **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by
    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:
    **(1)** With respect to liability arising out of the maintenance or use of that property; and
    **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "product-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operation Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You Must see to it that we are notified as soon a practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its term have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgement against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

if other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of the Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".

If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also, Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or non of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The Statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claims made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertising" means a notice that is broadcast or published to the general public or specific market segments about you foods, products or services for the purpose of attracting customers or supporters.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997
CG 00 01 07 98

    **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

    **c.** All parts of the world if:

      **(1)** the injury or damage arises out of:

        **(a)** Goods or products made or sold by you in the territory described in **a.** above; or

        **(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

      **(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

      **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

      **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

        **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

        **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker" .

**11.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a.  Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b.  Vehicles maintained for use solely on or next to premises you own or rent;

c.  Vehicles that travel on crawler treads;

d.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e.  Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f.  Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication of material that violates a person's right of privacy;.

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    Copyright, Insurance Services Office, Inc., 1997    CG 00 01 07 98

b. Does not include "bodily injury" or "property damage" arising out of:
   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or
   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, state that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:
   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:
   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
      (1) You;
      (2) Others trading under your name; or
      (3) A person or organization whose business or assets you have acquired; and
   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
   "Your product" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
   b. The providing of or failure to provide warnings or instructions
   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:
   a. Work or operations performed by you or on your behalf; and
   b. Materials, parts or equipment furnished in connection with such work or operations.
   "Your work" includes:
   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
   b. The providing of or failure to provide warnings or instructions.

    Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
QBCG-0102 (11-99)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Policy Number:<br>HBG00208-3 | Endorsement Effective:<br>11/16/03 |
|---|---|
| Named Insured:<br>Kel Tech Construction, Inc | Countersigned By:<br>(Authorized Representative) |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**SCHEDULE**

**Name of Person or Organization:**

As required by written contract and/or as evidenced by Certificate of Insurance on file with company.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you.

If required by your agreement with such Additional Insured, this insurance shall be primary insurance for that Additional Insured. If anyone, other than the Additional Insured, provides similar insurance for the Additional Insured, then this insurance will apply as outlined in SECTION VI-COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 4, Other Insurance, subparagraph c., Method of Sharing.

The inclusion of one or more Insured under the terms of this endorsement does not increase our limits of liability.

All other terms and conditions remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright, Insurance Services Office, Inc. 1997

QBCG-0102 (11-99)              **QBE Insurance Corporation**              **Page 1 of 1**



COMMERCIAL GENERAL LIABILITY
QBCG-0105 (11-99)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCESS INSURANCE PROVISION – ADDITIONAL INSUREDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Policy Number: | Endorsement Effective: |
|---|---|
| Named Insured: | Countersigned By:             ( Authorized Representative ) |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

It is hereby agreed that **Policy Form No. CG00010798, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, b. Excess Insurance, Item 2.,** is deleted in its entirety and replaced by the following:

**2.** Any other insurance, whether primary, excess, contingent or any other basis that is valid and collectible insurance available to you as an additional insured under a policy issued to:

**(a)** A contractor performing work for you;

**(b)** A tenant renting or leasing land or premises from you;

**(c)** A lessee of equipment owned by you; or

**(d)** The operator of an oil or gas lease in which you have a non-operating working interest.

All other terms and conditions remained unchanged.

Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright, Insurance Services Office, Inc. 1997

COMMERCIAL GENERAL LIABILITY
CG 01 63 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1. Insuring Agreement** of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

     **(1)** The amount we will pay for damages is limited as described in SECTION III - Limits Of Insurance; and

     **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

     **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

     **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

     **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**B.** Paragraph **1.a.** of **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

  **1.** **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C.**

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**C.** The following is added as paragraph **e.** to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition (Paragraph **2.** of **Section IV - Commercial General Liability Conditions):**

  **2.** **Duties in the Event of Occurrence, Offense, Claim or Suit**

    **e.** Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**D.** The definition of "loading or unloading" in the **Definitions** Section does not apply.

      Copyright, Insurance Services Office, Inc., 1999      CG 01 63 09 99

# EXHIBIT 7



**New York City
Economic Development
Corporation**

## 110 WILLIAM STREET, 6TH FLOOR, NEW YORK, NY 10038

### FACSIMILE COVER SHEET

The City of New York

Michael R. Bloomberg, Mayor

Andrew M. Alper, President

DATE:       September 23, 2004

FROM:       Martin Bree
            Assistant Vice President
            of Legal Affairs
            (TEL: 212-312-3548) (FAX: 212-312-3912); E-Mail: mbree@nycedc.com

TO:

| NAME | TEL. NO. | FAX NO. |
|------|----------|---------|
| **KEVIN PHILLIPS, Senior Proj. Mgr** Owen Steel Co. | 803-251-7680 | 803-251-7637 |
| cc: Brian Bish Marsh USA, Comm'l Claims Dept. | 846-240-5400 | 846-242-1175 |

Re:   First Notice
      Claimant: John Moore
      D/L: 9/16/04
      NYC Eco. Dev. Corp. Contract No:11490006
      Contractor: Owen Steel

On 9/22/04, NYC Eco. Dev. Corp. ("NYCEDC") was personally & properly served
with the attached Notice of Claim. Owen Steel's sub-contractor, A.J. McNulty,
employed claimant at the time of the incident.

Pursuant to the above captioned contract Owen Steel is to defend and indemnify
NYCEDC & the City of NY in reference to this matter.

*NYCEDC requests that your liability insur. carrier acknowledge, in writing as to
the coverages that will be afforded to NYCEDC & City of NY pursuant to their
additional insured status on Owen Steel's liability policy.*

This facsimile contains CONFIDENTIAL INFORMATION, which may also be LEGALLY PRIVILEGED that is intended only
for use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee responsible for
delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is prohibited.
If you have received this facsimile in error, please notify us by telephone and return the facsimile to us at the above address
via the U.S. Postal Service. Thank you.

### • NUMBER OF PAGES INCLUDING COVER  [5]

# EXHIBIT 8



**WAUSAU**

Member of Liberty Mutual Group

<u>CERTIFIED MAIL – RETURN RECEIPT
REQUESTED</u>
QBE INSURANCE CO
WALL STREET PLAZA
88 PINE STREET
NEW YORK NY 10005
ATTN: CLAIMS DEPARTMENT

December 13, 2004

Re:  Claimant:        John Moore
     Location:        St. Georges Ferry Jobsite
     Our Insured:     Owen Steel Company, Inc.
     Your Insured:    Kel Tech Construction, Inc.
     Date of Loss:    September 16, 2004
     Our Claim No.:   P 415-003413-01

Dear Madam or Sir:

Wausau Insurance Company is currently investigating a bodily injury claim
brought by John Moore against New York City Economic Development
Corporation ("EDC" ) and Barney Skanska Construction Company
("Skanska").  Based  on our investigation Mr. Moore was injured when he fell
down an elevator shaft under construction at the St. Georges Ferry Terminal
on September 16, 2004.  We understand that Kel Tech was a Contractor for
EDC at the time of loss and may have caused or contributed to the injuries
sustained by Mr. Moore.

We have obtained a copy of the contract between EDC and Shroid
Construction Inc., as well as the Takeover Agreement/Masonry between EDC
and Safeco Insurance Company of America.

By receipt of this letter, I hereby request that you defend and indemnify
EDC, as well as Skanska with respect to the claims brought by John Moore
pursuant to EDC Contract No. 11490018.  For your convenience, I have
attached a copy of the contract, which sets forth the language in which Your
Insured agrees to defend and indemnify EDC and Skanska.

Additionally, I am enclosing, for your convenience, a copy of a Certificate of
Insurance in which you have agreed to add EDC and Skanska as additional

WAUSAU INSURANCE COMPANIES
251 SALINA MEADOWS PKY STE 260 • NORTH SYRACUSE NY 13212 • (315) 461-0089
MAILING ADDRESS: PO BOX 4834 • SYRACUSE NY 13221-4834 • FAX (315) 461-3895

insureds. As additional insureds, EDC and Skanska would be entitled to a defense and coverage for the damages claimed by John Moore. Please acknowledge in writing that you will defend EDC and Skanska and provide coverage for the damages claimed.

I trust that you will fulfill your obligations as have been stated above. If either you or Your Insured decline to fulfill the above obligations, please provide a letter that sets forth in detail all bases and grounds, along with all supporting facts.

Thank you for your kind cooperation in this matter.

Sincerely,


Michael Morrissiey
Senior Technical Claims Specialist


cc:    Kel Tech Construction, Inc.
       251 Monitor Street
       Brooklyn, NY 11222


       The Treiber Group, LLC
       377 Oak Street
       CS 601
       Garden City, NY 11530-0601

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _Laurie Arena_  ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name )  C. Date of Delivery<br>_Laurie Arena_ 4/17/0 |
| 1. Article Addressed to:<br><br>CyBE Insurence Co.<br>Wall Street Plaza<br>88 Pine Street<br>New York, NY 10005<br>Attn: Claim Department | D. Is delivery address different from item 1? ☐ Yes<br>    If YES, enter delivery address below: ☒ No<br><br>3. Service Type:<br>☒ Certified Mail   ☐ Express Mail<br>☒ Registered     ☒ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)   ☐ Yes |

PS

Morrissiey

102595-02-M-H

# EXHIBIT 9



LICENSED AND BONDED
STATE OF NEW YORK & CONNECTICUT

# CLAIMS SERVICE BUREAU OF NEW YORK INC.

**21 HEMPSTEAD AVENUE  P.O. BOX 805**
**LYNBROOK, N.Y. 11563**

(516) 593-2440   FAX: (516) 593-2486
(718) 895-2400          (800) 433-9631

<u>VIA FAX # (315) 461- 3895</u>
<u>& CERTIFIED MAIL</u>
<u>RETURN RECEIPT REQUESTED</u>

December 28, 2004

Wausau Insurance Company
PO Box 4834
Syracuse, NY 13221-4834

Attn:  Michael Morrissiey
       Sr. Technical Claims Specialist

|  | RE: | Claimant: | John Moore |
|--|-----|-----------|-----------|
|  |  | Your Insd: | Owen Steel Company, Inc. |
|  |  | Our Insd: | Kel-Tech Construction, Inc. |
|  |  | Your Claim: | P 415-003413-01 |
|  |  | D/L: | 9/16/04 |
|  |  | Our File: | SIR 026342 |

Dear Mr. Morrissiey:

Please be advised that Claims Service Bureau of New York, Inc. is the duly
authorized claims representative for QBE Insurance Corp., the commercial
general liability insurance carrier for Kel-Tech Construction, Inc. in the above-
referenced matter.

Under Policy Number HBG 00208-3, QBE Insurance Corp. provides general
liability insurance coverage to Kel-Tech Construction, Inc. in the amount of $1
million per occurrence.

Please allow this correspondence to respond to your December 13, 2004 request
for defense and indemnification for Barney Skanska Construction Company and
the New York City Economic Development Corp.

The above-mentioned claim involves John Moore, an employee of McNulty Steel,
was installing steel beams.  While he was walking on top of a concrete elevator
shaft, he was caused to lose his balance and fell into the elevator shaft.

INVESTIGATORS ○ ADJUSTERS ○ ADMINISTRATORS ○ SERVING INSURERS & SELF INSURERS ○ SINCE 1959

Wausau Insurance Company
Clmnt:  John Moore
SIR 026342
December 28, 2004

- 2 -

At this time, we respectfully direct your attention to commercial general liability coverage form, CG 00 01 07 98, which states as follows:

<div align="center">

**SECTION 1 – COVERAGES**

</div>

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**

    a.  **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:**

        (1) **The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and**

        (2) **Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

    f.  **The Indemnitee**

        (1) **Agrees in writing to:**

Wausau Insurance Company
Clmnt: John Moore
SIR 026342
December 28, 2004

- 3 -

<div style="margin-left: 2em;">

**(a)**     **Cooperate with us in the investigation, settlement or defense of the "suit";**

**(b)**     **Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";**

**(c)**     **Notify any other insurer whose coverage is available to the Indemnitee; and**

**(d)**     **Cooperate with us with respect to coordinating other applicable insurance available to the Indemnitee; and**

**(2)**     **Provide us with written authorization to:**

**(a)**     **Obtain records and other information related to the "suit"; and**

**(b)**     **Conduct and control the defense of the Indemnitee in such "suit".**

</div>

**So long as the above conditions are met, attorney's fees incurred by us in the defense of that Indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the Indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b (2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.**

**Our obligation to defend an insured's Indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when:**

<div style="margin-left: 2em;">

**a.**     **We have used up the applicable limit of insurance in the payment of judgments or settlement; or**

</div>

Wausau Insurance Company
Clmnt:  John Moore
SIR 026342
December 28, 2004

- 4 -

**b.**    The conditions set forth above or the terms of the agreement described in Paragraph 1 above are no longer met.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.**    Duties In The Event of Occurrence, Offense, Claim or Suit

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim.  To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took place;

        **(2)**    The names and addresses of any injured persons and witnesses;

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)**    Authorize us to obtain records and other information;

Wausau Insurance Company
Clmnt:  John Moore
SIR 026342
December 28, 2004

- 5 -

      (3)    **Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and**

      (4)    **Assist us, upon our request, in the enforcement cf any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.**

    d.    **No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.**

Because Article 2(a) Section IV – Commercial General Liability Conditions clearly requires that "you must see to it that we are notified as soon as practicable of an occurrence or an offense which may result in a claim", we find it necessary to formally disclaim coverage to Barney Skanska Construction Company due to late notice under Policy Number HBG 00208-3.

Please further be advised that our investigation revealed that one of Skanska's laborers, Mario Nicklo, demolished a portion of the elevator shaft and walls, which Kel Tech had constructed.  We also learned that Mr. Nicklo lowered some of the planks on Kel Tech's scaffold to perform his work, but did not fully plank out the scaffolding on the level where he was working.

Please be advised that QBE's Additional Insured Endorsement, QBCG-0102 states:

    **WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you."**

Wausau Insurance Company
Clmnt:  John Moore
SIR 026342
December 28, 2004

- 6 -

Based upon our investigation, it would appear that Mr. Moore's accident was the result of Skanska's work and independent negligence.  Even assuming that Barney Skanska Construction Company did not provide late notice to QBE Insurance Corp. with respect to this matter, which QBE disputes, QBE rejects your request for defense and indemnification for The City of New York and Barney Skanska Construction Company since Mr. Moore's accident did not arise out of Kel Tech's negligence or work.

Please accept this letter as a formal disclaimer of coverage under policy number HBG 00208-3 due to late notice and due to the fact that Mr. Moore's accident did not arise out of Kel Tech's negligence or work.

QBE Insurance Corp. will not provide defense or indemnification to The City of New York or Barney Skanska Construction Company for this matter.

As there will be no coverage afforded for the above-referenced loss under QBE Insurance Corp.'s general liability policy number HBG 00208-3, we strongly recommend that you retain Counsel at your insured's expense, if necessary, to protect your insured's legal interests in this claim.

Please be advised, however, that legal fees and expenses generated in connection with your insured's defense will not be reimbursed by QBE Insurance Corp. under commercial general liability insurance policy number HBG 00208-3 or under any other QBE Insurance Corp. general liability policy of insurance.

The contents of this letter should not be construed as a list of all possible reasons for the denial of coverage, and QBE Insurance Corp. specifically reserves the right to raise additional defenses at a later date.

This letter should also not be construed as a waiver of the terms and conditions set forth in the policy, and QBE Insurance Corp. does not waive its right to rely on all conditions within the policy, both now and in the future.

QBE Insurance Corp. specifically reserves the right to rely on the conditions of the policy should additional or new allegations arise out of this incident.

Wausau Insurance Company
Clmnt: John Moore
SIR 026342
December 28, 2004

- 7 -

We trust this adequately apprises you of QBE Insurance Corp.'s coverage
position with respect to general liability policy number HBG 00208-3.

If you wish to request a reconsideration with respect to this determination, you
must do so in writing, directed to the attention of the undersigned. Please note
that no telephone requests for reconsideration, interposed by either the insured
directly or a representative of the insured, will be entertained.

Should you wish to request a reconsideration, please forward your written
request to the attention of the undersigned, including all documentation and
additional information supporting your request, promptly upon your receipt of this
letter.

Very truly yours,
**CLAIMS SERVICE BUREAU OF NEW YORK, INC.**

**By:    Robert T. Riccobono, CPCU**
**RTR/kmo**

cc:    Barney Skanska Construction Company, One Bay Street, Staten Island,
       NY, 10301, via certified mail, return receipt requested

cc:    The Treiber Group, LLC, 377 Oak Street, CS 601, Garden City, NY,
       11530-0601

cc:    Kel Tech Construction, Inc., 251 Monitor Street, Brooklyn, NY, 11222

cc:    Hartan Brokerage, Inc., 33 West 60th Street, 6th Floor, New York, NY
       10023, Attn: Brenda McGovern, via e-mail

cc:    QBE Insurance Corp., Wall Street Plaza, 88 Pine Street, 16th Floor, New
       York, NY 10005, Attn: Kenneth Jackson, AVP, via e-mail

# EXHIBIT 10

JUDGE MARRERO

06 CV 3212

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

Plaintiffs,

-against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

Defendants.

------------------------------------------------------------------x

**COMPLAINT**



RECEIVED
APR 26 2006
U.S.D.C. S.D.N.Y.
CASHIERS

**M A D A M/S I R S:**

Plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY

("Wausau") and AXIS SPECIALTY INSURANCE COMPANY ("AXIS"), by their

attorneys, JAFFE & ASHER LLP, as and for their complaint against defendants QBE

INSURANCE CORPORATION ("QBE") and SCOTTSDALE INSURANCE COMPANY

("Scottsdale"), allege as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a) by reason of the diversity of citizenship of the parties and the fact that the

amounts in controversy exceed the sum of $75,000 exclusive of costs.  This is an action

for a declaration of rights under certain insurance policies and for monetary damages based

reimbursement due from a co-insurer.

1

2.    At all times hereinafter mentioned, Wausau was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 2000 Westwood Drive, Wausau, Wisconsin.

3.    At all times hereinafter mentioned, Wausau was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4.    At all times hereinafter mentioned, AXIS was, and still is, an insurance company organized under the laws of the State of Connecticut, with its principal place of business located at 628 Hebron Avenue, Glastonbury, Connecticut.

5.    At all times hereinafter mentioned, AXIS was, and still is, an eligible surplus lines insurer duly authorized to issue the policy of insurance to A. J. McNulty & Company ("McNulty"), as alleged herein.

6.    Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business located at 88 Pine Street, New York, New York.

7.    Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company duly authorized to conduct business within the State of New York.

8.    Upon information and belief, at all times hereinafter mentioned, Scottsdale was, and still is, an insurance company organized under the laws of the State of Ohio, with its principal place of business located in Scottsdale, Arizona.

2

9.     Upon information and belief, at all times hereinafter mentioned, Scottsdale was, and still is, an insurance company duly authorized to conduct business within the State of New York.

10.    Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391.

## SUBSTANTIVE ALLEGATIONS

11.    On or about December 17, 2004, John Moore ("Moore") commenced a lawsuit entitled John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index No. 13658/04, in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action").

12.    In the Underlying Action, Moore seeks damages from each of the defendants for injuries he allegedly sustained, on or about September 16, 2004, as a result of having fallen through an uncovered shaft at the St. George Ferry Terminal jobsite in Richmond County, New York.

13.    Upon information and belief, Moore seeks recovery of damages in excess of $6 million against each of the defendants, jointly and severally, in the Underlying Action.

14.    Moore alleges that, on September 16, 2004, he was working on the St. George Ferry Terminal Project (the "Project") as an employee of McNulty.

15.    Upon information and belief, Barney Skanska Construction Co. ("Skanska") was the Construction Manager for the Project.

16.    Upon information and belief, Owen Steel Company, Inc. ("Owen Steel") was a steel subcontractor for the Project.

17.    Upon information and belief, McNulty was a subcontractor of Owen Steel.

18.    Upon information and belief, Kel-Tech Constructions, Inc. ("Kel-Tech") was a masonry sub-contractor working on the Project.

19.    Upon information and belief, Arena Construction Company, Inc. ("Arena") was a masonry sub-contractor working on the Project.

20.    Owen Steel entered into a contract, as a subcontractor, with the New York City Economic Development Corp. (the "NYC EDC"), on or about August 28, 2002, to provide steel and certain steel work for the Project.

21.    Owen Steel entered into a Subcontract Agreement, on or about March 12, 2001, with McNulty to provide steel erection services for the Project.

22.    Upon information and belief, the NYC EDC entered into a contract with Shroid Construction Inc. ("Shroid"), dated January 7, 2003, by which Shroid had agreed to provide masonry work for the Project.

23.    Upon information and belief, Shroid filed a voluntary petition under Chapter 11 of the Bankruptcy Code, on December 30, 2003.

24.    Upon information and belief, the original agreement between the NYC EDC and Shroid required Shroid to maintain a minimum of $3 million per occurrence, $6 million aggregate, Commercial General Liability insurance coverage, and $10 million Excess Umbrella Liability coverage, and which insurance coverage was to include Skanska and the NYC EDU as additional insureds.

25.    Upon information and belief, upon filing its voluntary petition under Chapter 11, Shroid discontinued participation in the Project.

26.    Upon information and belief, by Takeover Agreement, dated June 22, 2004, Kel-Tech agreed to complete the masonry work that was to have been completed by Shroid for the Project.

27.    Upon information and belief, Kel-Tech further agreed, pursuant to the Takeover Agreement, to obtain the insurance required under the original contract between the NYC EDC and Shroid.

28.    Upon information and belief, Kel-Tech agreed to include Skanska and the NYC EDC as additional insureds on Kel-Tech's liability insurance policy.

29.    Upon information and belief, Kel-Tech complied with its insurance obligations for the Project by obtaining a liability insurance policy from QBE, which policy includes Skanska and the NYC EDC as additional insureds.

30.    Upon information and belief, the policy number for the aforementioned policy issued by QBE to Kel-Tech is No. HBG 00208-3, which policy has a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy").

31.   Upon information and belief, the QBE Policy has each occurrence limits of $1 million and general aggregate limits of $2 million.

32.   Upon information and belief, the NYC EDC entered into a contract with Arena, pursuant to which Arena agreed to provide masonry work for the Project.

33.   Upon information and belief, the contract between the NYC EDC and Arena required Arena to maintain minimum liability insurance coverage, which insurance coverage was to include Skanska and the NYC EDU as additional insureds.

34.   Upon information and belief, Arena complied with its insurance obligations for the Project by obtaining a liability insurance policy from Scottsdale, which policy includes Skanska and the NYC EDC as additional insureds.

35.   Upon information and belief, the policy number for the aforementioned policy issued by Scottsdale to Arena is No. BCS0008003 (the "Scottsdale Policy").

36.   Wausau issued Commercial General Liability policy, No. TZJ-Y91-433317-044, to Owen Steel, as the first Named Insured, with a policy period from February 12, 2004, to February 12, 2005 (the "Wausau Policy").

37.   Pursuant to the terms of the Wausau Policy, Skanska and the NYC EDC are additional insureds for the claims alleged in the Underlying Action.

38.   AXIS issued Commercial General Liability policy, No. ACP704610, to McNulty as the Named Insured, with a policy period from October 30, 2003 to October 30, 2004 (the "AXIS Policy").

6

39.    Pursuant to the terms of the AXIS Policy, Skanska and the NYC EDC are additional insureds for the claims alleged in the Underlying Action.

40.    On or about December 13, 2004, on behalf of Skanska and the NYC EDC and as co-insurer, Wausau tendered the defense and indemnity of Skanska and the NYC EDC for the Underlying Action to QBE.

41.    By letter dated December 28, 2004, QBE disclaimed coverage for Skanska and the NYC EDC for the claims alleged in the Underlying Action.

42.    QBE disclaimed coverage to Skanska based upon alleged late notice, and additionally disclaimed coverage for both Skanska and the NYC EDC because the claim purportedly "did not arise out of Kel Tech's negligence or work."

43.    Upon information and belief, QBE's disclaimer's is improper and unsustainable.

44.    Upon information and belief, QBE owed and owes Skanska and the NYC EDC a primary duty to defend and indemnify for the claims alleged in the Underlying Action.

45.    On or about January 14, 2005, on behalf of Skanska and the NYC EDC and as co-insurer, Wausau tendered the defense and indemnity of Skanska and the NYC EDC for the Underlying Action to Scottsdale.

46.    By letter dated January 21, 2005, Scottsdale acknowledged receipt of the tender of Skanska's and the NYC EDC's defense and indemnity for the claims alleged in the Underlying Action and requested more information.

47.    By letter dated January 28, 2005, Wausau responded to Scottsdale's request for more information and provided the information requested.

48.    Scottsdale has not provided a further response to the tender of Skanska's and the NYC EDC's defense and indemnity for the claims alleged in the Underlying Action.

49.    Upon information and belief, Scottsdale owed and owes Skanska and the NYC EDC a primary duty to defend and indemnify for the claims alleged in the Underlying Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Against QBE - For Declaratory Judgment)

50.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "49" of this Complaint as if more fully set forth herein.

51.    Although duly requested, QBE has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

52.    Upon information and belief, the QBE Policy provides primary liability insurance coverage to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and the Wausau Policy and the AXIS Policy provides coverage excess of that provided by the QBE Policy.

53.    Upon information and belief, QBE waived and/or is estopped from asserting application of some or all of the policy conditions and exclusions in the QBE Policy.

8

54.    As a result of QBE's breach of its coverage obligations, AXIS has been forced to drop down and provide a defense to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and Wausau has agreed to provide coverage in excess of that afforded by the AXIS Policy.

55.    Wausau and AXIS seek a determination of their rights with respect to the QBE Policy, and they seek a declaratory judgment that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by QBE under the QBE Policy, for the Underlying Action.

56.    Wausau and AXIS have no adequate remedy at law.

### AS AND FOR A SECOND CLAIM FOR RELIEF
#### (Against Scottsdale - For Declaratory Judgment)

57.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "56" of this Complaint as if more fully set forth herein.

58.    Although duly requested, Scottsdale has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

59.    Upon information and belief, the Scottsdale Policy provides primary liability insurance coverage to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and the Wausau Policy and the AXIS Policy provides coverage excess of that provided by the Scottsdale Policy.

9

60.    Upon information and belief, Scottsdale waived and/or is estopped from asserting application of some or all of the policy conditions and exclusions in the Scottsdale Policy.

61.    As a result of Scottsdale's breach of its coverage obligations, AXIS has been forced to drop down and provide a defense to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and Wausau has agreed to provide coverage in excess of that afforded by the AXIS Policy.

62.    Wausau and AXIS seek a determination of their rights with respect to the Scottsdale Policy, and they seek a declaratory judgment that Scottsdale is required to provide a defense and indemnity to Skanska and the NYC EDC and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by Scottsdale under the Scottsdale Policy, for the Underlying Action.

63.    Wausau and AXIS have no adequate remedy at law.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (Against QBE - For Recovery of Co-Insurance)

64.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "63" of this Complaint as if more fully set forth herein.

65.    As a result of QBE's failure and refusal to acknowledge its duty to defend Skanska and the NYC EDC for the Underlying Action, AXIS and Wausau have been required to provide a defense for Skanska and the NYC EDC for the Underlying Action.

10

66.    As of April 1, 2006, AXIS has incurred and paid attorneys' fees and other costs in the sum of $12,876 in defending Skanska and the NYC EDC in the Underlying Action, and continues to incur costs to defend these insureds in the Underlying Action.

67.    Prior to AXIS assuming the defense of Skanska and the NYC EDC for the Underlying Action, Wausau incurred and paid attorneys' fees and other costs in the sum of $6,521 in defending Skanska and the NYC EDC in the Underlying Action, which amounts have not been reimbursed.

68.    As a result of the foregoing, AXIS is entitled to a money judgment against QBE in an amount equal to what it incurred to defend Skanska and the NYC EDC in the Underlying Action, which amount is to be determined by the Court, but in no instance should be less than $12,876, plus interest.

69.    As a result of the foregoing, Wausau is entitled to a money judgment against QBE in the amount of $6,521, plus interest.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Against Scottsdale - For Recovery of Co-Insurance)

70.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "69" of this Complaint as if more fully set forth herein.

71.    As a result of Scottsdale's failure and refusal to acknowledge its duty to defend Skanska and the NYC EDC for the Underlying Action, AXIS and Wausau have

11

been required to provide a defense for Skanska and the NYC EDC for the Underlying Action.

72.    As of April 1, 2006, AXIS has incurred and paid attorneys' fees and other costs in the sum of $12,876 in defending Skanska and the NYC EDC in the Underlying Action, and continues to incur costs to defend these insureds in the Underlying Action.

73.    Prior to AXIS assuming the defense of Skanska and the NYC EDC for the Underlying Action, Wausau incurred and paid attorneys' fees and other costs in the sum of $6,521 in defending Skanska and the NYC EDC in the Underlying Action, which amounts have not been reimbursed.

74.    As a result of the foregoing, AXIS is entitled to a money judgment against Scottsdale in an amount equal to what it incurred to defend Skanska and the NYC EDC in the Underlying Action, which amount is to be determined by the Court, but in no instance should be less than $12,876, plus interest.

75.    As a result of the foregoing, Wausau is entitled to a money judgment against Scottsdale in the amount of $6,521, plus interest.

**WHEREFORE**, plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY demand judgment as follows:

1.    On the first claim for relief, a declaratory judgment that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC for the

Underlying Action and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by QBE under the QBE Policy;

2.   On the second claim for relief, a declaratory judgment that Scottsdale is required to provide a defense and indemnity to Skanska and the NYC EDC for the Underlying Action and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by Scottsdale under the Scottsdale Policy;

3.   On the third claim for relief, awarding a money judgment against defendant QBE INSURANCE CORPORATION and in favor of plaintiff AXIS SPECIALTY INSURANCE COMPANY in an amount to be determined by the Court, but in no instance should be less than $12,876, plus interest, and in favor of plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY in the sum of $6,521, plus interest;

4.   On the fourth claim for relief, awarding a money judgment against defendant SCOTTSDALE INSURANCE COMPANY and in favor of plaintiff AXIS SPECIALTY INSURANCE COMPANY in an amount to be determined by the Court, but in no instance should be less than $12,876, plus interest, and in favor of plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY in the sum of $6,521, plus interest; and

13

5.      Granting plaintiffs recovery of the costs and disbursements of this

action, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
           April 19, 2006

                                        Yours, etc.,

                                        JAFFE & ASHER LLP

                                        By: _____
                                             Marshall T. Potashner (MTP-3552)
                                        MPotashner@jaffeandasher.com
                                        Attorneys for Plaintiffs
                                        WAUSAU UNDERWRITERS
                                        INSURANCE COMPANY and
                                        AXIS SPECIALTY INSURANCE
                                        COMPANY
                                        600 Third Avenue, 9TH Floor
                                        New York, New York 10016
                                        (212) 687-3000

14

# EXHIBIT 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE                    Hon. Judge Marrero
COMPANY and AXIS SPECIALTY INSURANCE
                                                 06 CV 3212

                                    Plaintiff,        Defendant Demands
                   -against-                          Trial by Jury

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,
                                                     VERIFIED ANSWER
                                    Defendants.
-------------------------------------------------------------------x

Defendant, QBE INSURANCE CORPORATION, by its attorneys,

WILSON, BAVE, CONBOY, COZZA & COUZENS, P.C., as and for its answer

to the plaintiffs' complaint, alleges as follows:

### ANSWERING JURISDICTION AND VENUE

FIRST:      Denies knowledge or information sufficient to form a belief

as to each and every allegation contained in paragraphs "1", "2", "3", "4", "6",

"8", "9" and "10" of the plaintiffs' complaint.

### ANSWERING SUBSTANTIVE ALLEGATIONS

SECOND:    Denies knowledge or information sufficient to form a belief as to

each and every allegation contained in paragraphs "11", "12", "13", "14", "15",

"16", "17", "18", "19", "20", "21","22", "23", "24", "25", "26", "27", "28", "29",

"32", "33", "34", "35", "36", "37", "38", "39", "40", "42", "45", "46", "47", "48"

and "49" of the plaintiffs' complaint.

THIRD:       Denies upon information and belief each and every allegation

contained in paragraphs "43" and "44" of the plaintiffs' complaint.

### ANSWERING A FIRST CLAIM FOR RELIEF
#### (Against QBE – For Declaratory Judgment)

FOURTH:     As to paragraph designated "50" of the plaintiffs' complaint,

this answering defendant repeats and reiterates each and every denial contained in

paragraphs FIRST through THIRD of this answer with the same force and effect

as if set forth more fully at length herein.

FIFTH:       Denies upon information and belief each and every allegation

contained in paragraphs "52", "53" and "54" of the plaintiffs' complain.

SIXTH:       Denies knowledge or information sufficient to form a belief

as to each and every allegation contained in paragraphs "55" and "56" of the

plaintiffs' complaint.

### ANSWERING A SECOND CLAIM FOR RELIEF
#### (Against Scottsdale – For Declaratory Judgment)

SEVENTH:  As to paragraph designated "57" of the plaintiffs' complaint,

this answering defendant repeats each and every denial contained in paragraphs

FIRST through SIXTH of this answer with the same force and effect as if set forth

more fully at length herein.

EIGHTH:      Denies knowledge or information sufficient to form a belief

as to each and every allegation contained in paragraphs "58", "59", "60", "61",

"62" and "63" of the plaintiffs' complaint.

## ANSWERING A THIRD CLAIM FOR RELIEF
### (Against QBE – For Recovery of Co-Insurance)

NINTH:    As to paragraph designated "64" of the plaintiffs' complaint, this answering defendant repeats each and every denial contained in paragraphs FIRST through EIGHTH of this answer with the same force and effect as if set forth more fully at length herein.

TENTH:    Denies knowledge or information sufficient to form a belief as to each and every allegation contained in paragraphs "65", "66" and "67" of the plaintiffs' complaint.

ELEVENTH:  Denies upon information and belief each and every allegation contained in paragraphs "68" and "69" of the plaintiffs' complaint.

## ANSWERING A FOURTH CLAIM FOR RELIEF
### (Against Scottsdale – For Recovery of Co-Insurance)

TWELFTH:  As to paragraph designated "70" of the plaintiffs' complaint, this answering defendant repeats each and every denial contained in paragraphs FIRST through ELEVENTH of this answer with the same force and effect as if set forth more fully at length herein.

THIRTEENTH:    Denies knowledge or information sufficient to form a relief as to each and every allegation contained in paragraphs "71", "72, "73", "74" and "75" of the plaintiffs' complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

FOURTEENTH:    The obligations of QBE to plaintiffs, if any, are defined and limited by the terms of Policy #HBG 00208-03, including the coverage parts defined therein.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

FIFTEENTH:    QBE's obligations under the policy are limited by the language of the additional insured endorsement of the policy.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

SIXTEENTH:    The incident which is the subject matter of the underlying action was not caused by nor did it arise out of the Kel Tech's work.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

SEVENTEENTH:    Plaintiffs' claims are barred or reduced by the "other insurance" clauses contained in Policy #HBG 00208-03.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

EIGHTEENTH:    Policy #HBG 00208-03 does not provide coverage for any and all obligations, including defense and indemnification that the named insured may have contracted or agreed to provide.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

NINETEENTH:    Plaintiffs and their insured failed to provide notice of the claim or suit as soon as practicable.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

TWENTIETH:        The insurance giving rise to the underlying action

arose from the work of Skanska.

## AS FOR AN EIGHTH AFFIRMATIVE DEFENSE

TWENTY-FIRST:  Defendant's insured did not supervise or control the

work or the area where the accident allegedly occurred.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

TWENTY-SECOND:        Defendant's insured was not working in the

area on the date the accident allegedly occurred.

:

### AS AND FOR A CROSS COMPLAINT AGAINST THE DEFENDANT(S), SCOTTSDALE INSURANCE COMPANY, AND AS A BASIS FOR AN AFFIRMATIVE DEFENSE, THE DEFENDANT(S), QBE INSURANCE CORPORATION RESPECTFULLY ALLEGES:

TWENTY-THIRD:  If the plaintiff(s) were caused to sustain damages at the time

and place set forth in plaintiff(s) complaint through any negligence, carelessness,

recklessness and/or breach of warranty other than the plaintiff(s) own carelessness,

recklessness and negligence, said damages were sustained by reason of the carelessness,

recklessness and negligence and/or acts of omission or commission and/or breach of

warranty and/or breach of contract by defendant(s) SCOTTSDALE INSURANCE

COMPANY, its agents, servants and/or employees, and if any judgment is recovered

herein by the plaintiff against defendant(s) QBE INSURANCE CORPORATION, they

will be damaged thereby, and defendant(s) SCOTTSDALE INSURANCE COMPANY,

is or will be responsible therefore in whole or in part.

TWENTY-FOURTH: By reason of the foregoing, defendant(s) SCOTTSDALE INSURANCE COMPANY, will be liable to defendant, QBE INSURANCE CORPORATION, in the event and in the full amount of a recovery herein by plaintiff(s) or alternatively, for that proportion thereof caused by the relative responsibility of defendant(s) SCOTTSDALE INSURANCE COMPANY, and defendant(s) SCOTTSDALE INSURANCE COMPANY is bound to pay any and all expenses and attorneys fees and the costs and disbursements thereof.

WHEREFORE, defendant(s) QBE INSURANCE CORPORATION demands judgment dismissing the complaint herein as to this answering defendant(s), with costs and disbursements, and further demands that the ultimate rights of defendant(s) SCOTTSDALE INSURANCE COMPANY and QBE INSURANCE CORPORATION, amongst themselves be determined in this action and that defendant(s) QBE INSURANCE CORPORATION have judgment over and against the defendant(s) SCOTTSDALE INSURANCE COMPANY, for all or, alternatively, that portion of any verdict or judgment which may be obtained by plaintiff against defendant(s) QBE INSURANCE CORPORATION, to the extent that the responsibility of defendant(s) SCOTTSDALE INSURANCE COMPANY contributed thereto, together with the costs and disbursements of this action.

Dated: White Plains, New York
      May 16, 2006

                    _____
                    WILLIAM H. BAVE, JR. (0349)
                    WILSON, BAVE, CONBOY, COZZA &
                    COUZENS, P.C.
                    Attorneys for Defendant(s)
                    QBE INSURANCE CORPORATION
                    Two William Street

White Plains, NY   10601
(914) 686-9010

TO:    MARSHALL T. POTASHNER (MTP-3552)
       JAFFE & ASHER, LLP
       Attorneys for Plaintiffs
       WAUSAU UNDERWRITERS INSURANCE COMPANY
       and AXIS SPECIALTY INSURANCE COMPANY
       600 Third Avenue, 9th Floor
       New York, New York  10016
       (212) 687-3000

# EXHIBIT 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
NAWAU UNDERWRITERS INSURANCE CO.
and AXU SPECIALTY INSURANCE CO.

                              Plaintiff(s),       :

        - against -                               :
QBE INSURANCE CORP, and                           :
SCOTTSDALE INSURANCE COMPANY,                      :
                              Defendant(s).    :
--------------------------------------------------X

06 Civ. 3212 (VM)

**CIVIL CASE MANAGEMENT PLAN
AND SCHEDULING ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-27-06

This Scheduling Order and Case Management Plan is adopted in accordance with Fed. R. Civ. P. 16-26(f).

1.    This case (is)(is not) to be tried to a jury: [circle one]

2.    Joinder of additional parties to be accomplished by _Sept. 30, 2006_

3.    Amended pleadings may be filed without leave of the Court until _Sept. 30, 2006._

4.    Initial disclosure pursuant to Fed. R. Civ. P. 26(a)(1) to be completed within fourteen (14) days of the date of the parties' conference pursuant to Rule 26(f), specifically by not later than _Aug. 9, 2006_.

5.    All **fact** discovery is to be completed either:

      a.    Within one hundred twenty (120) days of the date of this Order, specifically by not later than _Nov. 27, 2006_; or

      b.    Within a period exceeding 120 days, with the Court's approval, if the case presents unique complexities or other exceptional circumstances, specifically by not later than _____.

6.    The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The following interim deadlines may be extended by the parties on consent without application to the Court, provided the parties are certain that they can still meet the discovery completion date ordered by the Court.

      a.    Initial requests for production of documents to be served by _August 25, 2006_.

      b.    Interrogatories to be served by all party by _Sept. 25, 2006_

      c.    Depositions to be completed by _Nov. 27, 2006_.

            i.    Unless the parties agree or the Court so orders, depositions are not to be held until all parties have responded to initial requests for document production.

            ii.   Depositions of all parties shall proceed during the same time.

            iii.  Unless the parties agree or the Court so orders, non-party depositions shall follow party depositions when possible.

      d.    Any additional contemplated discovery activities and the anticipated completion date:

            _____

-1-

e.    Requests to Admit to be served no later than ___Oct. 30 2006___.

7.    All expert discovery (ordinarily conducted following the completion of fact discovery) including parties' expert reports and depositions, witness lists and identification of documents pursuant to Fed. R. Civ. P. 26(a)(2), (3) and 35(b), is to be completed by:

a.    Plaintiff ___N/A___

b.    Defendant ___N/A___

8.    Contemplated motions:

a. Plaintiff: ___Summary Judgment___

b. Defendant: ___Summary Judgment___

9.    Following all discovery, all counsel must meet for at least one hour to discuss settlement, such conference to be held by not later than ___December 15, 2006___.

10.    Do all parties consent to trial by a Magistrate Judge under 28 U.S.C. § 636(c)?

Yes _____        No ___X___

---

**TO BE COMPLETED BY THE COURT:**

11.    The next Case Management Conference is scheduled for ___12-7-06 at 4:15 P.M.___

In the event the case is to proceed to trial, a firm trial date and the deadline for submission of the Joint Pretrial Order and related documents shall be scheduled at the pretrial conference following either the completion of all discovery or the Court's ruling on any dispositive motion.

The Joint Pretrial Order should be prepared in accordance with Judge Marrero's Individual Practices. If this action is to be tried before a jury, proposed voir dire and jury instructions shall be filed with the Joint Pretrial Order. No motion for summary judgment shall be served after the deadline fixed for the Joint Pretrial Order.

**SO ORDERED:**

DATED:    New York, New York
          22 July 2006

VICTOR MARRERO
U.S.D.J

-2-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE                Index No.  06 CV 3212 (VM)
COMPANY,

                                   Plaintiffs,

    -against-                                          **PLAINTIFFS' LOCAL CIVIL
                                        RULE 56.1 STATEMENT**

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                                 Defendants.
-----------------------------------------------------------------------x

              Plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY

("Wausau") and AXIS SPECIALTY INSURANCE COMPANY ("Axis"), by their counsel,

JAFFE & ASHER LLP, submits this statement of material facts as to which there is no

genuine issue to be tried, pursuant to Rule 56.1 of the Local Civil Rules of the United

States District Court for the Southern District of New York, in support of their motion for

partial summary judgment:

           1.       On December 28, 2004, John Moore ("Moore") commenced the

action entitled <u>John Moore v. New York City Economic Development Corp., New York</u>

<u>City Department of Transportation, Barney Skanska Construction Company, Kel Tech</u>

<u>Construction Inc.,</u> Index No. 13658/04, which is pending in the Supreme Court of the

State of New York, County of Richmond (the "Underlying Action")(Affidavit in Support

of Motion for Partial Summary Judgment of Michael Morrissiey, sworn to on October 16,

2006 ["Morrissiey Aff."], ¶¶1-2.)

2.      In the Underlying Action, Moore alleges that, on September 16, 2004, he was working on the St. George Ferry Terminal Project (the "Project"). (Morrissiey Aff., ¶3 Exh. "1".)

3.      Moore seeks damages from each of the defendants in the Underlying Action for injuries he allegedly sustained, on or about September 16, 2004, as a result of having purportedly fallen through an uncovered shaft at the St. George Ferry Terminal jobsite in Richmond County, New York.  (Morrissiey Aff., ¶3 Exh. "1".)

4.      A copy of the Summons and Verified Complaint in the Underlying Action is annexed to the affidavit of Michael Morrissiey as Exhibit "1".  (Morrissiey Aff., ¶3 Exh. "1".)

5.      Wausau has acknowledged coverage for Skanska and the NYC EDC, as additional insureds under a liability policy it issued to Owen Steel Company, Inc., as the first Named Insured.  (Morrissiey Aff., ¶4.)

6.      Axis has acknowledged coverage for Skanska and the NYC EDC, as additional insureds under a liability policy it issued to A. J. McNulty & Company, and that coverage under the AXIS policy is primary to the coverage afforded Skanska and the NYC EDC under the Wausau policy.  (Morrissiey Aff., ¶4.)

7.      Axis has been paying for the defense of Skanska and the NYC EDC in the Underlying Action.  (Morrissiey Aff., ¶4.)

8.      The Axis policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

This insurance is excess over: . . .

> (2)  Any other primary insurance available to you covering
> liability for damages arising out of the premises or operations
> for which you have been added as an additional insured by
> attachment of an endorsement.

(Morrissiey Aff., ¶4 Exh. "2".)

9.    Kel-Tech Construction, Inc. ("Kel-Tech") was a masonry contractor working on the Project.  (Morrissiey Aff., ¶7.)

10.    The NYC EDC entered into a contract with Shroid Construction Inc. ("Shroid"), dated January 7, 2003, by which Shroid had agreed to provide masonry work for the Project.  (Morrissiey Aff., ¶8 Exh. "3".)

11.    The contract between the NYC EDC and Shroid required Shroid to maintain a minimum of $3 million per occurrence, $6 million aggregate, Commercial General Liability insurance coverage, and $10 million Excess Umbrella Liability coverage, which insurance coverage was to include Skanska and the NYC EDU as additional insureds.  (Morrissiey Aff., ¶8 Exh. "3".)

12.    Shroid filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 30, 2003, and Shroid discontinued participation in the Project.  (Morrissiey Aff., ¶9.)

13.    Pursuant to Takeover Agreement, dated June 22, 2004, Kel-Tech agreed to complete the masonry work that was to have been completed by Shroid for the Project.  (Morrissiey Aff., ¶10 Exh. "4".)

14.    Kel-Tech further agreed, pursuant to the Takeover Agreement, to obtain the insurance required under the original contract between the NYC EDC and Shroid.  (Morrissiey Aff., ¶10 Exh. "4".)

15.    The Takeover Agreement provides, in relevant part, as follows:

3.    <u>Insurance Coverage</u>

The required insurance obligations under the Original Contract may be satisfied by the Completion Contractor providing evidence, reasonably satisfactory to the Owner, of the required insurance coverage carried by the Completion Contractor, with the Surety, the Owner, The City of New York, the Architect/Engineer (as defined in the Original Contract), the Construction Manager (as hereafter defined) and all other parties identified in Article 10 of the Original Contract shall be named as an additional insureds under the Completion Contractor's policy or policies.

(Morrissiey Aff., ¶11 Exh. "4".)

16.    Kel-Tech is the Completion Contractor as that term is defined and used in the Takeover Agreement.  (Morrissiey Aff., ¶12.)

17.    Pursuant to the terms of the Takeover Agreement and the original contract the NYC EDC entered into with Shroid, Kel-Tech caused a Certificate of Liability Insurance to be issued to the NYC EDC as Certificate Holder, which Certificate represented that both Skanska and the NYC EDC are additional insureds on a Commercial General Liability policy, No. HBG 00208-3, issued to Kel-Tech, as Named Insured, by QBE.  (Morrissiey Aff., ¶12 Exh. "5".)

18.    Kel-Tech complied with its insurance obligations for the Project by obtaining a liability insurance policy from QBE.  (Morrissiey Aff., ¶13.)

19.    QBE issued to Kel-Tech a liability insurance policy, No. HBG 00208-3, which policy has a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy").  (Morrissiey Aff., ¶13 Exh. "6".)

20.    The QBE Policy contains an Additional Insured Endorsement that makes Skanska and the NYC EDU an additional insured, which provides as follows:

> WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you.
>
> If required by your agreement with such Additional Insured, this insurance shall be primary insurance for that Additional Insured.  If anyone, other than the Additional Insured, provides similar insurance for the Additional Insured, then this insurance will apply as outlined in SECTION VI-COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 4, Other Insurance, subparagraph c., Method of Sharing.
>
> The inclusion of one or more Insured under the terms of this endorsement does not increase our limits of liability.
>
> All other terms and conditions remain unchanged.

(Morrissiey Aff., ¶14 Exh. "6".)

21.    The Schedule for the Additional Insured Endorsement to the QBE Policy states as follows:

> As required by written contract and/or evidenced by Certificate of Insurance on file with company.  (Morrissiey Aff., ¶15, Exh. "6".)

22.    The QBE Policy contains an "Other Insurance" provision, which provides, in part, as follows:

### 4.    Other insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of the Coverage Part, our obligations are limited as follows:

#### a.    Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b.    Excess Insurance

This insurance is excess over:

(1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2)    Any other insurance, whether primary, excess, contingent or any other basis that is valid and collectible insurance available to you as an additional insured under a policy issued to:

(a) A contractor performing work for you;

(b) A tenant renting or leasing land or premises from you;

(c) A lessee of equipment owned by you; or

(d) The operator of an oil or gas lease in which have a non-operating  working interest.

(Morrissiey Aff., ¶17 Exh. "6".)

23.     None of the items in subparagraph 4.b. of the QBE Policy apply. (Morrissiey Aff., ¶18 Exh. "6".)

24.     The primary "Other Insurance" provision in subparagraph 4.a. of the QBE Policy applies.  (Morrissiey Aff., ¶18 Exh. "6".)

25.     The NYC EDC first tendered the claim arising from Moore's accident to Wausau's Named Insured, Owen Steel, on September 23, 2004.  (Morrissiey Aff., ¶19.)

26.     Owen Steel tendered the claim to Wausau on September 27, 2004. (Morrissiey Aff., ¶20.)

27.     On November 9, 2004, the NYC EDC advised Wausau, for the first time, that Kel-Tech supplied and constructed the scaffolding involved in the September 16, 2004 accident, that Kel-Tech had a direct contract with the NYC EDC, and that the NYC EDC had previously tendered the claim to Kel-Tech.  (Morrissiey Aff., ¶21.)

28.     The NYC EDC timely notified QBE of Moore's accident.  (Morrissiey Aff., ¶21 & Exh. "9".)

29.     On November 12, 2004, Skanska's defense was first tendered to Wausau.  (Morrissiey Aff., ¶22 Exh. "7".)

30.     Wausau attempted to obtain Kel-Tech's contract from the NYC EDC. (Morrissiey Aff., ¶23.)

31.     On December 13, 2004, Wausau first received a copy of the contract between the NYC EDC and Shroid, the Takeover Agreement, and a Certificate of

Liability Insurance showing that the NYC EDC and Skanska are additional insureds on a policy issued by QBE. (Morrissiey Aff., ¶24 Exhs. "4"-"5".)

32.    On December 13, 2004, Wausau first learned that QBE may also provide coverage to Skanska and the NYC EDC for the Underlying Action. (Morrissiey Aff., ¶25.)

33.    On December 13, 2004, Wausau tendered the defense of Skanska and the NYC EDC to QBE. (Morrissiey Aff., ¶25 Exh. "8".)

34.    With its December 13, 2004 tender letter to QBE, Wausau provided QBE a copy of the aforementioned contract by which Kel-Tech agreed that the NYC EDC and Skanska should be included as an insured on Kel-Tech's policy and the aforementioned Certificate of Liability Insurance, which shows that Skanska and the NYC EDC are additional insureds on the QBE Policy. (Morrissiey Aff., ¶26 Exh. "8".)

35.    Moore did not commence the Underlying Action until December 28, 2004. (Morrissiey Aff., ¶27 Exh. "1".)

36.    By letter dated December 28, 2004, the Claims Service Bureau of New York Inc., on behalf of QBE, disclaimed coverage for the NYC EDC and Skanska. (Morrissiey Aff., ¶28.)

37.    QBE disclaimed coverage for Skanska based upon late notice of an "occurrence" and because "Mr. Moore's accident did not arise out of Kel-Tech's negligence or work." (Morrissiey Aff., ¶28 Exh. "9".)

38.     QBE disclaimed coverage for the NYC EDC solely because "Mr. Moore's accident did not arise out of Kel-Tech's negligence or work."  (Morrissiey Aff., ¶28 Exh. "9".)

39.     QBE did not raise a late notice defense with respect to the NYC EDC. (Morrissiey Aff., ¶29 Exh. "9".)

40.     The QBE Policy has each occurrence limits of $1 million and general aggregate limits of $2 million.  (Affidavit in Support of Motion for Partial Summary Judgment of Marshall T. Potashner, sworn to on October 18, 2006 ["Potashner Aff."], Exhs. "10"-"11".)

41.     Although duly requested, QBE has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action. (Potashner Aff., Exhs. "10"-"11".)

Dated:    New York, New York
          October 18, 2006

                              Respectfully submitted,


                              JAFFE & ASHER LLP

                              By:    /s/ Marshall T. Potashner
                                   Marshall T. Potashner (MTP-3552)
                                   mpotashner@jaffeandasher.com
                                   Attorneys for Plaintiff
                                   WAUSAU BUSINESS INSURANCE
                                   COMPANY
                                   600 Third Avenue, 9th floor
                                   New York, New York 10016
                                   (212) 687-3000