UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

Index No.  06 CV 3212 (VM)

                      Plaintiffs,

    -against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                    Defendants.

----------------------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Jaffe & Asher, LLP
600 Third Avenue, 9th Floor
New York, New York 10016
(212) 687-3000

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................ 1

**STATEMENT OF FACTS** ....................................................................................................... 2

**ARGUMENT** ......................................................................................................................... 3

    **Point I:**  QBE OWES SKANSKA AND THE NYC EDC A DUTY TO
DEFEND THE UNDERLYING ACTION ...................................................................... 3

    **Point II:**  THE QBE POLICY PROVIDES THE PRIMARY INSURANCE
TO SKANSKA AND THE NYC EDC FOR THE UNDERLYING ACTION ............ 9

**CONCLUSION** .................................................................................................................... 13

i

# TABLE OF AUTHORITIES

Avondale Indus., Inc. v. Travelers Indem. Co.,
887 F.2d 1200 (2d Cir. 1989) .......... 3,4

BP Air Conditioning Corp. v. One Beacon Ins. Group,
__ A.D.3d __, 821 N.Y.S.2d 1 (1st Dep't 2006) .......... 2,5-8

Continental Cas. Co. v. Rapid-American Corp.,
80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993) .......... 3-4,8

Del Bello v. General Acc. Ins. Co. of America,
185 A.D.2d 691, 585 N.Y.S.2d 918 (4th Dep't 1992) .......... 4

Employers Ins. Co. of Wausau v. General Star National Ins. Co.,
No. 03 Civ. 6575 (DLC), 2004 WL 1555143 (S.D.N.Y. July 9, 2004) .......... 9-12

Fidelity Union Trust Co. v. Field,
311 U.S. 169, 61 S. Ct. 176 (1940) .......... 7

Fireman's Ins. Co. of Washington, D.C. v. Federal Ins. Co.,
233 A.D.2d 193, 649 N.Y.S.2d 700 (1st Dep't 1996) .......... 9,12

Fitzpatrick v. American Honda Motor Co., Inc.,
78 N.Y.2d 61, 571 N.Y.S.2d 672 (1991) .......... 5

Handelsman v. Sea Ins. Co., Ltd.,
85 N.Y.2d 96, 623 N.Y.S.2d 750 (1994) .......... 4

Incorporated Village of Cedarhurst v. Hanover Ins. Co.,
89 N.Y.2d 293, 653 N.Y.S.2d 68 (1996) .......... 3

International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co.,
303 F.3d 419 (2d Cir. 2002) .......... 4

Maxwell v. Toys "R" US-NY Ltd. Partnership,
269 A.D.2d 503, 702 N.Y.S.2d 651 (2d Dep't 2000) .......... 9,12

New York Funeral Chapels, Inc. v. Globe Indem. Co.,
33 F. Supp. 2d 294 (S.D.N.Y. 1999) .......... 3

Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.,
99 N.Y.2d 391, 756 N.Y.S.2d 822 (2003) .......... 4,5

Tishman Const. Corp. v. American Mfrs. Mut. Ins. Co.,
303 A.D.2d 323, 757 N.Y.S.2d 535 (1st Dep't 2003)......................................9,12

West v. American T&T Co.,
311 U.S. 223, 61 S. Ct. 179 (1940).................................................................7,8

Wiesman v. Metropolitan Museum of Art,
772 F. Supp. 817 (S.D.N.Y. 1991)..................................................................... 8

Wong v. New York Times Co.,
297 A.D.2d 544, 747 N.Y.S.2d 213 (1st Dep't 2002)............................................ 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE          Index No.  06 CV 3212 (VM)
COMPANY,

                    Plaintiffs,

        -against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                    Defendants.
-----------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

        This memorandum of law is submitted in support of plaintiffs' motion for an

Order, pursuant to Fed. R. Civ. P. 56, granting partial summary judgment on the first

claim for relief in the Complaint, determining and declaring that defendant QBE

INSURANCE CORPORATION ("QBE") is required to provide a defense to Barney

Skanska Construction Co. ("Skanska") and the New York City Economic Development

Corp. (the "NYC EDC") for the action entitled John Moore v. New York City Economic

Development Corp., New York City Department of Transportation, Barney Skanska

Construction Company, Kel Tech Construction Inc., Index No. 13658/04, which is

pending in the Supreme Court of the State of New York, County of Richmond (the

"Underlying Action"), determining and declaring that coverage under plaintiffs' policies is

excess over the coverage afforded under the QBE policy, and granting plaintiffs the costs

Z:\Litigation\LIBERTY\Moore (Claim against QBE Insurance)\Motion\Memo of law.doc

and disbursements of this action together with such other and further relief as which this Court deems just and proper.

QBE issued a Commercial General Liability insurance policy to Kel-Tech Construction, Inc. ("Kel-Tech"). The QBE Policy includes a "broad form" additional insured endorsement, which makes those entities for which Kel-Tech has agreed to provide such coverage an additional insured "with respect to liability arising out of 'your work' for that Insured by or for [Kel-Tech]." Kel-Tech agreed to include Skanska and the NYC EDC as additional insureds on its policy. As a matter of law, as set forth in the direct on-point authority of BP Air Conditioning Corp. v. One Beacon Ins. Group, __ A.D.3d __, 821 N.Y.S.2d 1 (1st Dep't 2006), because John Moore sued Kel-Tech as a defendant in the Underlying Action, there is a "reasonable possibility" that the Underlying Action may result in a judgment against Skanska and the NYC EDC within the scope of their coverage under the QBE policy. QBE, therefore, owes them a duty to defend. A review of the policies' "Other Insurance" provisions shows that the QBE policy provides the primary liability coverage for Skanska and the NYC EDC for the Underlying Action. This Court, therefore, should grant the instant motion for partial summary judgment and determine and declare that QBE owes Skanska and the NYC EDC a primary duty to defend for the Underlying Action.

## STATEMENT OF FACTS

Rather than repeating the facts at length herein, this Court is respectfully referred to the accompanying affidavits of Michael Morrissiey and Marshall T. Potashner, Esq., for the facts relevant to the instant motion.

2

# ARGUMENT

## Point I

## QBE OWES SKANSKA AND THE NYC EDC
## A DUTY TO DEFEND THE UNDERLYING ACTION

Both federal and state courts in New York have repeatedly recognized that determination of an insurer's duty to defend presents a pure question of law appropriate for resolution by summary judgment. See, e.g., Avondale Indus., Inc. v. Travelers Indem. Co., 887 F.2d 1200, 1204 (2d Cir. 1989)(affirming grant of summary judgment to insured that insurer had duty to defend); New York Funeral Chapels, Inc. v. Globe Indem. Co., 33 F. Supp. 2d 294, 298 (S.D.N.Y. 1999)(granting summary judgment to insured where allegations in tort suits triggered duty to defend); Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 969 (1993)(affirming appellate division's grant of summary judgment to insured); Incorporated Village of Cedarhurst v. Hanover Ins. Co., 89 N.Y.2d 293, 297, 653 N.Y.S.2d 68, 69 (1996)(affirming grant of summary judgment to insured on duty to defend in two separate declaratory judgment actions).

The New York Court of Appeals has described an insurer's duty to defend its insured as "exceedingly broad" and more expansive than the duty to indemnify. Continental Cas. Co., 80 N.Y.2d at 648, 593 N.Y.S.2d at 969. "Determining whether an insurer has a duty to defend requires an examination of the policy language and the allegations of the complaint to see if the underlying complaint alleges any facts or grounds

which bring the action within the protection purchased." International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir. 2002)(citation omitted). "An insurer must defend whenever the four corners of the complaint suggest – or the insurer has actual knowledge of facts establishing – a reasonable possibility of coverage." Continental Cas. Co. at 648, 593 N.Y.S.2d at 969 (citations omitted); see also Avondale Indus. Inc., 887 F.2d at 1204 ("The duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased").

The Second Circuit has also held that a duty to defend exists where an underlying complaint is equivocal as to whether a covered claim is included within its allegations. International Bus. Mach. Corp., 303 F.3d at 424. An equivocal pleading creates "a corresponding ambiguity as to whether coverage exists." Id. "Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer." Id. at 424-25 (citing Handelsman v. Sea Ins. Co., Ltd., 85 N.Y.2d 96, 101, 623 N.Y.S.2d 750, 752 (1994)).

An additional insured is not deemed to have less rights or standing than a Named Insured. See Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co., 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003); Wong v. New York Times Co., 297 A.D.2d 544, 547, 747 N.Y.S.2d 213, 216 (1st Dep't 2002); Del Bello v. General Acc. Ins. Co. of America, 185 A.D.2d 691, 692, 585 N.Y.S.2d 918, 918-19 (4th Dep't 1992). As the New York Court of Appeals reasoned in Pecker Iron Works,

> "Additional insured" is a recognized term in insurance
> contracts, with an understanding crucial to our conclusion in
> this case. As cases have recognized, the well-understood
> meaning of the term is an entity enjoying the same protection
> as the named insured. (Citations omitted.)

Pecker Iron Works at 393, 756 N.Y.S.2d at 823. See also Fitzpatrick v. American

Honda Motor Co., Inc., 78 N.Y.2d 61, 65-70, 571 N.Y.S.2d 672, 674-677 (1991)

(applied standard "reasonable possibility" analysis in holding that insurer had duty to

defend additional insured).

As the Appellate Division recently held in BP Air Conditioning Corp., 821

N.Y.S.2d at 2-6, in applying a "broad-form" additional insured endorsement similar to the

one in the case at bar, the mere fact that the Named Insured is included as a defendant in

the underlying action gives rise to a "reasonable possibility" of coverage for the additional

insured and, thus, gives rise to a duty to defend. Following this precedent compels the

conclusion that QBE owes Skanska and the NYC EDC a duty to defend for the Underlying

Action.

In BP Air Conditioning Corp., BP Air Conditioning Corp. ("BP Air"), as a

HVAC subcontractor for a construction project at One World Trade Center,

subcontracted the HVAC-related steamfitting work for the project to Alfa Piping Corp.

("Alfa"). The subcontract between BP Air and Alfa required Alfa to include BP Air as an

additional insured on its general liability policy. In compliance with its subcontract, Alfa

obtained a general liability policy from One Beacon Insurance Group's ("One Beacon")

predecessor insurance company, which policy contained an additional insured endorsement

that provided, in relevant part, as follows:

5

> Who is An Insured (Section II) is amended to include as an
> insured any person or organization for whom you are
> performing operations when you and such person or
> organization have agreed in writing in a contract or agreement
> that such person or organization be added as an additional
> insured on your policy. Such person or organization is an
> additional insured only **with respect to liability arising out
> of your ongoing operations performed for that insured**.
> A person's or organization's status as an insured under this
> endorsement ends when your operations for that insured are
> completed. (Emphasis supplied.)

Id., 821 N.Y.S.2d at 2.

On December 5, 2005, Joseph Cosentino, an employee of another subcontractor of BP Air, allegedly was injured when he slipped and fell on a patch of oil at the project. Cosentino commenced an action again the general contractor, who brought a third-party action against BP Air and Alfa. Cosentino, thereafter, added BP Air and Alfa as direct defendants. BP Air tendered its defense to One Beacon, which declined coverage. BP Air brought a declaratory judgment action against One Beacon and moved for partial summary judgment on the duty to defend.

In opposing the motion, One Beacon argued that BP Air's right to coverage under the additional insured endorsement "would not be triggered until the cause of Cosentino's accident had been adjudicated." Id., 821 N.Y.S.2d at 3. The Appellate Division noted "that a question of fact exists as to which contractor was the source of the patch of oil on which Cosentino slipped". Id. The Appellate Division nevertheless held that BP Air was entitled to a current defense from One Beacon although "it is uncertain whether any eventual judgment against plaintiff will be within the scope of the coverage." Id., 821 N.Y.S.2d at 2. The Appellate Division concluded that this result "is dictated by

6

the controlling principle that, in the absence of unambiguous contractual language to the contrary, an additional insured enjoys the same protection as the named insured." Id. (citation omitted).

Applying the "reasonable possibility" test for determining the duty to defend, the Appellate Division noted that Alfa was a defendant in the Cosentino action and that Cosentino's Amended Complaint alleges that "his injuries were caused by the negligence of, among other defendants, Alfa," One Beacon's Named Insured. Id., 821 N.Y.S.2d at 4. These allegations gave rise to the "reasonable possibility" that the underlying action will result in a judgment within the scope of coverage afforded BP Air by One Beacon's additional insured endorsement. Id. The Court thus concluded that "there can be no doubt that [One] Beacon is obligated to defend BP [Air] in the *Cosentino* Action." Id. As the Appellate Division reasoned, "[i]t has no bearing on the existence of a duty to defend that it is also possible that" Alfa would be ultimately determined to have no responsibility for the accident and thus One Beacon would not be responsible for any judgment once the litigation is concluded. Id.

This Court is bound to the holding in BP Air Conditioning Corp.. As the U.S. Supreme Court has held,

> An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what state law is, should be followed by a federal court in deciding a state question.

Fidelity Union Trust Co. v. Field, 311 U.S. 169, 177-78, 61 S. Ct. 176, 178 (1940); see also West v. American T&T Co., 311 U.S. 223, 236-37, 61 S. Ct. 179, 183

7

(1940)("federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferred"); Wiesman v. Metropolitan Museum of Art, 772 F. Supp. 817, 819 (S.D.N.Y. 1991). As such, since there is no convincing evidence that New York's highest court, the Court of Appeals, would rule differently, this Court must apply New York law as set forth in BP Air Conditioning Corp..

Applying New York law on the duty to defend, including the "reasonable possibility" test, there can be no doubt that QBE is obligated to defend Skanska and the NYC EDC in the Underlying Action. Moore's Complaint alleges that his injuries were caused by the negligence of, among other defendants, Kel-Tech, the Named Insured on the QBE policy. That policy covers Skanska and the NYC EDC as additional insureds "with respect to liability arising out of '[Kel-Tech's] work' for that Insured by or for [Kel-Tech]." Plainly, if Skanska and the NYC EDC are ultimately held liable to Moore, such liability would "aris[e] out of [Kel-Tech's] work" for Skanska and the NYC EDC to the extent the factfinder in the Underlying Action determines that Kel-Tech's negligence in the course of its work as a subcontractor was a contributing cause of Moore's injuries. Thus, there is a "reasonable possibility" that the Underlying Action will result in a judgment against Skanska and the NYC EDC within the scope of Kel-Tech's policy with QBE. See Continental Cas. Co. v. Rapid-American Corp. at 648, 593 N.Y.S.2d at 969; BP Air Conditioning Corp., 821 N.Y.S.2d at 2-6. It matters not to the duty to defend that Kel-Tech may be ultimately determined to have no responsibility for Moore's accident. This "reasonable possibility" gives rise to a duty to defend the Underlying Action owed by QBE

8

to Skanska and the NYC EDC.

Accordingly, this Court should determine and declare that QBE is required to provide a defense to Skanska and the NYC EDC for the Underlying Action.

## Point II

## THE QBE POLICY PROVIDES THE PRIMARY INSURANCE TO SKANSKA AND THE NYC EDC FOR THE UNDERLYING ACTION

In determining the priority of coverage between two primary liability insurance policies, courts compare the "Other Insurance" provisions of the respective policies. Where two policies cover the same claim, and one policy has a primary/pro rata "Other Insurance" provision and the other has an excess "Other Insurance" provision, the policy with the primary/pro rata "Other Insurance" provision will provide the primary or first layer of coverage and the policy with the excess "Other Insurance" provision will apply only after the first policy is exhausted. See Tishman Const. Corp. v. American Mfrs. Mut. Ins. Co., 303 A.D.2d 323, 324, 757 N.Y.S.2d 535, 537 (1st Dep't 2003); Maxwell v. Toys "R" US-NY Ltd. Partnership, 269 A.D.2d 503, 702 N.Y.S.2d 651 (2d Dep't 2000); Fireman's Ins. Co. of Washington, D.C. v. Federal Ins. Co., 233 A.D.2d 193, 649 N.Y.S.2d 700 (1st Dep't 1996); Employers Ins. Co. of Wausau v. General Star National Ins. Co., No. 03 Civ. 6575 (DLC), 2004 WL 1555143 (S.D.N.Y. July 9, 2004)("General Star").[1]

In General Star, 75 West Construction was an insured under a policy issued by Employers Insurance Company of Wausau ("Employers Insurance") and was also an

---

[1] A copy of the General Star decision is annexed hereto as Exhibit "A".

insured under a policy issued by General Star National Insurance Company ("General

Star") policy by operation of an additional insured endorsement. The General Star

policy had the following primary/pro rata "Other Insurance" provision:

> If other valid and collectible insurance is available to the
> insured for a loss we cover under Coverages A or B of this
> Coverage Part, our obligations are limited as follows:
>
> a.    Primary Insurance
>
> This insurance is primary except when b. below applies. . . .

Subsection b. of the "Other Insurance" provision for the General Star policy did not

apply. The Employers Insurance policy had an excess "Other Insurance" provision that

provided, in relevant part, as follows:

> b.    Excess insurance
>
> This insurance is excess over:
>
> <div align="center">* * *</div>
>
> (2) Any other primary insurance available to you covering
> liability for damages arising out of the premises or operations
> for which you have been added as an additional insured by
> attachment of an endorsement.

The District Court held that since the Employers Insurance "Other Insurance" provision

provided that it would be excess in those circumstances where 75 West Construction is

added to another primary insurance policy by operation of an endorsement, there was no

conflict among the General Star and Employers Insurance "Other Insurance" provisions

and that General Star's policy would be primary.

> There is no conflict between the two "other insurance" clauses
> in the two policies as they apply to 75 West Construction.

<div align="center">10</div>

> Taken together, they unambiguously provide that General Star
> is the primary insurer of 75 West Construction and
> [Employers Insurance] is the excess insurer.

Id., 2004 WL 1555143, at *4.

In the case at bar, the QBE policy has an "Other Insurance" provision that

provides as follows:

### 4.    Other insurance
If other valid and collectible insurance is available to the
insured for a loss we cover under Coverages **A** or **B** of the
Coverage Part, our obligations are limited as follows:

#### a.    Primary Insurance
This insurance is primary except when **b.** below applies.
If this insurance is primary, our obligations are not
affected unless any of the other insurance is also primary.
Then, we will share with all that other insurance by the
method described in **c.** below.

#### b.    Excess Insurance
This insurance is excess over:
(1)    Any of the other insurance, whether primary,
excess, contingent or on any other basis:
> (a) That is Fire, Extended Coverage, Builder's Risk,
> Installation Risk or similar coverage for "your
> work";
> (b) That is Fire insurance for premises rented to you
> or temporarily occupied by you with permission of
> the owner;
> (c) That is insurance purchased by you to cover
> your liability as a tenant for "property damage" to
> premises rented to you temporarily occupied by you
> with permission of the owner; or
> (d) If the loss arises out of the maintenance or use of
> aircraft, "autos" or watercraft to the extent not
> subject to Exclusion **g.** of Section **I** – Coverage **A** –
> Bodily Injury And Property Damage Liability.

(2)    Any other insurance, whether primary, excess,
contingent or any other basis that is valid and collectible

11

insurance available to you as an additional insured under
a policy issued to:
(a) A contractor performing work for you;
(b) A tenant renting or leasing land or premises
from you;
(c) A lessee of equipment owned by you; or
(d) The operator of an oil or gas lease in which have
a non-operating  working interest.

Subsection b. of this "Other Insurance" provision does not apply.  The QBE policy thus

has the exact same primary/pro rata "Other Insurance" provision as the General Star

policy addressed by the District Court in General Star.

AXIS has been providing the primary layer of insurance coverage for Skanska

and the NYC EDC for the Underlying Action.  The AXIS policy has an "Other Insurance"

provision that provides, in relevant part, as follows:

This insurance is excess over: . . .

(2)  Any other primary insurance available to you covering
liability for damages arising out of the premises or operations
for which you have been added as an additional insured by
attachment of an endorsement.

The AXIS policy thus has the exact same excess "Other Insurance" provision as the

Employers Insurance policy addressed by the District Court in General Star.  Therefore,

pursuant to Tishman Const. Corp., Maxwell, Fireman's Ins. Co. of Washington, D.C. v.

Federal Ins. Co., and General Star, the QBE policy provides the primary layer of liability

insurance coverage to Skanska and the NYC EDC; and the coverage afforded by the

plaintiffs' policies is excess over the QBE policy.

Accordingly, pursuant to the specific "Other Insurance" provisions of the

respective policies, this Court should determine that QBE is Skanska's and the NYC EDC's

12

primary insurer for the Underlying Action and that plaintiffs' coverage is excess.

## CONCLUSION

For the foregoing reasons, this Court should grant plaintiffs' motion for partial summary judgment on the first claim for relief in the Complaint, determine and declare that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC for the Underlying Action, determine and declare that coverage under plaintiffs' policies is excess over the coverage afforded under the QBE policy, and grant plaintiffs the costs and disbursements of this action together with such other and further relief as which this Court deems just and proper.

Respectfully submitted,

JAFFE & ASHER LLP

By: _____
Marshall T. Potashner, Esq. (MTP-3552)
Attorneys for Plaintiffs
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY I
INSURANCE COMPANY
600 Third Avenue, 9th Floor
New York, New York 10016
(212) 687-3000

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1555143 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
  United States District Court,S.D. New York.
  EMPLOYERS INSURANCE COMPANY OF
    WAUSAU, Plaintiff,
      v.
  GENERAL STAR NATIONAL INSURANCE
    COMPANY, Defendant.
    **No. 03 Civ. 6575(DLC).**

    July 9, 2004.

Marshall T. Potashner, Darin S. Billig, Jaffe &
Asher LLP, New York, New York, for the Plaintiff.
Christopher T. Bradley, Kenneth Horenstein,
Marshall, Conway & Wright, P.C., New York, New
York, for the Defendant.

        OPINION AND ORDER

COTE, J.
*1 This insurance coverage dispute arises out of a
personal injury lawsuit pending in the New York
Supreme Court, *Abidin Kandic v. 75 West Ltd., et
al.,* Index Number 112833/02 (the "Underlying
Action"). Discovery having been completed in this
federal diversity action on February 27, 2004,
plaintiff Employers Insurance Company of Wausau (
"Wausau") now moves for an order pursuant to
Rule 56(a), Fed.R.Civ.P., declaring that (1)
defendant General Star National Insurance
Company ("General Star") has a duty to defend and
indemnify 75 West, Ltd., 75 West Construction
Corp. ("75 West Construction"), and Leonard Wilf
(collectively, the "75 West Entities") for the
Underlying Action; (2) declaring that General Star's
coverage of the 75 West Entities is primary and that
the insurance coverage provided by Wausau to the
75 West Entities is excess over General Star's
coverage; and (3) awarding damages in the amount
of $27,727.16 to Wausau for legal fees and costs
incurred in its defense of the 75 West Entities in the

Underlying Action for the period from August 6,
2002 to March 17, 2004. For the reasons stated
below, the motion is granted in part.

        *Background*

The following facts are undisputed. In or about June
2002, Abidin Kandic ("Kandic") commenced the
Underlying Action against the 75 West Entities in
New York State court, alleging that he sustained "
bodily injury" as a result of a June 15, 1999 fall
down a staircase at 110 Washington Street in New
York (the "Job Site"). At the time of the accident,
Kandic was employed by R & J Construction Corp. (
"R & J"), a subcontractor hired by 75 West
Construction to perform carpentry work at the Job
Site. According to the terms of the subcontract
agreement pursuant to which R & J was performing
work at the Job Site ("the Subcontract"), R & J
agreed to provide workers' compensation,
employers' liability, and comprehensive general
liability insurance, and to name the "
Owner/Contractor" as an additional insured. The "
Owner/Contractor" is a defined term in the
Subcontract and refers to 75 West Construction.
FN1 The Subcontract provided, in relevant part:

> FN1. Relying on a schedule of insureds
> attached to its own policy, and arguments
> about the parties' intent, Wausau contends
> that General Star has a duty to defend and
> indemnify the 75 West Entities in the
> Underlying Action. The Subcontract,
> however, provides that only the
> Owner/Contractor (i.e., 75 West
> Construction) is an additional insured
> under the General Star Policy. This
> Opinion will determine General Star's
> obligations under its policy only insofar as
> they apply to 75 West Construction.

Prior to the start of the Subcontractor's Work, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1555143 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Subcontractor shall procure for the Subcontractor's Work and maintain in force Worker's Compensation Insurance, Employer's Liability Insurance, Comprehensive General Liability Insurance and all insurance required of the Owner/Contractor and the Contract Documents, attached hereto, ...

The Owner/Contractor shall be named as an additional insured on each of these policies except for Worker's Compensation.

### The General Star Policy

Pursuant to the Subcontract, R & J obtained the necessary insurance coverage for itself and 75 West Construction from General Star (the "General Star Policy"). The General Star Policy, which ran from January 1, 1999 to January 1, 2000, provides in pertinent part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of ' bodily injury' or 'property damage' to which this insurance applies. We will have *the right and duty to defend* the insured against any 'suit' seeking those damages *even if the allegations of the 'suit' are groundless, false or fraudulent.*

*\*2 (Emphasis supplied.) Under the policy, "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The General Star Policy defines who is an insured under the policy in a clause entitled "Additional Insured-Blanket Form." The clause provides that the policy will cover:

any person or organization *whom you have agreed, by written contract* prior to an 'occurrence' or offense, to include as additional insured, but only for liability arising out of your premises and operations and *not for liability arising out of the sole negligence* of the aforementioned person or organization.

(Emphasis supplied.) General Star does not dispute that, pursuant to the Subcontract, 75 West Construction is an additional insured under its policy. The General Star Policy contains an "other

insurance" clause that reads as follows:a. Primary Insurance

This insurance is primary except when b. below applies. FN2 *If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.* Then, we will share [pro rata] with that other insurance....

> FN2. Clause (b) of the General Star Policy's "other insurance" provision does not apply to the facts in this case.

(Emphasis supplied.)

### The Wausau Policy

For the period during which Kandic's injuries were sustained, 75 West Construction was also insured by Wausau (the "Wausau Policy") . FN3 The Wausau Policy's "other insurance" clause provides that it is "excess" over:

> FN3. Wausau issued to the 75 West Entities, including 75 West Construction, a policy which ran from May 15, 1998 to May 15, 2000.

*Any other primary insurance* available to you covering liability for damages arising out of the premises or operations *for which you have been added as an additional insured* by attachment of an endorsement.

When this insurance is excess, we will have no duty ... to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit.' If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Emphasis supplied.)

On or about June 28, 2002, Wausau received notice from 75 West Construction of the Underlying Action. By letter dated the same day, Wausau accepted its defense for the Underlying Action. FN4

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1555143 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

On August 1, on behalf of 75 West Construction, Wausau tendered the defense and indemnification for the Underlying Action to General Star. General Star received Wausau's tender letter on August 6. In a facsimile dated August 9, General Star represented that "[b]ased on the limited information we have been provided to date, we will handle this matter under a complete reservation of rights." On September 11, General Star sent Wausau a facsimile stating that the "investigation is ongoing and consideration to [the] prior tender is still being evaluated." Wausau did not receive any further communication from General Star regarding the tender.

> FN4. Wausau appointed the law firm of Robin, Schepp, Yuhas, Doman & Harris to defend the 75 West Entities in the Underlying Action.

By letter dated April 7, 2003, Wausau again requested that General Star provide 75 West Construction with a defense and indemnification for the Underlying Action. Wausau repeated its request in a letter dated July 29. According to Wausau, despite these requests, General Star "has failed and refused to defend and indemnify" 75 West Construction for the claims alleged in the Underlying Action.

*3 Wausau has been providing the 75 West Entities, including 75 West Construction, with a defense in the Underlying Action since June 28, 2002. Wausau asserts that it has incurred $27,727.16 in "necessary and reasonable" legal fees and costs between August 6, 2002, the date General Star received Wausau's first tender letter, to March 17, 2004. Wausau seeks to be reimbursed for this amount by General Star. It also seeks declaratory judgments that General Star has a duty to defend and indemnify 75 West Construction for the Underlying Action, and that General Star's coverage of 75 West Construction is primary and that the insurance coverage provided by Wausau is excess over General Star's coverage.

*Discussion*

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the Court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of his pleadings. Rule 56(e), Fed.R.Civ.P.; accord *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002).

### A. *General Star's Duty to Defend and Indemnify*

General Star contends that any determination of whether it has a duty to defend and indemnify 75 West Construction should be stayed pending the outcome of the Underlying Action. According to General Star, until it is determined whether Kandic's injuries were the result of 75 West Construction's "sole negligence," it is impossible to know whether 75 West Construction can recover under the General Star Policy.

Under New York law, FN5 "an insurer's duty to defend is 'exceedingly broad' and is separate from and more expansive than the duty to indemnify." *Commercial Union Assurance Co., PLC v. Oak Park Marina, Inc.,* 198 F.3d 55, 59 (2d Cir.1999) (citation omitted); *see also International Business Machines Corp. v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 424 (2d Cir.2002) ( *"IBM Corp."* ). "[A] liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *IBM Corp.,* 303 F.3d at 427 (citation omitted); *see also Ogden Corp. v. Travelers Indemnity Co.,* 924 F.2d 39, 41

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1555143 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

(2d Cir.1991); *Incorporated Village of Cedarhurst v. Hanover Ins. Co.,* 89 N.Y.2d 293, 298 (N.Y.1996). In other words, the duty to defend exists unless "there is no legal or factual basis in the complaint upon which the insurer might eventually have to indemnify the insured." *McCostis v. Home Ins. Co. of Indiana,* 31 F.3d 110, 112 (2d Cir.1994). *See also Commercial Union,* 198 F.3d at 59. An insurer seeking to avoid the duty to defend bears a " heavy burden." *Avondale Industries, Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204 (2d Cir.1989). Accordingly, General Star can be excused from its duty to defend "only if it can be determined as a matter of law that there is no possible basis in law or fact upon which [it] might be held to indemnify" 75 West Construction. *Id.* at 1205.

> FN5. There is no dispute that New York law governs this action.

*4 The complaint in the Underlying Action alleges that Kandic suffered "bodily injury" while working for R & J at the Job Site pursuant to its Subcontract with 75 West Construction. The allegations in the complaint do not preclude a finding at trial that Kandic's injuries were caused by the contributory negligence of others, such as R & J, or Kandic himself. FN6 Thus, there is a possibility in the Underlying Action that 75 West Construction will be found liable based on something other than its sole negligence. Accordingly, the complaint in the Underlying Action raises the possibility of coverage sufficient to trigger General Star's duty to defend 75 West Construction.

> FN6. According to the complaint in the Underlying Action, 75 West Construction failed to, among other things, ensure that the stairwell was free of dirt, debris and other refuse, and that the stairwell was properly illuminated.

It is premature, however, to decide whether General Star has a duty to indemnify 75 West Construction. The General Star Policy provides that it will not indemnify an additional insured for an injury caused

by its sole negligence. A trial in the Underlying Action will resolve this issue.

### B. Primary or Excess Coverage

General Star contends that it is obligated to provide concurrent, not sole, primary coverage to 75 West Construction. It argues that, as a co-primary insurer, it is responsible for at most half of the legal fees incurred by Wausau in defending the Underlying Action.

Where an insured's defense is covered by two separate policies, "the 'other insurance' provisions in the several policies determine the insurers' respective obligations." *IBM Corp.,* 303 F.3d at 429 (citing *State Farm Fire & Cas. Co. v. LiMauro,* 65 N.Y.2d 369, 372 (1985)). If one insurer's "other insurance" provision has a pro rata clause and the other an excess clause, the insurer with the pro rata clause "becomes the primary insurer and the insurer with the excess clause ... is required to provide coverage only when the primary insurance has been fully exhausted." *IBM Corp.,* 303 F.3d at 429 (citation omitted). *See also Tishman Const. Corp. of New York v. American Mfrs. Mut. Ins. Co.,* 757 N.Y.S.2d 535, 537 (1st Dep't 2003).

The General Star Policy's "other insurance" clause establishes General Star as the primary insurer " unless the other insurer is also primary." If the other insurer is also primary, General Star will share the defense and indemnification costs with the other insurer on a pro rata basis. In contrast, the Wausau Policy's "other insurance" clause explicitly provides that its obligation is "excess" over "any other primary insurance" for which the insured has been added as an additional insured. There is no conflict between the two "other insurance" clauses in the two policies as they apply to 75 West Construction. Taken together, they unambiguously provide that General Star is the primary insurer of 75 West Construction and Wausau is the excess insurer. FN7 The obligation to pay for the defense, therefore, rests solely on General Star up to and until 75 West Construction's coverage under the policy is exhausted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

Not Reported in F.Supp.2d, 2004 WL 1555143 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

FN7. The scope of General Star's liability will also apply to the issue of indemnity once a determination of negligence in the Underlying Action has occurred.

### C. Legal Fees

**\*5** Wausau seeks damages from General Star in the amount of $27,727.16, the amount of legal fees and costs it has incurred in defending the Underlying Action through March 17, 2004. General Star requests an evidentiary hearing on the reasonableness and propriety of the fees incurred by Wausau, arguing that, because the Underlying Action is against the 75 West Entities, it is impossible to determine the fees incurred on behalf of 75 West Construction alone. General Star also challenges as insufficient the attorney time records submitted by Wausau in connection with its damages claim, calling them "computer generated summaries of bills it purportedly paid."

General Star does not show that there are genuine disputed issues of fact with respect to the reasonableness and necessity of the fees incurred by Wausau in defending the Underlying Action. General Star does not argue that the attorney time records submitted by Wausau in support of its request for damages are not of the type normally kept by law firms, or point to any evidence uncovered in discovery that creates an issue of fact requiring a hearing. The computer-generated printouts are contemporaneous records organized by date, attorney, type of work, hours billed, and fees charged. Wausau's records are sufficiently detailed to show the manner in which the legal fees were incurred, and the amount requested appears to be reasonable.

General Star also fails to raise a question of fact as to whether the fees associated with defending 75 West Construction individually in the Underlying Action would be lower than defending the 75 West Entities as a whole. Despite having an opportunity for discovery, General Star makes only conclusory statements in support of its argument, and does not point to any work done on behalf of defending the 75 West Entities that would be unnecessary or unreasonable in the defense of 75 West

Construction.

To the extent that General Star's request for a hearing on the fees incurred by Wausau is one to reopen discovery, that request is denied. Discovery should not be extended when the party opposing summary judgment has had a "fully adequate opportunity for discovery." *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989); *see also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 927 (2d Cir.1985) (denying plaintiff's request to reopen discovery when it had "ample time in which to pursue the discovery that it now claims is essential"). To reopen discovery at this stage in the litigation would cause substantial prejudice to the plaintiff.

General Star's opposition also fails to meet the requirements of Rule 56(f), Fed.R.Civ.P. A party opposing summary judgment will not be entitled to further discovery unless he submits an affidavit explaining:
1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful.

**\*6** *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985). *See also Kulkarni v. City University of New York,* No. 01 Civ. 10628(DLC), 2003 WL 23319, \*4 (S.D.N.Y. Jan. 3, 2003). General Star has failed to submit such an affidavit, or indeed, any affidavit. It also did not make any specific statements in its submissions that might meet any of the *Burlington* factors. Accordingly, General Star is obligated to reimburse Wausau for the total amount of legal fees it incurred in defending the Underlying Action from August 6, 2002 to March 17, 2004.

### Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment is granted in part.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 6

Not Reported in F.Supp.2d, 2004 WL 1555143 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**


SO ORDERED:

S.D.N.Y.,2004.
Employers Ins. Co. of Wausau v. General Star Nat.
Ins. Co.
Not Reported in F.Supp.2d, 2004 WL 1555143
(S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:03cv06575 (Docket) (Aug. 29, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.