UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE      Index No. 06 CV 3212 (VM)
COMPANY,

                        Plaintiffs,

  -against-                                                                    **PLAINTIFFS' LOCAL CIVIL
                                                                           RULE 56.1 STATEMENT**

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                        Defendants.
------------------------------------------------------------------x

        Plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY ("Wausau") and AXIS SPECIALTY INSURANCE COMPANY ("Axis"), by their counsel, JAFFE & ASHER LLP, submits this statement of material facts as to which there is no genuine issue to be tried, pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, in support of their motion for partial summary judgment:

        1.    On December 28, 2004, John Moore ("Moore") commenced the action entitled <u>John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc.,</u> Index No. 13658/04, which is pending in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action")(Affidavit in Support of Motion for Partial Summary Judgment of Michael Morrissiey, sworn to on October 16, 2006 ["Morrissiey Aff."], ¶¶1-2.)

1

2. In the Underlying Action, Moore alleges that, on September 16, 2004, he was working on the St. George Ferry Terminal Project (the "Project"). (Morrissiey Aff., ¶3 Exh. "1".)

3. Moore seeks damages from each of the defendants in the Underlying Action for injuries he allegedly sustained, on or about September 16, 2004, as a result of having purportedly fallen through an uncovered shaft at the St. George Ferry Terminal jobsite in Richmond County, New York. (Morrissiey Aff., ¶3 Exh. "1".)

4. A copy of the Summons and Verified Complaint in the Underlying Action is annexed to the affidavit of Michael Morrissiey as Exhibit "1". (Morrissiey Aff., ¶3 Exh. "1".)

5. Wausau has acknowledged coverage for Skanska and the NYC EDC, as additional insureds under a liability policy it issued to Owen Steel Company, Inc., as the first Named Insured. (Morrissiey Aff., ¶4.)

6. Axis has acknowledged coverage for Skanska and the NYC EDC, as additional insureds under a liability policy it issued to A. J. McNulty & Company, and that coverage under the AXIS policy is primary to the coverage afforded Skanska and the NYC EDC under the Wausau policy. (Morrissiey Aff., ¶4.)

7. Axis has been paying for the defense of Skanska and the NYC EDC in the Underlying Action. (Morrissiey Aff., ¶4.)

8. The Axis policy contains an "Other Insurance" provision that provides, in relevant part, as follows:

This insurance is excess over: . . .

> (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(Morrissiey Aff., ¶4 Exh. "2".)

9. Kel-Tech Construction, Inc. ("Kel-Tech") was a masonry contractor working on the Project. (Morrissiey Aff., ¶7.)

10. The NYC EDC entered into a contract with Shroid Construction Inc. ("Shroid"), dated January 7, 2003, by which Shroid had agreed to provide masonry work for the Project. (Morrissiey Aff., ¶8 Exh. "3".)

11. The contract between the NYC EDC and Shroid required Shroid to maintain a minimum of $3 million per occurrence, $6 million aggregate, Commercial General Liability insurance coverage, and $10 million Excess Umbrella Liability coverage, which insurance coverage was to include Skanska and the NYC EDU as additional insureds. (Morrissiey Aff., ¶8 Exh. "3".)

12. Shroid filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 30, 2003, and Shroid discontinued participation in the Project. (Morrissiey Aff., ¶9.)

13. Pursuant to Takeover Agreement, dated June 22, 2004, Kel-Tech agreed to complete the masonry work that was to have been completed by Shroid for the Project. (Morrissiey Aff., ¶10 Exh. "4".)

14. Kel-Tech further agreed, pursuant to the Takeover Agreement, to obtain the insurance required under the original contract between the NYC EDC and Shroid. (Morrissiey Aff., ¶10 Exh. "4".)

15. The Takeover Agreement provides, in relevant part, as follows:

> 3. <u>Insurance Coverage</u>
>
> The required insurance obligations under the Original Contract may be satisfied by the Completion Contractor providing evidence, reasonably satisfactory to the Owner, of the required insurance coverage carried by the Completion Contractor, with the Surety, the Owner, The City of New York, the Architect/Engineer (as defined in the Original Contract), the Construction Manager (as hereafter defined) and all other parties identified in Article 10 of the Original Contract shall be named as an additional insureds under the Completion Contractor's policy or policies.

(Morrissiey Aff., ¶11 Exh. "4".)

16. Kel-Tech is the Completion Contractor as that term is defined and used in the Takeover Agreement. (Morrissiey Aff., ¶12.)

17. Pursuant to the terms of the Takeover Agreement and the original contract the NYC EDC entered into with Shroid, Kel-Tech caused a Certificate of Liability Insurance to be issued to the NYC EDC as Certificate Holder, which Certificate represented that both Skanska and the NYC EDC are additional insureds on a Commercial General Liability policy, No. HBG 00208-3, issued to Kel-Tech, as Named Insured, by QBE. (Morrissiey Aff., ¶12 Exh. "5".)

18. Kel-Tech complied with its insurance obligations for the Project by obtaining a liability insurance policy from QBE. (Morrissiey Aff., ¶13.)

4

19. QBE issued to Kel-Tech a liability insurance policy, No. HBG 00208-3, which policy has a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy"). (Morrissiey Aff., ¶13 Exh. "6".)

20. The QBE Policy contains an Additional Insured Endorsement that makes Skanska and the NYC EDU an additional insured, which provides as follows:

> WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you.
>
> If required by your agreement with such Additional Insured, this insurance shall be primary insurance for that Additional Insured. If anyone, other than the Additional Insured, provides similar insurance for the Additional Insured, then this insurance will apply as outlined in SECTION VI- COMMERCIAL GENERAL LIABILITY CONDITIONS, paragraph 4, Other Insurance, subparagraph c., Method of Sharing.
>
> The inclusion of one or more Insured under the terms of this endorsement does not increase our limits of liability.
>
> All other terms and conditions remain unchanged.

(Morrissiey Aff., ¶14 Exh. "6".)

21. The Schedule for the Additional Insured Endorsement to the QBE Policy states as follows:

> As required by written contract and/or evidenced by Certificate of Insurance on file with company. (Morrissiey Aff., ¶15, Exh. "6".)

22. The QBE Policy contains an "Other Insurance" provision, which provides, in part, as follows:

5

**4.    Other insurance**
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of the Coverage Part, our obligations are limited as follows:

    **a.    Primary Insurance**
This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

    **b.    Excess Insurance**
This insurance is excess over:
(1)    Any of the other insurance, whether primary, excess, contingent or on any other basis:
    (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
    (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
    (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you temporarily occupied by you with permission of the owner; or
    (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.
(2)    Any other insurance, whether primary, excess, contingent or any other basis that is valid and collectible insurance available to you as an additional insured under a policy issued to:
    (a) A contractor performing work for you;
    (b) A tenant renting or leasing land or premises from you;
    (c) A lessee of equipment owned by you; or
    (d) The operator of an oil or gas lease in which have a non-operating working interest.

(Morrissiey Aff., ¶17 Exh. "6".)

23. None of the items in subparagraph 4.b. of the QBE Policy apply. (Morrissiey Aff., ¶18 Exh. "6".)

24. The primary "Other Insurance" provision in subparagraph 4.a. of the QBE Policy applies. (Morrissiey Aff., ¶18 Exh. "6".)

25. The NYC EDC first tendered the claim arising from Moore's accident to Wausau's Named Insured, Owen Steel, on September 23, 2004. (Morrissiey Aff., ¶19.)

26. Owen Steel tendered the claim to Wausau on September 27, 2004. (Morrissiey Aff., ¶20.)

27. On November 9, 2004, the NYC EDC advised Wausau, for the first time, that Kel-Tech supplied and constructed the scaffolding involved in the September 16, 2004 accident, that Kel-Tech had a direct contract with the NYC EDC, and that the NYC EDC had previously tendered the claim to Kel-Tech. (Morrissiey Aff., ¶21.)

28. The NYC EDC timely notified QBE of Moore's accident. (Morrissiey Aff., ¶21 & Exh. "9".)

29. On November 12, 2004, Skanska's defense was first tendered to Wausau. (Morrissiey Aff., ¶22 Exh. "7".)

30. Wausau attempted to obtain Kel-Tech's contract from the NYC EDC. (Morrissiey Aff., ¶23.)

31. On December 13, 2004, Wausau first received a copy of the contract between the NYC EDC and Shroid, the Takeover Agreement, and a Certificate of

Liability Insurance showing that the NYC EDC and Skanska are additional insureds on a policy issued by QBE. (Morrissiey Aff., ¶24 Exhs. "4"-"5".)

32. On December 13, 2004, Wausau first learned that QBE may also provide coverage to Skanska and the NYC EDC for the Underlying Action. (Morrissiey Aff., ¶25.)

33. On December 13, 2004, Wausau tendered the defense of Skanska and the NYC EDC to QBE. (Morrissiey Aff., ¶25 Exh. "8".)

34. With its December 13, 2004 tender letter to QBE, Wausau provided QBE a copy of the aforementioned contract by which Kel-Tech agreed that the NYC EDC and Skanska should be included as an insured on Kel-Tech's policy and the aforementioned Certificate of Liability Insurance, which shows that Skanska and the NYC EDC are additional insureds on the QBE Policy. (Morrissiey Aff., ¶26 Exh. "8".)

35. Moore did not commence the Underlying Action until December 28, 2004. (Morrissiey Aff., ¶27 Exh. "1".)

36. By letter dated December 28, 2004, the Claims Service Bureau of New York Inc., on behalf of QBE, disclaimed coverage for the NYC EDC and Skanska. (Morrissiey Aff., ¶28.)

37. QBE disclaimed coverage for Skanska based upon late notice of an "occurrence" and because "Mr. Moore's accident did not arise out of Kel-Tech's negligence or work." (Morrissiey Aff., ¶28 Exh. "9".)

38. QBE disclaimed coverage for the NYC EDC solely because "Mr. Moore's accident did not arise out of Kel-Tech's negligence or work." (Morrissiey Aff., ¶28 Exh. "9".)

39. QBE did not raise a late notice defense with respect to the NYC EDC. (Morrissiey Aff., ¶29 Exh. "9".)

40. The QBE Policy has each occurrence limits of $1 million and general aggregate limits of $2 million. (Affidavit in Support of Motion for Partial Summary Judgment of Marshall T. Potashner, sworn to on October 18, 2006 ["Potashner Aff."], Exhs. "10"-"11".)

41. Although duly requested, QBE has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action. (Potashner Aff., Exhs. "10"-"11".)

Dated:  New York, New York
        October 18, 2006

Respectfully submitted,

JAFFE & ASHER LLP

By: /s/ *Marshall T. Potashner*
    Marshall T. Potashner (MTP-3552)
    mpotashner@jaffeandasher.com
Attorneys for Plaintiff
WAUSAU BUSINESS INSURANCE COMPANY
600 Third Avenue, 9th floor
New York, New York 10016
(212) 687-3000