# TABLE OF AUTHORITIES

*American Mfrs. Mut. Ins. Co. v. CMA Enters.*,
246 AD2d 373 (1st Dept., 1998)..............................................................4

*American Ref-Fuel Co. v. Resource Recycling, Inc.*,
248 AD2d 420 (2nd Dept., 1998)..............................................................8

*BP Air Conditioning Corp. v. One Beacon Insurance Corp.*,
2006 Slip Op 5297, 821 NYS2d 1 (1st Dept., 2006).........................6, 7, 8

*Brownstone Partners/AF&F, LLC v. A. Aleem Constr., Inc., et al.*,
18 AD3d 204 (1st Dept., 2005)..............................................................5

*Ceron v. Rector, Church Wardens & Vestry Members of Trinity Church, et al.*,
224 AD2d 475 (2nd Dept., 1996)...............................................................7

*City of New York v. St. Paul Fire & Marine Ins. Co.*,
21 AD3d 978 (2nd Dept., 2005)..............................................................4

*Deso v London & Lancashire Indem. Co.*,
3 NY2d 127 (1957)..............................................................4

*Eveready Ins. Co. v. Chavis*,
150 AD2d 332 (2nd Dept., 1989)..............................................................4

*Goodwin Bowler Associates, Ltd. v. Eastern Mutual Ins. Co.*,
259 AD2d 381 (1st Dept., 1999)..............................................................5

*Great Canal Realty Corp. v. Seneca Ins. Co.*,
5 NY3d 742 (2005)..............................................................5

*Haas Tobacco Co. v. American Fid. Co.*,
226 NY 343 (1919)..............................................................4

*Heydt Contracting Corp. v. American Home Assurance Company*,
146 AD2d 497 (1st Dept., 1989)..............................................................4

*Meloff v. New York Life Ins. Co.*
51 F3d 372 (2nd Cir. 1995)..............................................................9

*Mighty Midgets, Inc. v Centennial Ins. Co.*,
47 NY2d 12 (1979)..............................................................5

*N. Kruger, Inc. v. CNA Ins. Co.*,
242 AD2d 566 (2nd Dept., 1997)..............................................................7

_**Negroni v. East 67th Street Owners, Inc.**_,
249 AD2d 79 (1st Dept., 1998)................................................................8

_**Pecker Iron works of N.Y. v. Travelers Ins. Co.**_,
99 NY2d 391 (2003)................................................................7

_**Power Authority of the State of New York v. Westinghouse Electric Corp.**_,
117 AD2d 336 (1st Dept., 1986)...............................................3, 4

_**Quantum Corporate Funding, Ltd. v. Westway Industries, Inc., et al.**_,
4 NY3d 211 (2005)................................................................8

_**Reeves v. Continental Equities Corporation of America**_,
912 F2d 37 (2nd Cir. 1990)...............................................9

_**Rushing v. Commercial Cas. Ins. Co.**_,
251 NY 302 (1929)................................................................4

_**Sayed v. Macari**_,
296 AD2d 396 (2nd Dept., 2002)...............................................4, 5

_**Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.**_,
31 NY2d 436 (1972)................................................................3, 5

_**Steinberg v. Hermitage Ins. Co.**_,
26 AD3d 426 (2nd Dept. 2006)...............................................4

_**Structure Tone v. Burgess Steel Prods. Corp.**_,
249 AD2d 144 (1st Dept., 1998)...............................................4

_**Thomason v. Power Auth. of State of New York**_,
217 AD2d 495 (1st Dept., 1995)...............................................6

_**Travelers Ins. Co. v. Volman Constr. Co.**_,
300 AD2d 40 (1st Dept., 2002)...............................................5

_**Yondt v. Boulevard Mall Co.**_,
306 AD2d 882 (4th Dept., 2003)...............................................7

_**NYS Const. Art. VI § 3**_................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WAUSAU UNDERWRITERS INSURANCE          *INDEX NO.:  06 CV 3212 (VM)*
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

                              Plaintiffs,

          - against -                                    **MEMORANDUM  OF LAW**

QBE INSURANCE COMPANY and
SCOTTSDALES INSURANCE COMPANY,                            **ECF CASE**

                              Defendants.
-------------------------------------------------------------------X

## PRELIMINARY STATEMENT

*QBE* in support of its cross-motion for summary judgment and its opposition to
Plaintiffs' motion for the same relief submits this memorandum of law.   The facts are
uncontraverted that Plaintiff did not provide Defendant with notice of the occurrence "as soon as
practicable".  This failure results in no coverage under the *QBE* policy for *SKANSKA*.

       Defendant further contends that the law in New York on the issue of additional insured
coverage is not settled as Plaintiff contends.   There is a conflict in the Departments of the
Appellate Divisions on the issue of when and under what circumstances a party is entitled to
additional insured coverage.  Defendant contends and requests the Court to find that the law of
the Department where the underlying action is pending controls the issues in this case.

       Defendant, *QBE*, requests that this Court grant its cross-motion for summary judgment
against *SKANSKA* by declaring that there is no coverage under Defendant's policy as a result of
late notice.  Defendant further requests that this Court deny Plaintiffs' motion for summary

judgment on behalf of *NYCEDC* and *SKANSKA* by declaring that the accident did not arise from the work of *KEL-TECH*.

## STATEMENT OF FACTS

Defendant's insured, *KEL-TECH CONSTRUCTION, INC.*, had performed concrete work in the area of the accident in the underlying case but had been directed to cease work in that area by the Construction Manager, *SKANSKA*. Almost two months after *KEL-TECH* ceased working in the area the Plaintiff in the underlying action fell through an unguarded elevator shaft. During that time period, an employee of *SKANSKA* demolished the concrete work performed by *KEL-TECH* and moved the planks in the elevator shaft.

The Plaintiff in the underlying action was employed by *A.J. McNULTY* who was insured by Plaintiff, *AXIS SPECIALTY*. *A.J. McNULTY* was a subcontractor of *OWEN STEEL* who was insured by Plaintiff, *WAUSAU*. Pursuant to the additional insured endorsements of their respective policies Plaintiff assumed the defense of *SKANSKA* and *NYCEDC* in the underlying action. According to Plaintiff's representative *WAUSAU* was on notice of the accident eleven days after its occurrence, on September 16, 2004. Since that date the record is devoid of any efforts made by *WAUSAU* to investigate the surrounding circumstances of the accident and identify potentially culpable parties. It apparently sat passively as information was provided by *NYCEDC* concerning the various contractors working on the job at the time of the accident. It was not until December 17, 2004 over three months after the accident that Plaintiff notified *QBE* of the occurrence. *QBE* disclaimed coverage on December 28, 2004.

The reasons for the disclaimer were and remain that notice of the occurrence was not provided as soon as practicable and the parties seeking coverage were not entitled to additional insured coverage because the accident did not arise from *KEL-TECH'S* work. The affidavit of

Thomas Lyons, **KEL-TECH'S** project manager supports the Defendant's position that not only was **KEL-TECH** not working in the accident area at the time of the accident but that the work performed had been demolished and the protection erected had been moved by an employee of **SKANSKA**.

**POINT I**

**THERE IS NO COVERAGE UNDER QBE'S POLICY
FOR SKANSKA BECAUSE IT FAILED TO PROVIDE
<u>NOTICE OF THE OCCURRENCE "AS SOON AS PRACTICABLE"</u>**

**KEL-TECH'S** QBE policy states in pertinent part:

> <u>**SECTION IV – COMMERICIAL GENERAL LIABILITY CONDITIONS**</u>
>
> 2.      Duties in the Event of Occurrence, Offense, Claim or Suit
>
> > a.      You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim. To the extent possible, notice should include:
> >
> > > (1)      How, when and where the "occurrence" or offense took place;
> > >
> > > (2)      The names and addresses of any injured persons and witnesses;
> > >
> > > (3)      The nature and location of any injury or damage arising out of the "occurrence" or offense.

An insurer's obligation to provide coverage under its policy is not triggered unless the insured gives timely notice of the occurrence pursuant to the terms of the policy. ***Power Authority of the State of New York v. Westinghouse Electric Corp.***, 117 AD2d 336, 339 (1st Dept., 1986), ***Security Mut. Ins. Co. v. Acker-Fitzsimons Corp.***, 31 NY2d 436 (1972). This rule

applies with equal emphasis to additional insureds. ***American Mfrs. Mut. Ins. Co. v. CMA Enters.***, 246 AD2d 373 (1st Dept., 1998). The additional insured has an independent duty to give timely notice. ***Structure Tone v. Burgess Steel Prods. Corp.***, 249 AD2d 144, 145 (1st Dept., 1998). The fact that the insurer received notice of the claim from another source is not an excuse to the additional insured who fails to provide timely notice. ***City of New York v. St. Paul Fire & Marine Ins. Co.***, 21 AD3d 978, 981 (2nd Dept., 2005).

While the reasonableness of any delay and sufficiency of the proffered excuse usually present questions of fact for trial. ***Eveready Ins. Co. v. Chavis***, 150 AD2d 332, 333 (2nd Dept., 1989). Relatively short periods of unexcused delay have been found unreasonable as a matter of law. ***Deso v London & Lancashire Indem. Co.***, 3 NY2d 127 (1957), [51 days]; ***Rushing v. Commercial Cas. Ins. Co.***, 251 NY 302 (1929), [22 days]; ***Haas Tobacco Co. v. American Fid. Co.***, 226 NY 343 (1919), [10 days]; ***Power Authority of State of New York v. Westinghouse***, *supra*, at 342, [53 days]; ***Steinberg v. Hermitage Ins. Co.***, 26 AD3d 426, 427 (2nd Dept. 2006), [57 days]. In ***Heydt Contracting Corp. v. American Home Assurance Company***, 146 AD2d 497, 499 (1st Dept., 1989) the court characterizes a delay of four months "a long one". The Court in ***Sayed v. Macari***, 296 AD2d 396, 397 (2nd Dept., 2002) a delay of "almost three months" late as a matter of law and granted the insurer summary judgment.

The "excuse" for the prolonged delay in notifying QBE of this occurrence is offered in the affidavit of the ***WAUSAU*** claims person, Michael Morrissiey. In essence, ***WAUSAU*** is blaming ***NYCEDC*** for not providing all of its contracts for the job (paragraph 21, Morrissiey Aff.). There is no evidence offered that ***WAUSAU*** or ***AXIS*** made any effort to obtain the information necessary to determine insurance coverage for this occurrence. From September 27,

2004 until December 13, 2004, Plaintiffs have produced no proof that anything was done to secure the information and notify the appropriate carriers.

The insured bears the burden of demonstrating that the delay was reasonable. **_Security Mutual Ins. Co. v. Acker-Fitzsimons Corp._**, *supra*, at 441. A relevant factor as to whether the delay was reasonable is the extent to which the insured inquired into the circumstances surrounding the occurrence, **_Great Canal Realty Corp. v. Seneca Ins. Co._**, 5 NY3d 742, 744 (2005). Whether notice was given "as soon as practicable" requires a determination of what was reasonable under the facts and circumstances of each case. **_Mighty Midgets, Inc. v Centennial Ins. Co._**, 47 NY2d 12, 19 (1979).

Usually where an excuse or explanation is offered for the delay the issue of whether the delay is reasonable or the excuse is sufficient is a question of fact for the jury. **_Travelers Ins. Co. v. Volman Constr. Co._**, 300 AD2d 40, 42 (1st Dept., 2002). However, where as here, there is no excuse offered other than the information was not provided, it is insufficient as a matter of law. **_Sayed v. Macari_**, *supra*, at 397. In **_Sayed_**, the excuse offered was that the carrier was investigating the claim. This "excuse" is even more compelling than what was provided by Mr. Morrissiey who apparently just waited for the information to be provided.

**WAUSAU** apparently decided that it would rely on the **_AXIS_** coverage of A.J. McNulty until the QBE information was acquired by happenstance. This is not notice as soon as practicable. **_Goodwin Bowler Associates, Ltd. v. Eastern Mutual Ins. Co._**, 259 AD2d 381 (1st Dept., 1999).

To prevail on this issue QBE need not show prejudice. **_Brownstone Partners/AF&F, LLC v. A. Aleem Constr., Inc., et al._**, 18 AD3d 204, 205 (1st Dept., 2005).

## POINT II

### THE ADDITIONAL INSURED ENDORSEMENT OF THE QBE POLICY HAS NOT BEEN TRIGGERED SINCE THE ACCIDENT DID NOT ARISE FROM KEL-TECH'S WORK

The additional insured endorsement of the QBE policy for *KEL-TECH* states in pertinent part:

> Who is an Insured (Section II) is amended to include as an Insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that Insured by or for you.
>
> Section V – Definitions defines "your work" as follows;
>
> 21.    "Your work" means:
>
>        a.     Work or operations performed by you or on your behalf; and
>        b.     Materials, parts or equipment furnished in connection with such work or operations.
>
> "Your work" includes:
>
>        a.     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
>        b.     The providing of or failure to provide warnings or instructions.

As with notice "as soon as practicable" the insured must establish that all conditions for coverage are met. *Thomason v. Power Auth. of State of New York*, 217 AD2d 495, 496 (1st Dept., 1995). Plaintiffs rely on the recent First Department case of *BP Air Conditioning Corp. v. One Beacon Insurance Corp.*, 2006 Slip Op 5297, 821 NYS2d 1 (1st Dept., 2006) for authority that there is no issue of fact as to whether QBE must defend **SKANSKA** in the Moore action. However, the holding in *BP Air Conditioning* is far from settled law in this State. The decision was three to two with a vigorous dissent. The majority based its decision on the case of

***Pecker Iron works of N.Y. v. Travelers Ins. Co.***, 99 NY2d 391 (2003) for the proposition that an additional insured enjoys the same protection as the named insured. ***BP Air Conditioning v. One Beacon Ins. Corp.***, *supra*, at 12. The ***Pecker*** case was convincingly distinguished by the dissent in that in ***Pecker*** there was no issue as to whether Pecker was an additional insured but whether the coverage was excess or primary. ***BP Air Conditioning v. One Beacon Ins. Corp.***, *supra*, at 17.

The First Department encompasses Bronx and New York Counties. The ***Moore*** action for which Plaintiff seeks coverage for **SKANSKA** is venued in Richmond County which is in the Second Department. As of the date of this motion, the law in the Second Department is as stated in ***N. Kruger, Inc. v. CNA Ins. Co.***, 242 AD2d 566 (2nd Dept., 1997). The Court found that the additional insured endorsement at issue provided coverage only for vicarious liability for the work performed by its subcontractor. In explaining its decision, the Court stated the settled law until ***BP Air Conditioning*** that "arising out of work in an additional insured endorsement required that the claim 'stemmed from the fact that the subcontractor was performing its contracted-for services for the Plaintiff.'" ***N. Kruger, Inc. v. CNA Ins. Co.***, *supra*, at 567. The Court denied summary judgment because there was a question of fact as to whether the accident resulted from the subcontractor's work. The Fourth Department is in accord on this issue with the Second. ***Yondt v. Boulevard Mall Co.***, 306 AD2d 882 (4th Dept., 2003).

The facts as stated by Thomas Lyons, project manager for **KEL-TECH**, and the testimony of John Moore as to the manner in which the accident occurred establish that it did not arise from **KEL-TECH'S** work for **NYCEDC**. ***Ceron v. Rector, Church Wardens & Vestry Members of Trinity Church, et al.***, 224 AD2d 475, 476 (2nd Dept., 1996).

Contrary to the statement of the Plaintiffs the law in the State of New York on this issue is not settled.  Since there was a dissent in ***BP Air Conditioning*** there is an appeal as of right to the Court of Appeals.  ***NYS Const. Art. VI § 3***.  In addition, since there is a conflict among the departments the Court of Appeals will be required to resolve this issue.  ***Quantum Corporate Funding, Ltd. v. Westway Industries, Inc., et al.***, 4 NY3d 211, 215 (2005).

**POINT III**

**ALL APPLICABLE INSURANCE
POLICIES ARE NOT BEFORE THE COURT**

Plaintiffs are seeking coverage for the Construction Manager, ***SKANSKA***, and owner, ***NYCEDC***, as additional insureds under ***KEL-TECH'S*** QBE policy.  Neither Plaintiff insures ***SKANSKA***.  In fact, since Plaintiffs brought this motion before the completion of discovery the identity of the insurer for ***SKANSKA*** is not known.  Additionally ***SKANSKA*** had a contract with ***NYCEDC*** for the work on this project.  The contract undoubtedly contained a provision that required ***SKANSKA*** to name ***NYCEDC*** as an additional insured on its general liability policy. However, Defendant has not been provided with the contract prior to this motion.

The Labor Law § 240(1) imposes a non-delegable duty on both ***NYCEDC*** and ***SKANSKA*** if Plaintiff in the underlying action fell through an unguarded opening as he alleges. ***Negroni v. East 67th Street Owners, Inc.***, 249 AD2d 79 (1st Dept., 1998).  A review of ***SKANSKA'S*** policy could reveal that it is primary for coverage of ***NYCEDC***.  Since the policy is not before the Court, a determination cannot be made.  ***American Ref-Fuel Co. v. Resource Recycling, Inc.***, 248 AD2d 420, 425 (2nd Dept., 1998).  Pursuant to F.R.C.P. 56(f) the Court has the power to order discovery to determine the contents of ***SKANSKA'S*** contract and insurance

policy for this job site. ***Reeves v. Continental Equities Corporation of America***, 912 F2d 37, 43

(2nd Cir. 1990), ***Meloff v. New York Life Ins. Co.***, 51 F3d 372, 275 (2nd Cir. 1995).

## CONCLUSION

Defendant's cross-motion for summary judgment should be granted denying coverage to

***SKANSKA*** for late notice and Plaintiff's motion of behalf of ***NYCEDC*** should be denied since

the accident did not arise from ***KEL-TECH'S*** work.

Dated: White Plains, New York
       November 9, 2006

Respectfully submitted,

WILSON, BAVE, CONBOY, COZZA &
COUZENS, P.C.

WILLIAM H. BAVE, JR. (0349)
Attorney for Defendant, ***QBE INSURANCE
COMPANY***
Two William Street
White Plains, NY  10601
(914) 686-9010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

**INDEX NO.:  06 CV 3212 (VM)**

Plaintiffs,

**DEFENDANT'S
LOCAL CIVIL
RULE § 56.1 STATEMENT**

- against -

QBE INSURANCE COMPANY and
SCOTTSDALES INSURANCE COMPANY,

**ECF CASE**

Defendants.
-------------------------------------------------------------------X

Defendant, **QBE INSURANCE CORP.**, by counsel, WILSON, BAVE, CONBOY,

COZZA & COUZENS, P.C., submits its response to the statement of material facts served in

support of Plaintiff's motion for summary judgment.

1.    Defendant admits the truth of this statement.

2.    Defendant admits the truth of this statement.

3.    Defendant admits the truth of this statement.

4.    Defendant does not contest this statement.

5.    Defendant does not contest this statement.

6.    Defendant does not admit or deny this statement.

7.    Defendant does not admit or deny this statement.

8.    Defendant does not admit or deny this statement.

9.    Defendant admits that on the date of the alleged accident, Kel-Tech was working

on of the project but not in the area where the accident occurred.

10.    Defendant does not admit or deny this statement.

11.    Defendant does not admit or deny this statement.

12.    Defendant does not admit or deny this statement.

13.    Defendant admits that Kel-Tech entered into a Completion Contract/Masonry with Safeco Insurance Company of America on June 29, 2004 and begs leave to refer to the specific terms thereof.

14.    Defendant admits that the Completion Contract/Masonry terms included incorporation of the terms and conditions of the original contract between NYC EDC and Shroid Construction, Inc. including the insurance provisions.

15.    Defendant admits that the Completion Contract/Masonry contained provision relating to insurance and begs leave to refer to the terms of the contract.

16.    Defendant admits this statement.

17.    Defendant admits that it authorized to be issued a certificate of liability insurance naming Kel-Tech Construction, Inc. as the insured and begs leave to refer to the certificate for its exact terms and conditions.

18.    Defendant admits that Kel-Tech purchased a Commercial General Liability policy under policy No. HBG002083 with effective dates from 11/16/03 through 11/16/04.

19.    Defendant admits that it issued a Commercial General Liability policy as stated in statement No. 19.

20.    Defendant admits that the Commercial Liability General policy issued to Kel-Tech contained an additional insured endorsement and Defendant begs leave to refer to the endorsement for its specific language.

21.    Defendant admits this statement.

22.    Defendant admits that the policy issued to Kel-Tech contains an "other insurance" clause and "excess insurance provision – additional insureds" endorsement and begs leave to refer to the policy.

23.    Defendant admits this statement but only as it relates to all the other terms and conditions of the policy.

24.    Defendant admits this statement but only as it relates to all the other terms and conditions of the policy.

25.    Defendant does not have sufficient information to admit or deny this statement.

26.    Defendant does not have sufficient information to admit or deny this statement.

27.    Defendant does not have sufficient information to admit or deny this statement.

28.    Defendant does not possess sufficient information to admit or deny this statement.

29.    Defendant does not possess sufficient information to admit or deny this statement.

30.    Defendant does not possess sufficient information to admit or deny this statement.

31.    Defendant does not possess sufficient information to admit or deny this statement.

32.    Defendant does not possess sufficient information to admit or deny this statement.

33.    Defendant admits that the tender letter is dated December 13, 2004 but denies that it received the tender on that date.

34.    Defendant admits that the tender letter refers to the stated documents but upon information and belief they were not enclosed with Plaintiff's letter dated December 13, 2004.

35.    Defendant does not possess sufficient information to admit or deny this statement.

36.    Defendant admits this statement.

37.    Defendant admits that the statement is true as to the stated reasons for the disclaimer but the disclaimer also reserved the right to raise additional defenses at a later date.

38.    Defendant admits this statement.

39.    Defendant admits this statement.

40.    Defendant admits this statement.

41.    Defendant admits this statement.

## QBE'S ADDITIONAL PARAGRAPHS PURSUANT TO RULE 56.1(b)

42.    At the time of the accident to John Moore, the only contractor working in the area was A.J. McNulty – John Moore 50-H testimony p. 11. (EXHIBIT G)

43.    John Moore and the other A.J. McNulty employees were connecting beams in the vicinity of an elevator shaft at the time of the accident – John Moore deposition testimony p. 24. (EXHIBIT B)

44.    The elevator shaft in the vicinity of where John Moore was working at the time of the accident was not closed off or otherwise covered – John Moore 50-H testimony pp. 10-11. (EXHIBIT G)

45.    The accident occurred as John Moore and a co-worker were pushing a beam into place – John Moore 50-H testimony p. 13.  (EXHIBIT G)

46.    As John Moore was pushing a beam into place; he was standing on a concrete floor – John Moore deposition p. 28.  (EXHIBIT B)

47.    As John Moore stepped back toward the unguarded elevator shaft, he stepped on a cinder block wall which shifted causing him to fall into the elevator shaft – John Moore deposition pp. 32-33.  (EXHIBIT B)

48.    On July 8, 2004, Kel-Tech started to build concrete walls in the elevator shaft (Lyons Aff.).  (EXHIBIT C)

49.     In order to work in the vicinity of the elevator shaft the opening was completely covered with planks (Lyons Aff.).  (EXHIBIT C)

50.     On July 23, 2004 the project manager for Skanska directed that Kel-Tech cease building the concrete walls in this location to allow McNulty to install steel beams. (Lyons Aff.). (EXHIBIT C)

51.     Kel-Tech stopped work in this area on July 23, 2004 and when it left the elevator shaft was fully planked (Lyons Aff.).  (EXHIBIT C)

52.     Subsequent to being directed to cease work in this area and before John Moore's accident, Thomas Lyons observed a Skanska employee, Mario Nicklo, demolishing the concrete walls that Kel-Tech had built (Lyons Aff.).   (EXHIBIT C)

53.     Thomas Lyons also observed that as the Skanska employee demolished sections of the wall he also moved the planking that covered the opening to the elevator shaft (Lyons Aff.). (EXHIBIT C)

54.     Kel-Tech did not return to the area to continue work on the concrete walls until November 8, 2004 (Lyons Aff.).  (EXHIBIT C)

55.     The area had been substantially changed in that six or seven feet of the concrete wall that Kel-Tech had built had been demolished and the planks covering the elevator shaft had been moved (Lyons Aff.).  (EXHIBIT C)

56.     QBE policy issued to Kel-Tech Policy No. HBG 00208-3 states in part:

> Who is an Insured (Section 11) is Amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.  (EXHIBIT 6)

57.     "Your Work" is defined in Section V – Definitions, paragraph 21 as

"Your Work means

a.  Work or operations performed by you or on your behalf;
    and
b.  Materials, parts or equipment furnished in connection with
    such work or operations.

"Your work" includes

a.  Warranties or representations made at any time with respect
    to the fitness, quality, durability, performance or use of
    "your work"; and

b.  The providing of or failure to provide warnings or
    instructions. (EXHIBIT 6)

58.   Plaintiff gave notice of occurrence in a letter dated December 13, 2004 received

by Defendant on December 17, 2004. (Plaintiff 8)

59.   Defendant disclaimed coverage in a correspondence dated December 28, 2004.

60.   One of Defendant's grounds for the disclaimer was late notice of the occurrence.

(EXHIBIT E)

61.   The second ground for the disclaimer stated in Defendant's correspondence of

December 28, 2004 was that the accident did not arise out of its insured's work. (EXHIBIT E)

62.   *SKANSKA* learned of the accident of the date of its occurrence. (EXHIBIT I)

63.   That NYCEDC received notice of the accident on September 22, 2004.

(EXHIBIT 7).

64.   Wausau received notice of the occurrence on September 22, 2004. (Morrissiey

Aff. Paragraph 20)

65.   Axis Specialty received notice of the occurrence within days of September 16,

2003. (EXHIBIT J)

66.    Notice of the occurrence to QBE on or about December 17, 2004 was not given as soon as practicable.

67.    The accident to Moore did not arise from the work of Kel-Tech.

68.    The accident was caused by the negligence of Skanska in demolishing the cinder block wall and moving the planking from the elevator shaft.

69.    Defendant QBE disclaimed coverage for Skanska and NYCEDC in a timely manner.  (EXHIBIT E)

70.    A.J. McNulty's policy with Axis Specialty provides coverage for NYC EDC and Skanska as additional insureds.  (Morrissiey Aff. Paragraph 4)

71.    Skanska's policy with Wausau provides coverage for NYC EDC as an additional insured.  (Morrissiey Aff. Paragraph 4)

72.    Arena's policy with Scottsdale provides coverage for NYC EDC and Skanska as additional insureds.  (EXHIBIT F)

Dated:  White Plains, New York
          November 9, 2006

Respectfully submitted,

WILSON, BAVE, CONBOY, COZZA &
COUZENS, P.C.

_____
WILLIAM H. BAVE, JR. (0349)
Attorney for Defendant, *QBE INSURANCE
COMPANY*
Two William Street
White Plains, NY  10601
(914) 686-9010