UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE          Index No. 06 CV 3212 (VM)
COMPANY,

                                Plaintiffs,

   -against-

QBE INSURANCE CORPORATION and                 **REPLY AND OPPOSITION**
SCOTTSDALE INSURANCE COMPANY,                 **AFFIDAVIT OF MICHAEL**
                                                          **MORRISSIEY**

                                Defendants.
-----------------------------------------------------------------x
STATE OF NEW YORK   )
                            ) ss.
COUNTY OF ONONDAGA  )

**MICHAEL MORRISSIEY**, being duly sworn, deposes and says:

1.    I am a Director of Complex Claims for plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY ("Wausau"); as such, I am fully familiar with the facts and circumstances set forth herein.

2.    I submit this reply affidavit in further support of plaintiffs' motion for partial summary judgment on the first claim for relief in the Complaint, determining and declaring that defendant QBE INSURANCE CORPORATION ("QBE") is required to provide a defense and indemnity to Barney Skanska Construction Co. ("Skanska") and the New York City Economic Development Corp. (the "NYC EDC") for the action entitled <u>John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc.,</u>

1

Index No. 13658/04, which is pending in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action"), and determining and declaring that coverage under plaintiffs' policies is excess over the coverage afforded under the QBE policy. I also submit this affidavit in opposition to QBE's cross-motion for summary judgment.

3. As discussed herein, Wausau diligently and expeditiously undertook steps to locate QBE as a possible insurer of Skanska and to notify QBE of the occurrence.

4. Wausau first received notice of the occurrence leading to the Underlying Action, via tender from the NYC EDC, on September 27, 2004. QBE does not dispute that the NYC EDC timely notified it of the accident.

5. Skanska first tendered the potential claim to Wausau on November 12, 2004, and Wausau tendered the potential claim to QBE, as co-insurer of Skanska, on December 13, 2004.

6. **Wausau's tender of the claim to QBE took place over two (2) weeks before the Underlying Action was commenced on December 28, 2004.** Without the benefit of a complaint naming Kel Tech Construction Inc. ("Kel Tech") as a party defendant, Wausau had no readily available way of determining the contractors who might have been at fault, the contractors who performed the allegedly defective masonry work at the project, and the identify of those contractors' insurers.

7. It was not by happenstance that, during this period, Wausau was able to identify Kel Tech as a masonry contractor out of whose work the alleged injury arose, ascertain Kel Tech's contractual obligations to procure a policy of commercial general

liability insurance naming Skanska as an additional insured, and determine that QBE issued the insurance policy by which Kel Tech fulfilled this contractual obligation. This was the result of Wausau's active and diligent investigation.

8. I undertook an investigation to review the contracts of the various contractors on the job site and to investigate which contractors may have responsibility.

9. On October 4, 2004, we received a package of documents from our Named Insured, Owen Steel Company, Inc. ("Owen Steel"). This package included a notice of claim from the NYC EDC, the workers compensation form filed by John Moore's employer, A. J. McNulty & Company ("McNulty"), the subcontract between Owen Steel and McNulty, and McNulty's insurance certificate.

10. On October 5, 2004, I spoke with Spencer Brown and Kevin Phillips of Owen Steel. Although they did not witness the accident, they gave me information about some of the contractors on the project and generally the cause of the occurrence. I was advised that the work of the masonry subcontractors may have caused the accident. Messrs. Brown and Phillips were, however, unaware of the identity of these masonry subcontractors. I was advised to contact Robert Doerr of McNulty for more information.

11. On October 7, 2004, I followed up on my investigation by telephoning Mr. Doerr. I needed to find out more about the subcontractors, particularly the masonry subcontractors. Mr. Doerr was not available, and I left a voice-mail message.

12. Mr. Doerr did not return my telephone call. As such, on October 20, 2004, I telephoned the NYC EDC and spoke with Martin Bree. I asked Mr. Bree for his assistance in identifying some of the other contractors at the site at the time of the

accident. He advised that he did not know, but that he would review his files. He also advised that he had additional information regarding the accident, including McNulty's incident report, and that he would forward this information to me.

13. I asked that he provide me contracts for all of the contractors that NYC EDC had hired for the project. Mr. Bree advised that he would not provide copies of all of the contracts, as that would require copying over twenty (20) different contracts. I told him that I was specifically looking for any contractors for masonry and/or demolition work. Mr. Bree advised that he would search the contracts and get back to me.

14. Neither Skanska nor Owen Steel had the information I was seeking, as they were not parties to the contracts at issue. Rather, the contracts were between the NYC EDC and certain of the contractors. As we subsequently learned, these contracts required the contractors, including Kel Tech and Arena Construction Co., Inc. to include Skanska as an additional insured on their policy.

15. On October 26, 2004, I received a copy of the Owen Steel contract and the incident report from Mr. Bree. On that same date, I sent a follow-up E-mail to Mr. Bree memorializing that I was "in the process of identifying some of the other contractors that may have been onsite at the time of the loss and will attempt to figure out their involvement in this incident, if any." I further stated that, "[s]hould I make a positive identification on any of the other 'prime' contractors at the location, I will advise you of same and ask that you provide me with a copy of their particular contract as well as put them on notice of this loss." A copy of said E-mail is annexed hereto as Exhibit "4".

16. I again called Mr. Doerr on October 26, 2004, and was transferred to Larry Weiss of McNulty. I asked for information about the other contractors. Mr. Weiss was not aware of their identity.

17. I followed up with a telephone call to Owen Steel. On November 11, 2004, I received a return telephone call from Spencer Brown at Owen Steel. He could not provide any additional information.

18. On November 19, 2004, I followed up with an additional telephone call to Mr. Bree of the NYC EDC. I asked for photos of the loss location and a diagram. Mr. Bree advised me that he was sending me the contract between the NYC EDC and Shroid Construction Inc. and the Takeover Agreement involving Kel Tech.

19. After Thanksgiving, on December 13, 2004, Wausau first received the contract between the NYC EDC and Shroid Construction Inc., and the Takeover Agreement, together with the certificate of insurance identifying NYC EDC and Skanska as additional insureds under the policy issued by QBE.

20. I tendered the claim to QBE on the same day that I received these documents – December 13, 2004.

21. It should be clear that I made a diligent (and successful) effort to seek out other contractors out of whose work the alleged injury arose and to ascertain the identity of their insurance carriers. In light of the task at hand and the fact that the Underlying Action had not even been initiated when I was performing the investigation, there can be no question that Wausau's notice to QBE was more than reasonably timely.

**WHEREFORE**, this Court should grant plaintiffs' motion for partial summary judgment in all respects and deny QBE's cross-motion for summary judgment.

_/s/ Michael Morrissey_
MICHAEL MORRISSEY

Sworn to before me this
30th day of November, 2006

_/s/ Patrick Janes_
Notary Public

PATRICK JANES
NOTARY PUBLIC, State of New York
Qualified in Onondaga County
No. 01JA6123612
My Commission Expires March 7, 2009

**EXHIBIT 4**

Case 1:06-cv-03212-VM-THK    Document 37-2    Filed 12/05/2006    Page 1 of 2

**Morrissiey, Michael**

| | |
|---|---|
| From: | Morrissiey, Michael |
| Sent: | Tuesday, October 26, 2004 9:18 AM |
| To: | 'mbree@nycedc.com' |
| Subject: | Moore v. NYCEDC |

Mr. Bree,

Thank you for sending a copy of the contract and incident reports as they relate to the above captioned matter. Please be advised that Wausau is still conducting an investigation into this matter. I appreciate any assistance that you may be able to offer in our effort.

I'm currently in the process of identifying some of the other contractors that may have been onsite at the time of the loss and will attempt to figure out their involvement in this incident, if any. Should I make a positive identification on any of the other "prime" contractors at the location, I will advise you of same and ask that you provide me a copy of their particular contract as well as put them on notice of this loss.

Once again, thank you for your assistance in this matter,

*Michael Morrissiey*
*Senior Technical Claims Specialist*
Wausau Insurance Company
(315) 413-2901
SDN: 8-293-2901