UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

Civil Action No.
06 CV 3212 (VM)(THK)

Plaintiffs,

-against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

Defendants.

------------------------------------------------------------------------x

## REPLY AND OPPOSITION MEMORANDUM OF LAW

Jaffe & Asher, LLP
600 Third Avenue, 9th Floor
New York, New York 10016
(212) 687-3000

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................. ii

**PRELIMINARY STATEMENT** ......................................................................... 1

**STATEMENT OF FACTS** .................................................................................. 3

**ARGUMENT** ......................................................................................................... 3

<u>**Point I**</u>  SKANSKA DID NOT BREACH ANY NOTICE PROVISION ............... 3

    **A.**  The Policy Did Not Require Skanska to Provide Notice of the Occurrence ............................................................................ 4

    **B.**  QBE Received Timely Notice From Kel-Tech and the NYC EDC ...... 9

    **C.**  Wausau Timely Notified QBE of the Occurrence ........................... 10

<u>**Point II**</u>  QBE OWES SKANSKA AND THE NYC EDC
A DUTY TO DEFEND .......................................................................................... 14

<u>**Point III**</u>  THE POSSIBLE EXISTENCE OF OTHER
AVAILABLE INSURANCE COVERAGE IS NOT A DEFENSE
TO COVERAGE ..................................................................................................... 21

**CONCLUSION** .................................................................................................... 22

## TABLE OF AUTHORITIES

American Home Products Corp. v. Liberty Mut. Ins. Co.,
565 F. Supp. 1485 (S.D.N.Y. 1983)....................................................5,9

Andy Warhol Foundation for Visual Arts, Inc. v. Federal Ins. Co.,
189 F.3d 208 (2d Cir. 1999)..........................................................4,9

Automobile Ins. Co. of Hartford v. Cook,
7 N.Y.3d 131, 818 N.Y.S.2d 176 (2006) .....................................16,19

Avondale Indus., Inc. v. Travelers Indem. Co.,
887 F.2d 1200 (2d Cir. 1989).........................................................15

BP Air Conditioning Corp. v. One Beacon Ins. Group,
33 A.D.3d 116, 821 N.Y.S.2d 1 (1st Dep't 2006)....................16-17,20

Breed v. Insurance Co. of North America,
46 N.Y.2d 351, 413 N.Y.S.2d 352 (1978) ....................................4-5,9

Ceron v. Rector, Church Wardens & Vestry Members of Tinity Church,
224 A.D.2d 475, 638 N.Y.S.2d 476 (2d Dep't 1996) ..........................18

City of New York v. Continental Cas. Co.,
27 A.D.3d 28, 805 N.Y.S.2d 391 (1st Dep't 2005).............................6-8

City of Niagara Falls v. Merchants Ins. Group,
__ A.D.3d __, __ N.Y.S.2d __, 2006 WL 3334488 (4th Dep't Nov. 17,
2006) .................................................................................16-18,20

Continental Cas. Co. v. Rapid-American Corp.,
177 A.D.2d 61, 581 N.Y.S.2d 669 (1st Dep't 1992),
aff'd, 80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993) .......................15,20-21

Crum & Forster Organization v. Morgan,
192 A.D.2d 652, 596 N.Y.S.2d 472 (2d Dep't 1993) .........................10

Fitzpatrick v. American Honda Motor Co.,
78 N.Y.2d 61, 571 N.Y.S.2d 672 (1991) ........................................15

Francis v. INA Life Ins. Co. of New York,
809 F.2d 183 (2d Cir. 1987)...........................................................5,9

General Acc. Ins. Group v. Circucci,
46 N.Y.2d 862, 414 N.Y.S.2d 512 (1979) ........................................................... 8

International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co.,
303 F.3d 419 (2d Cir. 2002)............................................................................15

International Paper Co. v. Continental Cas. Co.,
35 N.Y.2d 322, 361 N.Y.S.2d 873 (1974) ....................................................15-16

Mendes & Mount v. American Home Assur. Co.,
97 A.D.2d 384, 467 N.Y.S.2d 596 (1st Dep't 1983)............................................21

Michalski v. Home Depot, Inc.,
225 F.3d 113 (2d. Cir. 2000)...........................................................................19

N. Kruger, Inc. v. CNA Ins. Co.,
242 A.D.2d 566, 662 N.Y.S.2d 529 (2d Dep't 1997) .....................................17-18

National Union Fire Ins. Co. of Pittsburgh, Pa. v. Insurance Co. of North America,
188 A.D.2d 259, 590 N.Y.S.2d 463 (1st Dep't 1992)..........................................10

Nationwide Mut. Ins. Co. v. CNA Ins. Co.,
286 A.D.2d 485, 729 N.Y.S.2d 760 (2d Dep't 2001) .......................................... 4

Otsego Mut. Fire Ins. Co. v. Darby,
79 Misc. 2d 80, 358 N.Y.S.2d 314 (1974).........................................................13

Rose v. State,
265 A.D.2d 473, 696 N.Y.S.2d 527 (2d Dep't 1999) ..........................................10

Ruder & Finn v. Seaboard Sur. Co.,
52 N.Y.2d 663, 439 N.Y.S.2d 858 (1981). ...................................................15,19

Seaboard Sur. Co. v. Gillette Co.,
64 N.Y.2d 304, 486 N.Y.S.2d 873 (1984) .........................................................15

State of N.Y. v. Blank,
27 F.3d 783 (2d Cir. 1994)..............................................................................10

U.S. Underwriters Ins. Co. v. City Club Hotel, LLC,
369 F.3d 102 (2d Cir. 2004)............................................................................. 9

Unger v. Liberty Mut. Ins. Co.,
849 F. Supp. 839 (E.D.N.Y. 1994) ..................................................................... 4,6

Vargas v. Boston Chicken, Inc.,
269 F. Supp. 2d 92 (E.D.N.Y. 2003) .................................................................. 19

Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.,
55 F.3d 114 (2d Cir. 1995) ................................................................................ 4,9

Yondt v. Boulevard Mall Co.,
306 A.D.2d 882, 760 N.Y.S.2d 914 (4th Dep't 2003) ......................................... 18

Zurich Ins. Co. v. Gladding,
292 A.D.2d 288, 739 N.Y.S.2d 699 (1st Dep't 2002) .......................................... 4,9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE          Civil Action No.
COMPANY,                                      06 CV 3212 (VM)(THK)

                        Plaintiffs,

        -against-
_____

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                        Defendants.
-------------------------------------------------------------------x

## REPLY AND OPPOSITION MEMORANDUM OF LAW

## PRELIMINARY STATEMENT

This Reply and Opposition Memorandum of Law is submitted in further

support of plaintiffs' motion for an Order, pursuant to Fed. R. Civ. P. 56, granting partial

summary judgment on the first claim for relief in the Complaint, determining and declaring

that defendant QBE INSURANCE CORPORATION ("QBE") is required to provide a

defense to Barney Skanska Construction Co. ("Skanska") and the New York City

Economic Development Corp. (the "NYC EDC") for the action entitled John Moore v.

New York City Economic Development Corp., New York City Department of

Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index

No. 13658/04, which is pending in the Supreme Court of the State of New York,

County of Richmond (the "Underlying Action"), determining and declaring that coverage

under plaintiffs' policies is excess over the coverage afforded under the QBE policy, and

1

granting plaintiffs the costs and disbursements of this action together with such other and further relief as which this Court deems just and proper. This Memorandum is also submitted in opposition to QBE's cross-motion for summary judgment.

QBE's opposition and cross-motion is insufficient as a matter of law and does not raise a genuine and material triable issue of fact. QBE's argument based upon the alleged breach of the duty to provide prompt notice of the occurrence ignores the terms of its own policy, which required such notice from Kel-Tech Construction, Inc. ("Kel-Tech") and not Skanska. Plaintiff and Skanska, thus, did not breach any notice provision in the QBE policy. Further, Kel-Tech indisputably timely notified QBE of the occurrence. QBE, in fact, is currently defending Kel-Tech in the Underlying Action.

QBE, moreover, raises the late notice defense only against Skanska. It has not asserted late notice on the part of the NYC EDC. The NYC EDC is similarly situated as Skanska, and the NYC EDC's timely notice is applicable to Skanska.

QBE's argument against coverage, that the accident did not arise from Kel-Tech's work, may be a defense to the Underlying Action. It, however, is not a defense to the duty to defend. Kel-Tech is still a defendant in the Underlying Action, and there has been no decision as of yet concerning Kel-Tech's involvement in the alleged occurrence. Therefore, there still exists a "reasonable possibility" that the Underlying Action may result in a judgment determining that John Moore's injuries were caused by the negligence of, among other defendants, Kel-Tech. This "reasonable possibility", which arises based upon the undisputed fact that Kel-Tech remains a defendant in the Underlying Action, gives rise to a duty to defend.

QBE's argument that there may be other available coverage is not a defense to this suit or the instant motion. An insurer may not avoid its coverage obligations by arguing that other insurance may also exist.

## STATEMENT OF FACTS

QBE did not controvert a single paragraph of the Statements of Fact set forth in plaintiffs' Local Civil Rule 56.1 Statement. As such, pursuant to Local Civil Rule 56.1(c), each and every statement therein should be deemed admitted. QBE, moreover, does not set forth any material facts as to which it contends there exists a genuine issue to be tried.

## ARGUMENT

### Point I

### SKANSKA DID NOT BREACH ANY NOTICE PROVISION

QBE's argument that Skanska breached a duty to provide notice of the occurrence "as soon as practicable" is based upon a misreading of its own policy and the failure to disclose all facts relevant to this inquiry. First, the contractual obligation to provide notice of occurrence in the QBE policy applies only to the Named Insured, Kel-Tech, and does not apply to additional insureds such as Skanska. Second, QBE fails to inform this Court that it was duly notified of the occurrence by Kel-Tech and the NYC EDC. In fact, QBE has agreed to defend Kel-Tech in the Underlying Action, wherein the same counsel representing QBE herein represents Kel-Tech. Third, plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY ("Wausau") undoubtedly tendered notice of the occurrence to QBE in a timely manner.

3

## A.    The Policy Did Not Require Skanska to Provide Notice of the Occurrence

Under New York law, where the provisions of an insurance policy "are clear and unambiguous, courts are to enforce them as written." Village of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995); see also Andy Warhol Foundation for Visual Arts, Inc. v. Federal Ins. Co., 189 F.3d 208, 215 (2d Cir. 1999)("[i]f the language of the insurance contract is unambiguous, we apply its terms"); Zurich Ins. Co. v. Gladding, 292 A.D.2d 288, 289, 739 N.Y.S.2d 699, 700 (1st Dep't 2002). "When the terms of an insurance policy are clear and unambiguous they must be accorded their ordinary meaning." Unger v. Liberty Mut. Ins. Co., 849 F. Supp. 839, 846 (E.D.N.Y. 1994). However, "[w]hen an ambiguity is found, it must be construed against the insurer and in favor of coverage." Nationwide Mut. Ins. Co. v. CNA Ins. Co., 286 A.D.2d 485, 487, 729 N.Y.S.2d 760, 762 (2d Dep't 2001); see also Breed v. Insurance Co. of North America, 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 354 (1978).

A court, in construing an insurance policy, may not imply or construe terms to accomplish its own view of what is fair and right. Thus, in Breed, the New York Court of Appeals described the rules of construing an unambiguous insurance policy as follows:

> It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed. Obviously, before the rules governing the construction of ambiguous contracts are triggered, the court must first find ambiguity in the policy. But here there is no ambiguity since the words in the paragraphs of the policy under examination have a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no

4

reasonable basis for a difference of opinion. **This court may not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation, since equitable considerations will not allow an extension of the coverage beyond its fair intent and meaning in order to do raw equity and to obviate objections which might have been foreseen and guarded against.** (Emphasis supplied.)

Breed at 355, 413 N.Y.S.2d at 355; see also American Home Products Corp. v. Liberty Mut. Ins. Co., 565 F. Supp. 1485, 1492 (S.D.N.Y. 1983) ("[i]f the words of the contract are unambiguous, establishing only one meaning when read in the context of the entire policy, then a New York court must enforce the plain meaning of the words and refrain from making or varying the contract of insurance to accomplish its notions of abstract justice or moral obligation" [citations omitted].) It is not the function of the court to rewrite insurance policies to include terms "the court might have considered more equitable." Francis v. INA Life Ins. Co. of New York, 809 F.2d 183, 185 (2d Cir. 1987).

In applying the rules of insurance policy construction to the QBE policy, it is clear that the notice provision QBE cites does not apply to Skanska. The QBE policy provides, in relevant part, as follows:

**2.    Duties in the Event Of Occurrence, Claim Or Suit**

a.    **You** Must (sic.) see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)    How, when and where the "occurrence" or offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

\* \* \*

c.    **You and any other involved insured** must:

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.  (Emphasis supplied.)

The QBE policy specifically defines the terms "you" and "your" as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person qualifying as a Named Insured under this policy.

It is beyond dispute that Skanska is not a Named Insured under the QBE policy. As defined terms in the QBE policy, this Court is bound by the QBE policy's definition of the terms "you" and "your" to mean the "Named Insureds". See Unger, 849 F. Supp. at 846 ("where an unambiguous term is defined in the policy, the Court is bound by the policy definition"). This unambiguous policy condition thus does not apply to additional insureds, such as Skanska. See City of New York v. Continental Cas. Co., 27 A.D.3d 28, 805 N.Y.S.2d 391, 393 (1st Dep't 2005).

6

The QBE policy contains a merger provision, which provides as follows:

**CHANGES**

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

Thus, the notice provision in the QBE policy, as written, governs.

The inapplicability of sub-paragraph 2(a) to additional insureds is highlighted by the different language used in sub-paragraph 2(c), which clearly applies to additional insureds. Sub-paragraph 2(c) applies to "[y]ou and any other involved insured." The QBE policy defines the term "insured" as follows:

> The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

This definition includes additional insureds, such as Skanska. Clearly, if the intent were to require additional insureds to comply with the notice of occurrence provision, sub-paragraph 2(a), QBE could have used the phrase "[y]ou and any other involved insured" rather than just the term "[y]ou" in that sub-paragraph. This explicit use of different terminology shows that, while QBE intended sub-paragraph 2(c) to apply to additional insureds, sub-paragraph 2(a) was intended to apply only to Named Insureds.

QBE cannot rely upon sub-paragraph 2(c) to support its disclaimer because this paragraph is not a notice condition; it is a cooperation clause. See City of New York v. Continental Cas. Co. at 31, 805 N.Y.S.2d at 393. Sub-paragraph 2(c) sets out a series of duties which clearly refer to cooperation with QBE in the investigation of claims.

7

See id.  Unlike a disclaimer based upon breach of a "late notice" condition to coverage, a disclaimer based upon breach of a cooperation clause carries a heavy burden that the insurer must satisfy.  Id. at 31-32, 805 N.Y.S.2d at 393-94.  "Courts must strictly scrutinize the facts of each case, and will allow a disclaimer on the basis of lack of cooperation only when the insured's actions are deliberate."  Id. at 32, 805 N.Y.S.2d at 393-94.  An insurer, to satisfy its burden, must establish three elements:  (1) that the insurer acted diligently to bring about the insured's cooperation; (2) that the insurer's efforts were reasonably calculated to obtain the insured's cooperation; and (3) that the insured's attitude demonstrated "willful and avowed objection".  Id. at 32, 805 N.Y.S.2d at 394.  "Mere inaction by the insured is not a sufficient basis for a disclaimer."  Id.

In the case at bar, there is simply no evidence to support any of the elements QBE would have to establish to support a disclaimer based upon breach of sub-paragraph 2(c), the cooperation clause.  Plaintiffs' and Skanska's mere inaction, which is all QBE can begin to allege, will not suffice to support such a disclaimer.  See General Acc. Ins. Group v. Circucci, 46 N.Y.2d 862, 863, 414 N.Y.S.2d 512, 514 (1979); City of New York v. Continental Cas. Co. at 31-32, 805 N.Y.S.2d at 394.

There are many reasons QBE might have drafted its policy so the notice provisions do not apply to additional insureds.  QBE's policy form may simply recognize that additional insureds do not receive a copy of the policy and in many instances do not even know the identity of their insurer.  QBE might simply not have wanted to be required to place reserves on claims against additional insureds until the last possible moment, as reserves show up as losses on an insurer's balance sheet.  Alternatively, QBE might have

8

recognized that its policy covers additional insureds only for claims arising from Kel-Tech's work. As such, QBE's language may simply reflect that any notice should come from Kel-Tech, from whose work the claim arises, rather than from the additional insured. Nevertheless, the reason behind QBE's decision to issue a policy with notice provisions that do not apply to additional insureds is not a matter for this Court. See Breed at 355, 413 N.Y.S.2d at 355; Francis, 809 F.2d at 185; American Home Products Corp., 565 F. Supp. at 1500. Instead, this Court must apply the terms of the QBE policy as written. See Village of Sylvan Beach, 55 F.3d at 115; Andy Warhol Foundation for Visual Arts, Inc., 189 F.3d at 215; Zurich Ins. Co. v. Gladding at 289, 739 N.Y.S.2d at 700 ("[w]here, as is the case here, the provisions of an insurance policy are clear, the contract must be enforced as written" [citation omitted]).

**B.    QBE Received Timely Notice From Kel-Tech and the NYC EDC**

As discussed above, the QBE policy specifically states that notice of occurrence is to be provided by the Named Insured. Where a insurance policy places the burden of notice upon a Named Insured, an additional insured may rely upon the Named Insured's notice to the insurer for compliance of any notice obligation. See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC, 369 F.3d 102, 109 (2d Cir. 2004)(held that where policy only required that "Named Insured" give the insurer notice of a claim, additional insureds were entitled to rely upon notice of "Named Insured"). QBE admits that it received timely notice of the occurrence from its Named Insured, Kel-Tech. Therefore, pursuant to the direct on-point Second Circuit precedent of U.S. Underwriters Ins. Co. v. City Club Hotel, LLC at 109, and the explicit language of the QBE policy,

Skanska did not breach any notice provision. Skanska was entitled to rely upon the notice provided by Kel-Tech.

In addition, "where two claimants are similarly situated notice by one claimant may be deemed applicable to the other." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Insurance Co. of North America, 188 A.D.2d 259, 262, 590 N.Y.S.2d 463, 465 (1st Dep't 1992); see also Rose v. State, 265 A.D.2d 473, 474, 696 N.Y.S.2d 527, 528 (2d Dep't 1999). QBE admits that the NYC EDC timely provided notice of the occurrence. Skanska and the NYC EDC are similarly situated. They are both additional insureds under the QBE policy. Not only are no claims pending as between Skanska and the NYC EDC in the Underlying Action, they are being represented by the same counsel. As Skanska and the NYC EDC are united-in-interest and similarly situated, the notice by NYC EDC is deemed applicable to Skanska.

**C.    Wausau Timely Notified QBE of the Occurrence**

An insurer may seek contribution from a co-insurer notwithstanding an insured's failure to give prompt notice to the co-insurer where the insurer itself provided reasonably timely notice to the co-insurer. See Crum & Forster Organization v. Morgan, 192 A.D.2d 652, 654, 596 N.Y.S.2d 472, 474 (2d Dep't 1993). In addressing whether a co-insurer provided timely notice of an occurrence, the determinative issues are (1) whether the co-insurer provided reasonable notice of the occurrence; and (2) whether the co-insurer has offered a valid excuse for any delay. See State of N.Y. v. Blank, 27 F.3d 783, 795 (2d Cir. 1994).

10

In the case at bar, Wausau took reasonable steps to determine additional sources of coverage. As set forth in the accompanying Reply and Opposition Affidavit of Michael Morrissiey, the notice of the occurrence leading to the Underlying Action was first tendered by the NYC EDC to Wausau on September 27, 2004. Skanska, the only insured whose notice of occurrence QBE disputes, did not tender the potential claim to Wausau until November 12, 2004. Unaware of the prior tender to QBE by the NYC EDC, and without the benefit of the Complaint that was not filed until December 28, 2004, Wausau immediately began to undertake an investigation to review the contracts of the various contractors on the job site and to investigate which contractors may have responsibility.

Wausau sought information from its Named Insured, Owen Steel Company, Inc. ("Owen Steel"), which provided a package of documents on October 4, 2004. This package included a notice of claim from the NYC EDC, the workers compensation form filed by John Moore's employer, A. J. McNulty & Company ("McNulty"), the subcontract between Owen Steel and McNulty, and McNulty's insurance certificate. On October 5, 2004, Mr. Morrissiey spoke with Spencer Brown and Kevin Phillips of Owen Steel. Although they did not witness the accident, they gave Mr. Morrissiey information about some of the contractors on the project and generally the cause of the occurrence. This is when Wausau was first advised that the work of the masonry subcontractors might have caused the accident. Messrs. Brown and Phillips were, however, unaware of the identity of these masonry subcontractors. Wausau was advised to contact Robert Doerr of McNulty for more information.

11

On October 7, 2004, Mr. Morrissiey telephoned Mr. Doerr to ascertain more information about the subcontractors, particularly the masonry subcontractors. Mr. Doerr was not available. Mr. Morrissiey left a voice-mail message. On October 20, 2004, Mr. Morrissiey telephoned the NYC EDC and spoke with Martin Bree. He asked Mr. Bree for his assistance in identifying some of the other contractors at the site at the time of the accident. Mr. Bree advised that he did not know, but that he would review his files for more information. Mr. Bree also advised that he had additional information regarding the accident, including McNulty's incident report, and that he would forward this information to Wausau. Mr. Morrissiey asked that Mr. Bree provide the contracts for all of the contractors that NYC EDC had hired for the project. Mr. Bree advised that he would not provide copies of all of the contracts, as that would require copying over twenty (20) different contracts. Mr. Morrissiey told him that Wausau was specifically looking for any contractors for masonry and/or demolition work. Mr. Bree advised that he would search the contracts and get back to him.

Wausau had to go to third parties for this information because neither Skanska nor Owen Steel had the information. They were not parties to the construction contracts at issue. Rather, the contracts were between the NYC EDC and certain of the contractors.

On October 26, 2004, Wausau received a copy of the Owen Steel contract and the incident report from Mr. Bree. On that same date, Mr. Morrissiey again telephoned McNulty. They could not provide information concerning the identity of the masonry contractors. Mr. Morrissiey followed up with a telephone call to Owen Steel.

They also could not provide any additional information. **All of this investigation incurred prior to when Skanska first tendered the potential claim to Wausau on November 12, 2004 and when the Underlying Action was commenced on December 28, 2004. Unknown to Wausau, it appears that Kel-Tech and the NYC EDC had already placed QBE on notice of the accident.**

On November 19, 2004, Wausau followed up with an additional telephone call to Mr. Bree of the NYC EDC. Mr. Bree advised that he was sending Wausau the contract between the NYC EDC and Shroid Construction Inc. and the Takeover Agreement involving Kel-Tech. After Thanksgiving, on December 13, 2004, Wausau first received the contract between the NYC EDC and Shroid Construction Inc., and the Takeover Agreement, together with the certificate of insurance identifying NYC EDC and Skanska as additional insureds under the policy issued by QBE. Wausau tendered the claim to QBE that very same day.

As these facts show, Wausau provided reasonable notice of the occurrence to QBE. It undertook a prompt investigation of the facts, attempting to identify the responsible masonry contractors and their insurers. The very day Wausau learned that QBE was Kel-Tech's insurer, it notified QBE of the occurrence. Any alleged delay was occasioned by Wausau not being aware that QBE issued a policy that covered Skanska as an additional insured. A delay based upon this reason is excusable as a matter of law. See Otsego Mut. Fire Ins. Co. v. Darby, 79 Misc. 2d 80, 86, 358 N.Y.S.2d 314, 320 (1974)("[w]here the question of the timeliness of the notice of an occurrence by an additional insured to an insurer is involved and the additional insured is not aware of the

fact that he was covered under the policy issued to the named insured, delay in giving such notice has been held excusable"). In fact, QBE had already been promptly notified of the occurrence by both Kel-Tech and the NYC EDC, and Wausau tendered the claim even before the Underlying Action was commenced.

Therefore, assuming, arguendo, that notice of occurrence provided by Kel-Tech and the NYC EDC was insufficient, and that Skanska and plaintiffs had an independent obligation to notify QBE of the occurrence, this Court should determine, as a matter of law, that Wausau provided reasonable notice of the occurrence to QBE, and that plaintiffs offered a valid excuse for any alleged delay.

Accordingly, QBE has not, and cannot, create a genuine and triable issue of fact based upon its "late notice of occurrence" defense.

## Point II

## QBE OWES SKANSKA AND THE NYC EDC A DUTY TO DEFEND

In opposing plaintiffs' motion for partial summary judgment and in arguing for summary judgment dismissing the Complaint, QBE improperly attempts to litigate the actual facts in the Underlying Action in arguing that the claims in the Underlying Action do not arise from the work of its Named Insured, Kel-Tech. This is not the proper forum to make such arguments. Neither the plaintiff, John Moore, nor the defendants in the Underlying Action, including the NYC EDC, Skanska, and Kel-Tech, are parties to the instant lawsuit.

Determination of the duty to defend does not require, or allow, for this Court to delve into matters and issues that are the province of the Court in the Underlying

14

Action. The duty to defend is not based upon the actual facts from which the accident arose. Rather, it is triggered by the allegations of an underlying action. See International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 424 (2d Cir. 2002); Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 969 (1993); Avondale Indus., Inc. v. Travelers Indem. Co., 887 F.2d 1200, 1204 (2d Cir. 1989)("[t]he duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased"). The Court of Appeals of New York, in describing the test for determining the duty to defend, has recently stated as follows:

> It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is "exceedingly broad" and an insurer will be called upon to provide a defense whenever the allegations of the complaint "suggest ... **a reasonable possibility** of coverage" (*Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 609 N.E.2d 506 [1993] ). "If, liberally construed, the claim is within the embrace of the policy, **the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be**" (*Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670, 439 N.Y.S.2d 858, 422 N.E.2d 518 [1981] ).
>
> The duty remains "even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered" (*Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 63, 571 N.Y.S.2d 672, 575 N.E.2d 90 [1991] ). For this reason, when a policy represents that it will provide the insured with a defense, we have said that it actually constitutes "litigation insurance" in addition to liability coverage (see *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 476 N.E.2d 272 [1984], quoting *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 320 N.E.2d 619

[1974] ). **Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course.** (Emphasis supplied.)

Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 179-180 (2006).

QBE does not dispute that BP Air Conditioning Corp. v. One Beacon Ins. Group, 33 A.D.3d 116, 821 N.Y.S.2d 1 (1st Dep't 2006) is directly on-point and, if followed, compels the grant of plaintiffs' motion for partial summary judgment and the denial of QBE's cross-motion for summary judgment. QBE, instead, argues that this Court should follow decisions by the Second and Fourth Departments.

The Fourth Department, Appellate Division, recently issued a decision in which it followed BP Air Conditioning Corp.. See City of Niagara Falls v. Merchants Ins. Group, __ A.D.3d __, __ N.Y.S.2d __, 2006 WL 3334488 (4th Dep't Nov. 17, 2006).[1] In City of Niagara Falls, the City of Niagara Falls (the "City") commenced an action against Merchants Insurance Group ("Merchants") alleging that Merchants owed it a duty to defend and indemnify for an underlying action. The plaintiffs brought a claim against the City and Merchants' Named Insured, a city contractor, alleging neglience in the maintenance of a vacant lot where one of the plaintiffs in the underlying action were injured. The City was included as an additional insured on Merchants' policy "only with respect to liability arising out of [the named insured's] ongoing operations performed for [the City]." Id., 2006 WL 3334488 at *1. In the underlying action, by Order dated

---

[1] A copy of the City of Niagara Falls decision is annexed hereto as Exhibit "A" for the Court's convenience.

16

September 20, 2005, Merchants' Named Insured was granted summary judgment dismissing all claims against it. Id. Merchants argued that this Order precluded any duty to defend.

The Fourth Department rejected Merchants' argument, and held that Merchants owed the City a duty to defend until its Named Insured was actually dismissed from the underlying action. Id. at *2. The Fourth Department reasoned that the duty to defend is based upon the allegations of the underlying action, and a duty to defend arises whenever the allegations of the complaint "suggest . . . a reasonable possiblity of coverage." Id. at *2 (citing, among others, BP Air Conditioning Corp., 33 A.D.3d 116, 821 N.Y.S.2d 1). It did not matter that claim was later adjudicated as not arising from Merchants' Named Insured's ongoing operations.

The cases QBE cites are not remotely on-point or actually support plaintiffs' arguments. In N. Kruger, Inc. v. CNA Ins. Co., 242 A.D.2d 566, 567, 662 N.Y.S.2d 529 (2d Dep't 1997), the Court, in denying the additional insureds' ("Kruger") and the insurer's motions for summary judgment, noted that the additional insured language was very limited, and that Kruger, "the general contractor, is covered only for its vicarious liability for the work of the subcontractor, DME Contracting, Inc., performed for or on its behalf." In making this ruling, the Second Department specifically limited its ruling as follows:

> This is distinct from coverage for liability "arising out of" the work of the subcontractor for or on behalf of Kruger. Under the latter, broader construction, there would be coverage for the additional insured even in the absence of a negligent act or omission of the subcontractor, so long as the claim against

Kruger stemmed from the fact that the subcontractor was performing its contracted-for services for the plaintiff.

Id. at 567, 662 N.Y.S.2d at 529-530. The Second Department thus implies that it would have affirmed the grant of summary judgment in favor of Kruger had the policy contained this broader language.

In the case at bar, the QBE policy contains this broader language. As QBE admits, it extends coverage to Skanska and the NYC EDC for "liability arising out of [Kel-Tech's] work." QBE thus owes coverage to Skanska and the NYC EDC even in the absence of a negligent act or omission by Kel-Tech. Unlike the more limited additional insured coverage language in N. Kruger, Inc., the language in the QBE policy gives rise to a duty to defend based upon the allegations in the Underlying Action.

In Yondt v. Boulevard Mall Co., 306 A.D.2d 882, 760 N.Y.S.2d 914 (4th Dep't 2003), the Fourth Department did not address issues concerning the duty to defend under an insurance policy. Rather, the action concerned a breach of contract and action for indemnification by a property owner against a contractor, and the Court was properly addressing issues of liability among the parties to the suit. The Fourth Department's view of the duty to defend under an insurance policy is expressed in City of Niagara Falls, 2006 WL 3334488, which is discussed above.

The final case QBE cites, Ceron v. Rector, Church Wardens & Vestry Members of Tinity Church, 224 A.D.2d 475, 638 N.Y.S.2d 476 (2d Dep't 1996), is also a breach of contract action and does not involve the duty to defend under any insurance policy.

18

QBE's argument that this Court should follow the decisions of the Second Department Appellate Division, rather than the First Department Appellate Division, is unsustainable on three grounds. First, there is no conflict among the Departments. All of the Departments follow the "reasonability possibility" test in determining the existence of a duty to defend. See Automobile Ins. Co. of Hartford v. Cook at 137, 818 N.Y.S.2d at 179-180. Second, this Court is based within the First Department Appellate Division, and this insurance coverage action is properly venued in this Court. If the rule is that this Court should follow the decisional law of the Department in which it sits, the decisional law of the First Department Appellate Division should govern this coverage dispute. Third, this Court is supposed to base its determinations of law upon how the New York Court of Appeals would decide the issue. See Vargas v. Boston Chicken, Inc., 269 F. Supp. 2d 92, 97 (E.D.N.Y. 2003). "To simply follow the reasoning in the department where the action arose and where the district court sits is without legal basis and is inappropriate." Id.; see also Michalski v. Home Depot, Inc., 225 F.3d 113, 116-17 (2d. Cir. 2000).

In applying the "reasonable possibility" test to the case at bar, there can be no doubt that QBE is obligated to defend Skanska and the NYC EDC in the Underlying Action. QBE's argument – that Kel-Tech had no responsibility for the accident alleged in the Underlying Action – is nothing more than a claim that John Moore's allegations in the Underlying Action against Kel-Tech are groundless or baseless. Skanska and the NYC EDC, however, are entitled to litigation insurance, to a defense, even for groundless and baseless claims. See Ruder & Finn Inc., 52 N.Y.2d at 670, 439 N.Y.S.2d at 861.

In the Underlying Action, John Moore alleges that his injuries were caused

19

by the negligence of, among other defendants, Kel-Tech, the Named Insured on the QBE policy. That policy covers Skanska and the NYC EDC as additional insureds "with respect to liability arising out of '[Kel-Tech's] work' for that Insured by or for [Kel-Tech]." Plainly, if Skanska and the NYC EDC are ultimately held liable to John Moore, such liability would "aris[e] out of [Kel-Tech's] work" for Skanska and the NYC EDC to the extent the fact-finder in the Underlying Action were to determine that Kel-Tech's negligence in the course of its work as a subcontractor was a contributing cause of John Moore's injuries. Even if this Court were to determine that Kel-Tech's work was not a cause of John Moore's accident, that ruling would not be binding upon John Moore or any of the parties to the Underlying Action. Thus, regardless of this Court's findings or determinations, as long as Kel-Tech is still a party in the Underlying Action, there remains a reasonable possibility that any liability on the part of Skanska and the NYC EDC in the Underlying Action arises out of Kel-Tech's work. Thus, there is a "reasonable possibility" that the Underlying Action will result in a judgment against Skanska and the NYC EDC within the scope of Kel-Tech's policy with QBE. See Continental Cas. Co. v. Rapid-American Corp. at 648, 593 N.Y.S.2d at 969; BP Air Conditioning Corp. at 118-124, 821 N.Y.S.2d at 2-6. This "reasonable possibility" gives rise to a duty to defend the Underlying Action owed by QBE to Skanska and the NYC EDC. It matters not to the duty to defend that Kel-Tech may be ultimately determined to have no responsibility for John Moore's accident. See City of Niagara Falls, 2006 WL 3334488 at *2.

Accordingly, this Court should determine and declare that QBE is required to provide a defense to Skanska and the NYC EDC for the Underlying Action.

20

## Point III

## THE POSSIBLE EXISTENCE OF OTHER AVAILABLE INSURANCE COVERAGE IS NOT A DEFENSE TO COVERAGE

QBE's argument that not all applicable insurance policies are before this Court, or even that Scottsdale may owe primary coverage under its policy, is not a defense to QBE's coverage obligations and is irrelevant to the issues raised by the instant motions. That some other insurer may also owe a duty to defend to Skanska and the NYC EDC for the Underlying Action does not relieve or limit QBE's duty to them. See Continental Cas. Co. v. Rapid-American Corp., 177 A.D.2d 61, 581 N.Y.S.2d 669, 674-75 (1st Dep't 1992), aff'd, 80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993); Mendes & Mount v. American Home Assur. Co., 97 A.D.2d 384, 467 N.Y.S.2d 596, 598 (1st Dep't 1983)("[p]laintiffs' right to recover the entire amount expended in the defense from [defendant insurer] cannot be diminished because there may be additional insurers which may also have duties to defend").

QBE has not disputed that its coverage is primary as compared to the coverage afforded Skanska and the NYC EDC under plaintiffs' policies. With respect to Skanska's unknown insurer, or even Scottsdale, QBE is free to pursue co-insurance claims against them. That right, however, does not grant QBE the ability in the meantime to deny and refuse to abide by its duty to defend.[2]

---

[2] QBE, in respond to Plaintiffs' Local Civil Rule 56.1 Statement, did not dispute that Wausau's policy was issued to Owen Steel Company, Inc., as the first Named Insured, and that Axis' policy was issued to A. J. McNulty & Company. While the insurer that issued the liability insurance policy to Skanska does not appear to be a party to this lawsuit, QBE has been free to seek non-party discovery of that insurer and/or join that insurer to this action via a third-party action. QBE has not taken any such action.

## CONCLUSION

For the foregoing reasons, this Court should grant plaintiffs' motion for partial summary judgment on the first claim for relief in the Complaint, determine and declare that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC for the Underlying Action, determine and declare that coverage under plaintiffs' policies is excess over the coverage afforded under the QBE policy, deny QBE's cross-motion for summary judgment, and grant plaintiffs the costs and disbursements of this action together with such other and further relief as which this Court deems just and proper.

Dated:    New York, New York
          December 4, 2006

Respectfully submitted,

JAFFE & ASHER LLP

By: _____
   Marshall T. Potashner, Esq. (MTP-3552)
   Attorneys for Plaintiffs
   WAUSAU UNDERWRITERS INSURANCE
   COMPANY and AXIS SPECIALTY
   INSURANCE COMPANY
   600 Third Avenue, 9th Floor
   New York, New York 10016
   (212) 687-3000

# EXHIBIT A

Westlaw Attached Printing Summary Report for POTASHNER,MARSHA 3942931

| | |
|---|---|
| Date/Time of Request: | Friday, December 01, 2006 11:34:00 Central |
| Client Identifier: | MOORE/LM |
| Database: | NY-CS |
| Citation Text: | 2006 WL 3334488 |
| Lines: | 80 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

## Westlaw.

2006 WL 3334488
--- N.Y.S.2d ----, 2006 WL 3334488 (N.Y.A.D. 4 Dept.), 2006 N.Y. Slip Op. 08444
(Cite as: 2006 WL 3334488 (N.Y.A.D. 4 Dept.))

Supreme Court, Appellate Division, Fourth Department, New York.
CITY OF NIAGARA FALLS, Plaintiff-Respondent,
v.
MERCHANTS INSURANCE GROUP, Defendant-Appellant.

Nov. 17, 2006.

Appeal from an order of the Supreme Court, Niagara County (Richard C. Kloch, Sr., A.J.), entered February 15, 2006. The order denied defendant's motion for summary judgment.

Brown & Kelly, Llp, Buffalo (Lisa T. Sofferin of Counsel), for Defendant-Appellant.

Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, Hicksville (Thomas P. Mc Daid, Jr., of Counsel), for Plaintiff-Respondent.

PRESENT: HURLBUTT, A.P.J., SCUDDER, GORSKI, AND SMITH, JJ.

MEMORANDUM:

*1 Plaintiff, City of Niagara Falls (City), commenced this action seeking a declaration that defendant has a duty to defend and indemnify it in the underlying action, and defendant thereafter moved for summary judgment seeking a declaration that it has no such duty. We conclude that Supreme Court erred in denying defendant's motion in its entirety. The plaintiffs in the underlying action alleged that the City and defendant's named insured, an entity with which the City contracted to mow and clear debris from vacant lots owned by the City, were negligent in the maintenance of a vacant lot where one of the plaintiffs in the underlying action was injured. The City is named as an additional insured on the commercial liability policy issued to defendant's named insured and, as such, receives coverage "only with respect to liability arising out of [the named insured's] ongoing operations performed for [the City]." By an order granted September 20, 2005, the motion of defendant's named insured for summary judgment dismissing the complaint and cross claims in the underlying action against it was granted and, in support of its instant motion for summary judgment, defendant contends that it therefore has no duty to defend or indemnify the City in the underlying action.

"It is well settled that an insurance company's duty to defend is broader than its duty to indemnify. Indeed, the duty to defend is 'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest ... a reasonable possibility of coverage'.... 'If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured' " (Automobile Ins. Co. of Hartford v. Cook, 7 NY3d 131, 137; see BP A.C. Corp. v. One Beacon Ins. Group, 33 AD3d 116; Pavarini Constr. Co. v. Liberty Mut. Ins. Co., 270 A.D.2d 98, 99; 79th Realty Co. v. X.L.O. Concrete Corp., 247 A.D.2d 256). An additional insured "enjoy[s] the

same protection as the named insured" with respect to the duty of an insurer to provide a defense (*Pecker Iron Works of of N.Y. v. Traveler's Ins. Co.,* 99 N.Y.2d 391, 393 [internal quotation marks omitted] ).

Here, the complaint in the underlying action alleges that the City and defendant's named insured maintained property owned by the City in a "careless, reckless and negligent manner," and we therefore conclude that the claim is " 'within the embrace of the policy' " (*Automobile Ins. Co. of Hartford,* 7 NY3d at 137, quoting *Ruder & Finn v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 670, *rearg. denied* 54 N.Y.2d 753). Although defendant failed to establish its entitlement to judgment declaring that it had no duty to defend the City prior to September 20, 2005, the date on which the order absolving defendant's named insured of liability in the underlying action was granted (*see generally Zuckerman v. City of New York,* 49 N.Y.2d 557, 562), we nevertheless conclude that defendant's duty to defend the City ended when that order was granted (*see generally BP A.C. Corp.,* 33 AD3d at ----; *79th Realty Co.,* 247 A.D.2d at 257). We further conclude that, inasmuch as defendant's named insured has been absolved of liability in the underlying action, defendant is "relieved ... of its duty of indemnity" with respect to the City (*City of New York v. Consolidated Edison Co. of N.Y.,* 238 A.D.2d 119, 121; *see BP A.C. Corp.,* 33 AD3d at ----). We therefore modify the order accordingly.

*2 It is hereby ORDERED that the order so appealed from be and the same hereby is unanimously modified on the law by granting the motion in part and granting judgment in favor of defendant as follows:

It is ADJUDGED AND DECLARED that, with respect to the period after September 20, 2005, defendant has no duty to defend plaintiff in the underlying action, and that defendant has no duty to indemnify plaintiff in the underlying action

and as modified the order is affirmed without costs.

--- N.Y.S.2d ----, 2006 WL 3334488 (N.Y.A.D. 4 Dept.), 2006 N.Y. Slip Op. 08444

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.