# LAW OFFICES OF
## KRAL, CLERKIN, REDMOND, RYAN PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

(516) 742-3470
FAX (516) 742-6243

NEW YORK OFFICE
170 Broadway
New York, New York 10038
(212) 406-9710
Fax (212) 571-0874

496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/07

Andrew J. Mihalick – Ext. 213
amihalick@kcrrpg.com

February 26, 2007

Honorable Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street; Room 1660
New York, New York 10007-1312

MEMO ...

Re: Wausau Underwriters Ins. Co., et al., v. QBE Insurance Corp., et al.
Civil Action No. 06 CV 3212 (VM) (THK)
Our File No. 111059

Dear Judge Katz:

This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. Thank you for granting our recent request for permission to respond to Plaintiffs' February 6, 2007 correspondence to the Court (the "February 6th correspondence") on or before February 26, 2007.

Set out herein is Scottsdale's response to the issues raised by Plaintiffs in their February 6th correspondence. In making this response, Scottsdale refers to and incorporates herein, as if fully set out, its Rule 26 Disclosure served in this action and its responses, including objections, to Plaintiffs' discovery demands served on Scottsdale in this action.

Scottsdale does not concede, and indeed denies, Plaintiffs' assertion that Scottsdale has "refused to provide" relevant documents properly sought in discovery. Nevertheless, Scottsdale responds as follows to those numbered items in Plaintiffs' February 6th correspondence that seek production of additional documents from Scottsdale:

1) "Its claim file and electronic file, which it identifies as a computer 'notepad' it keeps for each claim maintained for the underlying action."

This item appears to be a restatement of Request No. 2 in Plaintiffs' First Request for Production of Documents to Scottsdale ("Plaintiffs' Document Requests"). Scottsdale does not understand precisely what, if any, distinction Plaintiffs intend by the phrase "claim file and electronic file." To the extent that Plaintiffs are demanding production of Scottsdale's claim file in

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 2
February 26, 2007
Honorable Theodore H. Katz

the underlying action,[1] Scottsdale states that, upon agreement by all parties to this action to an appropriate confidentiality agreement, it will make available for inspection by Plaintiffs, at a mutually agreeable time at the offices of Scottsdale's counsel, a copy of the non-privileged and non-work-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or before the date of service of the underlying lawsuit on Scottsdale's insured, Arena Construction Co., Inc. ("Arena").

> 2) "Documents concerning Scottsdale's investigation concerning coverage under the Scottsdale policy for Skanska and NYC EDU for the Underlying Action."

This item appears to be a restatement of Request No. 3 of Plaintiffs' Document Requests. In its response to that request, Scottsdale referred Plaintiffs to documents, including the pleadings, served in the underlying action and Scottsdale policy, No. BCS0008003, for the period May 3, 2004 through May 3, 2005, issued to Arena (the "Scottsdale policy"). Scottsdale has already produced a copy of the latter document to Plaintiffs. Scottsdale's response also referred to the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates.

In addition to the documents that have already been produced to Plaintiffs, other documents that may pertain in a reasonably direct manner to Scottsdale's investigation as to whether or not the policy it issued to Arena provided coverage to Plaintiffs' insureds for some or all of the damages alleged in the underlying action, including reports of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates, are included in Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above.

> 3) "Documents concerning Scottsdale's investigation concerning compliance with the notice conditions of the Scottsdale policy for the claims alleged against Skanska and NYC EDU in the Underlying Action."

This item appears to be a restatement of Request No. 4 of Plaintiffs' Document Requests. Attached to Scottsdale's response to that request was a copy of correspondence, dated January 14, 2005, from Plaintiff Wausau Underwriters Insurance Company (Wausau") to Scottsdale, tendering the defense of Wausau's insureds in the underlying action to Scottsdale. That correspondence was Scottsdale's first notice of the underlying claim. Also attached to Scottsdale's discovery response was a copy of Scottsdale's January 21, 2005 response to the tender.

---

[1] "Underlying action" refers to, collectively, a personal injury action captioned Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Co., and Kel Tech Construction Inc., and a related third-party action, New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Co. v. Arena Construction Co., Inc., both venued in New York State Supreme Court, County of Richmond, and bearing Index Nos. 13568/04 and A13658/04, respectively. Scottsdale had issued a commercial general liability insurance policy to third-party Defendant Arena Construction Co., Inc.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 3
February 26, 2007
Honorable Theodore H. Katz

      Scottsdale's discovery response also referred Plaintiffs to documents, including the pleadings, served in the underlying action, and reports of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates. Reports of that investigation are included in Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above. Scottsdale also refers Plaintiffs to the notice provisions set out in the Scottsdale policy, a copy of which has been produced to Plaintiffs.

    4)    "Documents concerning communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action."

      This item appears to be a restatement of Request No. 5 of Plaintiffs' Document Requests. In further response to that request, and presuming that Plaintiffs are not demanding the production of documents, if any, that are subject to attorney-client privilege, attorney work-product immunity, or both, but that Plaintiffs may claim are included within the scope of this non-specific and overly broad demand, Scottsdale states that, with the exception of (i) the pleadings, including discovery requests and responses to discovery served in this action and in the underlying action, (ii) the correspondence attached as Exhibit A to Scottsdale's responses to Plaintiffs' Document Requests, and (iii) other correspondence, if any, sent by Scottsdale or its attorneys to Plaintiffs or other parties (or their attorneys) in this action or the underlying action, copies of all of which Scottsdale reasonably believes Plaintiffs or their attorneys already have, Scottsdale is not presently aware of documents comprising "communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action."

      If Plaintiffs will provide a precise and understandable description of what they mean by "documents concerning communications," which they purport to be seeking in this request, Scottsdale will respond appropriately.

    5)    "Documents upon which Scottsdale relied in determining to decline coverage to NYC EDU and Skanska for the underlying action."

      This item is a restatement and expansion of Request No. 6 of Plaintiffs' Document Requests. In addition, this item and Request No. 6 are duplicative of Item 2 of Plaintiffs' February 6th correspondence and Request No. 3 of the Document Requests, in that they seek documents that are included within the scope of those sought in Item 2 and Request No. 3.

      In its response to Request No. 6, Scottsdale referred Plaintiffs to the complaint in the underlying action, the correspondence between Wausau and Scottsdale attached as Exhibit A to the response, the Scottsdale policy, the pleadings, including discovery requests and responses to discovery served in the underlying action, and the results of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates. In further response, Scottsdale refers Plaintiffs to Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 4
February 26, 2007
Honorable Theodore H. Katz

> 6) "The contract between NYC EDU and Arena concerning the project."

This item is a duplicate of Request No. 8 of Plaintiffs' Document Requests. Plaintiffs have admitted that they already have this document. Wausau's January 14, 2005 tender letter to Scottsdale (a copy of which was included in Exhibit A to Scottsdale's responses to Plaintiffs Document Requests) contains the statement "We have obtained a copy of the contract between EDC and Arena Construction Company, identified as Contract 11490016." That letter also refers to the New York City Economic Development Corporation as "EDC," while Plaintiffs' February 6th correspondence identifies that same entity as "NYC EDU."

If Plaintiffs are now claiming that there is a different contract at issue, or that the copy that they have is incomplete, please let me know.

> 7) "Certificates of Insurance referring to the Scottsdale policy. Scottsdale has provided a certificate of insurance. The certificate, however, refers to "Attached Descriptions", [sic] which were not provided."

This item is a restatement of Request No. 9 of Plaintiffs' Document Requests. As Plaintiffs concede in their February 6th correspondence, Scottsdale has produced the certificate of insurance. Since discovery materials are not to be filed, Scottsdale is attaching copies of the second and third pages of that certificate, which includes the "attached descriptions" referred to by Plaintiffs, to the copies of this letter being mailed to Plaintiffs and Co-Defendant QBE Insurance Corp.

Plaintiffs' February 6th correspondence also questions Scottsdale's responses to four interrogatories in Plaintiffs' First Set of Interrogatories to Scottsdale ("Plaintiffs' Interrogatories"). Scottsdale's responses were, and remain fully proper. Nevertheless, in the spirit of cooperation, Scottsdale provides this further response.

In summary, the first three items, and the corresponding interrogatories, seek the identity of persons who were "involved in" any investigation by Scottsdale in connection with Wausau's January 14, 2005 tender and the decision to "disclaim coverage" for the underlying claim. Specifically, Item 1 of the February 6th correspondence (which restates Interrogatory No. 1 of Plaintiffs' Interrogatories) seeks "[t]he identity of individuals who were involved in any investigation conducted by Scottsdale with respect to the tender of the defense of Skanska and NYC EDU for the Underlying Action." Item 2 (which restates Interrogatory No. 2 of Plaintiffs' Interrogatories) seeks "[t]he identity of all individuals who were involved in the decision by Scottsdale to disclaim coverage for Skanska and NYC EDU for the Underlying Action." Item 3 (which restates Interrogatory No. 3 of Plaintiffs' Interrogatories and which is a subset and duplicative of Item 2) seeks "[t]he identity of all individuals who on Scottsdale's behalf made the decision to disclaim coverage for Skanska and the NYC EDU for the underlying action."

As an initial matter, Scottsdale points out that, under the circumstances of the underlying accident, coverage under the Scottsdale policy was not triggered. Accordingly, because the Scottsdale policy did not provide coverage for the claim asserted, Scottsdale was under no obli-

gation to "disclaim" coverage. *E.g.*, State Insurance Fund v. Aetna Casualty & Surety Co., 283 A.D.2d 335, 336 (App. Div. 1st Dept 2001). Scottsdale did, however, conduct an appropriate investigation into the underlying claim promptly upon its receipt of Wausau's tender letter, which was Scottsdale's first notice of that claim.

In response to Interrogatory Nos. 1-3, Scottsdale identified its examiner for this claim, James Hardina, as its employee with information concerning Scottsdale's investigation with respect to what, if any, coverage obligations Scottsdale may have had in connection with the underlying claim, and Scottsdale's decision that, under the circumstances, the underlying accident did not trigger coverage under the Scottsdale policy. In addition, as noted in Scottsdale's responses to a number of Plaintiffs' Document Requests, David Morse & Associates conducted an investigation into the underlying claim for Scottsdale. Certain of those persons may be identified in the reports of that investigation contained in the Scottsdale claim file, which Scottsdale has offered above to make available for Plaintiffs' inspection.

Scottsdale's responses to those responses were, and remain, fully proper. As Scottsdale's claim examiner for this matter, Mr. Hardina had the primary responsibility for the investigation of the facts of the underlying accident, the analysis of coverage questions, and the decision as to whether or not there was any coverage to begin with, as well as other policy-related defenses that might be available. Plaintiffs, however, appear to seek to require Scottsdale to identify other individuals who "were involved" in some unspecified way with the matters that Mr. Hardina had primary responsibility for, without their first examining Mr. Hardina to determine whether or not additional inquiry of other persons is necessary or justified.

The fourth item in Plaintiffs' February 6th correspondence regarding Scottsdale's responses to Plaintiffs' Interrogatories seeks "[t]he identity of all individuals who act as the custodian of records maintained by Scottsdale concerning the Underlying Action." Item 4 corresponds to Interrogatory No. 6. Notwithstanding the blatantly irrelevant and harassing nature of that interrogatory, Scottsdale identified its claim examiner, James Hardina, as the person having information concerning the records maintained by Scottsdale with respect to this claim.

As discussed above, Mr. Hardina was the person principally responsible for the handling of this claim within Scottsdale. That responsibility included the receipt and collection of relevant documents for inclusion in the claim file. Without conceding the relevance of information pertaining to Scottsdale's document collection and retention policies to any of the allegations in the complaint in this matter, Mr. Hardina is, therefore, the best person from whom to seek information about the establishment, organization, and maintenance of the claim file.

Accordingly, Scottsdale respectfully requests that the Court not permit Plaintiffs' fishing expedition for the identities of Scottsdale employees who likely have less direct information regarding matters relevant to this lawsuit, or who may have had some limited or peripheral involvement in Scottsdale's response to the underlying claim, without a reasonable showing by Plaintiffs of a justifiable need for relevant information that is not available to them from the information, documents, and persons already identified by Scottsdale.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 6
February 26, 2007
Honorable Theodore H. Katz

  Finally, Plaintiffs raise the issue of a privilege log, "assuming [Scottsdale] is withholding any documents as privileged." Even a cursory examination of many of Plaintiffs' discovery requests make it clear that they are so broad as to make it possible, if not likely, that privileged or work-product information or documents would be encompassed within the scope of the discovery request. For example, Document Request Nos. 3 and 4 demand "documents concerning" particular activities, and Document Request No. 5 demands "documents concerning communications."

  In its responses to such non-specific and overly broad discovery requests, Scottsdale may have asserted a privilege objection, as well as specifically incorporating the vagueness and ambiguity, over-breadth, lack of relevance, and unreasonable burden and oppression objections set out in the General Objections section of its responses to Plaintiffs' discovery. Any obligation to identify privileged or work-product documents purportedly called for in such discovery requests would arise only if and when Scottsdale's vagueness, over-breadth, relevance, and undue burden objections have been heard and overruled. Scottsdale objects to any attempt by Plaintiffs to require Scottsdale to undertake the burden and expense of attempting to identify irrelevant privileged and work-product documents before its other, more fundamental objections have been resolved. Scottsdale will, of course, comply with its obligations under the Federal Rules of Civil Procedure with respect to any claim of privilege or protection as trial preparation material that it might assert as to documents or portions of documents properly sought by Plaintiffs.

  As can be seen from the above discussions, Plaintiffs' bald assertions that Scottsdale has "refused to provide" documents and information properly sought by them in discovery are unsupported and misrepresent the facts. Scottsdale has provided Plaintiffs with requested information and documents, and, as noted above, will make additional materials available to them. Under the circumstances, Scottsdale respectfully suggests that a conference with the Court would not be a productive use of the Court's or the parties time unless and until Plaintiffs have examined the materials and information that have been and are being produced by Scottsdale and can identify specific, relevant issues that remain.

  Thank you for your attention to this matter.

Very truly yours,

**MEMO ENDORSED**

Andrew J. Mihalick

cc: Marshall T. Potashner, Esq. (with enc.)
   William H. Bave, Esq.     "
   Leonard Porcelli, Esq.    (w/o enc.)

*Based upon this response, the parties are to execute a Confidentiality Order and then Scottsdale is to produce the documents described above that are responsive to the requests. The parties are to further confer in light of Scottsdale's response & are to see if any actual disputes remain.*

*So ordered*
*3/5/07 Theodore H. Katz*
*USMJ*