UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE      Index No. 06 CV 3212 (VM/THK)
COMPANY,

                              Plaintiffs,

       - against -                                        **OBJECTIONS TO**
                                                                 **MAGISTRATE'S ORDER**

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                              Defendants.
-------------------------------------------------------------------x

**M A D A M S/S I R S:**

        Plaintiffs WAUSAU UNDERWRITERS INSURANCE ("Wausau") and AXIS SPECIALITY INSURANCE COMPANY ("Axis"), pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b), as and for their objections to the Memo Endorsed Order of Magistrate Judge Theodore H. Katz, signed and filed on March 22, 2007 and entered on March 23, 2007 (Document No. 47) (the "March 22 Order")(Exhibit "A" hereto), state as follows:

        1.     Magistrate Judge Katz erred in issuing the Order without affording the opportunity for plaintiffs to be heard, and thus denied plaintiffs due process and a fair hearing on the issues. The discovery issues were initially raised in a letter to Magistrate Judge Katz dated January 15, 2007, wherein plaintiffs requested, <u>inter alia</u>, a pre-motion conference with Magistrate Judge Katz to address defendant SCOTTSDALE INSURANCE COMPANY's complete failure to provide discovery. Per the Court's request, we

1

submitted a second letter dated February 6, 2007 providing additional detail regarding the outstanding discovery.

2. Scottsdale responded to our February 6, 2006 letter 20 days later on February 26, 2007. Per the Court's permission, plaintiffs submitted a reply to Scottsdale's letter on March 5, 2007. We had received permission from Magistrate Judge Katz's chambers to submit the reply.

3. However, prior to receiving our reply, on March 5, 2007, Magistrate Judge Katz issued a Memo Endorsed Order on Scottsdale's February 26, 2007 letter, which stated as follows:

> Based upon this response, the parties are to execute a Confidentiality Order and then Scottsdale is to produce the documents described above that are responsive to the requests. The parties are to further confer in light of Scottsdale's response and are to see if any actual disputes.

A copy of this Memo Endorsed Order is annexed hereto as Exhibit "B".

4. On March 14, 2007, Scottsdale submitted a response to plaintiffs' March 5, 2007 letter. This letter was sent by regular mail, and received by Magistrate Judge Katz on March 19, 2007.

5. The March 14, 2007 response did not request any additional relief, and the March 5, 2007 Order was still in effect. Without any notice that the March 5, 2007 Order was no longer in effect or that the Court was considering the March 14, 2007 letter a new application, the Court rendered the March 22 Order. Plaintiffs were denied any opportunity to respond to the March 14, 2007 letter.

    6. The March 22 Order is clearly erroneous in that it limits Scottsdale's obligation to produce documents from its claims file to documents it unilaterally deems to be non-privileged or non-work product, which documents were created prior to the commencement of the underlying action that is the subject of this insurance coverage action. This ruling essentially frees Scottsdale from any discovery obligations since likely most, if not all, documents related to Scottsdale's coverage investigation and determination would have been created after the commencement of the underlying action and not before it.

    7. Generally, the work-product doctrine could only apply to documents created after the declination of coverage. See <u>Congregation BNEI Luzer, Inc. v. Maryland Casualty Co.</u>, No. 04 Civ. 2353 (BSJ/DF), 2004 WL 2609570, *2 (S.D.N.Y. Nov. 17, 2004); <u>Mount Vernon Fire Ins. Co. v. Try 3 Building Services, Inc.</u>, No. 96 CIV. 5590 (MJL/HBP), 1998 WL 729735, *8 (S.D.N.Y. Oct. 16, 1998). Moreover, that a document was created after the declination of coverage "does not compel the conclusion that it was prepared in anticipation of litigation." <u>Westhemeco Ltd. v. New Hampshire Ins. Co.</u>, 82 F.R.D 702, 709 (S.D.N.Y. 1979). Scottsdale has never issued any disclaimer of coverage.

    8. The March 22 Order is clearly erroneous in that Scottsdale is freed from any obligation to provide a privileged documents log in compliance with Local Civil Rule 26.2, and thus it allows Scottsdale to unilaterally withhold documents without any ability for plaintiffs or the Court to determine whether any claim of privilege is properly

asserted. See One Beacon Ins. Co. v. Forman Intern Ltd., No. 04 Civ. 2271(RWS), 2006 WL 3771010, *6 (S.D.N.Y. Dec. 15, 2006). In light of Scottsdale's argument that every document created after the commencement of the underlying action is privileged, it is clear that it attempts to improperly assert a privilege to a whole class of documents that should be produced.

9. The March 22 Order is clearly erroneous because it did not hold that Scottsdale waived any privilege by failing to produce a privileged documents log in compliance with Local Civil Rule 26.2. See In re Air Crash at Belle Harbor New York on November 21, 2001, No. 02 Civ. 0439 (RWS), 02 MDL 1448 (RWS), 2007 WL 635723, *2 (S.D.N.Y. March 1, 2007); Lopez v. The City of New York, No. 05-CV-3624 (ARR/KAM) 2007 WL 869590, * 3 (E.D.N.Y. March 20, 2007).

10. The March 22 Order is clearly erroneous because it held that Scottsdale was not required to produce a privileged documents log until objections based upon relevance, vagueness, over breadth, or undue burden have been decided, but the Magistrate Judge did not address those issues, leaving both the privileged documents log issue and discovery herein in limbo. To the extent the March 22 Order implicitly held that all of plaintiffs' discovery demands are irrelevant, vague, overly broad, or unduly burdensome, the March 22 Order is clearly erroneous.

11. The March 22 Order is clearly erroneous in holding that Scottsdale need not produce "[d]ocuments concerning communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying

4

Action," without a more specific request. Scottsdale's argument that it should not have to "re-produce" documents was false, in that it has never produced **any** of the requested documents in the first place. In addition, that plaintiffs may have copies of similar or even the same documents in their possession does not excuse Scottsdale from its discovery obligation. See Land Ocean Logistics v. Aqua Gulf Corp., 181 F.R.D. 229, 240 (W.D.N.Y 1998); Westhemco Ltd., 82 F.R.D at 710.

    12. The March 22 Order erred to the extent it held that the demand was not specific. It is limited to a relative narrow scope of documents – only those "concerning communications . . . concerning the Underlying Action." The terms "document", "concerning", and "communications" are specifically defined terms pursuant to Local Civil Rule 26.3(b). The term "Underlying Action" is specifically defined to mean and refer to the lawsuit entitled John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index No. 13658/04, in the Supreme Court of the State of New York, County of Richmond. The Underlying Action is the specific claim for which insurance coverage from Scottsdale is sought in this action. Neither Wausau nor Axis is a party to the Underlying Action.

    13. Plaintiffs would not have copies of responsive documents with respect to "[d]ocuments concerning communications with . . . any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action" that were not addressed to either Wausau or Axis. For example, a letter from Scottsdale to John

Moore's counsel that was not cc'ed to either Wausau or Axis would not be in plaintiffs' possession. As such, at the very least, the March 22 Order was clearly erroneous to the extent Scottsdale was not directed to produce copies of the requested documents to the extent that they, on their face, do not indicate that copies were previously sent to Wausau or Axis.

14. Even with respect to documents that, on their face, indicate that they were sent to Wausau or Axis, it impossible for plaintiffs to determine whether they have copies of all responsive documents without seeing Scottsdale's documents. The March 22 Order was clearly erroneous in that it allowed Scottsdale to unilaterally determine what documents plaintiffs actually already have in their possession. As previously noted, that plaintiffs may have copies of similar or even the same documents in their possession does not excuse Scottsdale from its discovery obligation. See Land Ocean Logistics, 181 F.R.D. at 240.

15. All of the documents sought are highly relevant to the issues in this case. Among other defenses, Scottsdale has raised that it is not obligated to pay for the defense of the Underlying Action because it did not receive timely notice (Fourth affirmative defense), and that it is not obligated to pay for the defense prior to "notification of the suit to" Scottsdale (Tenth Affirmative Defense). The documents addressed in this letter will bear directly on those issues. In addition, these documents will disclose information concerning the investigation undertaken by Scottsdale.

**WHEREFORE**, it is respectfully requested that this Court Order that Scottsdale fully comply with plaintiffs' outstanding document requests, and that Scottsdale has waived all claims of privilege or work-product doctrine by reason of its failure to provide a privileged documents log or, in the alternative, that Scottsdale produce a privileged documents log within a reasonable time set by the Court.

Dated:  New York, New York
        March 29, 2007

Yours, etc.,

JAFFE & ASHER LLP

By: _____
    Marshall T. Potashner (MTP-3552)
MPotashner@jaffeandasher.com
Attorneys for Plaintiffs
WAUSAU UNDERWRITERS
INSURANCE COMPANY and
AXIS SPECIALTY INSURANCE
COMPANY
600 Third Avenue, 9TH Floor
New York, New York 10016
(212) 687-3000

TO:  WILSON, BAVE, CONBOY, COZZA & COUZENS, P.C.
     Attorneys for Defendant
     QBE INSURANCE COMPANY
     Two William Street
     White Plains, New York  10601
     (914) 686-9010

     KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP
     Attorneys for Defendant
     SCOTTSDALE INSURANCE COMPANY
     69 East Jericho Turnpike
     Mineola, New York  11501
     (516) 742-3470

LAW OFFICES OF
KRAL, CLERKIN, REDMOND,
PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/07

NEW YORK OFFICE
170 Broadway
New York, New York 10038
(212) 406-9710
Fax (212) 571-0874

(516) 742-3470
FAX (516) 742-6243

SUFFOLK OFFICE
496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289

Andrew J. Mihalick – Ext. 213
amihalick@kcrrpg.com

RECEIVED
MAR 19 2007
CHAMBERS OF
THEODORE H. KATZ
U.S. MAGISTRATE JUDGE

March 14, 2007

Honorable Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street; Room 1660
New York, New York 10007-1312

   Re: <u>Wausau Underwriters Ins. Co., et al., v. QBE Insurance Corp., et al.</u>
     <u>Civil Action No. 06 CV 3212 (VM) (THK)</u>
     <u>Our File No. 111059</u>

Dear Judge Katz:

  This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. This is in response to Plaintiffs' March 5, 2007 letter to the Court purporting to raise, at best, premature and ultimately groundless issues with respect to Scottsdale's February 26, 2007 correspondence regarding its responses to Plaintiffs' discovery demands.

  Paragraphs 1, 3, and 5 of Plaintiffs' letter attempt to create issues where none exist. Scottsdale has, pursuant to Your Honor's March 5, 2007 Memo Endorsed Order, sent a Confidentiality Agreement and Order to counsel for Plaintiffs and Co-Defendant QBE Insurance Company for signature. Once that has been signed, I will file it to be "so ordered," and make the production of documents pursuant to Scottsdale's February 26, 2007 correspondence, and as referred to in the Memo Endorsed Order. Paragraph 5 of Plaintiffs' letter ignores the sequence established by the Memo Endorsed Order, that the parties execute a confidentiality order before Scottsdale's production of documents.

  In the event that Scottsdale asserts a claim of privilege with respect to any responsive documents properly requested by Plaintiffs, Scottsdale will comply with its obligations under the Federal Rules of Civil Procedure regarding such claims. As discussed in its February 26, 2007 correspondence, however, (and contrary to the penultimate paragraph of Plaintiffs' March 5, 2007 letter) neither the Federal Rules of Civil Procedure nor Local Rule 26.2 require Scottsdale to provide a privilege log with respect to documents, if any, whose production is objectionable in the first instance due to their lack of relevance or the vagueness, overbreadth, or undue burden of the demands, unless and until those fundamental objections have been decided.



KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 2
March 14, 2007
Honorable Theodore H. Katz

Paragraph 2 of Plaintiffs' letter likewise attempts to raise a non-issue. In its February 26, 2007 correspondence, Scottsdale has offered to make available for Plaintiffs' inspection "a copy of the non-privileged and non-work-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or before the date of service of the underlying lawsuit on Scottsdale's insured." Nothing in Paragraph 2 of that letter limits that response in any additional way. Given the breadth and vagueness of Plaintiffs' document demand (notwithstanding its use of defined terms), Scottsdale properly sought to provide a concise description of certain of the documents in the claim file that it has offered to make available to Plaintiffs.

In Paragraph 4 of their March 5, 2007 letter, Plaintiffs appear to complain that they do not know if their own files include copies of pleadings, discovery demands and responses, and correspondence, if any, from Scottsdale or its attorneys to Plaintiffs or other parties or their attorneys. They then demand that Scottsdale be put to the time and expense of producing its copies of such documents, so that Plaintiffs can reassure themselves that they haven't misplaced a document. If Plaintiffs have any reasonable basis to suspect that they may not have received a document that has or should have been sent to them, they should advise the Court of the specifics, so that a focused response can be made, rather than cavalierly demanding the re-production of documents they likely already have.

Contrary to the January 14, 2005 statement of Plaintiff Wausau Underwriters, that they had a copy of their own insured's contract between their insured and Scottsdale's insured, Plaintiffs now assert that they do not have the entire contract, and seek to impose on Scottsdale the burden of providing them with a copy of their own document. Clearly, the burden on Plaintiffs of obtaining that document from Wausau's insured is less than the burden of production they seek to impose upon Scottsdale. Accordingly, it is respectfully submitted that they should not be permitted to shift that burden to Scottsdale.

In its February 26, 2007 letter, Scottsdale provided a full and detailed explanation of why its identification of its claim examiner assigned to this claim, James Hardina, was and remains a fully proper response to Plaintiffs' Interrogatory Nos. 1, 2, 3, and 6. As Scottsdale explained, Mr. Hardina had the primary responsibility for the investigation of the facts of the underlying accident, the analysis of coverage questions, and the decision as to whether or not there was any coverage to begin with, as well as other policy-related defenses that might be available. Mr. Hardina was also responsible for the receipt and collection of relevant documents for inclusion in the claim file.

Plaintiffs now disingenuously complain that Scottsdale has identified the employee best able to answer their questions about Scottsdale's investigation, its decision regarding coverage, and the maintenance of the claim file, rather than attempting to locate and identify less knowledgeable individuals. Further, Plaintiffs also suggest, rather incredibly, that it will be more costly to them to depose the Scottsdale employee who had principal responsibility for the handling of

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 3
March 14, 2007
Honorable Theodore H. Katz

the underlying claim, than it would be to depose other persons (if any) who may have had some indirect or peripheral involvement with the claim.

Scottsdale again respectfully suggests that a conference with the Court would not be a productive use of either the Court's or the parties time unless and until Plaintiffs have taken the time to examine the materials to be produced by Scottsdale and can identify specific, relevant additional discovery that they claim then remains.

Thank you for your attention to this matter.

Very truly yours,

Andrew J. Mihalick

cc:  Marshall T. Potashner, Esq.
     William H. Bave, Esq.
     Leonard Porcelli, Esq.

*The Court has considered the parties' submissions and its rulings are set forth in the margins above.*

3/20/07

SO ORDERED

THEODORE H. KATZ
UNITED STATES MAGISTRATE [JUDGE]

# LAW OFFICES OF
## KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

(516) 742-3470
FAX (516) 742-6243

Andrew J. Mihalick – Ext. 213
amihalick@kcrrpg.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/5/07

NEW YORK OFFICE
170 Broadway
New York, New York 10038
(212) 406-9710
Fax (212) 571-0874

496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289

February 26, 2007

Honorable Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street; Room 1660
New York, New York 10007-1312



Re: <u>Wausau Underwriters Ins. Co., et al.</u>, v. <u>QBE Insurance Corp., et al.</u>
Civil Action No. 06 CV 3212 (VM) (THK)
<u>Our File No. 111059</u>

Dear Judge Katz:

This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. Thank you for granting our recent request for permission to respond to Plaintiffs' February 6, 2007 correspondence to the Court (the "February 6th correspondence") on or before February 26, 2007.

Set out herein is Scottsdale's response to the issues raised by Plaintiffs in their February 6th correspondence. In making this response, Scottsdale refers to and incorporates herein, as if fully set out, its Rule 26 Disclosure served in this action and its responses, including objections, to Plaintiffs' discovery demands served on Scottsdale in this action.

Scottsdale does not concede, and indeed denies, Plaintiffs' assertion that Scottsdale has "refused to provide" relevant documents properly sought in discovery. Nevertheless, Scottsdale responds as follows to those numbered items in Plaintiffs' February 6th correspondence that seek production of additional documents from Scottsdale:

1) "Its claim file and electronic file, which it identifies as a computer 'notepad' it keeps for each claim maintained for the underlying action."

This item appears to be a restatement of Request No. 2 in Plaintiffs' First Request for Production of Documents to Scottsdale ("Plaintiffs' Document Requests"). Scottsdale does not understand precisely what, if any, distinction Plaintiffs intend by the phrase "claim file and electronic file." To the extent that Plaintiffs are demanding production of Scottsdale's claim file in

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 2
February 26, 2007
Honorable Theodore H. Katz

the underlying action,[1] Scottsdale states that, upon agreement by all parties to this action to an appropriate confidentiality agreement, it will make available for inspection by Plaintiffs, at a mutually agreeable time at the offices of Scottsdale's counsel, a copy of the non-privileged and non-work-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or before the date of service of the underlying lawsuit on Scottsdale's insured, Arena Construction Co., Inc. ("Arena").

> 2) "Documents concerning Scottsdale's investigation concerning coverage under the Scottsdale policy for Skanska and NYC EDU for the Underlying Action."

This item appears to be a restatement of Request No. 3 of Plaintiffs' Document Requests. In its response to that request, Scottsdale referred Plaintiffs to documents, including the pleadings, served in the underlying action and Scottsdale policy, No. BCS0008003, for the period May 3, 2004 through May 3, 2005, issued to Arena (the "Scottsdale policy"). Scottsdale has already produced a copy of the latter document to Plaintiffs. Scottsdale's response also referred to the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates.

In addition to the documents that have already been produced to Plaintiffs, other documents that may pertain in a reasonably direct manner to Scottsdale's investigation as to whether or not the policy it issued to Arena provided coverage to Plaintiffs' insureds for some or all of the damages alleged in the underlying action, including reports of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates, are included in Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above.

> 3) "Documents concerning Scottsdale's investigation concerning compliance with the notice conditions of the Scottsdale policy for the claims alleged against Skanska and NYC EDU in the Underlying Action."

This item appears to be a restatement of Request No. 4 of Plaintiffs' Document Requests. Attached to Scottsdale's response to that request was a copy of correspondence, dated January 14, 2005, from Plaintiff Wausau Underwriters Insurance Company (Wausau") to Scottsdale, tendering the defense of Wausau's insureds in the underlying action to Scottsdale. That correspondence was Scottsdale's first notice of the underlying claim. Also attached to Scottsdale's discovery response was a copy of Scottsdale's January 21, 2005 response to the tender.

---

[1] "Underlying action" refers to, collectively, a personal injury action captioned Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Co., and Kel Tech Construction Inc., and a related third-party action, New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Co. v. Arena Construction Co., Inc., both venued in New York State Supreme Court, County of Richmond, and bearing Index Nos. 13568/04 and A13658/04, respectively. Scottsdale had issued a commercial general liability insurance policy to third-party Defendant Arena Construction Co., Inc.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 3
February 26, 2007
Honorable Theodore H. Katz

Scottsdale's discovery response also referred Plaintiffs to documents, including the pleadings, served in the underlying action, and reports of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates. Reports of that investigation are included in Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above. Scottsdale also refers Plaintiffs to the notice provisions set out in the Scottsdale policy, a copy of which has been produced to Plaintiffs.

4) "Documents concerning communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action."

This item appears to be a restatement of Request No. 5 of Plaintiffs' Document Requests. In further response to that request, and presuming that Plaintiffs are not demanding the production of documents, if any, that are subject to attorney-client privilege, attorney work-product immunity, or both, but that Plaintiffs may claim are included within the scope of this non-specific and overly broad demand, Scottsdale states that, with the exception of (i) the pleadings, including discovery requests and responses to discovery served in this action and in the underlying action, (ii) the correspondence attached as Exhibit A to Scottsdale's responses to Plaintiffs' Document Requests, and (iii) other correspondence, if any, sent by Scottsdale or its attorneys to Plaintiffs or other parties (or their attorneys) in this action or the underlying action, copies of all of which Scottsdale reasonably believes Plaintiffs or their attorneys already have, Scottsdale is not presently aware of documents comprising "communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action."

If Plaintiffs will provide a precise and understandable description of what they mean by "documents concerning communications," which they purport to be seeking in this request, Scottsdale will respond appropriately.

5) "Documents upon which Scottsdale relied in determining to decline coverage to NYC EDU and Skanska for the underlying action."

This item is a restatement and expansion of Request No. 6 of Plaintiffs' Document Requests. In addition, this item and Request No. 6 are duplicative of Item 2 of Plaintiffs' February 6th correspondence and Request No. 3 of the Document Requests, in that they seek documents that are included within the scope of those sought in Item 2 and Request No. 3.

In its response to Request No. 6, Scottsdale referred Plaintiffs to the complaint in the underlying action, the correspondence between Wausau and Scottsdale attached as Exhibit A to the response, the Scottsdale policy, the pleadings, including discovery requests and responses to discovery served in the underlying action, and the results of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates. In further response, Scottsdale refers Plaintiffs to Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above.

## KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 4
February 26, 2007
Honorable Theodore H. Katz

    6)    "The contract between NYC EDU and Arena concerning the project."

This item is a duplicate of Request No. 8 of Plaintiffs' Document Requests. Plaintiffs have admitted that they already have this document. Wausau's January 14, 2005 tender letter to Scottsdale (a copy of which was included in Exhibit A to Scottsdale's responses to Plaintiffs Document Requests) contains the statement "We have obtained a copy of the contract between EDC and Arena Construction Company, identified as Contract 11490016." That letter also refers to the New York City Economic Development Corporation as "EDC," while Plaintiffs' February 6th correspondence identifies that same entity as "NYC EDU."

If Plaintiffs are now claiming that there is a different contract at issue, or that the copy that they have is incomplete, please let me know.

    7)    "Certificates of Insurance referring to the Scottsdale policy. Scottsdale has provided a certificate of insurance. The certificate, however, refers to "Attached Descriptions", [sic] which were not provided."

This item is a restatement of Request No. 9 of Plaintiffs' Document Requests. As Plaintiffs concede in their February 6th correspondence, Scottsdale has produced the certificate of insurance. Since discovery materials are not to be filed, Scottsdale is attaching copies of the second and third pages of that certificate, which includes the "attached descriptions" referred to by Plaintiffs, to the copies of this letter being mailed to Plaintiffs and Co-Defendant QBE Insurance Corp.

Plaintiffs' February 6th correspondence also questions Scottsdale's responses to four interrogatories in Plaintiffs' First Set of Interrogatories to Scottsdale ("Plaintiffs' Interrogatories"). Scottsdale's responses were, and remain fully proper. Nevertheless, in the spirit of cooperation, Scottsdale provides this further response.

In summary, the first three items, and the corresponding interrogatories, seek the identity of persons who were "involved in" any investigation by Scottsdale in connection with Wausau's January 14, 2005 tender and the decision to "disclaim coverage" for the underlying claim. Specifically, Item 1 of the February 6th correspondence (which restates Interrogatory No. 1 of Plaintiffs' Interrogatories) seeks "[t]he identity of individuals who were involved in any investigation conducted by Scottsdale with respect to the tender of the defense of Skanska and NYC EDU for the Underlying Action." Item 2 (which restates Interrogatory No. 2 of Plaintiffs' Interrogatories) seeks "[t]he identity of all individuals who were involved in the decision by Scottsdale to disclaim coverage for Skanska and NYC EDU for the Underlying Action." Item 3 (which restates Interrogatory No. 3 of Plaintiffs' Interrogatories and which is a subset and duplicative of Item 2) seeks "[t]he identity of all individuals who on Scottsdale's behalf made the decision to disclaim coverage for Skanska and the NYC EDU for the underlying action."

As an initial matter, Scottsdale points out that, under the circumstances of the underlying accident, coverage under the Scottsdale policy was not triggered. Accordingly, because the Scottsdale policy did not provide coverage for the claim asserted, Scottsdale was under no obli-

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 5
February 26, 2007
Honorable Theodore H. Katz

gation to "disclaim" coverage. *E.g.*, State Insurance Fund v. Aetna Casualty & Surety Co., 283 A.D.2d 335, 336 (App. Div. 1st Dept 2001). Scottsdale did, however, conduct an appropriate investigation into the underlying claim promptly upon its receipt of Wausau's tender letter, which was Scottsdale's first notice of that claim.

In response to Interrogatory Nos. 1-3, Scottsdale identified its examiner for this claim, James Hardina, as its employee with information concerning Scottsdale's investigation with respect to what, if any, coverage obligations Scottsdale may have had in connection with the underlying claim, and Scottsdale's decision that, under the circumstances, the underlying accident did not trigger coverage under the Scottsdale policy. In addition, as noted in Scottsdale's responses to a number of Plaintiffs' Document Requests, David Morse & Associates conducted an investigation into the underlying claim for Scottsdale. Certain of those persons may be identified in the reports of that investigation contained in the Scottsdale claim file, which Scottsdale has offered above to make available for Plaintiffs' inspection.

Scottsdale's responses to those responses were, and remain, fully proper. As Scottsdale's claim examiner for this matter, Mr. Hardina had the primary responsibility for the investigation of the facts of the underlying accident, the analysis of coverage questions, and the decision as to whether or not there was any coverage to begin with, as well as other policy-related defenses that might be available. Plaintiffs, however, appear to seek to require Scottsdale to identify other individuals who "were involved" in some unspecified way with the matters that Mr. Hardina had primary responsibility for, without their first examining Mr. Hardina to determine whether or not additional inquiry of other persons is necessary or justified.

The fourth item in Plaintiffs' February 6th correspondence regarding Scottsdale's responses to Plaintiffs' Interrogatories seeks "[t]he identity of all individuals who act as the custodian of records maintained by Scottsdale concerning the Underlying Action." Item 4 corresponds to Interrogatory No. 6. Notwithstanding the blatantly irrelevant and harassing nature of that interrogatory, Scottsdale identified its claim examiner, James Hardina, as the person having information concerning the records maintained by Scottsdale with respect to this claim.

As discussed above, Mr. Hardina was the person principally responsible for the handling of this claim within Scottsdale. That responsibility included the receipt and collection of relevant documents for inclusion in the claim file. Without conceding the relevance of information pertaining to Scottsdale's document collection and retention policies to any of the allegations in the complaint in this matter, Mr. Hardina is, therefore, the best person from whom to seek information about the establishment, organization, and maintenance of the claim file.

Accordingly, Scottsdale respectfully requests that the Court not permit Plaintiffs' fishing expedition for the identities of Scottsdale employees who likely have less direct information regarding matters relevant to this lawsuit, or who may have had some limited or peripheral involvement in Scottsdale's response to the underlying claim, without a reasonable showing by Plaintiffs of a justifiable need for relevant information that is not available to them from the information, documents, and persons already identified by Scottsdale.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 6
February 26, 2007
Honorable Theodore H. Katz

 Finally, Plaintiffs raise the issue of a privilege log, "assuming [Scottsdale] is withholding any documents as privileged." Even a cursory examination of many of Plaintiffs' discovery requests make it clear that they are so broad as to make it possible, if not likely, that privileged or work-product information or documents would be encompassed within the scope of the discovery request. For example, Document Request Nos. 3 and 4 demand "documents concerning" particular activities, and Document Request No. 5 demands "documents concerning communications."

 In its responses to such non-specific and overly broad discovery requests, Scottsdale may have asserted a privilege objection, as well as specifically incorporating the vagueness and ambiguity, over-breadth, lack of relevance, and unreasonable burden and oppression objections set out in the General Objections section of its responses to Plaintiffs' discovery. Any obligation to identify privileged or work-product documents purportedly called for in such discovery requests would arise only if and when Scottsdale's vagueness, over-breadth, relevance, and undue burden objections have been heard and overruled. Scottsdale objects to any attempt by Plaintiffs to require Scottsdale to undertake the burden and expense of attempting to identify irrelevant privileged and work-product documents before its other, more fundamental objections have been resolved. Scottsdale will, of course, comply with its obligations under the Federal Rules of Civil Procedure with respect to any claim of privilege or protection as trial preparation material that it might assert as to documents or portions of documents properly sought by Plaintiffs.

 As can be seen from the above discussions, Plaintiffs' bald assertions that Scottsdale has "refused to provide" documents and information properly sought by them in discovery are unsupported and misrepresent the facts. Scottsdale has provided Plaintiffs with requested information and documents, and, as noted above, will make additional materials available to them. Under the circumstances, Scottsdale respectfully suggests that a conference with the Court would not be a productive use of the Court's or the parties time unless and until Plaintiffs have examined the materials and information that have been and are being produced by Scottsdale and can identify specific, relevant issues that remain.

 Thank you for your attention to this matter.

Very truly yours,

**MEMO ENDORSED**

Andrew J. Mihalick

cc: Marshall T. Potashner, Esq. (with enc.)
  William H. Bave, Esq.    "
  Leonard Porcelli, Esq.   (w/o enc.)

*[Handwritten endorsement:]* Based upon this response, the parties are to execute a Confidentiality Order and then Scottsdale is to produce the documents described above that are responsive to the requests. The parties are to further confer in light of Scottsdale's response & are to see if any actual disputes remain. So ordered. 3/5/07 Theodore H. Katz USMJ