UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WAUSAU UNDERWRITERS INSURANCE      X
COMPANY, *et al.*

          Plaintiffs,

                                      Case No. 06 CV 3212

   v.                             (VM) (THK)

QBE INSURANCE CORPORATION, *et al.*

          Defendants.      X

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## RESPONSE OF DEFENDANT SCOTTSDALE INSURANCE COMPANY TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER

This is the response of Defendant Scottsdale Insurance Company ("Scottsdale") to Plaintiffs' Objections to Magistrate's Order (the "Objections"). As is shown herein, Plaintiffs' Objections should be rejected in their entirety. In the first instance, they are untimely under Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b). Further, they are replete with unsupported assertions of error by Magistrate Judge Katz, and misleading misstatements of fact. Under the circumstances, Plaintiffs' Objections are harassing and appear to be intended to do nothing more than to unnecessarily increase the cost of this litigation to Scottsdale, in violation of Rule 11(b) of the Federal Rules of Civil Procedure.

The background of the instant application can be succinctly summarized as follows: In response to Plaintiffs' objections to certain of Scottsdale's responses to their discovery, Magistrate Katz ordered the parties to enter into a confidentiality order, following which Scottsdale was to make available for inspection the non-privileged and non-work-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or

before the date of service of the underlying lawsuit on Scottsdale's insured. As is discussed in detail in the following sections of this response, the parties are in the process of complying with the Magistrate's Order, however, the document examination has not yet occurred. Under the circumstances, and for the reasons set out herein, Defendants respectfully request that these Objections be rejected in their entirety.

In support of this response to Plaintiffs' Objections, Scottsdale respectfully shows the Court the following:

## RELEVANT PROCEDURAL HISTORY

To assist the Court in fully appreciating how vexatious and harassing Plaintiffs' Objections are, the following paragraphs set out the full relevant procedural history leading up to the Objections.

1.    On January 15, 2007, Plaintiffs' attorney wrote to Magistrate Katz requesting a discovery conference regarding Scottsdale's responses to Plaintiffs' discovery requests. A copy of that letter is attached as Exhibit A.

2.    On February 6, 2007, Plaintiffs again wrote to Magistrate Katz, stating their specific objections to Scottsdale's prior discovery responses. Plaintiffs' requested that Magistrate Katz schedule a discovery conference in this matter. A copy of Plaintiffs' February 6, 2007 letter is attached as Exhibit B.

3.    On February 15, 2007, the undersigned wrote to Magistrate Katz, explaining that, as Plaintiffs' attorney had previously been informed, this matter had just been assigned to the undersigned, and requesting that Scottsdale be permitted to respond to Plaintiffs' February 6 correspondence on or before February 26, 2007. Magistrate Katz granted that request on February 15. A copy of Scottsdale's February 15 letter, with Magistrate Katz's grant of the request, is attached as Exhibit C.

4.    On February 26, 2007, Scottsdale served its response to Plaintiffs' February 6, 2007 letter. In its letter, Scottsdale fully responded to each objection raised by Plaintiff in their February 6 letter. A copy of Scottsdale's February 26, 2007 letter, including Magistrate Katz's Memo Endorsed Order thereon, is attached as Exhibit D. In response to certain of Plaintiffs' February 6 objections, and in a good faith effort to avoid unnecessary discovery disputes, Scottsdale offered, in its February 26 response, among other things to "upon agreement by all parties . . . to an appropriate confidentiality agreement, . . . make available for inspection by Plaintiffs, at a mutually agreeable time at the offices of Scottsdale's counsel, a copy of the non-privileged and non-work-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or before the date of service of the underlying lawsuit on Scottsdale's insured." Exhibit D, at 2.

5.    Scottsdale's February 26, 2007 letter also responded to the statement in Plaintiffs' February 6 letter that "Scottsdale has not provided any sort of privileged documents log, *assuming it is withholding any documents as privileged.*" Exhibit B, at 3 (emphasis added). After stating its position with respect to the overbreadth of many of Plaintiffs' discovery requests, and the effect of that on potential privilege claims, Scottsdale stated that it would "comply with its obligations under the Federal Rules of Civil Procedure with respect to any claim of privilege or protection as trial preparation material that it might assert as to documents or portions of documents properly sought by Plaintiffs." Exhibit D, at 6.

6.    In a Memo Endorsed Order, dated and filed March 5, 2007, on Scottsdale's February 26 response, Magistrate Katz ruled that:

> Based upon this response, the parties are to execute a Confidentiality Order and then Scottsdale is to produce the documents described above that are responsive to the requests. The parties are to

3

further confer in light of Scottsdale's response and are to see if any
actual disputes remain.

Exhibit D, at 6.

7.     On March 5, 2007, Plaintiffs' attorney again wrote to Magistrate Katz, in reply to
Scottsdale's February 26, 2007 response. A copy of that letter is attached as Exhibit E. Although
Plaintiffs' letter makes reference to the Court's "providing [Plaintiffs] with an opportunity to re-
ply" to Scottsdale's February 26 response, Scottsdale is unaware of any request by Plaintiffs to
do so, or any response by the Court to any such request. Plaintiffs' letter, for the most part, set
out their complaints as to certain portions of Scottsdale's February 26 letter, and again requested
that the Court schedule a discovery conference.

8.     Importantly, Plaintiffs did not then object to any of Scottsdale's discovery re-
sponses that they had not already objected to in their February 6, 2007 letter. Of further signifi-
cance are the facts that (i) Plaintiffs' March 5 letter did not raise any objection to Magistrate
Katz's Memo Endorsed Order, and (ii) Plaintiffs have not, subsequently, raised any objection to
that Order. Indeed, both Plaintiffs and Defendants have made substantial progress in complying
with Magistrate Katz's Order with respect to the Confidentiality Order.[1] *See,* Exhibit F (copies of
correspondence between counsel for Plaintiffs' and Scottsdale regarding agreement to and sign-
ing of a Confidentiality Order).

9.     On March 14, 2007, Scottsdale responded to the points raised in Plaintiffs' March
5 letter. A copy of Scottsdale's letter is attached as Exhibit G. In addition to pointing out to the
Court why Plaintiffs' March 5 letter sought nothing more than to raise premature and ultimately
groundless issues with respect to Scottsdale's February 26, 2007 letter, Scottsdale again asked

---

[1] At this time, Scottsdale is awaiting receipt of a copy of the Confidentiality Order signed by counsel for Co-
Defendant QBE Insurance Corporation. As soon as that is received, Scottsdale will file it with the Court to be "so
ordered," and will thereafter make the production ordered in Magistrate Katz's March 5, 2007 Memo Endorsed Or-
der.

4

that the Court reject Plaintiffs' demand for a discovery conference unless and until such time as Plaintiffs had examined the materials to be produced by Scottsdale pursuant to Magistrate Katz's March 5 Memo Endorsed Order. As Plaintiffs concede (*see*, Plaintiffs' Objections, ¶ 5), Scottsdale did not seek any different or additional relief beyond that ordered by Magistrate Katz on March 5.

10.    Scottsdale's March 14 letter also reiterated its February 26 statement that it would comply fully with its obligations under the Federal Rules of Civil Procedure with respect to claims of privilege that it might assert. Exhibit G, at 1.

11.    On March 22, 2007, Magistrate Katz filed his rulings with respect to Plaintiffs' March 5, 2007 reply to Scottsdale's February 26 letter, and Scottsdale's March 14 sur-reply. Those rulings are set out on the copy of the March 14 letter attached as Exhibit G. Specifically, Magistrate Katz ruled that "[t]he Court has considered the parties submissions and its rulings are set forth in the margins above." Exhibit G, at 3.

12.    It is clear that those margin rulings did not in any way change, supplant, withdraw, or vacate the March 5 Memo Endorsed Order. The first four of Magistrate Katz's margin entries were simply the notation "OK," apparently indicating his agreement with Scottsdale's arguments in those paragraphs. Exhibit G, at 1, 2. Again, however, nothing in any of those paragraphs sought a new or different ruling than that in the March 5 Memo Endorsed Order.

13.    Indeed, the only two additional rulings that Magistrate Katz made in his marginalia imposed further obligations on Scottsdale. In the first case, Magistrate Katz ruled that, if Plaintiffs do not have a complete copy of the contract between Plaintiffs' insured and Scottsdale's insured, they are to so notify Scottsdale, which is then to produce a copy of that contract. Exhibit G, at 2. Scottsdale has not yet heard from Plaintiffs in that regard. In the second instance,

Magistrate Katz ordered Scottsdale to "[i]dentify only other individuals involved in the investigation of the claim and the decision to disclaim coverage." *Id.* Counsel for Scottsdale is in the process of obtaining the identity of such persons, so that Scottsdale can respond appropriately to Magistrate Katz's order.

14.    Notwithstanding the facts that (i) Magistrate Katz's March 5, 2007 Memo Endorsed Order remains fully in effect, (ii) Plaintiffs' have never asserted any objection to that Order, and (iii) the two additional rulings Magistrate Katz made in response to Plaintiffs' March 5 2007 reply letter benefited Plaintiffs, Plaintiffs have nevertheless brought the instant Objections to Magistrate Katz's order.

## ARGUMENT

### Plaintiffs' Objections Are Untimely, and Should be Rejected:

15.    In the introductory paragraph of their Objections, Plaintiffs state that their objections are "to the Memo Endorsed Order of Magistrate Judge Theodore H. Katz, signed and filed on March 22, 2007 and entered on March 23, 2007 (Document No. 47)." Plaintiffs' Objections, at 1. Magistrate Katz's March 22, 2007 rulings and Order are set out on the copy of Scottsdale's March 14, 2007 letter, attached as Exhibit G.

16.    As discussed above, however, even if Magistrate Katz's margin notations of "OK" are deemed to be "rulings," they are, at best, merely affirmations of the grounds for his March 5, 2007 Memo Endorsed Order.[2] They do not in any way alter or vacate that earlier ruling.

17.    Likewise, the last two items of marginalia by Magistrate Katz do not in any way alter his prior ruling, that the parties are to enter into a Confidentiality Order, following which Scottsdale is to make the production described in its February 26, 2007 letter. *See,* Exhibit D, at

---

[2] Scottsdale respectfully suggests that those marginalia are not "rulings" in any event, since the paragraphs to which they relate do not seek any relief.

6. Indeed, those two items benefit Plaintiffs, by requiring Scottsdale to provide certain additional responses to portions of Plaintiffs' discovery requests. *See,* Exhibit G, at 2.

18.     Since the March 22, 2007 Order that is the *only* subject of Plaintiffs' Objections did not in any way modify or vacate the March 5, 2007 Order, and because Plaintiffs' Objections do not contest the two additional March 22 rulings that benefit them only, the only conclusion that can be reached is that Plaintiffs' Objections are directed solely at Magistrate Katz's February 26, 2007 Memo Endorsed Order.

19.     Rule 72(a) of the Federal Rules of Civil Procedure requires that a party's objections to a magistrate judge's order on a pre-trial, non-dispositive matter be served and filed within ten days of service of a copy of the order objected to. *See also,* 28 U.S.C. § 636(b)(1). As discussed above, the only Order of Magistrate Katz that can reasonably be concluded to be the subject of Plaintiffs' instant Objections is the March 5, 2007 Memo Endorsed Order. That Order was served on counsel for all parties, including Plaintiffs, by the Court via the CM/ECF system, on March 6, 2007. *See,* Exhibit D. Accordingly, Plaintiffs' time to object to that ruling expired on March 16, 2007, thirteen days before they filed their instant Objections.

20.     For this reason, Scottsdale respectfully requests that the Court reject Plaintiffs' Objections in their entirety, as being untimely.

**Plaintiffs' Objections are Substantively Baseless, and Should be Rejected Entirely:**

21.     Plaintiffs' assertion that Magistrate Katz's March 22, 2007 Order (the "March 22 Order," *see* Exhibit G) was issued without affording Plaintiffs an opportunity to be heard, thus denying them due process and a fair hearing, blatantly ignores, and indeed misrepresents the indisputable facts. Plaintiffs' Objections, ¶ 1.

22.     The March 22 Order resulted *solely* from Plaintiffs March 5, 2007 letter to the Court. Exhibit E. As discussed above, that letter was a reply to Scottsdale's February 26, 2007 response to Plaintiffs' February 6, 2007 objections to Scottsdale's previous discovery responses.

23.     Scottsdale properly responded to Plaintiffs' March 5 letter on March 14, 2007. Exhibit G. In that response, Scottsdale did not raise any issue that had not been (i) raised in its February 26 response, (ii) subsequently considered by Magistrate Katz, and (iii) replied to by Plaintiffs in their March 5 letter. Indeed, Plaintiffs concede that Scottsdale's March 14 letter "did not request any additional relief," and that Magistrate Katz's "March 5, 2007 Order was still in effect." Plaintiffs' Objections, ¶ 5.

24.     Plaintiffs' assertion that Magistrate Katz had, without notice, vacated his March 5, 2007 Memo Endorsed Order or considered Scottsdale's March 14 sur-reply to Plaintiffs a "new application," is not only wholly unsupported by the record, but is belied by any reasonable reading of the Magistrate's March 22 Order. Exhibit G. As was discussed above, none of Magistrate Katz's marginalia even suggest any withdrawal of, or change to his prior Order. *Id.* Further, the only two additional rulings in the March 22 Order benefited Plaintiffs, who have not objected to them.

25.     Thus, it is clear from the record that Plaintiffs' claim that they have been denied due process and a fair hearing is utterly baseless. Indeed, the last sentence of ¶ 5 of Plaintiffs' Objections make it obvious that those claims arise from nothing more than Plaintiffs' dissatisfaction with Magistrate Katz's refusal to permit them to continue their vexatious complaints and require them to examine the documents made available by Scottsdale.

26.     A number of Plaintiffs' Objections pertain to Scottsdale's assertions of privilege with respect to certain documents within its claim file pertaining to the underlying claim, and to

Scottsdale's obligation to prepare a privilege log as to such documents. *E.g.*, Plaintiffs' Objections, ¶¶ 6-10. As Scottsdale has stated repeatedly, it will "comply with its obligations under the Federal Rules of Civil Procedure with respect to any claim of privilege or protection as trial preparation material that it might assert as to documents or portions of documents properly sought by Plaintiffs." Exhibit D, at 6, Exhibit G, at 1. In compliance with those obligations, and as required by Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure and Local Civil Rule 26.2, Scottsdale will produce, at the time and place of its production of documents, an appropriate privilege log as to those documents properly requested by Plaintiffs and as to which Scottsdale asserts a claim of privilege.

27.    Scottsdale's obligation to prepare a privilege log does not extend, however, to documents that are not "otherwise discoverable." Rule 26(b)(5)(A). As is explained in the Advisory Committee Notes to the 1993 Amendments to Rule 26(b):

> The obligation to provide pertinent information concerning withheld privileged materials applies only to items "otherwise discoverable." If a broad discovery request is made – for example, for all documents of a particular type during a twenty year period – and the responding party believes in good faith that production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with respect to the documents generated in that three year period, produce the unprivileged documents and describe those withheld under the claim of privilege. If the court later rules that documents for a seven year period are properly discover-able, the documents for the additional four years should then be either produced (if not privileged) or described (if claimed to be privileged).

Consistent with the Advisory Committee's example, neither the Federal Rules of Civil Procedure nor Local Rule 26.2 require Scottsdale to provide a privilege log with respect to documents, if any, whose production is objectionable in the first instance due to their lack of relevance or the vagueness, overbreadth, or undue burden of the demands, unless and until those fundamental objections have been decided.

28.     Plaintiffs' assertion that Magistrate Katz's March 22 Order somehow "implicitly held" that "*all*" of Plaintiffs' discovery demands are irrelevant, vague, overly broad, or unduly burdensome, thus relieving Scottsdale of its obligation under Rule 26(b)(5)(A), is plainly non-sensical, particularly in light of the Magistrate's March 5 Order that Scottsdale produce the documents described in its February 26, 2007 letter once a Confidentiality Order has been exe-cuted.

29.     Scottsdale respectfully submits that the March 22 Order simply did not set out the purported "holdings" alleged by Plaintiffs in ¶¶ 11 and 12 of the Objections (and which form the bases for Plaintiffs' erroneous arguments in ¶¶ 13 and 14).[3] *See,* Exhibit G. Scottsdale respect-fully suggests that, for that reason alone, those Objections should be rejected.

30.     In any event, the documents that Plaintiffs purport to be referencing in those para-graphs appear to be those referred to in Paragraph 4 of their February 6, 2007 letter. Exhibit B, at 2. Scottsdale fully and properly responded to that paragraph in its February 26 response to Plain-tiffs' February 6 objections. *See,* Exhibit D, at 3. The crux of Plaintiffs' argument in ¶¶ 11-14 of their Objections is that Scottsdale should be put to the time and expense of producing copies of documents, if any, from Scottsdale or its attorneys to the plaintiffs or other parties in the underly-ing action, simply so that Plaintiffs can reassure themselves that their own insureds have given them copies of all such documents, and that they themselves haven't misplaced any such docu-ments. That Plaintiffs were not parties to the underlying action is no justification for such a har-assing demand. Scottsdale was not a party to the underlying first-party action, either. On the other hand Plaintiffs' insureds were named defendants in that action. Scottsdale's insured, how-

---

[3] Nor, for that matter, did Magistrate Katz's March 5, 2007 Memo Endorsed Order set out those purported holdings. *See,* Exhibit D.

ever, also was not a party to the underlying first-party action, and was not named a party until Plaintiffs' insureds brought their third-party action on or about May 19, 2005.

## CONCLUSION

As has been demonstrated herein, Plaintiffs' Objections are, in the first instance, out of order as untimely, and are otherwise unsupported by any reading of the record. Magistrate Katz's March 5 and March 22 rulings were entirely proper under the circumstances, and set out a discovery process that Scottsdale is in full compliance with. Accordingly, Scottsdale respectfully requests that the Court reject Plaintiffs' Objections in their entirety.

Scottsdale further respectfully requests that the Court consider the vexatious and harassing nature of the Objections, as shown by their untimeliness, their lack of any support in the record, and, indeed, their reliance on misrepresentations of the record, and take such action as the Court may deem appropriate under Rule 11 of the Federal Rules of Civil Procedure.

Dated: Mineola, New York
April 3, 2007

By: _____
      Andrew J. Mihalick (AJM 3995)

KRAL, CLERKIN, REDMOND, RYAN,
PERRY & GIRVAN LLP

69 East Jericho Turnpike
Mineola, New York 11501
(516) 742-3470

Attorneys for Defendant
Scottsdale Insurance Company

TO:

Marshall T. Potashner, Esq.
Jaffe & Asher LLP
600 Third Avenue
New York, New York 10016
(212) 687-3000

Attorneys for Plaintiffs
Wausau Underwriters Insurance Company
and Axis Specialty Insurance Company

William H. Bave, Jr., Esq.
Wilson, Bave, Conboy,
Cozza & Couzens, P.C.
Two William Street
White Plains, New York 10601
(914) 686-9010

Attorneys for Defendant
QBE Insurance Corporation

EXHIBIT "A"

## JAFFE & ASHER llp

ATTORNEYS AT LAW

PLEASE REPLY TO NEW YORK OFFICE

600 THIRD AVENUE
NEW YORK, NY 10016-1901
(212) 687-3000
(212) 687-9639 (FAX)

ESTABLISHED 1974

NEW JERSEY OFFICE

1107 GOFFLE ROAD
HAWTHORNE, NJ 07507-0508
(973) 423-3998
(973) 423-6074 (FAX)

January 15, 2007

## VIA FACSIMILE

Hon. Theodore H. Katz
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1660
New York, NY 10007-1312

> **Re:**  **Wausau Underwriters Ins. Co. et al. v. QBE Ins. Corp., et al.**
> **Civil Action No.  06 Civ. 3212 (VM) (THK)**

Dear Magistrate Judge Katz:

Our law firm represents plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY in the above-entitled civil action.

I write further to the discovery dispute we are having with defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale"). Although we have attempted to resolve the dispute without further Court intervention, Scottsdale continues to refuse to provide full and complete responses to our discovery demands.

As such, we respectfully request a conference to secure Scottsdale's compliance with plaintiffs' discovery demands and a for an extension of the January 16, 2007 deadline for fact discovery to sixty (60) days after Scottsdale complies with our long-outstanding discovery requests.

Hon. Theodore H. Katz
January 15, 2007
Page 2

Thank you for your courtesy and attention to this request.

Respectfully submitted,

Marshall T. Potashner

MTP:mp
cc:   Leonard Porcelli, Esq. (via fax)
      William H. Bave, Jr., Esq. (via fax)

# JAFFE & ASHER LLP

### ATTORNEYS AT LAW

ESTABLISHED 1974

PLEASE REPLY TO NEW YORK OFFICE

600 THIRD AVENUE
NEW YORK, NY 10016-1901
(212) 687-3000
(212) 687-9639 (FAX)

NEW JERSEY OFFICE

1107 GOFFLE ROAD
HAWTHORNE, NJ 07507-0508
(973) 423-3998
(973) 423-6074 (FAX)

## FACSIMILE TRANSMISSION COVER SHEET

### DATE: January 15, 2007

Please deliver the following 3 pages (including cover sheet) to:

NAME: Hon. Theodore H. Katz

FAX NUMBER: (212) 805-7932

CLIENT/CODE: 2210

FROM: Marshall T. Potashner, Esq.

Re: Wausau Underwriters Ins. Co., et al. v. QBE Ins. Corp., et al.
Civil Action No. 06 Civ. 3212 (VM)(THK)

IF YOU DO NOT RECEIVE ALL THE PAGES CALL SENDER AT (212) 687-3000
========================================
Message:

Cc: Leonard Porcelli, Esq.
F: (516) 742-6243

William H. Bave, Jr., Esq.
F: (914) 686-0873

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

EXHIBIT "B"

# JAFFE & ASHER LLP

ATTORNEYS AT LAW

PLEASE REPLY TO NEW YORK OFFICE

600 THIRD AVENUE
NEW YORK, NY 10016-1901
(212) 687-3000
(212) 687-9639 (FAX)

ESTABLISHED 1974

NEW JERSEY OFFICE

1107 GOFFLE ROAD
HAWTHORNE, NJ 07507-0508
(973) 423-3998
(973) 423-6074 (FAX)

February 6, 2007

Hon. Theodore H. Katz
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1660
New York, NY 10007-1312

Re:     Wausau Underwriters Ins. Co. et al. v. QBE Ins. Corp., et al.
        Civil Action No. 06 Civ. 3212 (VM) (THK)

Dear Magistrate Judge Katz:

We write further to the Court's request that we outline the discovery issues in the above referenced matter.

In this action, plaintiffs seeks a declaratory judgment action of the insurers' respective rights and obligations with respect to the defense and indemnity of the New York City Economic Development Corp. (the "NYC EDU") and Barney Skanska Construction Company ("Skanska") for an underlying action entitled John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index No. 13658/04, which is pending in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action"). The discovery issues herein concerns discovery sought by plaintiffs from defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale"). Scottsdale issued a liability insurance policy to Arena Construction Co. ("Arena"). Plaintiffs allege that the NYC EDU and Skanska are entitled to coverage for the Underlying Action under the Scottsdale policy as additional insureds.

Scottsdale alleges that the NYC EDU and Skanska are not entitled to coverage under its policy for the Underlying Action because (1) they are not additional insureds as the Underlying Action does not seek to hold NYC EDU and Skanska "liable for the Named Insured's [Arena] negligent acts or omissions arising from occurrences directly caused by, and while in the course of the Named Insured's ongoing operations performed for that additional insured"; and (2) there was "late notice". Plaintiffs disagree with

Hon. Theodore H. Katz
February 6, 2007
Page 2

Scottsdale's position.

On August 22, 2006, we served Scottsdale ("Scottsdale") with Plaintiffs'
First Request for Production of Documents to Scottsdale ("Request for Production") and
First Set of Interrogatories to Scottsdale ("Interrogatories"). Scottsdale's responses to
these requests are enclosed herewith.

With regard to plaintiffs' Request for Production, Scottsdale has refused to
provide the following documents:

1)    Its claim file and electronic file, which it identifies as a computer
      "notepad" it keeps for each claim maintained for the underlying
      action.

2)    Documents concerning Scottsdale's investigation concerning coverage
      under the Scottsdale policy for Skanska and NYC EDU for the
      Underlying Action.

3)    Documents concerning Scottsdale's investigation concerning
      compliance with the notice conditions of the Scottsdale policy for the
      claims alleged against Skanska and NYC EDU in the Underlying
      Action.

4)    Documents concerning communications with plaintiffs or any of the
      parties to the Underlying Action, or any of their counsel, concerning
      the Underlying Action.

5)    Documents upon which Scottsdale relied in determining to decline
      coverage to NYC EDU and Skanska for the underlying action.

6)    The contract between NYC EDU and Arena concerning the project.

7)    Certificates of Insurance referring to the Scottsdale policy. Scottsdale
      has provided a certificate of insurance. The certificate however,
      refers to "Attached Descriptions", which were not provided.

With regard to plaintiffs' interrogatories, Scottsdale has not provided a
complete response. Specifically, Scottsdale has not provided the following information:

Hon. Theodore H. Katz
February 6, 2007
Page 3

1.  The identity of all individuals who were involved in any investigation conducted by Scottsdale with respect to the tender of the defense of Skanska and NYC EDU for the Underlying Action.

2.  The identity of all individuals who were involved in the decision by Scottsdale to disclaim coverage for Skanska and NYC EDC for the Underlying Action.

3.  The identity of all individuals who on Scottsdale's behalf made the decision to disclaim coverage for Skanska and NYC EDC for the underlying action.

4.  The identity of all individuals who act as the custodian of records maintained by Scottsdale concerning the Underlying Action.

In addition, Scottsdale has not provided any sort of privileged documents log, assuming it is withholding any documents as privileged.

Plaintiffs' position is that this discovery is intended to elicit information concerning the matters directly at issue herein. Specifically, the sought-after discovery will provide information regarding the nature of the claims alleged in the Underlying Action and the nature of Arena's work at the job site. The discovery will also provide information regarding Scottsdale's "late notice" defense.

We contacted Scottsdale in an effort to send this correspondence jointly to the Court. However, Scottsdale has not contributed to this letter nor have they consented to it.

We respectfully request that the Court schedule a conference to determine whether Scottsdale must provide this outstanding discovery to plaintiffs.

Respectfully Submitted,

Marshall T. Potashner

MTP:nib
cc:  Leonard Porcelli, Esq. (w/encl.)
     William H. Bave, Jr., Esq. (w/encl.)

SUPREME COURT OF THE STATE OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- X.

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY
INSURANCE COMPANY
           Plaintiffs,

    -against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

        Defendants.

------------------------------------------- X

## RESPONSE TO FIRST SET OF INTERROGATORIES

    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure 26.2, 26.3, 33.1 and 33.3 of the Local Rules of the Southern District of New York, defendant SCOTTSDALE INSURANCE COMPANY ("Defendant" or "Scottsdale") by its attorneys, KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP hereby responds and objects to the First Set of Interrogatories propounded by Plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY ("Wausau") and AXIS SPECIALTY INSURANCE COMPANY ("Axis") as follows:

## GENERAL OBJECTIONS

    The following General Objections apply to and are expressly made part of Defendant's response to the First Set of Interrogatories, set forth below:

    1.   Except to the extent that they conform with Rule 33 of the Federal Rules of Civil Procedure and the Local Rules of this court, Defendant objects to the Instructions contained in the plaintiff's First Set of Interrogatories to Scottsdale on the grounds that they are

1

vague, ambiguous and overly broad and exceed the requirements of the Federal Rules of Civil Procedure and/or local rules.

2.      Defendant objects to the Plaintiff's First Set of Interrogatories to Scottsdale to the extent that they call for disclosure and/or production of documents or information protected by the attorney-client privilege, work-product doctrine or which are otherwise immune from discovery.

3.      Defendant objects to these Interrogatories to the extent that they seek information not in the possession, custody or control of Scottsdale.

4.      Defendant objects to these Interrogatories to the extent that they seek information relating to confidential business or other proprietary information.

5.      Defendant objects to these Interrogatories to the extent that the answer to any Interrogatories may be derived or ascertained from documents and/or information equally or more conveniently available to Plaintiff; consequently, Defendant refers Plaintiff to said documents and/or information for its answers.

6.      Defendant objects generally to these Interrogatories to the extent that they seek information which is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

7.      Defendant objects to these Interrogatories to the extent that they are overly broad, vague, ambiguous and/or require an unduly burdensome search of Defendant's records and seek to impose an undue burden and expense upon Defendant.

8.      These responses are based upon information known or believed by Defendant at the time of answering these Interrogatories. Defendant reserves the right to amend these responses if it learns of new information applicable thereto through discovery or otherwise, and

2

will supplement these responses to the extent required under the Federal Rules of Civil Procedure.

## INTERROGATORIES

1.      Identify all individual(s) who were involved in any investigation conducted by Scottsdale with respect to the tender of the defense of Skanska and NYC EDU for the Underlying Action.

**Response to Interrogatory No. 1:** <u>See</u> General Objections. Defendant Scottsdale specifically objects to such interrogatory as overbroad, unduly vague, and as seeking privileged materials prepared in contemplation of litigation. Notwithstanding the aforestated objections, James Hardina of Scottsdale may possess information concerning investigations conducted by Scottsdale with respect to any coverage issues.

2. Identify all individual(s) involved in the decision by Scottsdale to disclaim coverage for Skanska and NYC EDU for the Underlying Action.

**Response to Interrogatory No. 2:** <u>See</u> General Objections. Defendant Scottsdale specifically objects to such interrogatory as overbroad, unduly vague, and as seeking materials prepared in contemplation of litigation. Notwithstanding the aforestated objections, James Hardina of Scottsdale may possess information concerning Scottsdale's disclaimer of coverage.

3.      Identify all individual(s) who, on Scottsdale's behalf, made the decision to disclaim coverage for Skanska and NYC EDU for the Underlying Action.

**Response to Interrogatory No. 3:** <u>See</u> General Objections. Defendant Scottsdale specifically objects to such interrogatory as overbroad, unduly vague, and as seeking materials prepared in contemplation of litigation. Notwithstanding the aforestated objections, James

Hardina of Scottsdale may possess information concerning any investigation conducted by Scottsdale with respect to any coverage issues.

4.    Identify all persons, entities, or organizations with whom Scottsdale communicated regarding John Moore's alleged accident on September 16, 2004 at the Project.

**Response to Interrogatory No. 4:** See General Objections. Defendant specifically objects to such interrogatory as overbroad, unduly vague, as seeking privileged materials prepared in contemplation of litigation, as not reasonably tailored to lead to admissible discovery and as being palpably improper.

5.    Identify all persons, entities, or organizations with whom Scottsdale communicated regarding the Underlying Action.

**Response to Interrogatory No. 5:** See General Objections. Defendant specifically objects to such interrogatory as overbroad, unduly vague, as seeking privileged materials prepared in contemplation of litigation, as not reasonably tailored to lead to admissible discovery and as being palpably improper.

6.    Identify all individual(s) who act as the custodian of records maintained by Scottsdale concerning the Underlying Action.

**Response to Interrogatory No. 6:** See General Objections. Defendant specifically objects to such interrogatory as overbroad, unduly vague, and as seeking materials prepared in contemplation of litigation. Notwithstanding the aforestated objections, James Hardina of Scottsdale may possess information concerning records maintained by Scottsdale.

7.    Identify all files maintained by Scottsdale concerning the Underlying Action.

**Response to Interrogatory No. 7:** See General Objections. Defendant has maintained a "claims file" concerning this action.

4

8.    Identify all computer and electronic systems maintained by or for Scottsdale that contains information concerning the Underlying Action.

**Response to Interrogatory No. 8:** See General Objections. Defendant specifically objects to such interrogatory as palpably improper and as seeking proprietary information and privileged materials prepared in contemplation of litigation.

9.    Identify the necessary and indispensable parties that Scottsdale asserts should have been or should be joined to the instant action.

**Response to Interrogatory No. 9:** See General Objections. Defendant claims that all parties to the underlying action could have been joined to the instant action as interested parties.

**PLEASE TAKE NOTE** that defendant herein specifically reserves the right to amend and/or supplement the above responses upon the completion of additional discovery and/or investigations.

Dated: Mineola, New York
        October 25, 2006

                            Yours, etc.,

                            KRAL, CLERKIN, REDMOND, RYAN,
                            PERRY & GIRVAN, LLP

                            By:_____
                                LEONARD PORCELLI, ESQ. (LP5998)
                                Attorneys for Defendant
                                SCOTTSDALE INSURANCE COMPANY
                                69 East Jericho Turnpike
                                Mineola, N.Y. 11501
                                (516) 742-3470
                                File # 111059C

5

TO:   JAFFE & ASHER, LLP
Attorneys for Plaintiffs
WAUSAU UNDERWRITERS INS.
CO. and AXIS SPECIALTY INS. CO.
600 Third Avenue, 9th Floor
New York, New York 10016
(212) 687-3000

WILSON, BAVE, CONBOY, COZZA &
COUZENS, P.C.
Attorneys for Defendant
QBE INSURANCE CORPORATION
Two William Street
White Plains, New York 10601
(914) 686-9010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

        Plaintiffs,

 -against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

        Defendants.
-------------------------------------------------------------X

**RESPONSE TO
PLAINTIFFS' FIRST
REQUEST FOR
PRODUCT OF
DOCUMENTS TO
SCOTTSDALE**

Docket No.:
06 CV 3212 (VM)

Defendant, SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), by its attorneys KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP as and for its response to the Notice for Discovery & Inspection of Plaintiffs, WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY sets forth, upon information and belief, as follows:

### STATEMENT

Plaintiff, WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY ("WAUSAU and AXIS"), seeks information which, in many instances, is contained in numerous files and records. Further, certain of these requests may call for the collection of information from various SCOTTSDALE offices. Therefore, SCOTTSDALE responds on the basis of information now available. Any additional information subsequently located will be provided in a supplemental response pursuant to the applicable provisions in the CPLR.

1

SCOTTSDALE's responses are made without in any way waiving the right to object, on the grounds of competency, relevancy, materiality, hearsay or any other proper ground, to the use of any such information for any purpose, in whole or in part, in any subsequent state or proceeding in this action or any other action or the right to object on any and all grounds, at any time, to any other discovery procedure relating to the subject matter of these requests.

## GENERAL OBJECTIONS

SCOTTSDALE makes the following General Objections to WAUSAU and AXIS' Document Demands to SCOTTSDALE. The General Objections apply to all or so many of the document demands that, for convenience, are set forth immediately below and are not repeated after each document demand to which an objection applies. The assertion of the same, similar, or additional objections or the provisions of partial answers in any individual response to these document demands does not waive any of SCOTTSDALE's General Objections as set forth below:

SCOTTSDALE objects to these document demands to the extent that they seek information not in the possession, custody or control of SCOTTSDALE.

SCOTTSDALE objects to these document demands to the extent they seek information prepared, generated or received in anticipation of or after the commencement of the above-captioned litigation and to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine, or any other privilege.

SCOTTSDALE objects to these document demands to the extent they seek information as to trade secrets, confidential business or other proprietary information, including but not limited to information concerning reserves and policy premiums.

2

SCOTTSDALE objects to these document demands to the extent that the answer to any document demand may be derived or ascertained from documents and/or information equally or more conveniently available to WAUSAU and AXIS consequently, SCOTTSDALE refers WAUSAU and AXIS to said documents and/or information for its answer.

SCOTTSDALE objects to these document demands to the extent they attempt to impose any obligation upon SCOTTSDALE beyond those discovery obligations imposed by the New York Civil Practice Law and Rules.

SCOTTSDALE objects to these document demands to the extent they seek information relating to insurance policies which are not identified in the complaint on the grounds that they seek information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

SCOTTSDALE objects generally to these document demands to the extent they seek information which is neither relevant to the above-captioned litigation nor calculated to lead the discovery of admissible evidence.

SCOTTSDALE objects to these document demands to the extent they are overly broad, vague, ambiguous, seek information other than documents, require an unduly burdensome search of SCOTTSDALE's records, and seek to impose undue burden and expense upon SCOTTSDALE.

SCOTTSDALE objects to these document demands to the extent that they seek documents protected by SCOTTSDALE's right of privacy, or documents which SCOTTSDALE is required by law, custom, contract or the reasonable expectation of third-parties to maintain as confidential.

3

These responses are based upon information known or believed by SCOTTSDALE at the time of answering these document demands. SCOTTSDALE reserves the right to amend these responses if it learns of new information applicable thereto through discovery or otherwise, and will supplement these responses to the extent required under the New York Civil Practice Law and Rules.

## RESPONSES TO DISCOVERY AND INSPECTION

**Document Request No. 1:**

The Scottsdale policy, including but not limited to all endorsements, the declarations, and coverage forms from part thereof.

**Response to Document Request No. 1:**

Scottsdale submits it is has previously exchanged the Scottsdale policy numbered BCS0008003, that was in effect from May 3, 2004 to May 3, 2005 as part of the mandatory disclosure pursuant to F.R.C.P. 26. Notwithstanding the above, a certified copy has now been exchanged.

**Document Request No. 2:**

Claims files, including any electronic files, maintained for the Underlying Action.

**Response to Document Request No. 2:**

See General Objections. Subject to and without waiving the foregoing objections, Scottsdale specifically objects to these document demands to the extent they seek information prepared, generated or received in anticipation of or after the commencement of the above-captioned litigation and to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine, or any other privilege.

4

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

**Document Request No. 3:**

Documents concerning Scottsdale's investigation concerning coverage under the Scottsdale policy for Skanska and NYC EDU for the underlying action, including but not limited to any documents reviewed by Scottsdale in connection with such investigation.

**Response to Document Request No. 3:**

See General Objections. Subject to and without waiving the foregoing objections, Scottsdale specifically objects to these document demands to the extent they seek information prepared, generated or received in anticipation of or after the commencement of the above-captioned litigation and to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine, or any other privilege. Notwithstanding such objections, Scottsdale relies upon those documents from the underlying *Moore* case that were forwarded to its attention as well as the terms of its policy issued to Arena and its investigations through David Morse & Associates.

**Document Request No. 4:**

Documents concerning Scottsdale's investigation concerning compliance with the notice conditions of the Scottsdale policy for the claims alleged against Skanska and NYC EDU in the underlying action, including but not limited to any documents reviewed by Scottsdale in connection with such investigation.

**Response to Document Request No. 4:**

See General Objections. Subject to and without waiving the foregoing objections, Scottsdale specifically objects to these document demands to the extent they are overly broad, vague, ambiguous, seek information other than documents, require an unduly burdensome search of Scottsdale's records, and seek to impose undue burden and expense upon Scottsdale.

However, without waiving any objections, the January 21, 2005 letter of Scottsdale and the January 14, 2005 letter of Wausau are annexed hereto collectively as **Exhibit "A"**. Documents relating to Scottsdale's assessment of coverage would also include all documents from the underlying *Moore* litigation that were received by Scottsdale and its investigations through David Morse & Associates.

**Document Request No. 5:**

Documents concerning communications with NYC EDU, Wausau, AXIS, Skanska, Kel Tech, or John Moore, or any of their counsel, concerning the underlying action.

**Response to Document Request No. 5:**

See <u>General</u> <u>Objections</u>. Subject to and without waiving the foregoing objections, Scottsdale specifically objects to this demand as overbroad, unduly vague and not reasonably tailored to lead to discoverable information. Notwithstanding such objection, Scottsdale specifically objects to these document demands to the extent they seek information prepared, generated or received in anticipation of or after the commencement of the above-captioned litigation and to the extent they seek information protected by the attorney-client privilege, attorney work-product doctrine, or any other privilege. Notwithstanding such objections, copies of correspondence with the above named entities are annexed herein as **Exhibit "B."**

**Document Request No. 6:**

Documents upon which Scottsdale relied in determining to decline coverage to NYC EDU for the underlying action.

**Response to Document Request No. 6:**

See <u>General</u> <u>Objections</u>. Subject to and without waiving the foregoing objections, attached please find copies of the *Moore* Complaint, the January 21, 2005 Scottsdale letter

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

and the January 14, 2005 letter from Wausau. Scottsdale also relies upon the terms and conditions of its policy, including but not limited to its "Additional Insured" endorsement and "other insurance" clause as well as all documentation exchanged in the underlying *Moore* litigation and its investigations through David Morse & Associates.

**Document Request No. 7:**

Documents upon which Scottsdale relied in determining to decline coverage to Skanska for the underlying action.

**Response to Document Request No. 7:**

See General Objections. Subject to and without waiving the foregoing objections, attached please find copies of the *Moore* Complaint, the January 21, 2005 Scottsdale letter and the January 14, 2005 letter from Wausau. Scottsdale also relies upon the terms and conditions of its policy, including but not limited to its "Additional Insured" endorsement and "other insurance" clause as well as all documentation exchanged in the underlying *Moore* litigation and its investigations through David Morse & Associates.

**Document Request No. 8:**

The contract between the NYC EDU and Arena concerning the project.

**Response to Document Request No. 8:**

See General Objections. Subject to and without waiving the foregoing objections, enclosed please find documentation from the underlying *Moore* litigation which has been alleged as constituting the contract between NYC EDU and Arena.

**Document Request No. 9:**

Certificates of insurance referring to the Scottsdale policy.

**Response to Document Request No. 9:**

7

See <u>General</u> <u>Objections</u>.  Subject to and without waiving the foregoing objections, attached please find a copy of a "certificate of liability insurance" annexed hereto as **Exhibit "C"**.

**Document Request No. 10:**

Documents concerning Scottsdale's first notice of the alleged September 16, 2004 accident of John Moore, which accident is alleged in the underlying action.

**Response to Document Request No. 10:**

See <u>General</u> <u>Objections</u>.  Subject to and without waiving the foregoing objections, plaintiff is referred to Scottsdale's Response to Document Demand No. 7.

**Document Request No. 11:**

Documents concerning the tender of the underlying action to Scottsdale for a defense and indemnity by or on behalf of any party in the underlying action.

**Response to Document Request No. 11:**

See <u>General</u> <u>Objections</u>.  Subject to and without waiving the foregoing objections, plaintiff is referred to Scottsdale's Response to Document Demand No. 7.  Scottsdale has never received a tender by any party in the underlying action seeking additional insured coverage.

**Document Request No. 12:**

Documents concerning Scottsdale's allegation that "plaintiff has failed to join necessary and indispensable parties to this action", as alleged in the "Eighty-Second" paragraph of the answer.

**Response to Document Request No. 12:**

Kral, Clerkin, Redmond, Ryan, Perry & Girvan, LLP

See <u>General</u> <u>Objections</u>.  Subject to and without waiving the foregoing objections, plaintiff is referred to the complaint in the *Moore* action for names of other entities along with any carrier for those entities, as well as the carrier for A.J. McNulty.

**Document Request No. 13:**

Documents showing the losses paid under the Scottsdale policy.

**Response to Document Request No. 13:**

See <u>General</u> <u>Objections</u>.  Subject to and without waiving the foregoing objections, Scottsdale has not paid any losses for the *Moore* lawsuit.

**PLEASE TAKE NOTICE,** Scottsdale Insurance Company reserves its rights to supplement this response as discovery continues.

Dated:  Mineola, New York
   December 15, 2006

Yours, etc.,

KRAL, CLERKIN, REDMOND, RYAN,
PERRY & GIRVAN, LLP

By:_____
  LEONARD PORCELLI, ESQ. (LP5998)
  Attorneys for Defendant
  SCOTTSDALE INSURANCE COMPANY
  69 East Jericho Turnpike
  Mineola, N.Y.  11501
  (516) 742-3470
  File # 111059C

9

TO:   JAFFE & ASHER, LLP
      Attorneys for Plaintiffs
      WAUSAU UNDERWRITERS INS.
      CO. and AXIS SPECIALTY INS. CO.
      600 Third Avenue, 9th Floor
      New York, New York  10016
      (212) 687-3000

WILSON, BAVE, CONBOY, COZZA &
COUZENS, P.C.
Attorneys for Defendant
QBE INSURANCE CORPORATION
Two William Street
White Plains, New York  10601
(914) 686-9010

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

10

EXHIBIT A

1/18/2005 9:17:42 AM

9 60341-232



## WAUSAU

Member of Liberty Mutual Group

CERTIFIED MAIL – RETURN RECEIPT                    January 14, 2005
REQUESTED
SCOTTSDALE INSURANCE COMPANY
PO BOX 4110
SCOTTSDALE AZ 85261

Re:    John Moore v. New York City EDC, et al.
       Location:         St. Georges Ferry Jobsite
       Our Insured:      Owen Steel Company, Inc.
       Your Insured:     Arena Construction Company, Inc.
       Date of Loss:     September 16, 2004
       Our Claim No.:    P 415-003413-01

Dear Madam or Sir:

Wausau Insurance Company is currently defending a suit brought by John
Moore against New York City Economic Development Corporation ("EDC")
and Barney Skanska Construction Company ("Skanska"). Based on our
investigation Mr. Moore was injured when he fell down an elevator shaft
under construction at the St. Georges Ferry Terminal on September 16, 2004.
We understand that Arena Construction Company, Inc was a Contractor for
EDC at the time of loss and may have caused or contributed to the injuries
sustained by Mr. Moore.

We have obtained a copy of the contract between EDC and Arena
Construction Company, identified as Contract 11490016.

By receipt of this letter, I hereby request that you defend and indemnify
EDC, as well as Skanska with respect to the claims brought by John Moore
pursuant to EDC Contract No. 11490016. For your convenience, I have
attached a copy of the contract, which sets forth the language in which Your
Insured agrees to defend and indemnify EDC and Skanska.

Additionally, I am enclosing, for your convenience, a copy of a Certificate of
Insurance in which you have agreed to add EDC and Skanska as additional
insureds. As additional insureds, EDC and Skanska would be entitled to a
defense and coverage for the damages claimed by John Moore. Please

WAUSAU INSURANCE COMPANIES
251 SALINA MEADOWS PKY STE 260 • NORTH SYRACUSE NY 13212 • (315) 461-0089
MAILING ADDRESS: PO BOX 4834 • SYRACUSE NY 13221-4834 • FAX (315) 461-3895

/18/2005 9:17:42 AM

acknowledge in writing that you will defend EDC and Skanska and provide coverage for the damages claimed.

I trust that you will fulfill your obligations as have been stated above. If either you or Your Insured decline to fulfill the above obligations, please provide a letter that sets forth in detail all bases and grounds, along with all supporting facts.

Thank you for your kind cooperation in this matter.

Sincerely,

Michael Morrissiey
Senior Technical Claims Specialist


cc:    Arena Construction Company, Inc.
       45 Knollwood Road
       Elmsford, NY 10523

       USI Northeast, Inc. – Construct
       Suite 201, North
       555 Pleasantville Road
       Briarcliff Manor, NY 10510



SCOTTSDALE INSURANCE COMPANY®

CERTIFIED MAIL/RETURN RECEIPT REQUESTED

January 21, 2005

Mr. Michael Morrissiey
Senior Technical Claims Specialist
Wausau Insurance Companies
P.O. Box 4834
Syracuse, NY  13221-4834

RE:    Our Claim No.:        960341-10
       Insured:              Arena Construction Company, Inc.
       Our Policy No.:       BCS0008003
       Date of Loss:         9/16/04
       Claimant:             John Moore
       Your Insured:         Owen Steel Company, Inc.
       Your Claim No.:       P 415-003413-01

Dear Mr. Morrissiey:

This letter will serve to acknowledge our receipt of your correspondence dated
January 14, 2005, regarding the above-referenced matter, which was our first notice of
this claim. Please be advised that we have assigned the independent adjusting firm of
David Morse & Associates to investigate those facts giving rise to this claim, in order to attempt
a proper evaluation of any potential exposure, and to give further consideration to your
request that we defend and indemnify New York City Economic Development Corporation
(EDC), and Barney Skanska Construction Company (Skanska).

While that material provided with your correspondence did include a copy of that contract
between EDC and Arena Construction Company, Inc., only, this material did not include any
documentation and/or proof that Arena Construction Company, Inc., was somehow responsible
for this accident. In this regard, at this time, we are respectfully requesting that you provide to
us copies of whatever documentation and/or records you may have that would show the
proximate cause of this accident was somehow due to the acts or omissions of Arena
Construction Company, Inc., its subcontractors, agents, employees or material suppliers. In

Claims Division
P.O. Box 4120                8877 N. Gainey Center Dr.        (480) 365-4000        1-800-423-7675
Scottsdale, AZ 85261-4120    Scottsdale, AZ 85258            FAX 480-483-6752                                    A Nationwide® Company

Mr. Michael Morrissiey
January 21, 2005
Page 2


addition, your correspondence does not indicate what that relationship is between your named
insured, Owen Steel, and/or EDC and/or Skanska. We would appreciate your providing us with
such information.

As noted, we have commenced an investigation into those facts giving rise to this claim and
upon completion of such investigation will be able to make an informed decision relative to your
request. However, we do call your attention to the fact that our policy cannot be expected to
afford any coverage for independent negligence either by EDC and/or Skanska in this matter, to
include that non-delegable duty for safety.

Upon completion of our investigation, I will be back in touch with you to provide our position.
During the interim, if you would provide the above material, it would be greatly appreciated.

Thank you for your anticipated cooperation with regards to this matter.

Very truly yours,



Jim Hardina
Senior Claim Specialist
Extension 2661

cc:    Agent #31729
       CRC Insurance Services, Inc.

       Arena Construction Company, Inc.
       45 Knollwood Road
       Elmsford, NY  10523

JH/dao
DAO/S27667

EXHIBIT B

-5/19/2006 11:45:30 AM

JUDGE MARRERO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

06 CV 3212

------------------------------------------------------------------x

WAUSAU UNDERWRITERS INSURANCE
COMPANY and AXIS SPECIALTY INSURANCE
COMPANY,

                                    Plaintiffs,

           -against-

QBE INSURANCE CORPORATION and
SCOTTSDALE INSURANCE COMPANY,

                                    Defendants.

------------------------------------------------------------------x



RECEIVED

MAY 9 - 2006

CLAIMS LEGAL

COMPLAINT

RECEIVED
APR 2 6 2006
U.S.D.C. S....N.Y.
CASHIERS

MADAM/SIRS:

          Plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY

("Wausau") and AXIS SPECIALTY INSURANCE COMPANY ("AXIS"), by their

attorneys, JAFFE & ASHER LLP, as and for their complaint against defendants QBE

INSURANCE CORPORATION ("QBE") and SCOTTSDALE INSURANCE COMPANY

("Scottsdale"), allege as follows:

### JURISDICTION AND VENUE

          1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1332(a) by reason of the diversity of citizenship of the parties and the fact that the

amounts in controversy exceed the sum of $75,000 exclusive of costs.  This is an action

for a declaration of rights under certain insurance policies and for monetary damages based

reimbursement due from a co-insurer.

1

2. At all times hereinafter mentioned, Wausau was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 2000 Westwood Drive, Wausau, Wisconsin.

3. At all times hereinafter mentioned, Wausau was, and still is, an insurance company duly authorized to conduct business within the State of New York.

4. At all times hereinafter mentioned, AXIS was, and still is, an insurance company organized under the laws of the State of Connecticut, with its principal place of business located at 628 Hebron Avenue, Glastonbury, Connecticut.

5. At all times hereinafter mentioned, AXIS was, and still is, an eligible surplus lines insurer duly authorized to issue the policy of insurance to A. J. McNulty & Company ("McNulty"), as alleged herein.

6. Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company organized under the laws of the State of Pennsylvania, with its principal place of business located at 88 Pine Street, New York, New York.

7. Upon information and belief, at all times hereinafter mentioned, QBE was, and still is, an insurance company duly authorized to conduct business within the State of New York.

8. Upon information and belief, at all times hereinafter mentioned, Scottsdale was, and still is, an insurance company organized under the laws of the State of Ohio, with its principal place of business located in Scottsdale, Arizona.

2

9.    Upon information and belief, at all times hereinafter mentioned,

Scottsdale was, and still is, an insurance company duly authorized to conduct business

within the State of New York.

10.    Venue is appropriate in the United States District Court for the

Southern District of New York pursuant to 28 U.S.C. § 1391.

## SUBSTANTIVE ALLEGATIONS

11.    On or about December 17, 2004, John Moore ("Moore")

commenced a lawsuit entitled John Moore v. New York City Economic Development

Corp., New York City Department of Transportation, Barney Skanska Construction

Company, Kel Tech Construction Inc., Index No. 13658/04, in the Supreme Court of

the State of New York, County of Richmond (the "Underlying Action").

12.    In the Underlying Action, Moore seeks damages from each of the

defendants for injuries he allegedly sustained, on or about September 16, 2004, as a

result of having fallen through an uncovered shaft at the St. George Ferry Terminal jobsite

in Richmond County, New York.

13.    Upon information and belief, Moore seeks recovery of damages in

excess of $6 million against each of the defendants, jointly and severally, in the Underlying

Action.

14.    Moore alleges that, on September 16, 2004, he was working on the

St. George Ferry Terminal Project (the "Project") as an employee of McNulty.

3

15.    Upon information and belief, Barney Skanska Construction Co.

("Skanska") was the Construction Manager for the Project.

16.    Upon information and belief, Owen Steel Company, Inc. ("Owen

Steel") was a steel subcontractor for the Project.

17.    Upon information and belief, McNulty was a subcontractor of Owen

Steel.

18.    Upon information and belief, Kel-Tech Constructions, Inc. ("Kel-

Tech") was a masonry sub-contractor working on the Project.

19.    Upon information and belief, Arena Construction Company, Inc.

("Arena") was a masonry sub-contractor working on the Project.

20.    Owen Steel entered into a contract, as a subcontractor, with the New

York City Economic Development Corp. (the "NYC EDC"), on or about August 28,

2002, to provide steel and certain steel work for the Project.

21.    Owen Steel entered into a Subcontract Agreement, on or about

March 12, 2001, with McNulty to provide steel erection services for the Project.

22.    Upon information and belief, the NYC EDC entered into a contract

with Shroid Construction Inc. ("Shroid"), dated January 7, 2003, by which Shroid had

agreed to provide masonry work for the Project.

23.    Upon information and belief, Shroid filed a voluntary petition under

Chapter 11 of the Bankruptcy Code, on December 30, 2003.

4

24.    Upon information and belief, the original agreement between the NYC EDC and Shroid required Shroid to maintain a minimum of $3 million per occurrence, $6 million aggregate, Commercial General Liability insurance coverage, and $10 million Excess Umbrella Liability coverage, and which insurance coverage was to include Skanska and the NYC EDU as additional insureds.

25.    Upon information and belief, upon filing its voluntary petition under Chapter 11, Shroid discontinued participation in the Project.

26.    Upon information and belief, by Takeover Agreement, dated June 22, 2004, Kel-Tech agreed to complete the masonry work that was to have been completed by Shroid for the Project.

27.    Upon information and belief, Kel-Tech further agreed, pursuant to the Takeover Agreement, to obtain the insurance required under the original contract between the NYC EDC and Shroid.

28.    Upon information and belief, Kel-Tech agreed to include Skanska and the NYC EDC as additional insureds on Kel-Tech's liability insurance policy.

29.    Upon information and belief, Kel-Tech complied with its insurance obligations for the Project by obtaining a liability insurance policy from QBE, which policy includes Skanska and the NYC EDC as additional insureds.

30.    Upon information and belief, the policy number for the aforementioned policy issued by QBE to Kel-Tech is No. HBG 00208-3, which policy has a policy period from November 16, 2003 to November 16, 2004 (the "QBE Policy").

31.     Upon information and belief, the QBE Policy has each occurrence limits of $1 million and general aggregate limits of $2 million.

32.     Upon information and belief, the NYC EDC entered into a contract with Arena, pursuant to which Arena agreed to provide masonry work for the Project.

33.     Upon information and belief, the contract between the NYC EDC and Arena required Arena to maintain minimum liability insurance coverage, which insurance coverage was to include Skanska and the NYC EDU as additional insureds.

34.     Upon information and belief, Arena complied with its insurance obligations for the Project by obtaining a liability insurance policy from Scottsdale, which policy includes Skanska and the NYC EDC as additional insureds.

35.     Upon information and belief, the policy number for the aforementioned policy issued by Scottsdale to Arena is No. BCS0008003 (the "Scottsdale Policy").

36.     Wausau issued Commercial General Liability policy, No. TZJ-Y91-433317-044, to Owen Steel, as the first Named Insured, with a policy period from February 12, 2004, to February 12, 2005 (the "Wausau Policy").

37.     Pursuant to the terms of the Wausau Policy, Skanska and the NYC EDC are additional insureds for the claims alleged in the Underlying Action.

38.     AXIS issued Commercial General Liability policy, No. ACP704610, to McNulty as the Named Insured, with a policy period from October 30, 2003 to October 30, 2004 (the "AXIS Policy").

6

39.    Pursuant to the terms of the AXIS Policy, Skanska and the NYC EDC
are additional insureds for the claims alleged in the Underlying Action.

40.    On or about December 13, 2004, on behalf of Skanska and the
NYC EDC and as co-insurer, Wausau tendered the defense and indemnity of Skanska and
the NYC EDC for the Underlying Action to QBE.

41.    By letter dated December 28, 2004, QBE disclaimed coverage for
Skanska and the NYC EDC for the claims alleged in the Underlying Action.

42.    QBE disclaimed coverage to Skanska based upon alleged late notice,
and additionally disclaimed coverage for both Skanska and the NYC EDC because the
claim purportedly "did not arise out of Kel Tech's negligence or work."

43.    Upon information and belief, QBE's disclaimer's is improper and
unsustainable.

44.    Upon information and belief, QBE owed and owes Skanska and the
NYC EDC a primary duty to defend and indemnify for the claims alleged in the Underlying
Action.

45.    On or about January 14, 2005, on behalf of Skanska and the NYC
EDC and as co-insurer, Wausau tendered the defense and indemnity of Skanska and the
NYC EDC for the Underlying Action to Scottsdale.

46.    By letter dated January 21, 2005, Scottsdale acknowledged receipt
of the tender of Skanska's and the NYC EDC's defense and indemnity for the claims
alleged in the Underlying Action and requested more information.

7

47.    By letter dated January 28, 2005, Wausau responded to Scottsdale's request for more information and provided the information requested.

48.    Scottsdale has not provided a further response to the tender of Skanska's and the NYC EDC's defense and indemnity for the claims alleged in the Underlying Action.

49.    Upon information and belief, Scottsdale owed and owes Skanska and the NYC EDC a primary duty to defend and indemnify for the claims alleged in the Underlying Action.

### AS AND FOR A FIRST CLAIM FOR RELIEF
(Against QBE - For Declaratory Judgment)

50.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "49" of this Complaint as if more fully set forth herein.

51.    Although duly requested, QBE has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

52.    Upon information and belief, the QBE Policy provides primary liability insurance coverage to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and the Wausau Policy and the AXIS Policy provides coverage excess of that provided by the QBE Policy.

53.    Upon information and belief, QBE waived and/or is estopped from asserting application of some or all of the policy conditions and exclusions in the QBE Policy.

8

54.    As a result of QBE's breach of its coverage obligations, AXIS has been forced to drop down and provide a defense to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and Wausau has agreed to provide coverage in excess of that afforded by the AXIS Policy.

55.    Wausau and AXIS seek a determination of their rights with respect to the QBE Policy, and they seek a declaratory judgment that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by QBE under the QBE Policy, for the Underlying Action.

56.    Wausau and AXIS have no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Against Scottsdale - For Declaratory Judgment)

57.    Plaintiffs repeat, reallege, and reiterate each and every allegation contained in paragraphs "1" though "56" of this Complaint as if more fully set forth herein.

58.    Although duly requested, Scottsdale has failed and refused to defend and indemnify Skanska and the NYC EDC for the claims alleged in the Underlying Action.

59.    Upon information and belief, the Scottsdale Policy provides primary liability insurance coverage to Skanska and the NYC EDC for the claims alleged in the Underlying Action, and the Wausau Policy and the AXIS Policy provides coverage excess of that provided by the Scottsdale Policy.

9

60.    Upon information and belief, Scottsdale waived and/or is estopped

from asserting application of some or all of the policy conditions and exclusions in the

Scottsdale Policy.

61.    As a result of Scottsdale's breach of its coverage obligations, AXIS

has been forced to drop down and provide a defense to Skanska and the NYC EDC for the

claims alleged in the Underlying Action, and Wausau has agreed to provide coverage in·

excess of that afforded by the AXIS Policy.

62.    Wausau and AXIS seek a determination of their rights with respect to

the Scottsdale Policy, and they seek a declaratory judgment that Scottsdale is required to

provide a defense and indemnity to Skanska and the NYC EDC and that coverage under

the AXIS Policy and the Wausau Policy is excess over the coverage afforded by Scottsdale

under the Scottsdale Policy, for the Underlying Action.

63.    Wausau and AXIS have no adequate remedy at law.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (Against QBE - For Recovery of Co-Insurance)

64.    Plaintiffs repeat, reallege, and reiterate each and every allegation

contained in paragraphs "1" though "63" of this Complaint as if more fully set forth

herein.

65.    As a result of QBE's failure and refusal to acknowledge its duty to

defend Skanska and the NYC EDC for the Underlying Action, AXIS and Wausau have

been required to provide a defense for Skanska and the NYC EDC for the Underlying

Action.

66.    As of April 1, 2006, AXIS has incurred and paid attorneys' fees and

other costs in the sum of $12,876 in defending Skanska and the NYC EDC in the

Underlying Action, and continues to incur costs to defend these insureds in the Underlying

Action.

67.    Prior to AXIS assuming the defense of Skanska and the NYC EDC for

the Underlying Action, Wausau incurred and paid attorneys' fees and other costs in the

sum of $6,521 in defending Skanska and the NYC EDC in the Underlying Action, which

amounts have not been reimbursed.

68.    As a result of the foregoing, AXIS is entitled to a money judgment

against QBE in an amount equal to what it incurred to defend Skanska and the NYC EDC

in the Underlying Action, which amount is to be determined by the Court, but in no

instance should be less than $12,876, plus interest.

69.    As a result of the foregoing, Wausau is entitled to a money judgment

against QBE in the amount of $6,521, plus interest.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (Against Scottsdale - For Recovery of Co-Insurance)

70.    Plaintiffs repeat, reallege, and reiterate each and every allegation

contained in paragraphs "1" though "69" of this Complaint as if more fully set forth

herein.

71.    As a result of Scottsdale's failure and refusal to acknowledge its duty

to defend Skanska and the NYC EDC for the Underlying Action, AXIS and Wausau have

11

been required to provide a defense for Skanska and the NYC EDC for the Underlying Action.

72.    As of April 1, 2006, AXIS has incurred and paid attorneys' fees and other costs in the sum of $12,876 in defending Skanska and the NYC EDC in the Underlying Action, and continues to incur costs to defend these insureds in the Underlying Action.

73.    Prior to AXIS assuming the defense of Skanska and the NYC EDC for the Underlying Action, Wausau incurred and paid attorneys' fees and other costs in the sum of $6,521 in defending Skanska and the NYC EDC in the Underlying Action, which amounts have not been reimbursed.

74.    As a result of the foregoing, AXIS is entitled to a money judgment against Scottsdale in an amount equal to what it incurred to defend Skanska and the NYC EDC in the Underlying Action, which amount is to be determined by the Court, but in no instance should be less than $12,876, plus interest.

75.    As a result of the foregoing, Wausau is entitled to a money judgment against Scottsdale in the amount of $6,521, plus interest.

**WHEREFORE**, plaintiffs WAUSAU UNDERWRITERS INSURANCE COMPANY and AXIS SPECIALTY INSURANCE COMPANY demand judgment as follows:

1.    On the first claim for relief, a declaratory judgment that QBE is required to provide a defense and indemnity to Skanska and the NYC EDC for the

12

Underlying Action and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by QBE under the QBE Policy;

2.    On the second claim for relief, a declaratory judgment that Scottsdale is required to provide a defense and indemnity to Skanska and the NYC EDC for the Underlying Action and that coverage under the AXIS Policy and the Wausau Policy is excess over the coverage afforded by Scottsdale under the Scottsdale Policy;

3.    On the third claim for relief, awarding a money judgment against defendant QBE INSURANCE CORPORATION and in favor of plaintiff AXIS SPECIALTY INSURANCE COMPANY in an amount to be determined by the Court, but in no instance should be less than $12,876, plus interest, and in favor of plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY in the sum of $6,521, plus interest;

4.    On the fourth claim for relief, awarding a money judgment against defendant SCOTTSDALE INSURANCE COMPANY and in favor of plaintiff AXIS SPECIALTY INSURANCE COMPANY in an amount to be determined by the Court, but in no instance should be less than $12,876, plus interest, and in favor of plaintiff WAUSAU UNDERWRITERS INSURANCE COMPANY in the sum of $6,521, plus interest; and

13

5. Granting plaintiffs recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       April 19, 2006

Yours, etc.,

JAFFE & ASHER LLP

By: _____
       Marshall T. Potashner (MTP-3552)
       MPotashner@jaffeandasher.com
       Attorneys for Plaintiffs
       WAUSAU UNDERWRITERS
       INSURANCE COMPANY and
       AXIS SPECIALTY INSURANCE
       COMPANY
       600 Third Avenue, 9TH Floor
       New York, New York 10016
       (212) 687-3000

14

**EXHIBIT C**

1/21/2005 9:52:00 AM

D 1/18/2005 9:17:42 AM

Client#: 17808                                                   ARENACON

## ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
05/04/04REV

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. | | |
|---|---|---|---|
| USI Northeast, Inc.- Construct Suite 201, North 555 Pleasantville Rd. Briarcliff Manor, NY 10510 | | | |
| | INSURERS AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: Scottsdale Insurance Company | | 41237 |
| Arena Construction Company, Inc. 45 Knollwood Road Elmsford, NY 10523 | INSURER B: Allstate Insurance Company | | 19232 |
| | INSURER C: | | |
| | INSURER D: | | |
| | INSURER E: | | |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | GENERAL LIABILITY [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR | BCS0008003 CUT THROUGH PAPER | 05/03/04 END'T TO | 05/03/05 ADMITTED | EACH OCCURRENCE | $1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [X] PRO-JECT [ ] LOC | | | | GENERAL AGGREGATE | $2,000,000 |
| | | | | | | PRODUCTS - COMP/OP AGG | $1,000,000 |
| B | | AUTOMOBILE LIABILITY [X] ANY AUTO [ ] ALL OWNED AUTOS [X] SCHEDULED AUTOS [X] HIRED AUTOS [X] NON-OWNED AUTOS [X] Drive Other Car | 48611936 | 05/03/04 | 05/03/05 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | GARAGE LIABILITY [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ $ |
| A | | EXCESS/UMBRELLA LIABILITY [X] OCCUR [ ] CLAIMS MADE | UMS0015723 CUT THROUGH PAPER | 05/03/04 END'T TO | 05/03/05 ADMITTED | EACH OCCURRENCE | $10,000,000 |
| | | | | | | AGGREGATE | $10,000,000 |
| | | | | | | | $ |
| | | [ ] DEDUCTIBLE [X] RETENTION $ 10000 | | | | | $ |
| | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | [ ] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | OTHER | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

RE: EDC CONTRACT #11490016, INTERIOR CONSTRUCTION, ST. GEORGE FERRY TERMINAL.)
(See Attached Descriptions)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| NYC ECONOMIC DEVELOPMENT CORP 110 WILLIAM STREET New York, NY 10038 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

ACORD 25 (2001/08) 1 of 3       #S175402/M175382                          DMK       © ACORD CORPORATION 1988

EXHIBIT "C"

## LAW OFFICES OF
### KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

NEW YORK OFFICE
170 Broadway
New York, New York 10038
(212) 406-9710
Fax (212) 571-0874

(516) 742-3470
FAX (516) 742-6243

SUFFOLK OFFICE
496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289

Andrew J. Mihalick — Ext. 213
amihalick@kcrrpg.com

February 15, 2007

**BY FACSIMILE ONLY**

Honorable Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street; Room 1660
New York, New York 10007-1312

Re: <u>Wausau Underwriters Ins. Co., et al., v. QBE Insurance Corp., et al.</u>
Civil Action No. 06 CV 3212 (VM) (THK)
<u>Our File No. 111059</u>

Dear Judge Katz:

This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. As I informed Nancy Becker, of Plaintiff's attorney's office, on February 5, 2007, this matter had just been assigned to me for handling. My entry of appearance was served and filed on February 7, 2007.

Notwithstanding my request to Ms. Becker for a reasonable opportunity to review and respond to the issues being raised by Plaintiff regarding Scottsdale's responses to certain discovery demands, Plaintiff wrote to the Court regarding those issues on February 6, 2007.

Scottsdale will respond to that correspondence, and I respectfully request that the Court permit us to serve that response on or before February 26, 2007.

Thank you for your consideration in this matter.

Very truly yours,

Andrew J. Mihalick

cc: Marshall T. Potashner, Esq.
William H. Bave, Esq.
Leonard Porcelli, Esq.

*Granted. See if you resolve your differences. So ordered.  Tdore H. K__  2/15/07  USM*

EXHIBIT "D"

LAW OFFICES OF

# KRAL, CLERKIN, REDMOND, RYAN,
## PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

(516) 742-3470
FAX (516) 742-6243

NEW YORK OFFICE
170 Broadway
New York, New York 10038
(212) 406-9710
Fax (212) 571-0874

496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289

Andrew J. Mihalick – Ext. 213
amihalick@kcrrpg.com

February 26, 2007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/07

Honorable Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street; Room 1660
New York, New York 10007-1312



Re:    <u>Wausau Underwriters Ins. Co., et al., v. QBE Insurance Corp., et al.</u>
       Civil Action No. 06 CV 3212 (VM) (THK)
       <u>Our File No. 111059</u>

Dear Judge Katz:

This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. Thank you for granting our recent request for permission to respond to Plaintiffs' February 6, 2007 correspondence to the Court (the "February 6th correspondence") on or before February 26, 2007.

Set out herein is Scottsdale's response to the issues raised by Plaintiffs in their February 6th correspondence. In making this response, Scottsdale refers to and incorporates herein, as if fully set out, its Rule 26 Disclosure served in this action and its responses, including objections, to Plaintiffs' discovery demands served on Scottsdale in this action.

Scottsdale does not concede, and indeed denies, Plaintiffs' assertion that Scottsdale has "refused to provide" relevant documents properly sought in discovery. Nevertheless, Scottsdale responds as follows to those numbered items in Plaintiffs' February 6th correspondence that seek production of additional documents from Scottsdale:

1)    "Its claim file and electronic file, which it identifies as a computer 'notepad' it keeps for each claim maintained for the underlying action."

This item appears to be a restatement of Request No. 2 in Plaintiffs' First Request for Production of Documents to Scottsdale ("Plaintiffs' Document Requests"). Scottsdale does not understand precisely what, if any, distinction Plaintiffs intend by the phrase "claim file and electronic file." To the extent that Plaintiffs are demanding production of Scottsdale's claim file in

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 2
February 26, 2007
Honorable Theodore H. Katz

the underlying action,[1] Scottsdale states that, upon agreement by all parties to this action to an appropriate confidentiality agreement, it will make available for inspection by Plaintiffs, at a mutually agreeable time at the offices of Scottsdale's counsel, a copy of the non-privileged and non-work-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or before the date of service of the underlying lawsuit on Scottsdale's insured, Arena Construction Co., Inc. ("Arena").

2)    "Documents concerning Scottsdale's investigation concerning coverage under the Scottsdale policy for Skanska and NYC EDU for the Underlying Action."

This item appears to be a restatement of Request No. 3 of Plaintiffs' Document Requests. In its response to that request, Scottsdale referred Plaintiffs to documents, including the pleadings, served in the underlying action and Scottsdale policy, No. BCS0008003, for the period May 3, 2004 through May 3, 2005, issued to Arena (the "Scottsdale policy"). Scottsdale has already produced a copy of the latter document to Plaintiffs. Scottsdale's response also referred to the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates.

In addition to the documents that have already been produced to Plaintiffs, other documents that may pertain in a reasonably direct manner to Scottsdale's investigation as to whether or not the policy it issued to Arena provided coverage to Plaintiffs' insureds for some or all of the damages alleged in the underlying action, including reports of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates, are included in Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above.

3)    "Documents concerning Scottsdale's investigation concerning compliance with the notice conditions of the Scottsdale policy for the claims alleged against Skanska and NYC EDU in the Underlying Action."

This item appears to be a restatement of Request No. 4 of Plaintiffs' Document Requests. Attached to Scottsdale's response to that request was a copy of correspondence, dated January 14, 2005, from Plaintiff Wausau Underwriters Insurance Company (Wausau") to Scottsdale, tendering the defense of Wausau's insureds in the underlying action to Scottsdale. That correspondence was Scottsdale's first notice of the underlying claim. Also attached to Scottsdale's discovery response was a copy of Scottsdale's January 21, 2005 response to the tender.

---

[1] "Underlying action" refers to, collectively, a personal injury action captioned <u>Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Co., and Kel Tech Construction Inc.</u>, and a related third-party action, <u>New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Co. v. Arena Construction Co., Inc.</u>, both venued in New York State Supreme Court, County of Richmond, and bearing Index Nos. 13568/04 and A13658/04, respectively. Scottsdale had issued a commercial general liability insurance policy to third-party Defendant Arena Construction Co., Inc.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 3
February 26, 2007
Honorable Theodore H. Katz

Scottsdale's discovery response also referred Plaintiffs to documents, including the pleadings, served in the underlying action, and reports of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates. Reports of that investigation are included in Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above. Scottsdale also refers Plaintiffs to the notice provisions set out in the Scottsdale policy, a copy of which has been produced to Plaintiffs.

    4)    "Documents concerning communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action."

This item appears to be a restatement of Request No. 5 of Plaintiffs' Document Requests. In further response to that request, and presuming that Plaintiffs are not demanding the production of documents, if any, that are subject to attorney-client privilege, attorney work-product immunity, or both, but that Plaintiffs may claim are included within the scope of this nonspecific and overly broad demand, Scottsdale states that, with the exception of (i) the pleadings, including discovery requests and responses to discovery served in this action and in the underlying action, (ii) the correspondence attached as Exhibit A to Scottsdale's responses to Plaintiffs' Document Requests, and (iii) other correspondence, if any, sent by Scottsdale or its attorneys to Plaintiffs or other parties (or their attorneys) in this action or the underlying action, copies of all of which Scottsdale reasonably believes Plaintiffs or their attorneys already have, Scottsdale is not presently aware of documents comprising "communications with plaintiffs or any of the parties to the Underlying Action, or any of their counsel, concerning the Underlying Action."

If Plaintiffs will provide a precise and understandable description of what they mean by "documents concerning communications," which they purport to be seeking in this request, Scottsdale will respond appropriately.

    5)    "Documents upon which Scottsdale relied in determining to decline coverage to NYC EDU and Skanska for the underlying action."

This item is a restatement and expansion of Request No. 6 of Plaintiffs' Document Requests. In addition, this item and Request No. 6 are duplicative of Item 2 of Plaintiffs' February 6th correspondence and Request No. 3 of the Document Requests, in that they seek documents that are included within the scope of those sought in Item 2 and Request No. 3.

In its response to Request No. 6, Scottsdale referred Plaintiffs to the complaint in the underlying action, the correspondence between Wausau and Scottsdale attached as Exhibit A to the response, the Scottsdale policy, the pleadings, including discovery requests and responses to discovery served in the underlying action, and the results of the investigation of the underlying claim conducted for Scottsdale by David Morse & Associates. In further response, Scottsdale refers Plaintiffs to Scottsdale's claim file, which it will make available to Plaintiffs as described and according to the terms set out in Scottsdale's response to Item 1, above.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 4
February 26, 2007
Honorable Theodore H. Katz

6)    "The contract between NYC EDU and Arena concerning the project."

This item is a duplicate of Request No. 8 of Plaintiffs' Document Requests. Plaintiffs have admitted that they already have this document. Wausau's January 14, 2005 tender letter to Scottsdale (a copy of which was included in Exhibit A to Scottsdale's responses to Plaintiffs Document Requests) contains the statement "We have obtained a copy of the contract between EDC and Arena Construction Company, identified as Contract 11490016." That letter also refers to the New York City Economic Development Corporation as "EDC," while Plaintiffs' February 6th correspondence identifies that same entity as "NYC EDU."

If Plaintiffs are now claiming that there is a different contract at issue, or that the copy that they have is incomplete, please let me know.

7)    "Certificates of Insurance referring to the Scottsdale policy. Scottsdale has provided a certificate of insurance. The certificate, however, refers to "Attached Descriptions", [sic] which were not provided."

This item is a restatement of Request No. 9 of Plaintiffs' Document Requests. As Plaintiffs concede in their February 6th correspondence, Scottsdale has produced the certificate of insurance. Since discovery materials are not to be filed, Scottsdale is attaching copies of the second and third pages of that certificate, which includes the "attached descriptions" referred to by Plaintiffs, to the copies of this letter being mailed to Plaintiffs and Co-Defendant QBE Insurance Corp.

Plaintiffs' February 6th correspondence also questions Scottsdale's responses to four interrogatories in Plaintiffs' First Set of Interrogatories to Scottsdale ("Plaintiffs' Interrogatories"). Scottsdale's responses were, and remain fully proper. Nevertheless, in the spirit of cooperation, Scottsdale provides this further response.

In summary, the first three items, and the corresponding interrogatories, seek the identity of persons who were "involved in" any investigation by Scottsdale in connection with Wausau's January 14, 2005 tender and the decision to "disclaim coverage" for the underlying claim. Specifically, Item 1 of the February 6th correspondence (which restates Interrogatory No. 1 of Plaintiffs' Interrogatories) seeks "[t]he identity of individuals who were involved in any investigation conducted by Scottsdale with respect to the tender of the defense of Skanska and NYC EDU for the Underlying Action." Item 2 (which restates Interrogatory No. 2 of Plaintiffs' Interrogatories) seeks "[t]he identity of all individuals who were involved in the decision by Scottsdale to disclaim coverage for Skanska and NYC EDU for the Underlying Action." Item 3 (which restates Interrogatory No. 3 of Plaintiffs' Interrogatories and which is a subset and duplicative of Item 2) seeks "[t]he identity of all individuals who on Scottsdale's behalf made the decision to disclaim coverage for Skanska and the NYC EDU for the underlying action."

As an initial matter, Scottsdale points out that, under the circumstances of the underlying accident, coverage under the Scottsdale policy was not triggered. Accordingly, because the Scottsdale policy did not provide coverage for the claim asserted, Scottsdale was under no obli-

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 5
February 26, 2007
Honorable Theodore H. Katz

gation to "disclaim" coverage. *E.g.*, State Insurance Fund v. Aetna Casualty & Surety Co., 283 A.D.2d 335, 336 (App. Div. 1st Dept 2001). Scottsdale did, however, conduct an appropriate investigation into the underlying claim promptly upon its receipt of Wausau's tender letter, which was Scottsdale's first notice of that claim.

In response to Interrogatory Nos. 1-3, Scottsdale identified its examiner for this claim, James Hardina, as its employee with information concerning Scottsdale's investigation with respect to what, if any, coverage obligations Scottsdale may have had in connection with the underlying claim, and Scottsdale's decision that, under the circumstances, the underlying accident did not trigger coverage under the Scottsdale policy. In addition, as noted in Scottsdale's responses to a number of Plaintiffs' Document Requests, David Morse & Associates conducted an investigation into the underlying claim for Scottsdale. Certain of those persons may be identified in the reports of that investigation contained in the Scottsdale claim file, which Scottsdale has offered above to make available for Plaintiffs' inspection.

Scottsdale's responses to those responses were, and remain, fully proper. As Scottsdale's claim examiner for this matter, Mr. Hardina had the primary responsibility for the investigation of the facts of the underlying accident, the analysis of coverage questions, and the decision as to whether or not there was any coverage to begin with, as well as other policy-related defenses that might be available. Plaintiffs, however, appear to seek to require Scottsdale to identify other individuals who "were involved" in some unspecified way with the matters that Mr. Hardina had primary responsibility for, without their first examining Mr. Hardina to determine whether or not additional inquiry of other persons is necessary or justified.

The fourth item in Plaintiffs' February 6th correspondence regarding Scottsdale's responses to Plaintiffs' Interrogatories seeks "[t]he identity of all individuals who act as the custodian of records maintained by Scottsdale concerning the Underlying Action." Item 4 corresponds to Interrogatory No. 6. Notwithstanding the blatantly irrelevant and harassing nature of that interrogatory, Scottsdale identified its claim examiner, James Hardina, as the person having information concerning the records maintained by Scottsdale with respect to this claim.

As discussed above, Mr. Hardina was the person principally responsible for the handling of this claim within Scottsdale. That responsibility included the receipt and collection of relevant documents for inclusion in the claim file. Without conceding the relevance of information pertaining to Scottsdale's document collection and retention policies to any of the allegations in the complaint in this matter, Mr. Hardina is, therefore, the best person from whom to seek information about the establishment, organization, and maintenance of the claim file.

Accordingly, Scottsdale respectfully requests that the Court not permit Plaintiffs' fishing expedition for the identities of Scottsdale employees who likely have less direct information regarding matters relevant to this lawsuit, or who may have had some limited or peripheral involvement in Scottsdale's response to the underlying claim, without a reasonable showing by Plaintiffs of a justifiable need for relevant information that is not available to them from the information, documents, and persons already identified by Scottsdale.

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 6
February 26, 2007
Honorable Theodore H. Katz

Finally, Plaintiffs raise the issue of a privilege log, "assuming [Scottsdale] is withholding any documents as privileged." Even a cursory examination of many of Plaintiffs' discovery requests make it clear that they are so broad as to make it possible, if not likely, that privileged or work-product information or documents would be encompassed within the scope of the discovery request. For example, Document Request Nos. 3 and 4 demand "documents concerning" particular activities, and Document Request No. 5 demands "documents concerning communications."

In its responses to such non-specific and overly broad discovery requests, Scottsdale may have asserted a privilege objection, as well as specifically incorporating the vagueness and ambiguity, over-breadth, lack of relevance, and unreasonable burden and oppression objections set out in the General Objections section of its responses to Plaintiffs' discovery. Any obligation to identify privileged or work-product documents purportedly called for in such discovery requests would arise only if and when Scottsdale's vagueness, over-breadth, relevance, and undue burden objections have been heard and overruled. Scottsdale objects to any attempt by Plaintiffs to require Scottsdale to undertake the burden and expense of attempting to identify irrelevant privileged and work-product documents before its other, more fundamental objections have been resolved. Scottsdale will, of course, comply with its obligations under the Federal Rules of Civil Procedure with respect to any claim of privilege or protection as trial preparation material that it might assert as to documents or portions of documents properly sought by Plaintiffs.

As can be seen from the above discussions, Plaintiffs' bald assertions that Scottsdale has "refused to provide" documents and information properly sought by them in discovery are unsupported and misrepresent the facts. Scottsdale has provided Plaintiffs with requested information and documents, and, as noted above, will make additional materials available to them. Under the circumstances, Scottsdale respectfully suggests that a conference with the Court would not be a productive use of the Court's or the parties time unless and until Plaintiffs have examined the materials and information that have been and are being produced by Scottsdale and can identify specific, relevant issues that remain.

Thank you for your attention to this matter.

Very truly yours,

**MEMO ENDORSED**

Andrew J. Mihalick

cc:    Marshall T. Potashner, Esq.    (with enc.)
       William H. Bave, Esq.            "
       Leonard Porcelli, Esq.          (w/o enc.)

*Based upon this response, the parties are to execute a Confidentiality Order and then Scottsdale is to produce the documents described above that are responsive to the requests. The parties are to further confer in light of Scottsdale's response & are to see if any actual disputes remain.*

*So ordered*
*3/5/07    Theodore H. Katz    USHJ*

## Andrew Mihalick

**From:** NYSD_ECF_Pool@nysd.uscourts.gov
**Sent:** Tuesday, March 06, 2007 11:30 AM
**To:** deadmail@nysd.uscourts.gov
**Subject:** Activity in Case 1:06-cv-03212-VM-THK Wausau Underwriters Insurance Company et al v. QBE Insurance Corporation et al Endorsed Letter

This is an automatic e-mail message generated by the CM/ECF system. Please **DO NOT RESPOND** to this e-mail because the mail box is unattended.
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

### U.S. District Court

### United States District Court for the Southern District of New York

## Notice of Electronic Filing

The following transaction was entered on 3/6/2007 at 11:30 AM EST and filed on 3/5/2007

| | |
|---|---|
| **Case Name:** | Wausau Underwriters Insurance Company et al v. QBE Insurance Corporation et al |
| **Case Number:** | 1:06-cv-3212 |
| **Filer:** | |
| **Document Number:** | 46 |

**Docket Text:**
ENDORSED LETTER addressed to Judge Katz from Andrew Mihalick dated 2/26/07 re Scottsdale suggestion that a conference with the Court would be a productive use of the court's or the parties time unless and until plntfs have examined the materials and info that have been produced by Scottsdale and remaining relevant issues: based upon this response, the parties are to execute a confidentiality order and then Scottsdale is to produce the documents described above that are responsive tot he requests. The parties are to further confer in light of Scottsdale's response and are to see if any actual disputes remain. (Signed by Judge Theodore H. Katz on 3/5/07) (cd)

**1:06-cv-3212 Notice has been electronically mailed to:**
Andrew J. Mihalick  amihalick@kcrrpg.com
Leonard Porcelli  leonardporcelli@kcrrpg.com
Marshall Todd Potashner  MPotashner@JaffeandAsher.com
William Harold Bave  WHB@WBCCC.com

**1:06-cv-3212 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**

4/2/2007

[STAMP dcecfStamp_ID=1008691343 [Date=3/6/2007] [FileNumber=3140644-0]
[7d8511c16ed9024f7bb89d6dce40cce5e76c0fdd2dd9e755fbf26fac1fcc58249758
8a640344ad4b173c8f230ab72bac41168fa86cdd110542655d5d861a619a]]

EXHIBIT "E"

# JAFFE & ASHER LLP

ATTORNEYS AT LAW

PLEASE REPLY TO NEW YORK OFFICE

600 THIRD AVENUE
NEW YORK, NY 10016-1901
(212) 687-3000
(212) 687-9639 (FAX)

ESTABLISHED 1974

NEW JERSEY OFFICE

1107 GOFFLE ROAD
HAWTHORNE, NJ 07507-0508
(973) 423-3998
(973) 423-6074 (FAX)

March 5, 2007

Hon. Theodore H. Katz
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1660
New York, NY 10007-1312

**Re:    Wausau Underwriters Ins. Co. et al. v. QBE Ins. Corp., et al.
Civil Action No. 06 Civ. 3212 (VM) (THK)**

Dear Magistrate Judge Katz:

This firm represents plaintiffs in the above referenced matter. Thank you for providing us with an opportunity to reply to SCOTTSDALE INSURANCE COMPANY's ("Scottsdale") correspondence dated February 26, 2007.

We address Scottsdale's responses to document production issues in order as follows:

1.    Plaintiffs have requested by correspondence dated March 2, 2007, that Scottsdale forward a proposed confidentiality agreement. With respect to privileged documents, Scottsdale should produce a privilege log in compliance with Local Civil Rule 26.2.

2.    Scottsdale is not clear what it means by the limiting phrase "reasonably direct".

3.    See response to paragraph 1 above.

4.    We have no way of determining whether we have the documents listed. Plaintiffs have the right to production of these documents from Scottsdale, if only to make sure we have everything. To the extent Scottsdale has confusion concerning the phrase "documents concerning communications", the words "document", "concerning", and "communications" are all defined by Local Civil Rule 26.3(c).

Hon. Theodore H. Katz
March 5, 2007
Page 2

5.    Scottsdale has not produced all of the documents referenced in its letter.

6.    It appears that we are not in possession of the entire contract between NYC EDU and Arena therefore, we request that Scottsdale produce a copy of said contract.

7.    Scottsdale has now produced the extra documents (which explicitly lists Skanska and the City as additional insureds).

Scottsdale's letter does not adequately address the issues with respect to its responses to plaintiffs' interrogatories. We did not merely ask the identity of people who have knowledge of certain specified facts. We specifically requested the identity of the individuals "who were involved in any investigation conducted by Scottsdale", "involved in the decision by Scottsdale to disclaim coverage", "who, on Scottsdale's behalf, made the decision to disclaim coverage", and "the custodian of records maintained by Scottsdale concerning the Underlying Action." It is clear that James Hardina is not the only person Scottsdale should have identified in response to these interrogatories. Plaintiffs should not be forced to undertake a more costly deposition of Mr. Hardina to obtain information easily obtainable by interrogatories. It is also not up to Scottsdale to dictate how plaintiffs pursue discovery, or who is the "best person from whom to seek information."

Finally, a cursory review of plaintiffs' first request for production of documents reveals that they are not overly broad, vague, irrelevant, or unduly burdensome, which Scottsdale raises as "General Objections." Plaintiffs have not raised any of these objections in response to the specific demands addressed in its February 26th letter. In any event, plaintiffs cited no rule or case law supporting its argument that it may unilaterally ignore Local Civil Rule 26.2 until "if and when Scottsdale's vagueness, over-breadth, relevance, and undue burden objections have been heard and overruled."

We respectfully request that the Court schedule a conference to determine

Hon. Theodore H. Katz
March 5, 2007
Page 3

whether Scottsdale must provide this outstanding discovery to plaintiffs.

Respectfully Submitted,

Marshall T. Potashner

MTP:nib

cc:    Leonard Porcelli, Esq.
       William H. Bave, Jr., Esq.

EXHIBIT "F"

LAW OFFICES OF

## KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

NEW YORK OFFICE
170 Broadway
Iew York, New York 10038
(212) 406-9710
Fax (212) 571-0874

(516) 742-3470
FAX (516) 742-6243

SUFFOLK OFFICE
496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289

Andrew J. Mihalick – Ext. 213
amihalick@kcrrpg.com

March 14, 2007

Marshall T. Potashner, Esq.
Jaffe & Asher LLP
600 Third Avenue
New York, New York  10016

William H. Bave, Jr., Esq.
Wilson, Bave, Conboy, Cozza & Couzens, P.C.
Two William Street
White Plains, New York  10601

    Re:    <u>Wausau Underwriters Ins. Co., et al., v. QBE Insurance Corp., et al.</u>
           Civil Action No. 06 CV 3212 (VM) (THK)
           <u>Our File No. 111059</u>

Dear Counsellors:

    This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. Pursuant to the March 5, 2007 Memo Endorsed Order of the Honorable Theodore H Katz, U.S.M.J., in this matter, attached please find a Confidentiality Agreement and Order for your signature and entry in this matter.

    Please return a signed copy to me at your earliest convenience. I will then submit it to the Court for entry. Please do not hesitate to contact me if you have any questions.

                    Very truly yours,

                    Andrew J. Mihalick

Enc.

EXHIBIT "G"



Case 1:06-cv-03212-VM-THK    Document 47

LAW OFFICES OF

KRAL, CLERKIN, REDMOND,

PERRY & GIRVAN, LLP

69 EAST JERICHO TURNPIKE
MINEOLA, NEW YORK 11501

NEW YORK OFFICE
170 Broadway
New York, New York 10038
(212) 406-9710
Fax (212) 571-0874

(516) 742-3470
FAX (516) 742-6243

SUFFOLK OFFICE
496 Smithtown Bypass
Smithtown, New York 11787
(631) 265-0134
Fax (631) 265-4289

Andrew J. Mihalick – Ext. 213
amihalick@kcrrpg.com

March 14, 2007

Honorable Theodore H. Katz
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street; Room 1660
New York, New York 10007-1312

Re:  Wausau Underwriters Ins. Co., et al., v. QBE Insurance Corp., et al.
Civil Action No. 06 CV 3212 (VM) (THK)
Our File No. 111059

Dear Judge Katz:

This firm represents Defendant Scottsdale Insurance Company ("Scottsdale") in the referenced matter. This is in response to Plaintiffs' March 5, 2007 letter to the Court purporting to raise, at best, premature and ultimately groundless issues with respect to Scottsdale's February 26, 2007 correspondence regarding its responses to Plaintiffs' discovery demands.

Paragraphs 1, 3, and 5 of Plaintiffs' letter attempt to create issues where none exist. Scottsdale has, pursuant to Your Honor's March 5, 2007 Memo Endorsed Order, sent a Confidentiality Agreement and Order to counsel for Plaintiffs and Co-Defendant QBE Insurance Company for signature. Once that has been signed, I will file it to be "so ordered," and make the production of documents pursuant to Scottsdale's February 26, 2007 correspondence, and as referred to in the Memo Endorsed Order. Paragraph 5 of Plaintiffs' letter ignores the sequence established by the Memo Endorsed Order, that the parties execute a confidentiality order before Scottsdale's production of documents.

In the event that Scottsdale asserts a claim of privilege with respect to any responsive documents properly requested by Plaintiffs, Scottsdale will comply with its obligations under the Federal Rules of Civil Procedure regarding such claims. As discussed in its February 26, 2007 correspondence, however, (and contrary to the penultimate paragraph of Plaintiffs' March 5, 2007 letter) neither the Federal Rules of Civil Procedure nor Local Rule 26.2 require Scottsdale to provide a privilege log with respect to documents, if any, whose production is objectionable in the first instance due to their lack of relevance or the vagueness, overbreadth, or undue burden of the demands, unless and until those fundamental objections have been decided.



KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 2
March 14, 2007
Honorable Theodore H. Katz

Paragraph 2 of Plaintiffs' letter likewise attempts to raise a non-issue. In its February 26, 2007 correspondence, Scottsdale has offered to make available for Plaintiffs' inspection "a copy of the non-privileged and non-product portions of its claim file with respect to the loss claimed in the underlying action and which were created on or before the date of service of the underlying lawsuit on Scottsdale's insured." Nothing in Paragraph 2 of that letter limits that response in any additional way. Given the breadth and vagueness of Plaintiffs' document demand (notwithstanding its use of defined terms), Scottsdale properly sought to provide a concise description of certain of the documents in the claim file that it has offered to make available to Plaintiffs.

In Paragraph 4 of their March 5, 2007 letter, Plaintiffs appear to complain that they do not know if their own files include copies of pleadings, discovery demands and responses, and correspondence, if any, from Scottsdale or its attorneys to Plaintiffs or other parties or their attorneys. They then demand that Scottsdale be put to the time and expense of producing its copies of such documents, so that Plaintiffs can reassure themselves that they haven't misplaced a document. If Plaintiffs have any reasonable basis to suspect that they may not have received a document that has or should have been sent to them, they should advise the Court of the specifics, so that a focused response can be made, rather than cavalierly demanding the re-production of documents they likely already have.

Contrary to the January 14, 2005 statement of Plaintiff Wausau Underwriters, that they had a copy of their own insured's contract between their insured and Scottsdale's insured, Plaintiffs now assert that they do not have the entire contract, and seek to impose on Scottsdale the burden of providing them with a copy of their own document. Clearly, the burden on Plaintiffs of obtaining that document from Wausau's insured is less than the burden of production they seek to impose upon Scottsdale. Accordingly, it is respectfully submitted that they should not be permitted to shift that burden to Scottsdale.

In its February 26, 2007 letter, Scottsdale provided a full and detailed explanation of why its identification of its claim examiner assigned to this claim, James Hardina, was and remains a fully proper response to Plaintiffs' Interrogatory Nos. 1, 2, 3, and 6. As Scottsdale explained, Mr. Hardina had the primary responsibility for the investigation of the facts of the underlying accident, the analysis of coverage questions, and the decision as to whether or not there was any coverage to begin with, as well as other policy-related defenses that might be available. Mr. Hardina was also responsible for the receipt and collection of relevant documents for inclusion in the claim file.

Plaintiffs now disingenuously complain that Scottsdale has identified the employee best able to answer their questions about Scottsdale's investigation, its decision regarding coverage, and the maintenance of the claim file, rather than attempting to locate and identify less knowledgeable individuals. Further, Plaintiffs also suggest, rather incredibly, that it will be more costly to them to depose the Scottsdale employee who had principal responsibility for the handling of

KRAL, CLERKIN, REDMOND, RYAN, PERRY & GIRVAN, LLP

Page 3
March 14, 2007
Honorable Theodore H. Katz

the underlying claim, than it would be to depose other persons (if any) who may have had some indirect or peripheral involvement with the claim.

Scottsdale again respectfully suggests that a conference with the Court would not be a productive use of either the Court's or the parties time unless and until Plaintiffs have taken the time to examine the materials to be produced by Scottsdale and can identify specific, relevant additional discovery that they claim then remains.

Thank you for your attention to this matter.

Very truly yours,

Andrew J. Mihalick

cc:     Marshall T. Potashner, Esq.
        William H. Bave, Esq.
        Leonard Porcelli, Esq.

*The Court has considered the parties' submissions and its rulings are set forth in the margins above.*

3/20/07

**SO ORDERED**

THEODORE H. KATZ
UNITED STATES MAGISTRATE