```
                                       ┌─────────────────────────┐
                                       │ USDS SDNY               │
                                       │ DOCUMENT                │
                                       │ ELECTRONICALLY FILED    │
                                       │ DOC #: _____  │
UNITED STATES DISTRICT COURT           │ DATE FILED: 7·27·07     │
SOUTHERN DISTRICT OF NEW YORK          └─────────────────────────┘
-----------------------------------x
                                   :
WAUSAU UNDERWRITERS INSURANCE       :
COMPANY and AXIS SPECIALTY          :       06 Civ. 3212 (VM)
INSURANCE COMPANY,                  :
                                    :
                    Plaintiffs,     :
                                    :
                                    :       DECISION AND ORDER
       - against -                  :
                                    :
                                    :
QBE INSURANCE CORPORATION and       :
SCOTTSDALE INSURANCE COMPANY        :
                                    :
                    Defendants.     :
-----------------------------------x
```

**VICTOR MARRERO, United States District Court.**

Plaintiffs Wausau Underwriters Insurance Company ("Wausau") and Axis Specialty Insurance Company ("Axis") filed a complaint (the "Complaint") against defendants QBE Insurance Corporation ("QBE") and Scottsdale Insurance Company ("Scottsdale") for a declaration of rights under certain insurance policies and for monetary damages based on reimbursement allegedly due from a co-insurer. The four claims for relief each relate to the action entitled John Moore v. New York City Economic Development Corp., New York City Department of Transportation, Barney Skanska Construction Company, Kel Tech Construction Inc., Index No. 13568/04, currently pending in the Supreme Court of the State of New York, County of Richmond (the "Underlying Action"). Wausau and Axis filed a motion for partial summary judgment pursuant

-1-

to Fed. R. Civ. P. 56 with respect to QBE's obligations to defend two of the parties in the Underlying Action, the New York City Economic Development Corporation (the "NYC EDC") and Barney Skanska Construction Company ("Skanska").  For the reasons discussed below, the Motion is GRANTED.

## I.   **BACKGROUND**[1]

On December 28, 2004, John Moore ("Moore") commenced the Underlying Action, seeking damages for injuries that he allegedly sustained, on or about September 16, 2004, as a result of having purportedly fallen through an uncovered shaft at the St. George Ferry Terminal job site (the "Project") in Richmond County, New York.  Moore named Skanska, NYC EDC, Kel-Tech Construction, Inc. ("Kel-Tech") and the New York City Department of Transportation as defendants.

Wausau has acknowledged coverage for Skanska and the NYC EDC as additional insureds under a liability policy it issued to Owen Steel Company, Inc. ("Owen Steel"), a steel subcontractor for the Project.[2]   Axis has acknowledged

---

[1]  The factual recitation and contentions set forth below derive from the Complaint, dated April 19, 2006; the Affidavit of Michael Morrissiey  in Support of the Motion for Partial Summary Judgment, dated October 20, 2006 ("Morrissiey Aff."); and the Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment, dated October 20, 2006 ("Pl.'s Mem.").

[2]  Owen Steel entered into a contract, as a subcontractor, with the NYC EDC on or about August 28, 2002, to provide steel and certain steel work for the Project.   Previously, Owen Steel had entered into a subcontract agreement, on or about March 12, 2001, with McNulty to provide steel erection services for the Project.

-2-

coverage for the same parties as additional insureds under a
liability policy it issued to A.J. McNulty & Company, a
subcontractor of Owen Steel and employer of the plaintiff in
the Underlying Action.  Axis's coverage is primary to the
coverage afforded Skanska and the NYC EDC under the Wausau
policy.  Axis has, thus far, been paying for the defense of
Skanska and the NYC EDC in the Underlying Action.  Wausau, as
co-insurer, tendered the defense and indemnity of Skanska and
the NYC EDC for the Underlying Action to QBE, which provides
coverage for Kel-Tech, by letter dated December 13, 2004.  QBE
disclaimed coverage for Skanska and the NYC EDC, alleging late
notice and that Moore's injury was not caused by Kel-Tech's
negligence or work.

A.   THE KEL-TECH TAKEOVER AGREEMENT

Kel-Tech was a masonry subcontractor on the Project,
having taken over the work previously assigned to Shroid
Construction, Inc. ("Shroid").[3]  Shroid's original agreement
with the NYC EDC required Shroid to maintain certain insurance
coverage minimums and included Skanska and the NYC EDC as
additional    insureds.    When    Kel-Tech    assumed    all
responsibilities for the contract pursuant to a takeover
agreement, dated June 22, 2004, insurance obligations to

---

[3] Shroid's participation in the Project ended after filing a voluntary
petition under Chapter 11 of the Bankruptcy Code on December 30, 2003.

-3-

Skanska and the NYC EDC attached.

Kel-Tech complied with the terms of the takeover agreement by obtaining a liability insurance policy from QBE (the "QBE Policy") which included Skanska and the NYC EDC as additional insureds.    The QBE Policy, No. HBG 00208-3, encompassed the policy period from November 16, 2003 to November 16, 2004.[4]

B.    RELEVANT QBE POLICY PROVISIONS

The QBE Policy contains an "Other Insurance" provision, which states, in pertinent part, as follows:

> 4.    Other insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of the Coverage Part, our obligations are limited as follows:
>
> a.    Primary Insurance
>
> > This insurance is primary except when [the excess insurance coverage] applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.

(QBE Policy, attached as Exhibit 6 to Morrissiey Aff., at 9.) The provisions of the excess coverage section of this portion of the QBE Policy did not apply, thus the primary insurance

---

[4] The NYC EDC also entered into a contract with Arena Construction Company ("Arena") for masonry subcontractor work. Arena met its minimum liability insurance coverage by way of a policy with Scottsdale. The Scottsdale policy is not the subject of this motion for partial summary judgment, although the Court notes that all parties should carefully examine this decision and evaluate whether similarities in analysis render any planned motions with respect to Scottsdale unnecessary.

-4-

provision governed.[5]

C.   NOTIFICATION TIMELINE

The NYC EDC tendered the claim arising from Moore's accident to Wausau's Named Insured, Owen Steel, on September 23, 2004, which in turn tendered to claim to Wausau on September 27, 2004.  On November 9, 2004, the NYC EDC initially advised Wausau that Kel-Tech supplied and constructed the scaffolding involved in Moore's accident, that Kel-Tech had a direct contract with the NYC EDC, and that the NYC EDC had previously tendered the claim to Kel-Tech.

Wausau made an initial attempt to obtain the Kel-Tech contract from the NYC EDC on November 19, 2004, but did not receive the contract until December 13, 2004, along with the contract between NYC EDC and Shroid, the takeover agreement, and a certificate of liability insurance showing that NYC EDC and Skanska are additional insureds on a policy issued by QBE. Upon receiving these documents, Wausau tendered defense of Skanska and the NYC EDC by way of a tender letter, received by QBE on December 17, 2004. The Underlying Action commenced on December 28, 2004, the same date of the letter by which QBE disclaimed coverage for Skanska and NYC EDC.

---

[5] The excess insurance provisions included groupings of other types of insurance that the plaintiffs might hold that would apply, such as fire, extended coverage, builder's risk, installation risk, fire insurance for rented premises, property damage, or loss arising from the maintenance or use of aircraft, "autos", or watercraft.  QBE puts forth no argument that such excess insurance provisions apply in this instance.

## II.  DISCUSSION

### A.   STANDARD OF REVIEW

To prevail on a motion for summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court ascertains which facts are material by considering the substantive law of the action, for only those "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether any genuine issues of material fact exist that would preclude summary judgment, the Court must "draw all permissible inferences in favor of the non-moving party." Kapps v. Wing, 404 F.3d 105, 112 (2d Cir. 2005)(citation omitted).  The court does not, however, defer to a party's legal arguments on summary judgment "with respect to a motion for summary judgment, questions of law are for the court." Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir. 1993).

### B.   DUTY TO DEFEND

Federal and state courts in New York have recognized that determination of an insurer's duty to defend presents a question of law appropriate for resolution by summary

-6-

judgment.   See, e.g., Avondale Indus., Inc. v. Travelers
Indem. Co., 887 F.2d 1200, 1204 (2d Cir. 1989) (affirming
grant of summary judgment to insured that insurer had duty to
defend); New York Funeral Chapels, Inc. v. Globe Indem. Co.,
33 F. Supp. 2d 294, 298 (S.D.N.Y. 1999) (granting summary
judgment to insured where allegations in tort suit triggered
duty to defend); Incorporated Village of Cedarhurst v. Hanover
Ins. Co., 89 N.Y.2d 293, 297 (1996) (affirming grant of
summary judgment to insured on duty to defend in two separate
declaratory judgment actions).

QBE argues that its duty to defend is triggered only
after a finding of vicarious liability for the work performed
by its insured subcontractor, Kel-Tech.   (See Def.'s Reply
Mem. in Opp. Mot. Dismiss, dated November 9, 2006, ("Def.'s
Reply Mem." at 7.)  Thus, QBE asserts that, while its policy
covers additional insureds, Skanska and the NYC EDC, "with
respect to liability arising out of '[Kel-Tech's] work' for
that Insured by or for [Kel-Tech]," that coverage is limited
in scope and contingent upon a specific finding regarding
fault with respect to Moore's accident.

The New York Court of Appeals, however, ruled differently
in BP Air Conditioning Corp. v. One Beacon Ins., holding that
such a duty attaches once sufficient factual and legal bases
on which an insurer might eventually be held to be obligated

-7-

to indemnify its insured are put forth.  <u>See</u> No. 05581, 2007
WL 1826923, at *3 (N.Y. Ct. App., June 27, 2007).  The Court
finds <u>BP Air</u> controlling on this question.  In that Moore
alleges that his injuries were caused by the negligence of,
among other defendants, Kel-Tech, the named insured on the QBE
policy, QBE cannot disclaim coverage of Skanska and the NYC
EDC in the Underlying Action on this basis.[6]

C.    <u>TIMELY NOTICE OF DUTY TO DEFEND</u>

QBE states that its obligation to provide coverage under
its policy is not triggered because Skanska did not provide
timely notice of the occurrence pursuant to the terms of the

---

[6] The Court also notes the expansiveness of the duty to defend highlighted
in <u>BP Air</u>.  The portion of the additional insured endorsement at issue in
that case stated that the plaintiff "is an additional insured only with
respect to liability arising out of [the named insured's] ongoing
operations performed for that insured." <u>BP Air</u>, 2007 WL 1826923, at *3.
After determining that a finding with respect to liability for the
plaintiff's injuries in the underlying action was not necessary before a
duty to defend attached, the court stated:

> [W]hen considering this policy language in light of an insurer's
> broad obligation to defend an insured, [the policy language] does
> not affect the standard under which a duty to defend is determined.
> When the duty to defend is at issue, a liability alleged to arise
> out of [the named insured's] ongoing operations is one "arising out
> of" such operations with the meaning of the policy.

<u>Id.</u>

The other parties in this matter should carefully consider whether
language such as "but only to the extent the additional insured is held
liable for the Named Insured's negligent acts or omissions arising from
occurrences directly caused by, and while in the course of the Named
Insured's ongoing operations performed for that insured," which is alleged
to have been embodied in the Scottsdale policy, is sufficiently distinct
from the type of policy language described in <u>BP Air</u>, as Scottsdale's
counsel has contended, that it would not fall under its ambit.  (<u>See</u>
Letter to Judge Victor Marrero from Marshall Potashner, dated June 28,
2007.)

  
policy. However, the QBE policy specifically states that the
notice of occurrence is to be provided by the named insured,
Kel-Tech. The language of the policy reads "[y]ou must see to
it that we are notified as soon as practicable for an
'occurrence' or an offense which may result in a claim." (QBE
Policy, attached as Exhibit 6 to Morrissiey Aff., at 9.) The
QBE Policy further indicates that "[t]hroughout this policy
the words 'you' and 'your' refer to the Named Insured shown in
the Delclarations, and any other person qualifying as a Named
Insured under this policy."  (Id. at 1.)  Because the
declarations list Kel-Tech as the named insured, the notice
policy applies to them, not to additional insureds.

Where an insurance policy places the burden of notice
upon a named insured, an additional insured may rely upon the
named insured's notice to the insurer for compliance of any
notice obligation. See U.S. Underwriters Ins. Co. v. City
Club Hotel, LLC, 369 F.3d 102, 109 (2d Cir. 2004). QBE
received timely notice from Kel-Tech. Thus, Skanska and the
NYC EDC are allowed to rely upon Kel-Tech's provision of
timely notice.[7]

### III.  **ORDER**

For the foregoing reasons, it is hereby

---

[7] Although moot in that the NYC EDC is allowed to rely upon Kel-Tech's
timely notice, the Court notes that the NYC EDC independently filed timely
notice as well.

-9-

**ORDERED** that the motion (Docket No. 21) of plaintiffs Wausau Underwriters Insurance Company ("Wausau") and Axis Speciality Insurance Company ("Axis") for summary judgment against defendant QBE Insurance Company ("QBE") herein is GRANTED with respect to the first claim for declaratory judgment against QBE asserted in the complaint herein.

**SO ORDERED.**

Dated:     New York, New York
           26 July 2007

                                      Victor Marrero
                                      U.S.D.J.